IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION

| | |
|---|---|
| 3M Company </br></br> Plaintiff, </br></br> v. </br></br> GLENN HAMMOND, MICHAEL B. MARTIN, and JOHN (a.k.a. "JOHNNY") GIVENS, </br></br> Defendants. | Case No.: 7:25-cv-00037-REW-CJS |

### PLAINTIFF'S *EX PARTE* MOTION

Plaintiff 3M Company, by and through its attorneys, respectfully requests this Court to enter an order pursuant to Rule 65 of the Federal Rules of Civil Procedure, the All Writs Act (28 U.S.C. § 1651), and the Court's inherent authority to instruct the U.S. Marshalls to seize and impound evidence hidden by Defendant Glenn Hammond in a storage locker located at 616 Bypass Road, Pikeville, Kentucky. In support of its motion, 3M states as follows:

1.  3M does not bring this motion lightly or without prudent and cautious diligence. The disturbing facts learned since 3M filed the complaint in this case require this unusual step of seeking Court intervention to ensure that highly relevant case files maintained by Defendant Hammond are not destroyed before they see the light of day in this litigation. As set forth below, 3M has learned alarming information that Defendant Hammond has engaged in a pattern of unethical and obstructionist behavior, including hiding key case files related to 3M in a storage locker with the stated intent to prevent them from being discovered.

2.  After the complaint in this case became public, an individual contacted 3M to alert it of troublesome conduct by Defendant Hammond. That individual also identified Bobby Moore

as someone who had additional relevant information of Hammond's misconduct. As set forth in the Moore Affidavit, late in the evening of Thursday June 19, 2025, a 3M investigator and counsel interviewed Moore, a former paralegal of the Glenn Martin Hammond Law Office. 3M informed Moore that they were not seeking any confidential or privileged information. During that interview, Moore stated that during his time working for Defendant Hammond from July 2024 through February 2025, he became aware of highly concerning conduct.[1] Ex. 1, Moore Aff.

3. As set forth in the Moore Affidavit, Defendant Glenn Hammond has routinely counseled clients to *lie* about facts pertinent to lawsuits Hammond has filed on their behalf. *Id.* ¶ 6. When challenged by his clients, Defendant Hammond has even gone so far as to instruct clients to ignore their church's teachings and instead focus solely on what is (in his view) good for their family – making money from frivolous lawsuits. *Id.* It was also "common for Hammond to direct employees not to put dates on documents so that the documents could be dated later in order to avoid statute of limitations issues." *Id.* ¶ 7. Moore also observed Defendant Hammond pursue cases clearly outside the applicable statute of limitations. *Id.* ¶ 8. Moore was even directed to alter/forge documents. *Id.* ¶¶ 11–12, 13–14. Further, Moore stated that it was nearly a daily practice that Hammond employees would lie, at Defendant Hammond's direction, to clients about aspects of their cases. *Id.* ¶ 9. All of this information is highly troubling and demonstrates, at the very least, a pattern and practice of unethical behavior.

4. Even more concerning as it relates to this motion, however, is the fact that Defendant Hammond has *hidden* case files related to Defendants' fraudulent handling of lawsuits against 3M in a storage locker with the stated intention of preventing discovery of these files.

---

[1] Moore is currently employed as a paralegal at the Baird & Baird law firm. 3M does not work with the Baird & Barid law firm but 3M understands that Baird & Baird does represent 3M's codefendant MSA in connection with related claims and cases filed by Defendants against MSA.

2

Moore explained that on October 30, 2024, he was working with fellow Hammond employee Chuck McKinney when McKinney asked Moore to go with him to a storage unit at 616 Bypass Road in Pikeville, Kentucky. *Id.* ¶ 16. Once in the storage unit, Moore realized there were "dozens of large banker boxes full of 3M case files," some of which contained the name "Mike Martin." *Id.* McKinney told Moore that "nobody else knew these files were in the storage unit" and that the fact of their existence should be kept secret. *Id.* McKinney "explained that someone had come into Hammond's office and seen information that Hammond did not want seen and as a result Hammond told McKinney to take these files to the storage unit." *Id.* Moore stated that "there are still some 3M case files in the office, and on Hammond's office's electronic system," but Defendant Hammond had directed that these particular files must be hidden away. *Id.* ¶ 17.

5. Based on his experience with Defendant Hammond, Moore believes that Hammond will destroy the files to prevent discovery. *Id.* ¶ 19. Moore explained that Defendant Hammond often employed a man to burn documents from the law office. *Id.* Although Moore does not know the man's name, he has seen him and knows that he drives a white van. *Id.*

6. Some background information is helpful to understand Defendant Hammond's desire, and the great lengths he has taken, to hide these files. On March 9, 2023, Judge Howard Keith Hall found that Defendant Hammond had submitted a "materially false" affidavit to that court attempting to defeat 3M's summary judgment motion based on the statute of limitations in the case of *Johnny Wilson v. 3M*, No. 22-CI-00812 (Pike Cir. Ct.). On March 20, 2023, 3M issued a preservation letter to Defendant Hammond for any documents or electronic files in his possession relating to 3M, any plaintiffs on behalf of whom he had filed a claim against 3M, or any potential clients that retained him or his firm for the purpose of filing a claim against 3M. On March 24, 2023, Defendants Martin and Givens told Judge Hall that Defendant Hammond had engaged in

3

"fraud" in what 3M believes was an attempt by Defendants Martin and Givens to distance themselves from Hammond (and hide their own misconduct) once a court had exposed Defendant Hammond's fraud. *Randy Adams, et al. v. 3M Company, et al.*, No. 20-CI-382 (Pike Cir. Ct), Hr'g Tr. (Mar. 24, 2023) at 52:6–7. Defendants Martin and Givens stated that they had seen numerous case files in Hammond's office in March 2023 that appeared to show cases had been "fraudulently filed." *Id.* at 19:14–20:7. Defendants Martin and Givens claimed that Hammond would not allow them to review those files. Following this revelation, 3M continued to litigate against Hammond, Martin, and Givens and continued seeking discovery in state court to obtain information that would, or should, have been contained in Defendant Hammond's files. In late March 2023, 3M continued pursuing discovery against Defendant Martin in Texas where he has a legal office and law license. *3M Company v. Michael B. Martin, et al.*, No. 23-CV-0488 (Tex. Dist. March 28, 2023). Against this backdrop, the Texas court ordered the unusual step of permitting pre-suit discovery into Defendant Martin's files in Texas as well as a deposition of Martin and his firm. Ex. 2, Order. After a failed attempt to obtain a writ of mandamus and numerous other baseless delays, Defendant Martin ultimately produced documents in Texas but maintained that he did not have access to Defendant Hammond's paper files. *See* Ex.3, Martin Rule 202 Response at 16.

7.  Given this background, it appears that Moore's reference to McKinney saying that "someone had come into the office and seen some information that Hammond didn't want seen" was in relation to the paper files containing self-described "fraud" that Defendants Martin and Givens had seen in Hammond's office in March 2023.

8.  Moving case files to prevent discovery is contrary to the duty of candor that Defendant Hammond took as a prerequisite to practicing law in the Commonwealth of Kentucky. *See* Kentucky Rules of Professional Conduct, Rule 3.130(3.3).

9. This is not an isolated incident of obstructionist behavior. Defendant Hammond has also used intimidation and coercion to fabricate evidence. According to the Moore Affidavit, to hide evidence that Defendant Hammond was having an affair with a woman working for him at the Glenn Martin Hammond Law Offices, Defendant Hammond threatened employees, including Moore, into signing a false statement denying that an affair took place. *Id.* ¶ 15. Defendant Hammond coerced employees, including Moore, to sign a false statement denying the affair by threatening to withhold their paychecks. *Id.* On another occasion, Moore was forced by Defendant Hammond – under threat of not being paid for services rendered – to sign a false statement declaring facts about another employee to be true. *Id.* Moore was threatened to sign the statement even though Moore was not even employed at the time in question. *Id.* Defendant Hammond's history of threatening employees to engage in unethical behavior or lose their paycheck heightens the risk that Hammond would order employees to destroy the case files in question here.

10. The case files in the storage locker assuredly contain case dispositive evidence such as intake forms, notes, interview summaries, employee files, and statute of limitations evidence that will further illustrate that Defendants have manipulated claims, falsified documents, and instructed their clients to lie about using 3M products. This information must be preserved but presently it is at great risk of destruction.

11. 3M brings this motion *ex parte* for a restraining order because Defendant Hammond has demonstrated that he will act in bad faith to manipulate evidence. As the Supreme Court has noted, pre-deprivation notice and hearing can present a "danger of destruction [that] cannot be guarded against" by "warning" defendants who are "acting in bad faith." *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 609 (1974); Developments in the Law–Injunctions, 78 Harv. L. Rev. 1055 (1965) ("The *ex parte* restraining order is indispensable to the commencement of an action when

it is the sole method of preserving a state of affairs in which the court can provide effective final relief. Immediate action is vital when eminent destruction of the disputed property . . . is threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all."). That is exactly the case here.

12. If notified prior to court intervention, the risk is too great that Defendant Hammond will move or destroy the case files in the storage locker. His repeated unethical behavior and the stated intention of hiding these documents justifies this extraordinary relief. Indeed, an *ex parte* application for a restraining order is the appropriate procedure to prevent exactly this type of conduct. *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650–51 (6th Cir. 1993) (stating that an *ex parte* restraining order to seize and impound evidence is appropriate when movant shows "the adverse party has a history of disposing evidence or violating court orders"); *Lorillard Tobacco Co. v. Amanda Oil, Inc.*, No. 2:10-cv13296, Dkt. 8 at 2 (E.D. Mich. 2010) (granting *ex parte* seizure order conducted by U.S. Marshalls where movant provided sufficient evidence to find that defendant "may destroy, move, or hide" evidence); *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (recognizing an *ex parte* order may be justified when there is a risk of "imminent destruction of the disputed property") (internal citation omitted); *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 323 (7th Cir. 1984) ("We agree with the Second Circuit that *ex parte* orders of very limited scope and brief duration [such as using "the assistance of the United States Marshalls to enter defendants premises, take samples of jet inks and obtain copying of 'all documents'"] may be justified in order to preserve evidence where the applicant shows that notice would result in destruction of evidence.").

13. To prevent Defendants from destroying this key evidence, 3M requests that the Court enter an order instructing the US Marshalls to seize and impound the case files held at the

storage locker. The files can then be placed under the control of a substitute custodian until the Court can resolve motion practice related to their review and production. 3M is cognizant that many of these files may contain what Defendant Hammon contends are attorney-client privileged information and/or attorney work product and as such is not seeking to *review* the files at this time. 3M plans to file a motion seeking the application of the crime fraud exception to these (and other) discovery documents. Only once that issue, and other discovery issues, are resolved, will 3M seek appropriate access to the files. By sequestering these files with a substitute custodian, the Court will have easy access to these files for *in camera* review when motion practice related to their contents begins.

14. When deciding whether to issue a restraining order, the court must consider the following factors: (a) whether the movant has demonstrated a strong likelihood of success on the merits; (b) whether the movant would suffer irreparable harm; (c) whether issuance would cause substantial harm to others; and (d) whether the public interest would be served by issuance. *Sheldon v. Grimes*, 18 F. Supp. 3d 854, 857 (E.D. Ky. 2014). These "are factors to be balanced, not prerequisites that must be met," with the "'likelihood of success' prong the most important." *Id.* Each element is discussed in turn with respect to each order sought by 3M.

### Likelihood of Success

15. The court has the authority to order the U.S. Marshalls to seize and impound evidence under Federal Rule of Civil Procedure 65 as "a court of equity is free to fashion whatever remedies [are] adequate to protect rights of the parties." *Joel v. Various John Does*, 499 F. Supp. 791, 792 (E.D. Wis. 1980) (authorizing seizure and impoundment of evidence as injunctive relief under FRCP 65); *see also Comcast of St. Paul, Inc. v. Boyle*, 2004 WL 2801588, at *1 (D. Minn. Nov. 4, 2004) (ordering the U.S. Marshalls to enter defendant's business and seize business records under FRCP 65). The Court also has this authority under the All Writs Act as well as its inherent

7

authority. *Chanel, Inc. v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A"*, 2022 WL 18956167, at *4 (S.D. Fla. Dec. 21, 2022) (ordering an *ex parte* seizure based in part on the All Writs Act and the court's inherent authority); *Yeti Coolers, LLC v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, 2019 WL 4748305, at *1 (S.D. Fla. July 8, 2019) (same); *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (affirming an *ex parte* seizure order under the district court's inherent authority); *Bacardi & Co. v. N.Y. Lighter Co.*, 2000 U.S. Dist. LEXIS 19852, at *48-49 (E.D.N.Y. Sep. 5, 2000) ("The few Courts addressing this same issue have generally held that federal courts may properly issue an *ex parte* order of seizure under 'traditional rights'").

16. The seizure and impoundment of the files located in Defendant Hammond's storage locker is necessary to protect the rights of 3M. Indeed, given Defendant Hammond's recent history of manipulating and hiding evidence, the requested order is the only guarantee that the evidence will be preserved. 3M has presented clear evidence of bad faith by Defendant Hammond both generally with respect to manipulating evidence and specifically with respect to the files in question. The seizure of these files by the U.S. Marshalls ensures that the evidence remains safe so that the Court can determine whether, and to what extent, the files should be produced to 3M.[2]

### The Destruction of Evidence Would Cause Irreparable Harm to 3M

17. It is self-evident that the destruction of files concerning the very cases at issue in this litigation would cause irreparable harm. Once the physical files are destroyed, they cannot be recreated or retrieved. As evidenced by the Moore Affidavit, Defendant Hammond hid these files to keep their contents secret from discovery. Destruction of these files would deprive 3M of contemporaneous records about Defendants' clients' initial reported use of 3M masks, reported

---

[2] If the U.S. Marshalls do not have a physical location to impound the evidence, 3M offers to pay for a storage space that the U.S. Marshalls can use to house the evidence.

medical condition, statute of limitations issues, and potentially evidence of directions to mislead/fabricate evidence. The harm to 3M incurred by not issuing an injunction would be irreparable.

### Lack of Substantial Harm to Defendants

18. Defendants would suffer no harm by the Court issuing the requested relief. The seizure and impoundment of evidence is specifically designed to cause Defendants no harm because it will be kept with a substitute custodian[3] until the Court determines whether the crime-fraud privilege exception applies to warrant the files being produced, thus protecting Defendants' privilege arguments until the dispute is resolved. If Defendants need copies of any of this information, 3M does not object to copying under supervision of the substitute custodian. The Court could further fashion an order to have the files digitized by a substitute custodian, which would also address Defendant Hammond's access to the hidden files while preserving them for this litigation.

### The Public Interest is Served in Upholding the Rules of Evidence

19. The American justice system relies on processes and procedures to protect the rule of law, provide equal justice, and enable the legal system to operate as an independent branch of government. Faith and trust in the system is essential to this mission. Lawyers are supposed to be officers of the court, duty bound to protect this system. This case presents a glaring example of the failure of that system which requires Court intervention to remedy. Rule 3.130 of the Kentucky Rules of Professional Conduct emphasizes how "the legal profession is largely self-governing" and requires the lawyer to "pursue a client's legitimate interests within the bounds of the law." Here, the evidence put forward in the Moore Affidavit reflects a harmful departure from those

---

[3] 3M is willing to provide and pay for a substitute custodian to house the voluminous records at issue here.

norms and warrants a departure from self-governance to curb the blatant abuse of duty and law carried out by Defendant Hammond. The Court should order 3M's requested relief to advance the public interest in being able to trust that attorneys in Kentucky act in good faith and cases are permitted to proceed to the merits based on all relevant evidence.

**WHEREFORE**, 3M respectfully requests that the Court enter an order to instruct the U.S. Marshalls to seize and impound the evidence in Defendants' storage locker and transfer the contents to a substitute custodian. 3M can work with the Court and the U.S. Marshalls to identify the appropriate substitute custodian, such as a third-party vendor to collect and store the files (either physically or digitally) at 3M's expense, until further order of the Court.

Dated: June 24, 2025                                        Respectfully submitted,

FULTZ MADDOX DICKENS PLC

*/s/ Benjamin C. Fultz*
Benjamin C. Fultz (KBA #84398)
Gregory Scott Gowen (KBA #85408)
Robert E. Ranney (KBA #100226)
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202-3116
(502) 588-2000
bfultz@fmdlegal.com
sgowen@fmdlegal.com

Steve Grimes
(Admitted *Pro Hac Vice*)
Whitney I. Adams (KBA #100826)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel.: (312) 558-5600
Fax: (312) 558-5700
sgrimes@winston.com
wiadams@winston.com

*Attorneys for 3M Company*