## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION

| | |
|---|---|
| **3M Company** )<br><br>Plaintiff, )<br><br>v. )<br><br>**GLENN HAMMOND, MICHAEL B. MARTIN, and JOHN (a.k.a. "JOHNNY") GIVENS,** )<br><br>Defendants. ) | Case No.: 7:25-cv-00037-REW-CJS |

## 3M COMPANY'S EMERGENCY MOTION

Pursuant to the Court's inherent authority, Federal Rule of Civil Procedure 26(d), and the All Writs Act, 28 U.S.C. § 1651, Plaintiff 3M Company respectfully brings this urgent request to preserve and require immediate access to and the production of the contents of a storage unit in the possession, custody, or control of Defendant Hammond, where 3M has a reasonable and good faith basis to believe important evidence is being stashed by or on behalf of the Defendants. 3M respectfully requests that a hearing on this emergency motion be held at the earliest date and time available on the Court's schedule. In support of this motion, 3M states as follows:

1.     Since filing the complaint, 3M has learned facts providing a reasonable basis to believe that evidence central to 3M's claims in this litigation has been stashed by or on behalf of Hammond in a storage unit for the purpose of preventing its discovery and that, absent Court intervention, there is a genuine risk Hammond or someone on his behalf will destroy this evidence or hide it in a new location before 3M can obtain it through the usual course of discovery. 3M requests that the Court schedule a hearing as soon as possible to limit any opportunity Hammond may have to destroy or move evidence before this emergency motion is resolved. 3M is filing the

motion at a time it understands Hammond is present in Pikeville and will hand deliver the motion to Hammond upon filing to facilitate an expedited process. While 3M understands Hammond has had a copy of the complaint for several weeks, 3M will hand deliver a copy of the complaint to Hammond along with the motion.

2.    3M asserts the following facts on information and belief and in good faith: Hammond maintains, controls and/or has access to a storage unit at the U Save Storage, LLC facility located at 616 Bypass Road in Pikeville, Kentucky. This storage unit contains dozens of large bankers boxes full of original 3M case files. Hammond instructed one of his employees to move these files from Hammond's law office to the storage unit and to keep the files' location and the fact of their existence secret. Hammond explained to this employee that these particular files had to be moved to the storage unit because someone had come into Hammond's office and seen the existence of information that Hammond did not want seen. Hammond has previously employed a man to burn documents from the law office.

3.    3M has good reason to believe the case files stashed in this storage unit contain evidence of Defendants' fraudulent handling of cases against 3M. As set forth in the complaint, on March 9, 2023, Judge Howard Keith Hall found that Hammond had submitted a "materially false" affidavit to the court attempting to defeat 3M's summary judgment motion based on the statute of limitations. *See* Compl. ¶¶ 12, 145. Two weeks later, in an attempt to distance themselves from the now-exposed fraud, Defendants Martin and Givens admitted to Judge Hall that, as of March 2023, Hammond had in his office numerous files demonstrating cases against 3M had been fraudulently filed. *Id*. ¶¶ 166–68. Martin claimed in another proceeding that it was Hammond who had retained the paper files of the fraud they perpetrated on 3M. *See* Ex. 1, Martin Rule 202 Response at 16. It is a reasonable inference that the files in the storage locker are those same files

2

that contain evidence of fraudulently filed cases. On information and belief, these original case files contain case dispositive evidence such as intake forms and other original records with information about Defendants' clients' actual mask usage, product identification, and medical conditions and diagnoses, as well as statute-of-limitations evidence.

4.     3M has a reasonable and good faith basis to believe that, absent a Court order, Hammond will destroy these original case files or secret them away to a new location to prevent their disclosure through discovery in this case. To start, Hammond has already taken steps to hide these case files in the storage locker. Now that their location is known to 3M—and by virtue of this motion it will be known to Defendants that 3M knows—the next logical step to ensure they can never be used against Defendants in this litigation would be to destroy them or hide them elsewhere. The mere fact that Hammond hid them in the first instance is proof positive of the lengths he will go to hide evidence and avoid accountability for his wrongdoing. The complaint is replete with examples of such obstructionist and unlawful behavior. *See, e.g.* Compl. ¶¶ 12–15, 68, 103–105, 138–145.

5.     Additionally, since filing the complaint, 3M has learned new information consistent with this pattern. Specifically, on information and belief, Hammond has threatened employees into signing false statements denying allegations made against him by another employee or declaring false statements about another employee to be true. On information and belief, Hammond coerced employees to sign such false statements by threatening to withhold their earned wages if they did not cooperate. Such a history of intimidating employees to lie on his behalf heightens the risk that Hammond would order persons over which he has authority or ostensible control to destroy or move the case files in question here.

6.      On this record, Hammond cannot be trusted to abide by the rules of fair play and traditional discovery. A typical discovery request on the usual timeline—or for that matter an order from the Court that evidence be preserved—is unlikely to be effectual in these circumstances. Thus, while 3M does seek leave to serve a single document request at this time (attached as Exhibit 2), as well as a preservation order so that it can seek appropriate additional relief were Defendants to violate a direct Court order, 3M respectfully contends that more is needed to protect the integrity of the process.

7.      Thus, 3M respectfully requests that the Court enter an order requiring Hammond:

a.   to preserve all evidence relevant to this action stored at a U Save storage unit or anywhere else,

b.   to identify immediately the unit number of any U Save storage unit to which he has access or which is rented by or on behalf of him or the Glenn Martin Hammond Law Offices, PLLC, and

c.   to surrender forthwith to a court-appointed third-party custodian pending further direction from the Court the entire contents of the U Save storage unit(s) and of any other storage unit that may contain evidence relevant to this action.

8.      3M also requests that the Court authorize counsel for 3M to access any such storage unit for the limited purpose of observing the removal of evidence by a third-party custodian so as to ensure that all of the unit's contents are provided to the custodian. 3M is cognizant that some of these files may contain what Hammond contends are attorney-client privileged information and/or attorney work product. As such, 3M is not seeking to review the files at this time. At the appropriate time, 3M plans to file a motion seeking the application of the crime-fraud exception to these (and other) documents. Only after that and related issues have been resolved by the Court

will 3M seek appropriate access to the files. By storing these files with a third-party custodian, 3M will not have access to them unless and until the Court allows it.

9.      3M also requests leave to issue two subpoenas duces tecum on an expedited basis seeking narrow and targeted information relating to the storage unit and the evidence therein: (1) a subpoena directed to the Glenn Martin Hammond Law Offices, PLLC for documents identifying off-site storage locations used by the firm and/or Hammond, and (2) a subpoena directed to U Save Storage, LLC for documents identifying any U Save storage unit associated with Hammond or his firm. The information sought is necessary to confirm the precise location of the original case files and to confirm Hammond's compliance with this Court's order for the preservation and immediate surrender of those case files to a third-party custodian. Copies of 3M's proposed requests for documents from the Glenn Martin Hammond Law Offices and U Save Storage are attached as Exhibit 3 and Exhibit 4, respectively.

10.     The sum and substance of the single request to Hammond's law office is: documents identifying any off-site storage location rented or accessed by Hammond or his firm since January 1, 2022.

11.     The sum and substance of the single request to U Save Storage is: documents identifying any U Save storage unit rented or accessed by Hammond or his firm since January 1, 2022 and, if the information exists, who has accessed that unit and when.

12.     Given the centrality of these case files to this action and the very real risk of irreversible harm to 3M if they are destroyed or lost, 3M is also actively surveilling the U Save storage facility to monitor any attempt by Hammond or his accomplices to further conceal or rid of this evidence.

## Necessity of a Preservation Order

13.     The Court has inherent authority to issue a preservation order when necessary under "its equity powers and its power to control the discovery process and duty of overall case management." *Washington v. City of Detroit*, 2007 WL 788909, at *1 (E.D. Mich. Mar. 14, 2007) (internal quotation omitted); *see also Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 137 (2004) (finding the court has the "power to preserve evidence and issue orders in furtherance thereof"); Fed. R. Civ. P. 16(c) (providing the court "may consider and take appropriate action" with respect to "controlling and scheduling discovery").

14.     Courts deciding a motion for a preservation order have applied two tests: the *Pueblo* test and the three-factor test. *See Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, 2016 WL 1657922, at *2–3 (S.D. Ohio Apr. 27, 2016); *Arkin v. Gracey-Danna, Inc.*, 2016 WL 3959611, at *1 (M.D. Fla. July 22, 2016); *Career Counseling, Inc. v. Amsterdam Printing & Litho, Inc.*, 2016 WL 11725395, at *1 & n.1 (D.S.C. May 13, 2016).

15.     Under the *Pueblo* test, the movant must "demonstrate that it is necessary and not unduly burdensome" to order preservation. *Pueblo*, 60 Fed. Cl. at 138. Here, Hammond has tried already to conceal original case files by moving them to an off-site storage unit. His history of obstructionist behavior suggests he will destroy or again hide that evidence if necessary to prevent its discovery. A preservation order is necessary to prevent these actions and will impose no undue burden on Hammond who has an existing obligation to preserve and maintain relevant evidence. *See id.* (explaining burden is "often met by demonstrating that the opposing party has lost or destroyed evidence in the past"); *see also, e.g.*, *Swetlic Chiropractic*, 2016 WL 1657922, at *4 (granting motion to preserve evidence in part where movant demonstrated "real danger that relevant evidence in non-party['s] [] possession will be destroyed absent a court order"). Also,

6

since 3M is merely asking that a third-party custodian take possession of the evidence, Hammond would endure no burden or expense of any kind. Were he later to claim the need to access any particular file, he could always seek leave from the Court, and a copy could be made while the third-party custody continues to safekeep the original.

16.     Under the three-factor test, courts consider (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in the absence of an order directing preservation, (2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation, and (3) the capability of the party to maintain the evidence sought to be preserved. *Washington*, 2007 WL 788909, at *1. This test is also satisfied here. As explained above, there is a very real risk the original case files containing case dispositive evidence will be destroyed or secreted away absent a Court order. Once destroyed or hidden to an unknown location, these physical files cannot be recreated or retrieved, causing irreparable harm to 3M. Finally, Hammond simply cannot be trusted to maintain these files. Placing the files under the control of a third-party custodian is a prudent and measured way to ensure that these files are not destroyed or hidden. The Court is well within its authority to order the preservation of this evidence. *See, e.g., id.* at *1 (ordering preservation of a "potentially [] important piece of evidence" upon finding "no action w[ould] be taken to preserve [it] absent a court order"); *United States ex rel. Staggers v. Medtronic, Inc.*, 2022 WL 4078969, at *6 (D.D.C. Sept. 6, 2022) (granting motion for limited preservation order where "burdens imposed ... [were] outweighed by the Court's concern that evidence valuable to [the] case will be destroyed and that Relators will be irreparably harmed absent such an order").

**Good Cause for Immediate Production and Issuance of Subpoenas Duces Tecum**

17.     Pursuant to Rule 26(d), this Court "has discretion to order expedited discovery where a party shows good cause for this departure from the usual discovery process." *Kentucky CVS Pharmacy v. McKinney*, 2013 WL 1644903, at *1 (E.D. Ky. Apr. 16, 2013) (citations omitted). "The moving party must demonstrate good cause for expedited discovery and must narrowly tailor requests to obtain specific information." *Allstate Ins. Co. v. Zeefe*, 2015 WL 4661530, at *2 (E.D. Ky. July 13, 2015). Good cause can exist where "evidence may be lost, misappropriated, or destroyed with time." *Id.*; *see also Caston v. Hoaglin*, 2009 WL 1687927, at *2 (S.D. Ohio June 12, 2009) ("Good cause is often found ... where evidence may be lost or destroyed with time.").

18.     Good cause for expedited discovery exists here because, as explained above, the case files at issue are in danger of being destroyed or secreted away again.  Each day these original files remain under Hammond's control increases the risk of irreparable harm to 3M. On the other side of the scale, Hammond suffers no prejudice from ceding control of these files to a third-party custodian pending further direction form the Court given they are clearly within the scope of discovery and 3M will pay the cost of storage. *See, e.g.*, *Allstate Ins.*, 2015 WL 4661530, at *2–3 (finding "good cause" exists where defendants had a history of non-cooperation and obstructionism, delaying production would cause irreparable harm, and requests were narrowly tailored). Indeed, Hammond would not even have to incur the burden or expense of making copies as he would in a traditional document production.

19.     Good cause exists also for issuing the proposed corresponding subpoenas to the Glenn Martin Hammond Law Offices, PLLC and to U Save Storage, LLC on an expedited basis. The proposed subpoenas are narrowly tailored to achieve one thing: to identify any storage unit Hammond has used to hide evidence relevant to this case. *See* Exs. 3 & 4. If not obtained now, this

information may be deleted—intentionally or unintentionally—by third parties with no existing obligation to preserve it. *See, e.g., Jockey Club Info. Sys., Inc. v. Doe*, 2015 WL 4523498, at *2 (E.D. Ky. July 24, 2015) (granting expedited third-party discovery where movant showed internet service providers would not preserve relevant activity logs and a narrowly tailored request for these logs was appropriate and non-prejudicial); *Caston*, 2009 WL 1687927, at *4 (recognizing an informal request to non-parties to preserve certain documents "lacks the force of a subpoena"). This evidence could also facilitate the discovery of and access to the information Hammond has concealed.

**WHEREFORE**, 3M respectfully requests that the Court enter an order providing the following relief:

    a.  Requiring Defendant Hammond:

        i.  to preserve all evidence relevant to this action stored at a U Save storage unit or anywhere else,

        ii.  to identify immediately the unit number of any U Save storage unit to which he has access or which is rented by or on behalf of him or the Glenn Martin Hammond Law Offices, and

        iii.  to surrender forthwith to a court-appointed third-party custodian pending further direction from the Court the entire contents of the U Save storage unit(s) and of any other storage unit that may contain evidence relevant to this action.

    b.  Authorizing counsel for 3M to access any such storage unit for the limited purpose of observing the removal of evidence by a third-party custodian so as to ensure that all of the unit's contents are provided to the custodian.

c.  Requiring 3M to cover the cost of the court-appointed third-party custodian and to assist as directed by the Court or custodian in arranging for the custodian to take possession of and maintain the contents of the storage unit.

d.  Granting 3M leave to serve immediately on Hammond the single request for production attached as Exhibit 2 to 3M's motion.

e.  Granting 3M leave to serve immediately on the Glenn Martin Hammond Law Offices and U Save Storage, LLC subpoenas duces tecum incorporating the requests for documents attached as Exhibit 3 and Exhibit 4 to 3M's motion and requiring the Glenn Martin Hammond Law Offices to produce forthwith, and U Save Storage to produce within three days of service, the documents responsive to 3M's subpoena.

Dated: July 21, 2025                                    Respectfully submitted,

                                                       FULTZ MADDOX DICKENS PLC

                                                       */s/ Benjamin C. Fultz*
                                                       Benjamin C. Fultz (KBA #84398)
                                                       Gregory Scott Gowen (KBA #85408)
                                                       Robert E. Ranney (KBA #100226)
                                                       101 South Fifth Street, 27th Floor
                                                       Louisville, Kentucky 40202-3116
                                                       (502) 588-2000
                                                       bfultz@fmdlegal.com
                                                       sgowen@fmdlegal.com
                                                       rranney@fmdlegal.com

                                                       Steve Grimes (Admitted *Pro Hac Vice*)
                                                       Whitney I. Adams (KBA #100826)
                                                       WINSTON & STRAWN LLP
                                                       35 West Wacker Drive
                                                       Chicago, Illinois 60601
                                                       Tel.: (312) 558-5600

Fax: (312) 558-5700
sgrimes@winston.com
wiadams@winston.com

*Attorneys for 3M Company*

## CERTIFICATE OF SERVICE

I certify that on July 21, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record. Additionally, I certify that on July 21, 2025, I caused Defendant Hammond to be personally served with a physical copy of the foregoing and its attachments. Further, on July 21, 2025, I served counsel for Defendants Martin and Givens with electronic and hard copies of the foregoing and its attachments as follows:

Walter C. Morrison, IV
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER & WARSHAUER, L.L.C.
240 Trace Colony Park Drive, Suite 100
Ridgeland, MS 39157
(601) 209-3171
WMorrison@gainsben.com
*Counsel for Defendant Givens*

David L. Miller
MILLER, SCAMARDI, CARRABBA &
BURGESS, P.C.
6525 Washington Avenue
Houston, Texas 77007
(713) 861-3595
DMiller@msc-lawyer.com
*Counsel for Defendant Martin*

*/s/ Benjamin C. Fultz*
Benjamin C. Fultz

12

# Exhibit 1

Case: 7:25-cv-00037-REW-CJS    Doc #: 18    Filed: 07/21/25    Page: 14 of 46 - Page 4/24/2023 6:40 PM
ID#: 210                                                                JOHN D. KINARD - District Clerk
                                                                        Galveston County, Texas
                                                                        Envelope No. 74918593
                                                                        By: Shailja Dixit
                                                                        4/24/2023 7:49 AM

## CAUSE NO. 23-CV-0488

| | | |
|---|---|---|
| 3M COMPANY, | § | IN THE DISTRICT COURT OF |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| MICHAEL B. MARTIN and | § | |
| MARTIN WALTON LAW FIRM, | § | |
| | § | |
| Respondents. | § | 10TH JUDICIAL DISTRICT |

### RESPONSE TO PETITIONER'S RULE 202 MOTION TO CONDUCT DISCOVERY AND PLEAD TO THE JURISDICTION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Respondents, Michael B. Martin ("Martin") and Martin Walton Law Firm, and file this their Response to 3M Company's ("3M") Verified Petition for Authorization to Conduct Rule 202 Pre-Suit Depositions, and show the Court as follows:

## I.
## SUMMARY OF ARGUMENT

The Petitioner, 3M Company, (3M), a manufacturer of respirators, has a long history of defending product liability lawsuits related to those respirators. Martin is a lawyer who has a long history of prosecuting respirator cases against 3M Company.

3M's Rule 202 Petition should be denied for the following reasons:

1) This Court lacks subject matter jurisdiction. 3M brings the petition for harassment and nothing more. In doing so, 3M ignores well established law under the doctrine of attorney immunity. Attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation. Accordingly, this Court lacks subject matter jurisdiction.

2) 3M's petition is not brought to perpetuate testimony or investigate a potential claim, as required by Rule 202. Instead, as evident from the Petition itself, its sole purpose is to

intimidate, suppress and harass Martin, his firm, and most insidiously, his clients.  3M's efforts to invade the attorney-client and work product privileges to obtain discovery in suits currently pending or to be filed demonstrates the lengths it will go to in order to stop Martin's representation of legitimately sick individuals with claims or potential claims against 3M.

3)  3M's petition contains a constellation of false and misleading statements. Because the petition is severely contaminated with misrepresentations which form its basis, the Rule 202 Petition must fail.

4)  Regarding the Kentucky case styled, *Johnny Wilson v. 3M Company,* the Pike County Circuit Court in Kentucky has already ordered that 3M be allowed to take depositions of Mr. Wilson's counsel, including Martin. Accordingly, this motion is moot.

For these reasons, the 3M Rule 202 Petition should be denied.

## II.
## MOTION FOR LEAVE TO CONTINUE THE HEARING
## ON 3M'S VERIFIED PETITION

On Friday, April 14, 2023, Respondents' counsel, Diane Burgess, agreed to participate in a videoconference with counsel for 3M, Denise Scofield and Steve Grimes, to discuss the Petition for 202 Depositions and Order for Deposition of Mike Martin in the Johnny Wilson case.  During the videoconference, Ms. Burgess informed 3M's counsel that David Miller, lead counsel for Respondents, had suffered a detached retina on Sunday, April 9, 2023 and had undergone emergency surgery on April 12, 2023.  Since Mr. Miller was blind in one eye and would be forced, at a minimum to limit any activity with the exception of lying face down for an unknown period of time, Counsel for Martin requested a continuance of the hearing date.  Counsel for 3M refused to move the hearing date, despite Mr. Miller's condition, and only agreed to discuss potential limitations in scope and dates for the deposition.

Counsel for Martin also indicated the court in Pikesville, Kentucky presiding over the Wilson case had ordered Mr. Martin to appear for a deposition, as permitted by Kentucky law, which Respondents believed rendered 3M's Petition moot.  However, 3M's Counsel indicated the

scope of the 202 Petition was much broader in scope than the order for deposition in the Wilson case – despite the obvious privileged nature of the subject matter, topics and documents requested by 3M – and confirmed the deposition to be taken in the Wilson case would not be sufficient to negate the basis for the 202 deposition requested.

Based on Mr. Miller's inability to meaningfully participate in the preparation for this hearing, the Martin Respondents seek a continuance of the hearing date.

### III.
### LEGAL ANALYSIS

#### A.    Legal Standard for Rule 202 Depositions

Buried on Page 15 of 3M's Supplemental Verified Petition, is the authority for a pre-suit deposition provided by Rule 202.  3M is not seeking the deposition to perpetuate testimony for use in an anticipated suit, but instead claims Martin's deposition is necessary "to investigate a potential claim or suit." TEX. R. CIV. P. 202.1(b).

The Texas Supreme Court recognizes that Rule 202 depositions are "not intended for routine use." *In re Jorden*, 249 S.W.3d 416, 423 (Tex. 2008).  While 3M urges that Texas Courts use them routinely, the Supreme Court cautions that a trial court "must strictly limit and carefully supervise pre-suit discovery to prevent abuse of the rule." *Id.* at 423. Practical as well as due process problems arise "with demanding discovery from someone before telling them what the issues are." *In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011).  Furthermore, the Rule does not broadly authorize investigation of *any* action the petitioner may have based on future events, including future lawsuits to be filed by current clients of Martin against 3M.  *Id.* at 624.

Rule 202 requires the petition to "state the subject matter of the anticipated action, if any, and the petitioner's interest therein." TEX. R. CIV. P. 202.2(e).  Although 3M claims to be seeking non-privileged materials, it has failed to demonstrate how attorney-client communications with

"Dust Mask Clients," as defined in the subpoena constitute non-privileged materials. The overbroad and unlimited scope of 3M's request for deposition and documents constitutes nothing more than a harassing fishing expedition to obtain privileged communications and documents from Martin regarding his client's claims against 3M and said conduct by 3M should be prohibited.

As a threshold matter, a trial court cannot order pre-suit depositions if it lacks subject matter jurisdiction over the potential claim or the anticipated action." *In re Doe (Trooper)*, 444 S.W.3d 603, 608 (Tex. 2014) ("we think it is implicit as it always has been that the court must have subject matter jurisdiction over the anticipated action"). For a party to properly obtain Rule 202 pre-suit discovery, "the court must have subject-matter jurisdiction over the anticipated action." *In re DePinho*, 505 S.W.3d 621, 624 (Tex. 2016); *In re Wolfe, supra*, at 933 ("To prevent an **end run around discovery limitations that would govern the anticipated suit**, Rule 202 restricts discovery in depositions to 'the same as if the anticipated suit or potential claim had been filed'"); *In re City of Dallas*, 501 S.W.3d 71, 73 (Tex. 2016) ("allowing courts to authorize Rule 202 depositions for potential suits over which they lack jurisdiction would untether pre-suit discovery from the suit it purports to be in aid of.")(emphasis added). No subject matter jurisdiction exists here.

**B.    Attorney Immunity Bars Suits by Non-Clients**

3M's petition fails because this Court lacks subject matter jurisdiction over such an action. The requirement of subject matter jurisdiction is not waived in a Rule 202 proceeding. If the potential suit forming the basis for the Rule 202 proceeding cannot be brought because it lacks subject matter jurisdiction, neither can the Rule 202 action for discovery.

Putting aside the fact that 3M's verified petition contains unfounded misrepresentations, 3M cannot bring any claim against Martin or Martin Walton in their representation of a client. Common law attorney immunity "applies to lawyerly work in all adversarial contexts in which an attorney has a duty to zealously and loyally represent a client." *Haynes and Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 67 (Tex. 2021).  As a general rule, attorneys are immune from civil liability to non-clients "for actions taken in connection with representing a client in litigation." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

The immunity inquiry focuses on the type of conduct at issue. As the Supreme Court set forth in *Haynes*, attorney immunity protects against a non-client's claim when the claim is based on conduct that:

> (1) constitutes the provision of legal services involving the unique office, professional skill, training, and authority of an attorney *and*
> (2) the attorney engages in to fulfill the attorney's duties in representing the client within the adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable.

 *Haynes and Boone, LLP v. NFTD, LLC*, 631 S.W.3d at 78 (emphasis in the original).

"Attorney immunity stems from the law's longstanding recognition that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.'" *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 47 (Tex. 2021)(quoting, *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. App.- Dallas 1910, writ ref'd)). Attorneys are "duty bound to competently, diligently, and zealously represent their clients' interests while avoiding any conflicting obligations or duties to themselves or others." *Haynes and Boone,* 631 S.W.3d at 79. Attorney immunity promotes "'loyal, faithful, and aggressive representation' by alleviating in the mind of the attorney any fear that he or she may be sued by or held liable to a non-client for providing such zealous

representation." *Id.*; *see also, Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018) (non-client's alleged claim that his opponents' attorney fraudulently entered into a settlement agreement barred by attorney immunity); *Cantey v. Hanger*, 467 S.W.3d 477 (Tex. 2015) (attorney immunity barred ex-wife's alleged claim that her husband's divorce attorneys falsified an airplane's bill of sale to shift the tax liabilities to her). Attorney immunity protects not only attorneys but also their clients who can be assured that counsel is representing the client's best interests, not the lawyer's. *Taylor v. Tolbert*, 644 S.W.3d 637, 647 (Tex. 2022).

The Supreme Court found a non-client's "mere labelling of an attorney's conduct as fraudulent does not and should not remove it from the scope of client representation or render it foreign to the duties of an attorney." *Cantey,* at 483; *see also, Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 657 (Tex. 2020). However, immunity does not extend to "conduct outside the scope of client representation and therefore foreign to the duties of an attorney." *Bethel*, 595 S.W.3d at 657-58 (non-client's allegations attorney engaged in criminal activity barred by attorney immunity). Immunity does not apply when an attorney participates in a fraudulent business scheme with her client or knowingly facilitates a fraudulent transfer to help her clients avoid paying a judgment. *Id.* Immunity also does not apply where the attorney's activity is outside the scope of client representation such as when an attorney assaults the opposing counsel. *Id.*

None of these exceptions apply to the Respondents to warrant the deposition and attached subpoena duces tecum for documents.  If 3M believes it has evidence to support the exception to the application of attorney immunity, a 202 Deposition is not necessary and 3M can just file suit.

In the Rule 202 proceeding presently before the Court, 3M makes many incorrect and blatantly false allegations against Martin and the Martin Walton Law Firm. Though baseless and

more than likely filed to harass Martin and Martin Walton, the Rule 202 matter concerns conduct of Martin and Martin Walton in representation of their clients. Thus, the Rule 202 discovery request by 3M cannot be granted because any suit brought by 3M would be dismissed pursuant to attorney immunity.

For this reason, the Court lacks subject matter jurisdiction over the Rule 202 proceeding brought by 3M against Martin and Martin Walton. Therefore, Respondents request that this Court grant the Plea to the Jurisdiction and dismiss this proceeding.

### C.    3M's Petition Fails to Satisfy the Criteria Necessitating Pre-Suit Depositions

Alternatively, scrutiny in these circumstances is especially warranted given the privileged nature of the testimony 3M seeks from Martin regarding his current clients and active files at the forefront of 3M's Petition and Subpoena for Documents.  In Paragraph 34 of 3M's Supplemental Petition, 3M disguises this fishing expedition into privileged attorney-client communications and documents protected by work product privileges as factual in nature pertaining only to the timing means and process of client intakes – presuming said conversations are somehow not protected by privilege.  A client protected by privilege includes a person who consults a lawyer with a view *to obtaining* professional legal services from the lawyer – i.e., intakes.   TEX. R. EVID. 503(a)(1)(B)(emphasis added).   3M's reliance on *Gen. Motors Corp. v. Gayle*, is also misleading as it pertained to the application of work product protections to consulting expert witnesses -- **not client communications** – that 3M seeks here.  *See,* 924 S.W.2d 222, 229 (Tex. App. – Houston [14th] 1996) subsequent mandamus proceeding, 940 S.W.2d 598 (Tex. 1997); *see also*, Supplemental Verified Petition, at ¶ 34, at Page 14.

However, even more disingenuous is 3M's position the discovery sought from Martin cannot be obtained through the pending lawsuits from the Plaintiffs themselves.  In other words,

if 3M believes it is entitled to "facts" regarding the "timing," or "methods" (i.e., communications) pertaining to retention of counsel, it can seek an order from the court and demonstrate relevance in that pending litigation.  If 3M believes it has a statute of limitations defense against a Plaintiff represented by Martin, it can plead that defense and conduct discovery to obtain the necessary evidence to support same.  There is no basis in law or fact to permit a product manufacturer, like 3M, facing plaintiffs alleging injury from use of their product to depose the attorney to elicit confidential attorney-client communication or attorney work-product regarding the claims and defenses asserted in that lawsuit or potential suit.  This procedural vehicle was not designed to eviscerate attorney-client or work product privileges and should be prohibited.

**D.     3M's False and Misleading Statements Should not Undermine or Contaminate the Court's Ability to See Through 3M's Baseless Rule 202 Petition, When Faced with the Accurate Facts on the Subject Matter**

### 1.     Martin's Experience and Training

Martin has practiced trial law for 37 years. As a lawyer representing injured silicosis victims, Martin is a well-respected member of the Bar. He has spoken by invitation of the State Bar of Texas and the University of Houston on ethics in mass tort cases. *See, Ethical Perspectives in Mass Tort Cases,* State Bar Continuing Legal Education, University of Houston 2005, 2006, 2007. Martin has provided continuing legal education presentations on Silicosis and Respirator Product Liability for Harris Martin Publishing on various aspects of occupational lung diseases.[1]

---

[1] *See also,* University of Houston, Continuing Legal Education – "Ethical Issues in a Toxic Tort Case," Houston & Dallas 2005; Co-Chair, Mealey's Silica Litigation Conference, Oct. 25-26, 2004, New Orleans. Speaker – Medical Ethics of Evaluating Silica Cases – "*Presenting false expert testimony, improper coaching of claimants testimony" Model Rules of Professional responsibility*"; Mealey's Silica Litigation Conference, Oct. 13-14, 2003, Atlanta Georgia, *"Medical Panel – Debate over Science and Medicine of Silica.";* Harris Martin Conference on silica, June 9-10, New Orleans, 2003, *"The Regulatory Framework and How it relates to State of the Art, Employer's Liability and Duty to Warn,"*

Martin has published continuing legal education articles on litigation surrounding silicosis and respiratory protection. [2] Martin was invited by the United States Senate, Committee on the Judiciary, Arlen Spector, Chair, to speak on the issue of occupational lung diseases in the United States. He was the only practicing lawyer asked to testify before the committee, together with physicians and law professors. Martin has handled many, many occupational lung disease product liability cases over his career.

3M scrapes the bottom of the barrel hunting for an allegation by pointing to a nearly twenty-year-old legal malpractice case against Martin. The facts of that case actually demonstrate that Martin acted to protect 3M's interests.

3M fails to point out other litigation involving Martin which has impacted the respirator product liability cases in Texas, especially on the issue of limitations. For example, Martin was at the center of a Texas Supreme Court case which stands as the primary authority on the statute of limitations in occupational lung disease cases. [3] *Childs v. Haussecker,* 974 S.W. 2d 31, 38 (Tex. 1998). The critical ruling in *Childs* involved a man who prematurely filed a workers compensation claim for lung disease, without a diagnosed illness. The *Childs* Court held that limitations is tolled until there is objective evidence of disease, regardless of a claimant's subjective belief of disease. *Id.* This principle is at the center of some of the allegations made by 3M in its' petition.

Martin is also no stranger to community service. In Galveston, he was named Citizen of the Year by both the *Galveston Daily News* and the Galveston Chamber of Commerce. Martin's political and charitable work is well known. While serving Galveston County as a state representative, he was consecutively named as one of Texas' ten best legislators by *Texas Monthly*

---

[2] *See,* Columns, *'Quarries and Aggregate Operation: The Birth and Perpetuation of Silicosis.";* Columns, *"Foundries and Respirators: A Fatal Solution to the Silicosis Problem."* (2003)
[3] Martin is discussed at page 36 of the opinion.

magazine. He served as Chair of the Galveston Bay Foundation and advocated and supported many local causes.

3M now attempts to malign Martin's reputation by asserting a seventeen-year-old legal malpractice claim amounts to fraud against 3M. From this, it seeks to allege fraud against Martin and Martin Walton. No court in Texas or any other jurisdiction has ever found Martin committed fraud.

### 2.    3M Company Product Liability History

3M claims Martin and Martin Walton have a "documented history of pursuing fraudulent cases against 3M Company" without any evidence. 3M proffers a false narrative. The accurate facts must be presented.

3M Company, as manufacturer of disposable respirators, has been the subject of massive amounts of product liability litigation over the years relating to these respirators. In 2019, 3M Company reported on its product liability from respirators:

> As of March 31, 2019, the Company is a named defendant, with multiple co-defendants, in numerous lawsuits in various courts that purport to represent 2,335 individual claimants with actions pending at December 31, 2018. . . . The Company's current volume of new and pending matters is substantially lower than it experienced at the peak of filings in 2003.

*See,* Ex. 1, 3M Form 10-Q, April 26, 2019. 3M Company explained that in April 2018, a jury in Kentucky found 3M 8710 respirators failed to protect two coal miners from coal mine dust and awarded compensatory damages of approximately $2 million and punitive damages totaling $63 million. *Id.* 3M's report further explained the State of West Virginia's pursuit of a respirator liability action associated with health care costs incurred by coal miners in that state as a result of their use of 3M disposable respirators in mining.

In 2001, 3M Company reported that it had defended and resolved over 200,000 individual claimants alleging injuries to occupational dust exposures relating to respirators it manufactured. *See,* Ex. 2, 3M Form 10-Q, *p.* 45. 3M Company is also faced with product liability litigation relating to faulty ear plugs it manufactured and has approximately 250,000 claims pending against it in the earplug multi-district litigation court in Florida.

In response to lawsuits due to its defective products, 3M filed bankruptcy related to some of the earplug and respirator models it manufactures. In the present case, 3M's pleading demonstrates its willingness to attack and harass a well-respected lawyer. 3M's intimidation tactic attempts to cause a chilling effect to this litigation. 3M's attack on Martin seems designed to eliminate access to lawyers like Martin with experience in respirator liability, who are needed by genuine victims of occupational lung diseases.

Unfortunately, there are many victims of occupational disease due to 3M Company's faulty products. 3M Company's strategy throughout its Petition is to wrongfully make spurious accusations against Plaintiffs' lawyers prosecuting cases against them. This misconduct cannot be permitted.

### 3. 3M's Historical Misrepresentations Warrant Further Scrutiny

#### a. Martin's Litigation Conduct with 3M shows No Fraud or Conspiracy to Commit Fraud.

According to 3M's own records, over the past 37 years, Martin has represented approximately 222 individuals who have suffered from occupational lung diseases. *See,* Ex. 3, 3M Company, Table of Mike Martin Personal Injury claims. Out of those 222 cases, Martin settled 53 individual cases with 3M Company on behalf of victims who have suffered extraordinary lung injuries ranging from silicosis to progressive massive fibrosis resulting in lung transplantation. *Id.*

Martin negotiated good faith settlements with 3M Company for these individuals, battling serious occupational lung disease. *Id.*

Over this same period, Martin dismissed 169 cases against 3M. *Id.* Many cases that come to Martin are referred by other lawyers. Upon undertaking representation in these cases, dismissals may occur because a plaintiff did not wear the 3M respiratory product, or did not have sufficient medical evidence to support an injury, or may not have used the 3M product according to the respirator's usage instructions. Until now, 3M has not balked when Martin dismissed a case against it. As reflected by 3M's chart of cases, Martin has dismissed 3M from cases on a ratio of 3 to 1. 3M Company has been fully aware of this practice by Martin of prosecuting only legitimate cases, while dismissing 3M when the circumstances supported such an action.

Now when Martin moved to dismiss certain cases filed by a referring lawyer in Kentucky without prejudice as Kentucky law dictates, 3M objected to the dismissals though it had previously indicated it supported the dismissals. Until the present 3M never once alleged any fraudulent conduct related to any case filed by Martin and later dismissed. Nevertheless, it currently alleges Martin has a history of bringing fraudulent cases against it with no basis in fact.

In the context of over 30 years of litigation with Martin, 3M never once made any allegations, of any kind, against Martin. The numbers show Martin dismissed many cases against 3M all for valid reasons. In the totality of cases Martin has pursued against 3M, Martin has advocated fairness.

3M fails to disclose these facts to the Court. Exhibit 3, prepared by 3M, illustrates a pattern of fairness and candor to 3M Company, not fraud.

### b.    Clark Kirkland - 2006

To malign Martin and twist facts, 3M references a legal malpractice case filed in 2006 (17 years ago). 3M makes numerous misrepresentations relating to a case Martin handled for a man named Clark Kirkland. In 2006, Kirkland sued Martin for malpractice, claiming Martin let the statute of limitations expire on the case. What 3M fails to mention is that during the underlying case, Martin discovered that Kirkland lied about wearing respiratory protection in his work.

In the Kirkland case, Martin filed a pleading for product liability against 3M Company, alleging Kirkland used a 3M Company respirator while working in a quarry. During the case, Martin discovered earlier sworn testimony by Kirkland indicating that Kirkland did not use any respiratory protection while working in the quarry, making the allegations against 3M unfounded. Following the proper ethical standards, Martin dismissed 3M Company from the case.

In 2006, Kirkland asserted an unsuccessful malpractice action against Martin. Kirkland also unsuccessfully asserted a grievance against Martin. Martin's actions in the Kirkland case worked no unfairness against 3M, but, in fact, protected 3M. Moreover, Judge Jacks in her silica MDL opinion never found Martin committed fraud, as 3M improperly implies.

### c.    Robert Coene's Case

Continuing its false narrative, 3M states that a New York Magistrate, Marion Payson, "chastised" Martin for cavalier treatment of court orders. 3M fails to disclose to this Court the issue. Martin's firm inadvertently filed a document identified as "confidential" in the public electronic filing system when it should have been filed as "confidential." The local rules on confidential filing were both confusing and cumbersome. The filing mistake was corrected immediately. 3M later settled the Coene case.

4.        **3M's Account of the Hammond Litigation – the Kentucky Litigation.**

In May 2020, a Kentucky lawyer, Glenn Hammond, retained Martin, to litigate product liability cases he filed for approximately 65 cases coal miner plaintiffs.[4] This number was not unusual or extraordinary. As reported by 3M Company, case numbers have been as high as 200,000 suits. Tragically, a large number of coal miners in Kentucky used 3M disposable masks while mining. Hammond filed subsequent lawsuits for coal miners placing the Martin Walton firm on the pleadings, without an agreement between Hammond and Martin Walton for Martin Walton to prosecute those cases.

3M recites facts pertaining to Hammond's client meeting and interview process and filing of cases to which Martin cannot respond. Martin never participated in any potential client meetings with Hammond, though 3M alleges otherwise. Currently, Martin is withdrawing from cases filed by Hammond. By the time of this hearing, Martin Walton expects that it will no longer be affiliated with Hammond.

a.        **Martin Blows the Whistle**

3M Company repeatedly misstates facts. Martin discovered a document in a Kentucky case referred by Glenn Hammond and immediately reported it to the proper Court.  During a summary judgment proceeding involving the case of *Johnny Wilson v. 3M Company,* Kentucky statute of limitations case law allowed the Court to order the deposition of the contracting attorney, to determine statute of limitations. *See, 3M v. Engle,* 328 S.W.3d 184 (Ky 2010). Under the *Engle* decision, the Kentucky Supreme Court held that the statute of limitations on product liability may not begin to run until a plaintiff discovers the product defect after meetings with his lawyer. Therefore, for purposes of limitations, a lawyer may be deposed in Kentucky.

---

[4] Martin is also licensed in Kentucky.

During the summary judgment proceeding, the Kentucky Court entered an order denying a summary judgment filed by 3M Company based upon the statute of limitations. *See,* Exhibit 4, Order Denying Summary Judgment. However, the Court ordered the deposition of Glenn Hammond in the matter because Mr. Hammond had previously represented Mr. Wilson in an earlier matter involving a workers compensation fee dispute. Hammonds' position was that he was not representing the Wilsons in a dusk mask case in 2018 because he was only handling a fee dispute. Hammond signed an affidavit in support of his position.

3M Company deposed Hammond and then reasserted its motion for summary judgment based on limitations. On March 9, 2023, the Court granted the summary judgment finding that Glenn Hammond had made materially false statements to the Court regarding when he was first retained by the Wilsons on their dust mask case. *See,* Exhibit 5, Order Granting Summary Judgment.

After the second order, Martin traveled to Kentucky to draft a response to the order. In a meeting in Hammond's office, Martin discovered that Hammond had withheld a document relevant to when Hammond met with Mr. and Mrs. Wilson about pursuing a dust mask case. Martin discovered documented evidence that Hammond met with the Wilsons regarding a product liability case on May 10, 2018, two years before the time Hammond represented to the Court. Martin discovered a power of attorney and handwritten intake sheet not previously disclosed to him. Consequently, when Martin was hired to work on the Johnny Wilson case, the statute of limitations had already run.

However, Glenn Hammond attempted to cover up his malpractice and lied when he filed an affidavit arguing he was not representing Wilson in 2018 in a product liability case. While Hammond's affidavit was accurate because there was, in fact, a workers compensation fee dispute

involving the denial of over $200,000 in benefits to the Wilsons in 2018 and 2019, he concealed the fact that he had also been retained to pursue a product liability case. Additionally, he sanitized his file, sending Martin only documents which suggested that the dust mask case was signed up in 2020, withholding from Martin earlier documentation illustrating that Wilson had been to Hammond's office and signed a power of attorney for product liability in 2018. Hammond's motive was clear, he concealed evidence from Martin to hide his own malpractice.

### b.      Martin had not met Mr. Hammond until April 2020.

It is important to note that Martin did not know or have any professional relationship with Glenn Hammond until April 2020. Because Hammond had concealed critical facts relating to when he signed up Wilson, Martin prosecuted a case without knowing that the statute of limitations had expired.

Upon learning of this irregularity, Martin and his co-counsel, Johnny Givens[5], returned to Hammond's office in mid-March 2023 to investigate other files. During this investigation, Martin and Givens identified several other cases with similar problems, never disclosed to Martin or Givens. Because of this discovery, Martin filed a motion to stay the litigation until all documents in Hammond's files could be fully reviewed by Martin and Givens. *See,* Ex. 6, Plaintiffs Motion to Stay. The Kentucky Court immediately granted the motion to stay. *See,* Exhibit 6A, Court Order Granting Stay. The purpose of the motion to stay was to protect the Defendants from incurring any further expense until these files could be reviewed through the discovery process in Kentucky.

After attempting to further review the physical files on the premises of the Hammond law office, Martin and Givens were then denied access to the files. Consequently, Martin and Givens

---

[5] Givens is another lawyer nationally renowned for his expertise in respirator product liability litigation and was hired by Martin to assist in the project. He is licensed in Mississippi, Kentucky and West Virginia.

filed motions to withdraw from the Hammond cases and will no longer participate in any case with Hammond. Several orders have already been entered allowing Martin and Givens to withdraw.

### 5.     3M's Spurious "Scheme" Allegations.

The Rule 202 Petition alleges a "scheme" by Martin to file 850 claims against 3M. It makes a plethora of incorrect claims in its motion. The following discussion provides further correction to the many 3M's misstatements:

#### a.     3M's Contention Martin Admitted to Filing Frivolous Lawsuits is False.

The 3M Petition indicates that Glenn Hammond continued to file lawsuits against respirators companies and that Martin admitted in a written communication that he knew many of the claims were "frivolous."  This is a misstatement. What Martin said, in a communication to 3M's National Settlement Counsel, was that Hammond did not have authority to file the lawsuits using the Martin Walton firm name. Martin stated, after 3M's Counsel notified him of a lawsuit filed by Hammond, "Yes, he got an earful from me on Friday. I had no idea" in relation to another lawsuit filed without Martin's authorization. *See,* Ex. 7, Text Message between 3M attorney, and Martin. Martin has never stated the lawsuits were frivolous.

#### b.     3M's Contention that Martin Used High Numbers of Plaintiffs to Leverage High Settlement Values is False.

3M alleges that Martin engaged in a scheme to file large numbers of cases to increase litigation costs to 3M and force larger settlements. This allegation is false. Little or no work has been done on many of these lawsuits in Kentucky.

As reflected from the above settlement history with 3M Company, Martin has steadfastly refused to use high numbers of filed cases to increase the amount of money 3M would spend on defending cases. In fact, the approach has been the opposite. Over the past 30 years, Martin has

dismissed hundreds of cases against 3M when justified, after discovery clarified product usage or medical conditions.

By way of example, in Kentucky, the first group of cases filed, which Martin was handling, had already been the subject of multiple dismissals of 3M Company by Martin. In the first group of 53 filed cases in Kentucky, Martin has already dismissed 3M Company from sixteen cases for various reasons, as typical with past practice reflected by Exhibit 3. *See,* Exhibit 8, Chart of Dismissals. These reasons would include, 1) product nonuse, 2) product misuse or 3) absence of injury. Martin has identified three other cases targeted for dismissal but awaiting client authority. All of these dismissals are certainly known by 3M Company; yet 3M makes spurious accusations that Martin would use numbers of case to drive up settlement values. Martin has never conducted the prosecution of any case in this manner and was not doing so in Kentucky.

Martin has never settled cases with 3M where the Plaintiff did not consistently use a 3M product. Martin has never made a demand in a case for a client who did not use a 3M product. Martin was dismissing Plaintiffs when he learned that they did not use a 3M respirator, typically before the Plaintiff was ever deposed.

### c.    3M's Allegation that Martin had done no Pre-suit Investigation and or Fraudulently Filed a Claim is False and without Legal Foundation.

3M Company naively claims that Martin had performed no pre-suit investigation. However, because of the short period of limitations in Kentucky, and the inability to quickly obtain medical and work and disability records (including previously filed black lung claims), lawsuits are usually filed based upon the Plaintiff's representations. If those representations later prove to be incorrect, Martin, as he has done for 30 years, has promptly dismissed 3M Company.

3M's experts have conceded that coal miners suffer from three diseases after working in a coal mine: 1) chronic bronchitis, 2) COPD – chronic obstructive pulmonary disease and 3) coal workers pneumoconiosis. *See,* Ex. 9, Deposition of Dr. Scott Dotson. Thus, lawsuits may be filed for any one of these injuries, which are common among practically all coal miners.

The filing of a claim for occupational lung disease by a Plaintiff is not an act of fraud. As discussed herein, under law, there is immunity for lawyers from any allegation of fraud for filing claims on behalf of clients who in good faith *believe* they have a claim. This illustrates why Martin's later conduct in handling cases with 3M Company becomes so critical. Martin has never kept 3M in a case unnecessarily when it was not justified.

### d.    3M's Allegation that Martin has ever Represented Hammond is False.

3M claims that when Hammond filed his materially false statements in Kentucky Court he was being represented by Martin. That statement is false. Martin represented a client named Johnny Wilson, who was a post double lung transplant victim. In the context of that litigation, Hammond was deposed as a fact witness in the case. As was stated in the deposition of Mr. Hammond, upon questioning by Bryant Spann, with 3M Company:

```
          MR. SPANN:  Mr. Martin, let me
make sure I'm -- I'm square on one thing as we
get started.

          You're here on behalf of the
Wilsons.  You're not representing
Mr. Hammond?

          MR. MARTIN:  I am here on behalf
of the Wilsons.
```

*See,* Ex. 10, Hammond Deposition p. 5. Martin further explained that his role in the deposition would be only to protect the attorney client privilege, which belonged to the Wilsons, if any issues

arose. Thus, 3M's statement to this Court that Martin ever represented Hammond is incorrect. At
the deposition, Martin represented the Wilsons.

As described above, Mr. Hammond was found to have made a materially false statement
to the Court. However, Hammond is a witness. Hammond was not Martin's client. Martin was
protecting his client. Martin's clients had also filed affidavits confirming that, to the best of their
recollection, Hammond was representing them in a worker's compensation medical fee dispute.
Thus, Martin was not just relying upon the Hammond affidavit, but the testimony of his clients,
who had filed affidavits which confirmed Hammond's story. Likewise, independent records
obtained from the workers compensation carrier confirmed these medical fee disputes.

This discussion reveals Martin was a victim of Hammond's misrepresentation. Likewise,
the Wilsons were victims of Hammond's legal malpractice. When Martin discovered the issue, not
only did he disclose it to the Court, he moved to halt the litigation until an investigation could be
conducted. After getting zero cooperation from Hammond regarding this investigation, he has
withdrawn from representing any Hammond affiliated clients.

### e.    A Discussion of a Matthew Baldrige Case is Meaningless

3M spends a considerable amount of time discussing a companion case, filed in Kentucky,
relating to Matthew Baldridge. In accordance with Kentucky law, the Matthew Baldridge case was
dismissed by Martin, without prejudice, because Mr. Baldridge was negative for occupational
disease. Martin dismissed the case without prejudice as to refiling, in the event Baldridge might
be diagnosed in the future. *See,* KRCP § 41.01 (2). Martin's exit letter explained that because
Baldridge had three negative chest x-rays, and also lost his workers compensation claim, it would
be inappropriate to prosecute his case because he had no injury. *See,* Ex. 11, Baldridge Exit Letter.
However, Martin continued to represent Mr. Baldridge and kept him in a medical monitoring

program. In April of 2022, Martin sent Baldridge for another B-read x-ray to determine if he had any evidence of disease. *See,* Ex. 12, Baldridge B-Read.

The April 2022 x-ray was read by a radiologist, Brandon Crum, of Pikeville, a NIOSH certified B-reader. The NIOSH B read program is an x-ray medical surveillance program intended to detect evidence of coal workers pneumoconiosis. As NIOSH explains:

> Chest radiograph images of dust exposed workers are classified according to the International Labour Office (ILO) International Classification of Radiographs of Pneumoconioses, the most widely used standardized procedure to evaluate abnormalities. Data from these classifications is used by government programs and public health officials worldwide to characterize pneumoconiosis in affected populations. The NIOSH B Reader program undertakes to train and certify physicians in the ILO classification system.

*See,* NIOSH, B Read Certification Program, Chest Radiography, CDC.gov/niosh/ topics/chestradiography/default.html.

Exhibit 12 represents a B read for Baldridge and reflects that Baldridge received a grade of 0/1 on his B-read. The NIOSH Guidelines explaining B read grades reveals the meaning of a 0/1 x-ray grade as follows:

> The standard radiographs provide examples of appearances classifiable as subcategory 0/0. Subcategory 0/0 refers to radiographs where there are no small opacities or if a few are thought to be present, they are not sufficiently definite or numerous for category 1 to have been seriously considered as an alternative. Subcategory 0/1 is used for radiographs classified as category 0 after having seriously considered category 1 as an alternative.

*See, Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses,* ILO  p. 4. (2011), incorporated by reference into 42 C.F.R. §§ 37.50 & 37.51 (2023).

Therefore, Mr. Baldridge's x-ray reveals a B read of "zero" which is negative for lung disease. 3M Company makes the false assertion that Martin dismissed the Baldridge lawsuit

improvidently because he suffered from coal workers pneumoconiosis, when in fact, Martin independently confirmed that Baldridge does not have illness.

Incredibly, 3M, in direct violation of the attorney client privilege, contacted Matthew Baldridge to persuade him to admit he had a lung disease. This act of witness tampering is an attempt by 3M to harm Mr. Baldridge, as it blindly attempts to malign Martin. The objective evidence illustrates that Baldridge has no disease.

It remains unclear what relevance the Baldridge case has to anything related to this action. Apparently, 3M Company's theory is that Martin dismissed the Baldridge claim to hide the fact that Hammond was accepting dust mask cases for representation. It does not matter when Hammond began accepting or rejecting black lung cases. In Kentucky, what matters is when a client saw him for such a case and whether the client suffered from an occupational lung disease. Martin independently confirmed, through a complimentary x-ray monitoring program, that Baldridge has no disease. Without disease, there can be no injury and no limitations can run on a case. *See, e.g., Childs v. Haussecker,* 974 S.W.3d 31 (Tex. 1998) (plaintiffs' subjective belief of illness is insufficient to trigger limitations)

### f.     Johnny Wilson's Testimony is Wilson's Testimony, Not Martin's.

3M then attempts to claim Martin solicited false testimony from Johnny Wilson regarding when Mr. Wilson first contacted Glenn Hammond over a dust mask case. Wilson testified he believed that occurred in the fall of 2019. Martin did not know Wilson or Hammond in 2019. It is impossible that Martin played any role in the Wilson testimony, and he could not have told Wilson how to testify. 3M's allegation is fabricated.

Nevertheless, it is exactly these types of allegations which are the basis for the attorney immunity rule. If attorneys were held accountable for all witness testimony, nobody could practice law.

The 3M motion is filled with allegations that have no evidentiary basis.

> **g.    Martin's Attempted Dismissal of Cases Arose out of Rule 408 Settlement Negotiations.**

Finally, 3M makes an argument that Martin's attempted dismissals of approximately 15 cases represented an admission of filing unmeritorious claims. 3M again misstates the record. These dismissals arose out of early settlement discussions between Martin and 3M.

Prior to the filing of the motion in question, 3M's national settlement counsel, Michele Taylor, had entered good faith settlement discussions with Martin. As a result of those settlement discussions, Martin had agreed to begin narrowing the scope of claims to exclude COPD, bronchitis, asthma types of injuries on the condition that their dismissals be without prejudice.

On January 20, 2023, Plaintiffs filed this motion to dismiss certain plaintiffs and forwarded a courtesy copy to 3M's settlement counsel. *See,* Ex. 14, Email from Walton to Taylor, ("Hi Michele, I am sending you a courtesy copy of the attached motion and order we are filing today in C.A. No. 21-CI-807, *Mounts v. 3M Company, et al*). On February 1, 2023, the undersigned followed up with a text message to Ms. Taylor which stated as follows:

> "Two I gave you were filed. The large one wasn't. Partial dismissals of the large group has started. I filed 24 (I think) today. More to come as the week progresses."

*See,* Ex. 15, Text Messages between Martin, and Taylor. Ms. Taylor then responded:

> **"Yes, thanks Gage sent me a courtesy copy last night. Keep em coming!"**

*Id.* Ms. Taylor did not object to the motion or its form. 3M counsel encouraged the dismissals, which were part of good faith settlement discussions to narrow the scope of claims only to coal workers pneumoconiosis, not COPD or bronchitis. On February 2, 2023, 3M filed a motion objecting to this dismissal accusing the undersigned of unethical conduct in filing the motion to dismiss.

It appears 3M's intentionally "set up" the Plaintiffs' counsel, inducing them to file a dismissal based upon good faith settlement discussions, which are protected by Rule 408, so that 3M could then spuriously claim unethical conduct. 3M acts disingenuously particularly given it has not previously objected to dismissals without prejudice. Thus, these dismissals do not serve as an admission, but were a product of Rule 408 settlement discussions.

The evidentiary distinctions, as explained above, illustrate that 3M Company's Rule 202 petition is based entirely on a false narrative.

### E.    The 3M Motion is Moot

On April 10, 2023, the Kentucky Circuit Court did grant 3M's request to take discovery in the *Johnny Wilson v. 3M* matter. *See*, Ex.13, Court Order dated April 10, 2023. Allowing 3M to take a second deposition in Texas has no evidentiary or procedural basis. Because 3M can take Martin's deposition in the *Wilson* matter, this proceeding is moot.

### IV.
### MOTION FOR ATTORNEY'S FEES

Respondents Martin and Martin Walton should be awarded reasonable attorney's fees incurred in responding to 3M's unreasonably frivolous and improper petition seeking pre-suit discovery. 3M's inflammatory allegations indicate it brought this proceeding ONLY for the

purpose of harassing Martin and Martin Walton and wasting this Court's valuable time. *See*, TEX. R. CIV. P. 215.3.

Sanctions are warranted for frivolous or improper pleadings such as this Supplemental Verified Petition. *See* TEX. CIV. PRAC. & REM. CODE § 10.004; TEX. R. CIV. P. 13. A trial court's award of sanctions is reviewed under an abuse of discretion standard, and a trial court may properly resolve contested issues related to whether claims made in pleadings were, at the time they were filed, factually well-grounded and legally tenable. *Randolph v. Jackson Walker L.L.P.*, 29 S.W.3d 271, 278 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Although the Petition is a vehicle to obtain pre-suit discovery the inclusion of patently false and misleading statements in the petition warrants sanctions. *Bennett v. Zucker,* No. 05-19-01445-CV, 2021 LEXIS 6886, at *27-28 (Tex. App. – Dallas, August 20, 2021)(Rule 13 sanctions and award of attorneys' fees based on filing of frivolous and groundless Rule 202 Petition was not an abuse of discretion).

Accordingly, Martin and Martin Walton request this Court order 3M to pay their reasonable attorney's fees incurred in responding to 3M's petition.

WHEREFORE, PREMISES CONSIDERED, Martin and Martin Walton respectfully request that the Court deny the relief requested by 3M, award reasonable attorney's fees to Respondents, and grant such other relief to which Martin and Martin Walton are justly entitled.

Respectfully submitted,

**MILLER, SCAMARDI & CARRABBA, PC**

*/s/Diane F. Burgess*
David L. Miller
TBN: 14067300
Diane Burgess
TBN:  24036594
6525 Washington Avenue
Houston, Texas 77007
(713) 861-3595
(713) 861-3596 (facsimile)
dmiller@msc-lawyer.com
dburgess@msc-lawyer.com

**ATTORNEYS FOR RESPONDENTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served electronically or via US Mail on this 21st day of April 2023, upon all parties of record.

*/s/Diane F. Burgess*
Diane F. Burgess

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION**

| | |
|---|---|
| **3M Company** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **GLENN HAMMOND, MICHAEL B.** | ) |
| **MARTIN, and JOHN (a.k.a. "JOHNNY")** | ) |
| **GIVENS,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No.: 7:25-cv-00037-REW-CJS

**(PROPOSED) PLAINTIFF 3M COMPANY'S
FIRST SET OF REQUESTS FOR THE PRODUCTION OF
DOCUMENTS AND THINGS TO DEFENDANT GLENN HAMMOND**

Plaintiff 3M Company ("3M"), by and through its attorneys, and pursuant to Federal Rules of Civil Procedure 26 and 34, the Local Rules of the United States District Court for the Eastern District of Kentucky, and the Court's order granting 3M leave to serve immediately on Defendant Hammond a request for the production of documents and things (the "Order"), serves the following First Set of Requests for the Production of Documents and Things on Defendant Glenn Hammond in the above-captioned litigation. 3M requests that Hammond produce the following documents and things forthwith, pursuant to the Court's Order.

**REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS**

1.    The entire contents of any storage unit to which you have access or which is rented by you or the Glenn Martin Hammond Law Offices, PLLC or on your or the Glenn Martin Hammond Law Offices' behalf at the U Save Storage, LLC facility located at 616 Bypass Road, Pikeville, Kentucky, and any other storage unit that may contain evidence relevant to this action.

Dated: July ___, 2025

Respectfully submitted,

FULTZ MADDOX DICKENS PLC

/s/_____
Benjamin C. Fultz (KBA #84398)
Gregory Scott Gowen (KBA #85408)
Robert E. Ranney (KBA #100226)
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202-3116
(502) 588-2000
bfultz@fmdlegal.com
sgowen@fmdlegal.com
rranney@fmdlegal.com

Steve Grimes (Admitted *Pro Hac Vice*)
Whitney I. Adams (KBA #100826)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel.: (312) 558-5600
Fax: (312) 558-5700
sgrimes@winston.com
wiadams@winston.com

*Attorneys for 3M Company*

2

# Exhibit 3

**(PROPOSED) SUBPOENA ATTACHMENT A**

**REQUEST FOR THE PRODUCTION OF
<u>DOCUMENTS TO THE GLENN MARTIN HAMMOND LAW OFFICES, PLLC</u>**

     1.     Documents sufficient to identify any off-site storage location(s) that since January 1, 2022, has been rented or accessed by Glenn Hammond, the Glenn Martin Hammond Law Offices, PLLC, or anyone associated with or acting on their behalf.

# Exhibit 4

**(PROPOSED) SUBPOENA ATTACHMENT A**

**REQUEST FOR THE PRODUCTION OF DOCUMENTS TO U SAVE STORAGE, LLC**

1.    Documents sufficient to identify any storage unit in the U Save Storage facility located at 616 Bypass Road, Pikeville, Kentucky, that since January 1, 2022, has been rented or accessed by Glenn Hammond, the Glenn Martin Hammond Law Offices, PLLC, or anyone associated with or acting on their behalf.

2.    To the extent they exist, documents sufficient to identify who since January 1, 2022, has accessed any storage unit identified in response to the previous request, and the date(s) of such access.