IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION

**3M COMPANY,**

       **Plaintiff**,

**v.**

                                    Civil Action No: 7:25-cv-00037-REW-MAS

**GLENN M. HAMMOND,**
**MICHAEL B. MARTIN, and**
**JOHN (a.k.a. "JOHNNY") GIVENS**,

       **Defendants**.

## FIRST AMENDED COMPLAINT

1.    Plaintiff 3M Company brings this lawsuit against Glenn M. Hammond, Michael B. Martin, and John (a.k.a. Johnny) Givens for engaging in an unlawful scheme to swindle 3M through a series of coordinated, interrelated, and fraudulent activities within this State and jurisdiction and across state lines.

2.    Specifically, 3M seeks to vindicate its rights for having to defend itself against false and fraudulent lawsuits that Defendants—three attorneys from three different law firms in three different states—filed and prosecuted against 3M knowing them to be without merit. Indeed, after Defendant Hammond filed one lawsuit against 3M, Defendant Martin rhetorically asked in a text message why does Hammond keep filing claims when "so many are frivolous." Yet Martin shortly thereafter filed an appearance as counsel against 3M in that very same frivolous case.

3.    As described in detail below, Defendants banded together with others known and unknown to form an unlawful enterprise to cheat 3M, exploit coal miners, and burden the courts with cases that should have never been filed in the

first place. Defendants solicited coal miners to join cookie-cutter complaints claiming that 3M was to blame for the black lung disease and other injuries allegedly sustained in coal mines and coached them to lie about those allegations. Defendants filed complaints against 3M that were full of knowingly false statements about, for example, workers' use of 3M "dust masks" in coal mines and when workers first discovered they had become ill. Indeed, Defendant Hammond was already found by one court to have made materially false statements in a case against 3M.[1]

4.    Ultimately, Defendants amassed over 850 claims against 3M. They filed over half of those in a single state court over an 18-month period. The timing was intentional, designed to exert maximum pressure on 3M to settle the entire inventory of cases—including claims Defendants knew were fraudulent—at a huge sum. Many of these fraudulent claims are currently pending against 3M.

5.    Defendants took active steps to prevent the fraudulent cases from ever coming to light, such as by dismissing individual cases to prevent evidence of the scheme from being revealed in discovery, lying to their clients about why their claims had failed, and then stashing evidence of the fraud away in hidden locations. It was an elaborate shell game. Defendants would eventually file 22 complaints in six different counties and before six different judges in eastern Kentucky.

---

[1] The 3M products at issue in these actions are government certified and approved respirators; however, for the purposes of this application they will be referred to as "dust masks," the term widely used by coal miner plaintiffs and the lawyers who represent them.

6.     As a result of Defendants' scheme, 3M has spent and will continue to spend millions of dollars investigating and litigating fraudulent claims Defendants concocted and prosecuted for their personal gain. Defendants' scheme has also caused 3M to waste its time and money unwittingly negotiating settlement of fraudulent cases with Defendants.

## The Nature of this Action

7.     Defendants are attorneys who brought over 850 dust mask claims against 3M in Kentucky state courts, many of which Defendants filed and prosecuted knowing of, and in some cases with deliberate disregard to, the fraudulent nature of those claims. As explained below, in furtherance of a scheme to defraud 3M, Defendants formed and joined an unlawful enterprise, comprised of Defendants and others known and unknown, which among other things: solicited and conducted "intake" of potential claimants in a manner designed to encourage the filing of false claims; instructed and encouraged claimants to lie; knowingly filed and prosecuted fraudulent claims; submitted knowingly false discovery responses; and made false statements to courts, 3M, and their own clients in furtherance of the scheme.

8.     At its core, this action arises from the coordinated actions of Defendants, and others known and unknown, acting through and as part of an unlawful enterprise, for the purpose of deliberately and knowingly fabricating and prosecuting fraudulent claims against 3M as part of a scheme to drive up 3M's litigation costs and force larger and in some instances baseless settlements.

9.    Defendants made a concerted effort to conceal the scheme such that 3M did not discover or have reason to suspect the nature or extent of the fraud perpetrated against it until years after the enterprise was formed.

10.    Defendants, as described herein, violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Section 1961, *et seq.*, engaged in a conspiracy to violate RICO, in violation of 18 U.S.C. Section 1962(d), and engaged in common law fraud and civil conspiracy.

## The Parties

### I.    Glenn Hammond

11.    On information and belief, at all times relevant to this lawsuit, Glenn Hammond was a resident of Pike County, Kentucky and an attorney with a law office in Pike County, Kentucky. Hammond was admitted to the bar in Kentucky in 1996.[2] For over 20 years, Hammond's practice focused on personal injury, social security disability, workers' compensation, medical malpractice, wrongful death, and nursing home neglect cases.[3] On information and belief, neither Hammond nor anyone at his firm had experience representing clients in large, multi-plaintiff product liability litigation. The firm touts its "focus on personalized attention," stating "[n]o two cases are alike" and promising to "approach each client as

---

[2] *See* Glenn Martin Hammond attorney profile, Kentucky Bar Association, https://www.kybar.org/members/?id=32542569 (last visited June 11, 2025).
[3] *See* Glenn Hammond Law Office, Profile of Glenn Martin Hammond, https://glennhammondlawoffice.com/attorney-profile/ (last visited June 11, 2025).

4

individuals."[4] Hammond promotes himself as being the "Black Lung attorney" for anyone who wore a dust mask in a mine.[5]

12.    On March 9, 2023, Hammond was found by Judge Howard Keith Hall in Pike County Circuit Court to have made a "materially false" statement to that court in an attempt to avoid the statute of limitations running in a case he (and the other Defendants) prosecuted against 3M.[6] As described in more detail below, on March 24, 2023, in an effort to distance themselves from—and thus conceal the scheme from detection—the other Defendants admitted to Judge Hall that Hammond had engaged in fraud.

13.    Following this revelation, in August 2024, Hammond was sued by a different client for legal malpractice related to a dust mask case that he and the other Defendants prosecuted against 3M. The complaint alleges Hammond filed the claim outside the statute of limitations and subsequently forged intake records to conceal that fact from his client and 3M. The suit is still pending.[7]

14.    In October 2024, Hammond was sanctioned by the Supreme Court of Kentucky on charges of professional misconduct in yet another case that he and the other Defendants prosecuted against 3M. The underlying bar complaint was filed in December 2019 by the wife of a coal miner who hired Hammond. The complaint describes how Hammond ignored the client and (after he died) the

---

[4] *See id.*

[5] *See* Facebook, Glenn Martin Hammond Law Office, post from May 11, 2022, https://www.facebook.com/glennhammondlawoffice (last visited June 11, 2025) ("GMH Law is your Black Lung attorney.").

[6] *[Individual 74], et ux. v. 3M Company, et al.*, No. 22-CI-812 (Pike Cir. Ct.), Order Dismissing With Prejudice (Mar. 9, 2023).

[7] *See [Individual 3], et al. v. Hammond, et al.*, No. 24-CI-873 (Pike Cir. Ct), Complaint (Aug. 30, 2024).

client's wife for four years, allowed the statute of limitations on their claim to expire, and eventually lumped their untimely claim in with hundreds of others in a mass complaint filed in April 2021.[8]

15.    Hammond was previously sued for legal malpractice for allegedly failing to file suit within the statute of limitations. As part of his defense, Hammond claimed that the expiration date for the limitations period listed *in his own files* was wrong. The jury never reached the legal malpractice claim against Hammond.[9]

## II.    Michael Martin

16.    On information and belief, at all times relevant to this lawsuit Michael Martin was a resident of Friendswood, Texas, and a practicing lawyer in Texas. Although he resides and maintains a law office in Texas, Martin was admitted to the Kentucky bar in 2015.[10] Martin claims to have "represented hundreds of victims suffering from occupational lung diseases"[11] for more than 35 years and has "a specific speciality in respirator product liability."[12] Martin falsely

---

[8] *See In re: Glenn Hammond*, 2024-SC-0331-KB (Ky.). The bar complaint alleged the dust mask claim was filed in May 2020, but in fact it was not filed until April 2021.

[9] *See Hall, et al. v. Hammond*, No. 12-CI-925 (Pike Cir. Ct), Complaint (July 13, 2012); *id.*, Plaintiffs' Memorandum in Response to Defendants' Motion for Summary Judgment (June 26, 2015), Ex. Q (screenprint from Glenn Martin Hammond Law Office's Prevail software system); *id.*, Defendants' Reply Memorandum in Support of its Motion for Summary Judgment (June 26, 2015); *id.*, Trial Order and Judgment (July 24, 2015).

[10] *See* Michael Blair Martin attorney profile, Kentucky Bar Association, https://www.kybar.org/members/?id=37023114 (last visited June 11, 2025).

[11] *See* Martin Walton, Practice Areas: Product Liability, https://www.martinwaltonlaw.com/product-liability.html (last visited June 11, 2025).

[12] *See* Martin Walton, Attorneys: Mike Martin, https://www.martinwaltonlaw.com/attorneys.html (last visited June 11, 2025).

claims on his website that he "handles respirator litigation … on a case by case basis, only" and "has never grouped his clients in a single case."[13]

17.    Martin previously engaged in misconduct in cases he filed against 3M and—once caught—left his unwitting client to pick up the pieces.[14] That client then sued Martin for legal malpractice and related claims and obtained $150,000 in damages.[15]

## III.    Johnny Givens

18.    On information and belief, at all times relevant to this lawsuit, Johnny Givens was a resident of Mississippi and a practicing lawyer in Mississippi. In July 2019, Givens formed Givens Law Firm, PLLC, "with an emphasis on representing coal miners in Kentucky and West Virginia against the manufacturers of defective respirators." The firm's primary focus is on "representing clients who have been diagnosed with … black lung" and "pursu[ing] the manufacturers and suppliers of defective respirators and dust masks."[16] Although he resides and maintains a law office in Mississippi, Givens was admitted to the Kentucky bar in 2020.[17]

19.    Like Defendants Hammond and Martin, Givens, too, has a history of misconduct in pursuing bogus claims against 3M. In 2018, Givens filed claims against 3M (and other defendants), in Iberville Parish, Louisiana (instead of the

---

[13] *Id.*

[14] *See In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d 563, 642–44 (S.D. Tex. 2005).

[15] *Kirkland v. Martin*, No. 2006-56213 (Tex. Dist.), Final Judgment (Sept. 10, 2009); *see also Kirkland v. Martin*, 2012 WL 3930318, at *3 (S.D. Tex. Sept. 10, 2012).

[16] *See* https://www.givens-law.com/about (last visited June 11, 2025).

[17] *See* John Timothy Givens attorney profile, Kentucky Bar Association, https://www.kybar.org/members/?id=65155256 (last visited June 11, 2025).

nearby parish where 3M was resident) on behalf of a plaintiff who—contrary to venue allegations in the complaint—never worked in that parish. When 3M confronted Givens with evidence establishing the venue allegations were false, Givens filed a false affidavit on behalf of his client claiming for the first time in three years of litigation that his client had worked in that parish. Judge Alvin Batiste, Jr. did not credit the sham affidavit put forward by Givens and transferred the case to the proper venue.[18]

20.    Defendants Hammond, Martin, and Givens are "persons" as defined under 18 U.S.C. Section 1961(3).

21.    At all times relevant to this lawsuit, 3M is a corporation organized under the laws of Delaware with its principal place of business in Minnesota.

## Jurisdiction

22.    Under 28 U.S.C. Section 1331, this Court has original jurisdiction over this action because it arises under the Constitution, laws, or treaties of the United States, specifically, 18 U.S.C. Section 1964(c) and 18 U.S.C. Section 1962.

23.    Under 28 U.S.C. Section 1332, this Court also has original jurisdiction over this action because it is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

24.    Under 28 U.S.C. Section 1367(a), this Court has supplemental jurisdiction over the common law claims because they are so related to claims in

---

[18] *Carmouche vs. Shell Oil Company, et al.*, No. 78,185 (La. Dist. Ct.), Judgment Granting 3M Company's Exception of Improper Venue (Feb. 18, 2022).

the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

25.    The out-of-state Defendants are also subject to the Court's jurisdiction pursuant to Kentucky Revised Statute 454.210(2) as their numerous personal actions within the Commonwealth of Kentucky caused injury to 3M in Kentucky.

## Background of "Dust Mask" Lawsuits in Eastern Kentucky

26.    Over the last several decades, residents of eastern Kentucky have tragically experienced high rates of coal workers' pneumoconiosis (CWP), commonly referred to as black lung disease. Black lung disease is an all-too-common condition for individuals who worked in coal mines as many hard-working men and women in eastern Kentucky have done for generations.

27.    Current and former Kentucky coal workers have sought compensation for their injuries through various avenues, including federal and state workers' compensation claims, black lung benefits claims, Social Security Disability Insurance benefits claims, and personal injury lawsuits against the mine operators. Unfortunately, many coal workers were unable to obtain full or satisfactory relief from the mine operators who frequently went out of business or ceased operations.

28.    With avenues for seeking compensation from mine operators largely drying up and unsuccessful, in the last two decades, personal injury lawyers have attempted to reinvent these claims and find active pockets to compensate coal workers for their injuries. These plaintiff lawyers began filing lawsuits against companies like 3M that manufactured, sold, or distributed dust masks based on a

theory that the dust masks failed to protect workers from inhalation of coal dust which caused coal workers' black lung disease injuries.

29.    A major problem with this new incarnation of "dust mask" cases is that very few coal workers ever wore dust masks while working in the mines. Indeed, the Federal Coal Mine Health and Safety Act of 1969 instructed that dust masks were not to be used as a primary means of controlling dust exposure.[19] Rather, mine operators were required by law to ensure that exposure to dust in the mines was mitigated or eliminated through engineering controls, such as ventilation, wet face mining, and other protective measures. With these measures in place, mine operators actively encouraged coal workers not to wear dust masks on the (incorrect) theory that the air in the mines was safe to breath. Consistent with the federal mandate and workplace practices instilled by mine operators, very few coal workers wore protective dust masks in the mines throughout their careers. Historical survey data confirm that only a small percentage of workers— as low as 7.4%—wore dust masks while in a coal mine, and even then only intermittently.[20]

30.    Despite the paucity of evidence that coal workers wore dust masks in the mines, thousands of personal injury lawsuits have been filed in recent years

---

[19] Jennison, et al., *Self-reported use of respiratory protection among a cohort of underground bituminous coal miners*, Am. Indus. Hygiene Assoc. J., 57:2, 91 (Feb. 1991) (noting that the act "stipulates that [respirator or 'dust mask'] use *shall not be substituted* for environmental control measures that keep respirable dust levels within acceptable limits" (emphasis added)).

[20] *Respirator Usage in Private Sector Firms, 2001*, U.S. Department of Labor, Bureau of Labor Statistics, U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, National Institute for Occupational Safety and Health, September 2003, Table 7 (pp. 26-27). Accessed May 30, 2025: https://www.cdc.gov/niosh/docs/respsurv/pdfs/respsurv2001.pdf.

claiming that individual coal workers regularly or always wore such devices, that those devices were somehow faulty and caused or contributed to coal workers' black lung disease, and therefore the dust masks companies are liable for the coal workers' health conditions.

31.    Another problem with the recent incarnation of dust mask cases is that most coal workers discovered their black lung diagnoses many years, often decades, ago in connection with workers' compensation or other black lung litigation. As such, the recent swath of dust mask claims on behalf of these same coal workers presents significant statute of limitations challenges.

32.    While 3M has much to say about the lack of evidence underlying these mass claims, as well as the practices of certain lawyers who are exploiting vulnerable coal workers for their own personal enrichment, this case is not about the propriety of the mass of dust mask lawsuits brought against 3M (or other dust mask companies). Rather, this case is about a particular subset of those cases that 3M recently discovered were knowingly and fraudulently prosecuted by the Defendants, who aligned together and with others through an unlawful enterprise, for the purpose of furthering a massive, cross-state, scheme to defraud 3M.

## The Unlawful RICO Enterprise

33.    Defendants Hammond, Martin, and Givens were members of an enterprise, comprised of themselves and others known and unknown, as that term is defined in 18 U.S.C. Section 1961(4). The Hammond, Martin, Givens enterprise (hereafter "Enterprise") is an association in fact and was formed by Defendants no later than early 2020. On information and belief, at all times relevant to this lawsuit, each of the Defendants operated his separate, respective firm, and no

Defendant was or ever has been an officer or employee of any other Defendant's firm. The Enterprise, comprised of Defendants and others known and unknown, functioned as an ongoing association for the shared and common purpose of achieving the illegal objectives of the Enterprise, which objectives are discussed below. In seeking to achieve its objectives, the Enterprise engaged in a pattern of illegal activities, described below, which was conducted through and affected interstate commerce.

34.    Beginning in early 2020 and through today, Defendants, acting through the Enterprise, have collectively filed and prosecuted over 850 civil claims against 3M in Kentucky courts in at least 22 separate complaints containing nearly identical allegations, language, and structure and all filed (or later joined as counsel of record by filing an appearance) by each of the Defendants.

35.    Throughout the existence of the Enterprise, and in furtherance of the Enterprise, Defendants regularly caused communications to be sent interstate through the mail and wires to their clients, to 3M, and to others in furtherance of their scheme indicating that Defendants were working together to provide legal representation in connection with civil actions against 3M. The following is one example of such a communication:

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK



36.    Defendants also caused hundreds of filings to be made in Kentucky courts in which the signature line of such filings indicated that the Defendants were working together as part of the Enterprise.

37.    The Defendants each played important roles within the Enterprise in directing the conduct, operations, and management of the Enterprise. Defendant Hammond's duties in the Enterprise included the recruitment of clients and the filing of fraudulent claims against 3M. Defendant Martin's duties in the Enterprise included litigating those claims through discovery and trial against 3M and pressuring 3M to settle. Defendant Givens performed day-to-day duties of

managing and operating the Enterprise and was the work engine of the Enterprise who often assisted Defendants Hammond and Martin in executing each of their respective duties. For example, on information and belief, Givens often met with Enterprise clients, obtained information from clients to respond to discovery requests, and prepared clients for depositions. Givens also prepared and filed pleadings on behalf of Enterprise plaintiffs, and at times interacted with 3M counsel in furtherance of the Enterprise.

38.    Defendants entered into agreements with one another to share the profits of the Enterprise amongst themselves. In or around May 2020, Defendants Hammond and Martin entered into a referral agreement regarding dust mask claims, and in or around September 2020, Defendants Martin and Givens entered a "Joint Venture Agreement" to work as co-lead counsel on dust mask claims referred by Hammond.[21] Defendant Martin knew at the time he entered the referral agreement with Defendant Hammond that Hammond had no experience handling respirator or "dust mask" litigation and that the inventory of claims Hammond was referring to him included fraudulent claims.[22]

39.    The May 2020 referral agreement provided that any contingency fee earned on the dust mask cases would be split 2/3 to Martin Walton and 1/3 to the Glenn Martin Hammond Law Offices.[23] The Joint Venture Agreement between

---

[21] *See Randy Adams, et al. v. 3M Company, et al.*, No. 20-CI-382 (Pike Cir. Ct.), Apr. 10, 2023 Hr'g Tr., Pl.'s Ex. 1 (Martin retention agreement with Hammond) (hereafter, "May 5, 2020 Martin-Hammond Retention Agreement"); *see also id.*, Motion to Stay Hammond Law Offices Dust Mask Cases (March 24, 2023), ¶ 1, Ex. 1 (Affidavit of Mike Martin), ¶¶ 1, 4, Ex. 2 (Affidavit of Johnny Givens), ¶ 1.
[22] *See 3M Company v. Michael B. Martin, et al.*, No. 23-CV-488 (Galveston County, Tex.—10th Judicial Dist.), Martin Dep. 64:2-12, 102:11-23, 104:4-11, 104:23-105:3 (Feb. 24, 2025).
[23] *See* May 5, 2020 Martin-Hammond Retention Agreement .

Defendants Martin and Givens provided for further division of Martin Walton's portion of the contingency fee between their two respective firms.[24] On information and belief, Defendants never informed—let alone obtained written consent from—any dust mask client of this fee-splitting arrangement, in violation of the Kentucky Rules of Professional Conduct.[25]

40.    Defendants Martin and Givens travelled (from outside Kentucky) to, and used, Defendant Hammond's office space in Pike County, Kentucky "dozens" of times in furtherance of the scheme. Defendant Hammond also travelled to Texas to meet with Defendant Martin in furtherance of the scheme.[26]

41.    As described further below, when scrutiny threatened to expose the scheme, Defendant Martin counselled Defendant Hammond in litigation proceedings in an effort to conceal the scheme. And when that failed, Defendants Martin and Givens conspired amongst themselves to blame the self-admitted "fraud" on Defendant Hammond and to conceal their personal culpability in, and the existence of, the Enterprise scheme. Meanwhile, Hammond took steps to conceal critical evidence of the scheme in secret storage locations.

42.    Beginning in early 2020 and continuing to this day, the Enterprise has engaged in dozens, and on information and belief, hundreds, of acts of racketeering activity, including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and obstruction of justice (18 U.S.C. §§ 1503, 1512(c)), which actions are summarized and described more fully below. The racketeering acts

---

[24] Martin Dep. (Feb. 24, 2025), Ex. 4 (Joint Venture Agreement).

[25] *See* Ky. R. Sup. Ct. 3.130(1.5)(e) ("A division of a fee between lawyers who are not in the same firm may be made only if . . . the client agrees to the arrangement and the agreement is confirmed in writing. . . .).

[26] *See* Martin Dep. 79:7–80:7 (Feb. 24, 2025).

committed by the Enterprise were coordinated, regular, continuous, interrelated, and ongoing, as summarized and detailed below.

43.    The Enterprise has engaged in activities which affect interstate commerce for the purposes of 18 U.S.C. Section 1962(c). In particular, the Enterprise was engaged in and affected interstate commerce because Defendants Martin and Givens reside and hold offices outside of Kentucky (in Texas and Mississippi, respectively) and work with Defendant Hammond, a Kentucky lawyer, to solicit and represent clients in Kentucky, to pursue fraudulent claims against 3M, a Minnesota company.

## The Objectives of the Unlawful RICO Enterprise

44.    Defendants, working in concert with one another, have filed and prosecuted over 850 dust mask claims against 3M beginning in early 2020 and continuing to this day. Defendants understood and believed that the volume, or "inventory," of cases filed against a particular company (here 3M) by a particular attorney or group of attorneys has a positive (for the plaintiffs' lawyers) impact on the settlement value of each case in the lawyers' inventory.

45.    A core purpose of the Enterprise was to increase the inventory of cases Defendants filed against 3M to increase the amount of money 3M would have to spend defending these cases and the risk exposure 3M would assign to the case inventory, and thereby increase the pressure on 3M to settle cases brought by Defendants on financial terms more favorable to Defendants.

46.    Defendants' scheme included a concerted abuse of the court system in this District and elsewhere and was intended to, and did, increase the inventory of dust mask cases filed against 3M in an effort to drive more lucrative settlement

16

negotiations, which were intended to result in higher financial returns for Defendants. To obtain that end, Defendants schemed to include within their inventory a large number of entirely fraudulent claims.

47.    Defendants' goal in bringing and prosecuting these fraudulent claims was twofold: (1) if the fraud went undetected, Defendants stood to recoup a percentage of settlements or court awards for the fraudulent cases; and (2) they could use fraudulent claims as "bargaining chips" to be dismissed or resolved in settlement negotiations with 3M.

48.    A related purpose of the Enterprise was to intersperse knowingly fraudulent claims within an inventory of what Defendants perceived to be more colorable claims.[27] In doing so, Defendants sought to tax the heavily burdened state courts and slow down 3M's ability to fully vet, review, and adjudicate Defendants' inventory of claims. And while Defendants' cases slowly worked their way through the dockets, Defendants knew and understood that 3M would be forced to spend millions of dollars litigating those claims, thereby increasing the pressure on 3M to settle with Defendants. To further the scheme, Defendants sought, where possible, to de-prioritize fraudulent cases in hopes of settling stronger cases first and then obtaining favorable group settlements that included the fraudulent cases.

49.    While the core purpose of Defendants' scheme and the Enterprise was to defraud 3M and thereby enrich Defendants, 3M is not the only victim of the scheme. In ginning up claims to exert pressure on 3M, on information and belief,

---

[27] 3M disputes that any claims brought by the Defendants are meritorious, but there is a stark and important difference between meritless claims and knowingly fraudulent claims.

Defendants lied to, took advantage of, and manipulated the very coal workers that their lawsuits (and lawyer advertisements) proclaim to represent. Defendants used and discarded vulnerable coal workers like pawns in a chess game with the goal of enriching themselves. Defendants, for example, on information and belief, purposefully misinformed coal workers about the validity of their claims (including whether the claims were time barred), misinformed coal workers about when Defendants filed their claims, and when a coal worker's case came under scrutiny by 3M or the courts, misrepresented to coal workers the reason Defendants caused the case to be voluntarily dismissed. The actual purpose of Defendants' filing, shuffling, and voluntarily dismissing of claims was to enrich themselves, at the expense of their clients.

50.    It was a further goal of the Enterprise that Defendants would conceal the scheme from detection through various means, including but not limited to: making materially false statements to courts, Defendants' clients, and 3M to conceal activities of the Enterprise; on information and belief, bullying and intimidating individuals to comply with the scheme and firing employees that raised questions or concerns; dismissing or withdrawing from cases to avoid scrutiny; and attempting to conceal critical evidence from discovery in judicial proceedings.

### Defendants' Actions in Furtherance of Their Fraudulent Scheme

51.    Defendants engaged in a massive scheme intended to deprive 3M of money by means of false or fraudulent pretenses and representations. Defendants' scheme far exceeded the bounds of lawful, zealous advocacy. To the contrary, Defendants purposefully and unlawfully abused the court system by filing and

prosecuting claims they knew to be false and fraudulent in an effort to achieve the illicit goals of the Enterprise. The courts are just as much of a victim of Defendants' scheme as anyone.

52.    Defendants' scheme was pervasive—it included over 850 claims across at least 22 Enterprise complaints in proceedings before at least six different judges in six counties in Kentucky; it spanned across multiple states (Kentucky, Mississippi, and Texas); it was run by lawyers at multiple law firms who established and controlled the Enterprise; it included dozens (and on information and belief likely hundreds) of fraudulent statements made to 3M and others; and, it involved substantial in-court and out-of-court conduct intended to further the scheme. Defendants used radio, social media, and other interstate channels to solicit clients *en masse* and, in the case of Defendant Hammond, to falsely advertise services he personally had no experience or expertise providing.

## I.    False Statements

53.    Defendants made or caused to be made materially false statements in furtherance of their scheme. These statements can be categorized as follows: (1) false statements about the extent to which individual coal workers wore protective dust masks; (2) false statements about individual coal workers wearing 3M dust masks; (3) false statements about individual coal workers suffering from black lung disease; (4) false statements about the date upon which an individual coal worker first met with one of the Defendants (a relevant fact for statute of limitations purposes); (5) false statements about why Defendants voluntarily dismissed individual cases; and (6) false statements made to courts in an effort to

conceal the existence of the scheme. The materiality of each category of Defendants' false statements is explained below.

**A.    False statements about the extent to which individual coal workers wore protective dust masks**

54.    A foundational component of each claim brought by Defendants against 3M in their over 850 dust mask cases is that an individual coal worker wore a dust mask when he/she worked in the mines. As a crucial element of their scheme, and as discussed further below, Defendants caused false statements about individual worker's dust mask usage to be communicated to 3M.

**B.    False statements about individual coal miners wearing 3M dust masks**

55.    A foundational component of each claim brought by Defendants against 3M in their over 850 dust mask cases is that an individual coal worker wore a 3M dust masks, as opposed to a dust mask made by another manufacturer. As a crucial element of their scheme, and as discussed further below, Defendants caused false statements about individual worker's usage of 3M dust masks to be communicated to 3M.

**C.    False statements about individual coal miners suffering from black lung**

56.    A foundational component of each claim brought by Defendants against 3M in their over 850 dust mask cases is that an individual coal worker suffered from coal workers' pneumoconiosis (CWP), commonly known as black lung disease. As a crucial element of their scheme, and as discussed further below, Defendants caused false statements about individual worker's contraction of black lung disease to be communicated to 3M.

**D.    False statements about the dates on which individual coal miners met with Defendants**

57.    A foundational component of each claim brought by Defendants against 3M in their over 850 dust mask cases is that each claim was filed within one year after the plaintiff discovered—or in the exercise of reasonable diligence should have discovered—that that he suffered from black lung disease and that the black lung disease *may* have been caused by 3M's products. Under Kentucky law, a one-year statute of limitations applies to dust mask claims brought by Defendants against 3M. The date that a coal worker first met with an attorney to discuss potentially bringing a dust mask claim against 3M is often an important data point for determining the last possible date that the statute of limitations begins to run. For example, if a coal worker met with Defendants on January 1, 2020, to discuss suing 3M for their alleged black lung injuries, that coal worker must—*at the latest*—file his complaint by January 1, 2021, to satisfy the Kentucky statute of limitations. A crucial element of Defendants' scheme, as discussed further below, is that Defendants caused false statements to be made to 3M about the date on which individual coal workers met with Defendants about their claims. Defendant Martin has admitted under oath that a claim for which the lawyer knows the statute of limitations has run should not be prosecuted.[28]

**E.    False statements about voluntarily dismissals**

58.    Another core purpose of Defendants' scheme is to intersperse fraudulent claims within their inventory of dust mask claims. On occasion, to avoid scrutiny arising from discovery records, a coal worker's deposition

---

[28] *See* Martin Dep. 38:1-10 (Feb. 24, 2025).

testimony, or other means, Defendants caused certain claims to be voluntarily dismissed. In those instances, Defendants made false statements to 3M, the courts, and (on information and belief) to the coal workers they represented concerning the reasons for which Defendants sought dismissals. These false statements were crucial elements of Defendants' scheme in that they were intended to conceal the scheme.

**F.    False statements that they represented certain plaintiffs**

59.    As discussed below, Defendants Martin and Givens made false statements to the court and to 3M in filings, hearings, and other communications that they represented plaintiffs named in the dust mask complaint when in fact, on information and belief, Defendants Martin and Givens had no contract to represent the plaintiffs in the dust mask claims, and the plaintiffs had not otherwise consented to their representation. These false statements were crucial elements of the scheme in that they furthered Defendants' efforts to convince the court and 3M that the dust mask claims filed were filed in good faith and on behalf of informed clients.

**G.    False statements to conceal the scheme**

60.    As discussed below, on occasion, 3M or the courts were able to scratch the surface of Defendants' fraudulent actions in connection with individual cases pending in Kentucky courts. In those instances, described further below, Defendants Hammond, Martin, and Givens made false statements to the courts in an effort to conceal the existence of, and their participation in, the scheme.

## II.    Recruitment and Intake of Coal Workers

61.    On information and belief, and often in violation of ethical obligations governing lawyers, Defendant Hammond, or employees of Defendant Hammond at his direction, cold called individuals in eastern Kentucky and solicited them to come to his office for an "intake" regarding potentially bringing a dust mask lawsuit against 3M.

62.    On information and belief, at times, Defendant Hammond spoke with coal workers before the intake process and instructed these potential clients to make false statements about the extent of their dust mask usage, the absence of a beard during their career (which would impede their ability to wear a dust mask), their injuries, and the type of dust mask allegedly worn. Defendant Hammond informed potential clients that 3M had "deeper pockets" than other dust mask companies, paid more in settlements than other dust mask companies, and that 3M was "where the money is at." Defendant Hammond made these statements prior to, or incident to, the intake process in an effort to persuade and influence potential clients to make false statements in the intake process as part of Defendants' scheme to defraud 3M. At times, Defendant Hammond would solicit coal workers to his office for an intake meeting without informing them about the nature of the claim for which he was soliciting them.

63.    Defendants Hammond, Martin, and Givens did not vet the claims before filing (or prosecuting) them against 3M. Instead, Defendants Hammond, Martin, and Givens relied on employees that were not licensed to practice law and

had no experience in dust mask liability claims to conduct case intakes.[29] On information and belief, Defendant Hammond at times participated personally in intake meetings with potential clients and, during these meetings, Defendant Hammond guided potential clients to make false statements that would support Defendants' scheme to defraud 3M.

64. For example, on information and belief, Defendant Hammond caused, either personally or through individuals working at his direction, potential claimants to identify 3M masks and often showed claimants pictures of 3M dust masks to influence the claimants' statements. It was the civil equivalent of manufacturing a false eyewitness identification. As depicted below, Defendant Hammond had a 3M dust mask in his office which he caused to be shown to potential claimants to influence their identification of a 3M product:

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

---

[29] *See* Martin Dep. 145:6-15, 145:25-146:16 (Feb. 24, 2025); Martin Walton Dep. 23:12-14 (Feb. 25, 2024).



65.    The intake information collected by Defendant Hammond's staff, which at times, on information and belief, contained clearly disqualifying information about particular claims, was shared via electronic file transfer or email with Defendants Martin and Givens. Defendants Martin and Givens were aware of Defendant Hammond's process for conducting intakes and that

Hammond kept 3M masks in the office for his staff to show to clients during the interviews.[30]

66.    On information and belief, Defendant Hammond participated in, or caused others working at his direction to participate in, case intakes of dozens of coal workers, and during these intakes, caused paperwork to be filled out concerning these coal workers bringing dust mask lawsuits. For years, nothing was done with these files.

67.    For example, in related proceedings, Defendant Hammond caused to be filed an exhibit labelled "Hammond List of Original Clients," which listed hundreds of clients by name and "File Number." At least 14 clients on the list had File Numbers indicating they had retained Defendant Hammond's firm to file a dust mask claim on their behalf before 2019 and, therefore, more than one year before any dust mask claim was filed on behalf of any of Defendant Hammond's dust mask clients.[31]

68.    On information and belief, Defendant Hammond realized many of the claims for this early group of clients were time barred because the coal workers had met with Hammond's office outside of the statute of limitations period. Upon realizing the statute of limitations issues with these case files, Defendant Hammond instructed some of these clients to return to Hammond's office to fill out new paperwork. That new paperwork reflected a ***new*** case intake date in 2019

---

[30] *See* Martin Dep. 145:6-15, 145:25-146:16 (Feb. 24. 2025).
[31] *See [Individual 74] v. 3M Company, et al.*, No. 22-CI-812 (Pike Cir. Ct.), Proposed Order on Motion for Return and Production of Files (June 14, 2023), Ex. A ("Hammond List of Original Clients").

or early 2020 which Defendants then fraudulently relied upon in an effort to defeat statute of limitations issues.

### III.    False Statements in the Enterprise Complaints

69.    Between March 2020 and February 2023, Defendants filed 22 complaints alleging claims on behalf of more than 850 coal workers or their estates against 3M. Defendants filed these complaints in six counties in eastern Kentucky. Defendant Hammond caused these complaints to be drafted and knowingly caused fraudulent claims to be included in these complaints prior to fling them. Defendants Martin and Givens joined in these complaints knowing, or with reckless disregard for the fact, that they included fraudulent claims. For example:

70.    On or about March 17, 2020, Defendant Hammond caused the civil complaint 20-CI-382 styled *Randy Adams, et al. v. 3M Company, et al.* to be filed in the Pike County Circuit Court in Pike County, KY (hereafter "Enterprise Complaint #1") and served via certified mail on 3M on May 4, 2020. Enterprise Complaint #1 alleged claims on behalf of 53 coal workers or their estates. On May 19, 2020, Defendant Martin caused to be filed, and was granted, a notice of appearance to join Defendant Hammond as counsel of record in Enterprise Complaint #1 and caused to be filed that same day an amended Enterprise Complaint #1 with additional claims and additional named defendants. On August 19, 2020, Defendant Givens caused to be filed via electronic filing a Motion for Admission *Pro Hac Vice* seeking permission, which was granted, to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #1.  On or around February 7, 2022, Defendants Hammond, Martin, and Givens caused to be filed a second amended Enterprise Complaint #1.

27

71.     On April 14, 2021, Defendants Hammond and Martin caused the civil complaint 21-CI-322 styled *Brian Adams, et al. v. 3M Company, et al.* to be filed in the Pike County Circuit Court in Pike County, KY (hereafter "Enterprise Complaint #2") and served via certified mail on 3M on October 5, 2021. Enterprise Complaint #2 alleged claims on behalf of 248 coal workers and their spouses or their estates. On December 16, 2021, Defendant Givens filed a notice of appearance to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #2. On or around October 7, 2022, November 7, 2022, and February 3, 2023, Defendants Hammond, Martin, and Givens caused to be filed a first amended Enterprise Complaint #2, second amended Enterprise Complaint #2, and third amended Enterprise Complaint # 2, respectively.

72.     On August 3, 2021, Defendants Hammond and Martin caused the civil complaint 21-CI-646 styled *Kenneth Hamilton, et al. v. 3M Company, et al.* to be filed in the Pike County Circuit Court in Pike County, KY (hereafter "Enterprise Complaint #3") and served via certified mail on 3M on October 5, 2021. Enterprise Complaint #3 alleged claims on behalf of 26 coal workers and their spouses or their estates. On December 16, 2021, Defendant Givens filed a notice of appearance to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #3.

73.     On September 29, 2021, Defendants Hammond and Martin caused the civil complaint 21-CI-807 styled *Charles Mounts, et al. v. 3M Company, et al.* to be filed in the Pike County Circuit Court in Pike County, KY (hereafter "Enterprise Complaint #4") and served via certified mail on 3M on October 5, 2021. Enterprise Complaint #4 alleged claims on behalf of 196 coal workers and their

spouses or their estates. On December 16, 2021, Defendant Givens filed a notice of appearance to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #4. On or around October 25, 2022, and November 22, 2022, Defendants Hammond, Martin, and Givens caused to be filed a first amended Enterprise Complaint #4 and second amended Enterprise Complaint #4, respectively.

74.    On September 29, 2021, Defendants Hammond and Martin caused the civil complaint 21-CI-197 styled *Barm Combs, et al. v. 3M Company, et al.* to be filed in the Knott County Circuit Court in Knott County, KY (hereafter "Enterprise Complaint #5") and served via certified mail on 3M on October 5, 2021. Enterprise Complaint #5 alleged claims on behalf of 33 coal workers and their spouses or their estates. On December 16, 2021, Defendant Givens filed a notice of appearance to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #5.

75.    On September 29, 2021, Defendants Hammond and Martin caused the civil complaint 21-CI-204 styled *Jamie Banks, et al. v. 3M Company, et al.* to be filed in the Letcher County Circuit Court in Letcher County, KY (hereafter "Enterprise Complaint #6") and served via certified mail on 3M on October 5, 2021. Enterprise Complaint #6 alleged claims on behalf of 77 coal workers and their spouses or their estates. On December 16, 2021, Defendant Givens filed a notice of appearance to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #6, and on or around November 28, 2022, Defendants Martin, Hammond, and Givens caused to be filed the first amended Enterprise Complaint #6.

29

76.    On October 3, 2021, Defendants Hammond and Martin caused the civil complaint 21-CI-522 styled *Carter Yates, et al. v. 3M Company, et al.* to be filed in the Floyd County Circuit Court in Floyd County, KY (hereafter "Enterprise Complaint #7") and served via certified mail on 3M on October 7, 2021. Enterprise Complaint #7 alleged claims on behalf of 48 coal workers and their spouses or their estates. On December 16, 2021, Defendant Givens filed a notice of appearance to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #7.

77.    On March 23, 2022, Defendants Hammond, Martin, and Givens caused the civil complaint 22-CI-223 styled *Richard Stump, et al. v. 3M Company, et al.* to be filed in the Pike County Circuit Court in Pike County, KY (hereafter "Enterprise Complaint #8") and served via certified mail on 3M on March 29, 2022. Enterprise Complaint #8 alleged claims on behalf of 41 coal workers and their spouses or their estates.

78.    On March 23, 2022, Defendants Hammond, Martin, and Givens caused the civil complaint 22-CI-71 styled *Darrell Holbrook, et al. v. 3M Company, et al.* to be filed in the Letcher County Circuit Court in Letcher County, KY (hereafter "Enterprise Complaint #9") and served via certified mail on 3M on March 30, 2022. Enterprise Complaint #9 alleged claims on behalf of 41 coal workers and their spouses or their estates.

79.    On May 26, 2022, Defendants Hammond, Martin, and Givens caused the civil complaint 22-CI-425 styled *Stephen Gibson, et al. v. 3M Company, et al.* to be filed in the Pike County Circuit Court in Pike County, KY (hereafter "Enterprise Complaint #10") and served via certified mail on 3M on June 1, 2022.

30

Enterprise Complaint #10 alleged claims on behalf of 38 coal workers and their spouses or their estates.

80.     On June 17, 2022, Defendants Hammond, Martin, and Givens caused the civil complaint 22-CI-196 styled *Bryan Bailey v. 3M Company, et al.* to be filed in the Harlan County Circuit Court in Harlan County, KY (hereafter "Enterprise Complaint #11") and served via personal service on 3M on June 24, 2022. Enterprise Complaint #11 alleged claims on behalf of one coal worker.

81.     On November 10, 2022, Defendants Hammond, Martin, and Givens caused the civil complaint 22-CI-931 styled *Ermal Wolford, et al. v. 3M Company, et al.* to be filed in the Pike County Circuit Court in Pike County, KY (hereafter "Enterprise Complaint #12") and served via certified mail on 3M on November 18, 2022. Enterprise Complaint #12 alleged claims on behalf of five coal workers and their spouses or their estates. On or around December 7, 2022, Defendants Hammond, Martin, and Givens caused to be filed a first amended Enterprise Complaint # 12.

82.     On November 16, 2022, Defendants Hammond, Martin, and Givens caused the civil complaint 22-CI-165 styled *Keith Harris, et al. v. 3M Company, et al.* to be filed in the Martin County Circuit Court in Martin County, KY (hereafter "Enterprise Complaint #13") and served via certified mail on 3M on November 22, 2022. Enterprise Complaint #13 alleged claims on behalf of one coal worker and his spouse.

83.     November 16, 2022, Defendants Hammond, Martin, and Givens caused the civil complaint 22-CI-252 styled *Sonny Bates, et al. v. Mine Safety Appliances Company, LLC, et al.* to be filed in the Letcher County Circuit Court

31

in Letcher County, KY (hereafter "Enterprise Complaint #14") and served via certified mail on 3M on November 22, 2022. Enterprise Complaint #14 alleged claims on behalf of one coal worker and his spouse.

84.     On November 22, 2022, Defendants Hammond, Martin, and Givens caused the civil complaint 22-CI-960 styled *Carl Johnson, et al. v. Mine Safety Appliances Company, LLC, et al.* to be filed in the Pike County Circuit Court in Pike County, KY (hereafter "Enterprise Complaint #15") and served via certified mail on 3M on November 29, 2022. Enterprise Complaint #15 alleged claims on behalf of three coal workers and their spouses.

85.     December 22, 2022, Defendants Hammond, Martin, and Givens caused the civil complaint 22-CI-281 styled *Jimmy Morris v. American Optical Corporation, et al.* to be filed in the Letcher County Circuit Court in Letcher County, KY (hereafter "Enterprise Complaint #16") and served via certified mail on 3M on January 5, 2023. Enterprise Complaint #16 alleged claims on behalf of one coal worker.

86.     On January 2, 2023, Defendants Hammond, Martin, and Givens caused the civil complaint 23-CI-1 styled *Claude Mills, et al. v. 3M Company, et al.* to be filed in the Martin County Circuit Court in Martin County, KY (hereafter "Enterprise Complaint #17") and served via certified mail on 3M on January 6, 2023. Enterprise Complaint #17 alleged claims on behalf of 18 coal workers and their spouses.

87.     On January 4, 2023, Defendants Hammond, Martin, and Givens caused the civil complaint 23-CI-8 styled *Donald Mitchell, et al. v. 3M Company, et al.* to be filed in the Pike County Circuit Court in Pike County, KY (hereafter

32

"Enterprise Complaint #18") and served via certified mail on 3M on January 10, 2023. Enterprise Complaint #18 alleged claims on behalf of 24 coal workers and their spouses.

88.    On January 10, 2023, Defendants Hammond, Martin, and Givens caused the civil complaint 23-CI-13 styled *Randall Caudill, et al. v. 3M Company, et al.* to be filed in the Harlan County Circuit Court in Harlan County, KY (hereafter "Enterprise Complaint #19") and served via certified mail on 3M on January 12, 2023. Enterprise Complaint #19 alleged claims on behalf of eight coal workers and their spouses.

89.    On February 7, 2023, Defendants Hammond, Martin, and Givens caused the civil complaint 23-CI-65 styled *William Lafferty, et al. v. 3M Company, et al.* to be filed in the Floyd County Circuit Court in Floyd County, KY (hereafter "Enterprise Complaint #20") and served via certified mail on 3M on February 14, 2023. Enterprise Complaint #20 alleged claims on behalf of one coal worker and his spouse.

90.    On February 14, 2023, Defendants Hammond, Martin, and Givens caused the civil complaint 23-CI-36 styled *Lester Tackett v. 3M Company, et al.* to be filed in the Letcher County Circuit Court in Letcher County, KY (hereafter "Enterprise Complaint #21") and served via certified mail on 3M on February 22, 2023. Enterprise Complaint #21 alleged claims on behalf of one coal worker.

91.    On February 17, 2023, Defendants Hammond, Martin, and Givens caused the civil complaint 23-CI-40 styled *Jason Pratt, et al. v. 3M Company, et al.* to be filed in the Knott County Circuit Court in Knott County, KY (hereafter "Enterprise Complaint #22") and served via certified mail on 3M on February 23,

2023. Enterprise Complaint #22 alleged claims on behalf of one coal worker and his spouse.

### A. The Enterprise Complaints Contain Nearly Identical Fraudulent Allegations

92.    *False Statements of Claimed Injury.* In Enterprise Complaints filed and/or prosecuted by Defendants, Defendants sued 3M based on fraudulent allegations that each coal worker plaintiff "suffer[s] from occupational lung disease known as Coal Workers' Pneumoconiosis and/or Silicosis, commonly referred to as 'Black Lung', COPD and other injuries[.]'"

93.    As discussed above, Defendants have admitted in judicial filings that at least 43 of Defendants' clients did not suffer from black lung at the time Defendants filed an Enterprise Complaint stating otherwise.

94.    Despite Defendants alleging in the Enterprise Complaints that each of their clients suffered from black lung disease, throughout discovery to date, Defendants have failed to submit any evidence showing a black lung diagnosis for numerous claimants and 3M has obtained medical records from at least 12 coal workers named in Enterprise Complaint #1 alone demonstrating that those claimants did not suffer from black lung and/or did not suffer any lung injury whatsoever.

95.    Upon information and belief, in the case of Individual 1 (discussed below), a claimant in Enterprise Complaint #1, Individual 1 learned after the filing of Enterprise Complaint #1 that he did not suffer from black lung disease, despite Defendants having alleged that he did. Upon learning this information, Defendants allowed Individual 1's case to proceed, and it was only after Individual 1 personally made the decision to dismiss the case because he did not

feel ethically justified in pursuing a claim against 3M based on a false statement that it was dismissed. Defendants had no similar ethical constraints.

96. *False Claim of Mask Usage.* In each Enterprise Complaint filed and/or prosecuted by Defendants, Defendants sued 3M based on fraudulent allegations that each coal worker plaintiff "used" dust masks "to protect themselves from exposure to coal, rock, and sand dust while working as a coal mine employee."

97. As explained, historical data confirms that only a small fraction of coal workers used dust masks in mines. Moreover, on information and belief, based on the total volume of masks sold into the eastern Kentucky region during the relevant period alone, it would not be possible for every miner to have worn a dust mask, let alone to have worn a mask at all times while working in the mines. Yet, Defendants alleged in the Enterprise Complaints that 100% of the 850+ named plaintiffs wore a dust mask.

98. As discussed above, Defendants knew, at the time of filing, that these statements were false as to a number of claimants.

99. *False Identification of 3M Dust Mask.* In Enterprise Complaints filed and/or prosecuted by Defendants, Defendants sued 3M based on fraudulent allegations that each coal worker contracted black lung disease "despite wearing the respirators/dust masks manufactured and distributed by" 3M and other manufacturers.

100. Defendants later admitted that they filed such allegations against 3M even in instances where coal workers did not claim to have worn a 3M mask. In *Mounts, et al. v. 3M Company, et al.*, No. 21-CI-807 (Enterprise Complaint #4),

on March 14, 2023, Defendant caused an interstate electronic and/or mail filing to be served on 3M in a Pike County, Kentucky proceeding in which Defendants stated, "3M is also aware that if its product is not identified by an individual Plaintiff … the undersigned counsel moves to dismiss that Plaintiff's case, albeit typically without prejudice."[32] This interstate communication is an admission by Defendants that, as part of their scheme to defraud 3M, Defendants did not ensure prior to filing claims that a coal worker claimed to wear a 3M mask.

101.    To date, 3M is named as a defendant in every single one of the over 850 dust mask claims brought by Defendants as part of the Enterprise, despite the fact there were many suppliers of dust masks. And to date, Defendants have filed few to no dismissals of Enterprise claims on the grounds that a coal worker did not identify a 3M dust mask. To the contrary, 3M was sued in all of these cases as part of Defendants' scheme because Defendants believed that 3M is an easy target.

102.    *False Claims of Statute of Limitations Compliance.* In Enterprise Complaints filed and/or prosecuted by Defendants, Defendants sued 3M based on fraudulent allegations that each coal worker was "not aware more than one year prior to the filing of this Complaint and [was] not possessed of information from which they ought to have been aware of both the nature of their injuries and their causal connection to the defective dust masks manufactured, marketed and/or sold by [3M and others]."

103.    As one example, Defendant Hammond included a claim in Enterprise Complaint #1 in March 2020 on behalf of the estate of Individual 2 and falsely

---

[32] *Mounts, et al. v. 3M Company, et al.*, No. 21-CI-807 (Pike Cir. Ct.), Pls.' Resp. to 3M Company's Mot. to Sever (Mar. 14, 2023).

stated that Individual 2 was "not aware more than one year prior to the filing of this Complaint and [was] not possessed of information from which [he] ought to have been aware of both the nature of [his] injuries and their causal connection to the defective dust masks manufactured, marketed and/or sold by [3M and others]." This statement was intentionally false, as Defendant Hammond knew at the time (and Defendants Givens and Martin later came to learn upon reviewing the case file and joining Enterprise Complaint #1) that Defendant Hammond had met with Individual 2 about his "potential dust mask case" years earlier, in July 2016:

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK



104. Defendant Hammond included an identical false statement in Enterprise Complaint #1 in March 2020 on behalf of Individual 3. This statement was intentionally false, as Defendant Hammond knew at the time (and Defendants Givens and Martin later came to learn upon reviewing the case file and joining Enterprise Complaint #1) that Defendant Hammond had met with

Individual 3 and Individual 3 had completed a dust mask intake form *years* before March 2020, in July 2016.[33]

105.    For many other claimants, like Individual 2 and Individual 3, on information and belief, Defendants knew at the time of filing and/or joining as co-counsel to prosecute the Enterprise Complaints that the statute of limitations unquestionably barred the personal injury claims because the claimant had met with Defendant Hammond more than one year prior to Defendants filing the claims. For example, in April 2021, Defendants Hammond and Martin filed a dust mask claim on behalf of the spouse of Individual 4, executrix of the estate of Individual 4, in Enterprise Complaint #2. Defendant Hammond knew at the time the complaint was filed and, on information and belief, Defendants Martin and Givens knew or later came to learn upon reviewing the case file, that Defendant Hammond had met Individual 4 and his spouse about a potential dust mask claim *years* earlier in 2016. Indeed, Defendant Hammond's office met with Individual 4's spouse again in 2017 to execute the necessary paperwork to continue the case after Individual 4 died, and in October 2019 to discuss matters pertaining to her case, including potential statute of limitations issues—all well over one year before the claim was filed in April 2021.[34]

106.    Moreover, on March 17, 2022, Defendant Hammond caused to be emailed to Defendants Martin and Givens, Hammond's "Active Dust Mask Client" spreadsheet that included the date of intake for each individual that had hired Hammond to file a dust mask case on his behalf. This spreadsheet showed

---

[33] *See [Individual 3], et al. v. Hammond*, *et al.*, No. 24-CI-873 (Pike Cir. Ct), Complaint (Aug. 30, 2024).

[34] *See In re: Glenn Hammond*, 2024-SC-0331-KB (Ky.).

unequivocally that numerous clients had hired Hammond more than one year—and in some cases several years—before their claim was filed.[35] Defendants Martin and Givens used this file in the prosecution of the dust mask cases and, on information and belief, knew based on this file, and other information, that claims that had been and would be filed were barred by the statute of limitations yet continued to file and prosecute the claims.

107.    In an attempt to conceal this crucial fact, as discussed below, Defendant Hammond, aided and counselled by Defendant Martin, was found by Judge Hall (Pike County Court) to have perjured himself. Moreover, in an effort to conceal the scheme, on March 18, 2022, Defendant Hammond, counselled by Defendant Martin, falsely testified under oath that he did not even hear about dust mask lawsuits until sometime around February 2020, near the time he filed Enterprise Complaint #1, which statement was materially false.[36] On information and belief, Defendant Hammond had been actively working with dozens of potential clients on dust mask cases, including Individual 2, whose 2016 letter from Defendant Hammond is excerpted above, for many years prior to early 2020. Indeed, Hammond had been under investigation by the Kentucky Bar Association for his mishandling of these dust mask claims as early as December 2019.[37] Furthermore, at a hearing before Judge Hall on March 24, 2023, Defendant Martin **admitted in open court** that client files maintained by Defendant Hammond

---

[35] *See 3M Company v. Michael B. Martin, et al.*, No. 23-CV-488 (Galveston County, Tex.—10th Judicial Dist.), Respondent's Opposed Motion for Protection (July 2, 2024), Ex. I (Hammond Active Dust Mask Client spreadsheet) & Ex. J (MW Active Dust Mask Client spreadsheet).

[36] *See [Individual 74], et al. v. 3M Company, et al.*, No. 20-CI-382 (Pike Cir. Ct.), G. Hammond Dep. 125:9–126:11 (Mar. 18, 2022).

[37] *See In re: Glenn Hammond*, 2024-SC-0331-KB (Ky.).

contained "contingent fee contracts dating back as early as 2016" and "intake sheets dating back that early" for claimants included on the Enterprise Complaints.[38] And as explained above, Defendant Hammond would eventually cause to be filed a client list confirming that several clients retained his firm, and had their client files opened, before 2019 and as early as 2015 and 2016.

108.    In February 2025, Defendant Martin gave false deposition testimony in a further attempt to conceal the fact that he knew at the time he began prosecuting the dust mask claims that several plaintiffs had met with Hammond more than one year before their claim was filed. Martin conceded in his deposition that the fact several clients' intake dates on the "Active Dust Mask Client" spreadsheet received from Hammond occurred more than one year before their complaint was filed suggested a statute-of-limitations issue with those claims—so much so that he supposedly confronted Hammond about this. Martin testified that after talking to Hammond, he conducted his own investigation "to make sure that it made sense," and confirmed by looking at his files that each of these plaintiffs were previously represented by Hammond in a workers' compensation, black lung benefits, or other claim, and that the date of intake in the spreadsheet was from that previous claim. Martin testified that, conveniently, no documentation of that investigation exists.[39] Nor could it, because Martin's testimony was false. In fact, several of the plaintiffs whose intake dates predated the filing of their claim by more than one year were *never* represented by Hammond in a prior claim, including for example, Individual 5 and Individual 6. Martin's investigation—had

---

[38] *See Randy Adams, et al. v. 3M Company, et al.*, No. 20-CI-382 (Pike Cir. Ct), Hr'g Tr. (Mar. 24, 2023) at 19:22–20:1.
[39] *See* Martin Dep. 159:3-160:9 (Feb. 24, 2025).

he actually done it—would have revealed that. Indeed, later in the same deposition, Martin changed his story—claiming he had taken Hammond's word for it that each plaintiff had a previous claim with him and just "moved on."[40] The truth is, on information and belief, Martin knew based on the intake sheets he had received from Hammond that the statute of limitations had been blown on several plaintiffs' claims long before they were ever filed.

109.    Defendants also knew at the time of filing and/or joining the Enterprise Complaints that many coal workers on whose behalf claims had been brought by Defendants had died and had an administrator assigned to their estate more than two years prior to filing the Enterprise Complaints and therefore were unequivocally barred by the outermost limits of the statute of limitations. *See Salisbury v. Roth*, 2023 Ky. App. Unpub. LEXIS 10, at *7 (Ky. Ct. App. Jan. 6, 2023) ("In cases where the injured person dies, our Supreme Court has held that a cause of action accrues at the date of death because 'death is the injury that put appellants on notice to investigate.'" (quoting *McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 19 (Ky. 1990)); *Conner v. George W. Whitesides Co.*, 834 S.W.2d 652, 654 (Ky. 1992) ("[I]f a personal representative is appointed within one year of the date of death, he then is granted one year from the date of his appointment to file suit.") (quoting *Southeastern Ky. Baptist Hosp. v. Gaylor, Ky.*, 756 S.W.2d 467, 470 (1988)).

110.    In an effort to further the scheme of driving up inventory, on information and belief, Defendants filed knowingly time-barred claims on behalf

---

[40] *See* Martin Dep. 308:21-309:7 (Feb. 25, 2025).

of more than a dozen deceased individuals. The following fourteen are just some examples:

- Individual 7 passed away in May 2015, but Defendants did not bring his claim, in Enterprise Complaint #2, until April 2021.

- Individual 4 passed away in May 2017, but Defendants did not bring his claim, in Enterprise Complaint #2, until April 2021.

- Individual 9 passed away in January 2014, but Defendants did not bring his claim, in Enterprise Complaint #4, until September 2021.

- Individual 10 passed away in November 2009, but Defendants did not bring his claim, in Enterprise Complaint #4, until September 2021.

- Individual 11 passed away in October 2010, but Defendants did not bring his claim, in Enterprise Complaint #4, until September 2021.

- Individual 12 passed away in May 2014, but Defendants did not bring his claim, in Enterprise Complaint #4, until September 2021.

- Individual 13 passed away in October 2013, but Defendants did not bring his claim, in Enterprise Complaint #4, until September 2021.

- Individual 14 passed away in January 2010, but Defendants did not bring his claim, in Enterprise Complaint #4, until September 2021.

- Individual 15 passed away in June 2011, but Defendants did not bring his claim, in Enterprise Complaint #5, until September 2021.

- Individual 16 passed away in October 2012, but Defendants did not bring his claim, in Enterprise Complaint #6, until September 2021.

- Individual 17 passed away in December 2012, but Defendants did not bring his claim, in Enterprise Complaint #7, until October 2021.

- Individual 18 passed away in June 2011, but Defendants did not bring his claim, in Enterprise Complaint #7, until October 2021.

- Individual 19 passed away in May 2007, but Defendants did not bring his claim, in Enterprise Complaint #7, until October 2021.

- Individual 20 passed away in August 2000, but Defendants did not bring his claim, in Enterprise Complaint #8, until March 2022.

111. As a proximate and direct result of Defendants' fraudulent prosecution of claims of deceased coal workers outside of the statute of limitations

period, 3M spent considerable sums of money defending cases which 3M never would have expended had Defendants not engaged in the scheme.

**B. Defendants Acted with Fraudulent Intent in Filing and Joining the Enterprise Complaints**

112.    In filing fraudulent claims in the Enterprise Complaints, each Defendant acted at times with specific intent to defraud and with respect to Defendants Martin and Givens, at times, with recklessness toward false and misleading information.

113.    Defendant Martin has admitted under oath that he filed appearances in and prosecuted the complaints Defendant Hammond filed knowing they included cases that never should have been filed against 3M for various reasons, including because the plaintiff "didn't use a respirator at all manufactured by [3M]," the plaintiff "didn't use a respirator for a sufficient period of time to create direct causation," "the plaintiff [didn't] have coal worker's pneumoconiosis," "the statute had run," or there would be "evidence of product misuse, such as a beard or something like that."[41] Martin admitted further that Defendants also filed dust masks cases before conducting any investigation into whether allegations in the complaint were true—including key allegations that the plaintiff had used a dust mask, that the dust mask they used was manufactured by 3M, or that the plaintiff had black lung disease—knowing they would eventually dismiss those cases.[42] Martin admitted that when deciding whether to prosecute a case, Defendants considered only whether "a case is worth pursing economically or not"—their

---

[41] *See* Martin Dep. 17:22-18:16 (Feb. 24, 2025).
[42] *See* Martin Dep. 106:11-20, 111:24-112:21, 115:7-22, 117:21-24 (Feb. 24, 2025).

decision "ha[d] nothing to do with ethics" or whether the claim was valid.[43] Defendants would wait to dismiss the invalid cases when it was strategically beneficial for them to do so.

114.    For the earlier Enterprise Complaints, as discussed above, on information and belief, Defendant Hammond filed the claims knowing that they contained fraudulent representations. Defendant Hammond caused information about the earlier complaints, including case files for each individual claimant, to be shared via interstate electronic communications with Defendants Martin and Givens who joined the Enterprise Complaints as co-counsel with Defendant Hammond. Defendants Martin and Givens had an obligation to vet the claims before joining them. Moreover, Defendants Martin and Givens were on specific notice of Defendant Hammond's fraudulent conduct and yet they continued to prosecute the early Enterprise Complaints.

115.    For example, Defendant Martin reviewed Enterprise Complaint #1 in or around April 2020, before entering the referral agreement with Defendant Hammond or filing an appearance in the case. Defendant Martin admitted in a deposition in February 2025 that he knew "when [he] saw the lawsuit" that it included claims that should never have been filed against 3M.[44] He admitted further that in or around April or May 2020, he and his staff reviewed all intakes for the individuals named in Enterprise Complaint #1, and spoke to these individuals on the phone—all of which would have revealed that certain claims

---

[43] *See* Martin Dep. 109:20-111:1 (Feb. 24, 2025).
[44] *See* Martin Dep. 102:11-23, 104:4-11. 104:34-105:3 (Feb. 24, 2025).

were knowingly filed outside the statute of limitations.[45] Yet, he proceeded not only to file an appearance, but also to draft and file an amended Enterprise Complaint #1 on May 19, 2020. The amended complaint that Defendant Martin filed included the claims he knew had been fraudulently filed in the first instance and added new allegations that plaintiffs used specific 3M masks that Martin knew were false as to some plaintiffs.[46]

116.    In later Enterprise Complaints, Defendant Hammond shared case intake and claimant information via interstate electronic communications with Defendants Martins and Givens prior to, or just after, filing the Complaints. In many instances, on information and belief, Defendant Hammond knew that representations in the Enterprise Complaints were false because he encouraged or instructed the individual claimants to lie during the intake process. In other instances, Defendants Hammond, Martin, and Givens had actual knowledge of the falsity of the representations in the Enterprise Complaints because Defendants maintained contradictory information in the coal workers' case files, in the form of prior testimony, prior records, or intake forms that directly contradicted the misinformation alleged in the Enterprise Complaints. For example:

- Individual 74 is a plaintiff named in Enterprise Complaint #1. In or around May 10, 2018, Individual 74 went to Defendant Hammond's office to inquire about dust mask cases. A non-attorney employee in Defendant Hammond's office conducted an intake of Individual 74 to discuss bringing a dust mask case against 3M. Individual 74 signed a contingent fee agreement with

---

[45] *See* Martin Dep. 134:8-135:10, 137:3-20 (Feb. 24, 2025); Martin Walton Dep. 77:14-78:7 (Feb 25, 2025). In an attempt to conceal the fact that he knowingly prosecuted these fraudulent claims, Martin attempted to change his testimony later in the deposition, claiming he called these individuals but never asked them about their intake dates. Martin Walton Dep. 60:2-7, 60:13-23 (Feb 25, 2025). Nevertheless, Martin admits that he reviewed the intake files prior to filing an appearance and the amended complaint.

[46] *See* Martin Dep. 177:17-178:10 (Feb. 24, 2025).

Defendant Hammond relating to his claim against 3M that day. Defendant Hammond did not cause Individual 74's claim to be filed for another 22 months, in Enterprise Complaint #1, until March 17, 2020. And yet Enterprise Complaint #1 states that Individual 74 was "not aware more than one year prior to the filing of this Complaint [on March 17, 2020] and [was] not possessed of information from which [he] ought to have been aware of both the nature of the injuries and their causal connection to the defective dust masks manufactured" by 3M. On information and belief, Defendant Hammond knew this statement was false at the time of the filing and service of Enterprise Complaint #1, and Defendants Martin and Givens became aware of its falsity upon receiving the case files and joining Enterprise Complaint #1, because they knew Individual 74 hired Hammond to file a dust mask claim on his behalf more than one year prior to March 17, 2020.

- Individual 21 is a plaintiff named in Enterprise Complaint #1. Defendant Hammond represented Individual 21 in a workers' compensation claim filed against his former employer, a case in which Individual 21 was deposed on June 20, 2018. A transcript of the deposition is in Individual 21's's file maintained by Defendant Hammond. The transcript shows that as of June 2018, Individual 21 had already engaged Defendant Hammond to file a dust mask claim on his behalf and Individual 21, as of June 2018, believed that Defendant Hammond had already filed a dust mask complaint against 3M on his behalf. However, Defendant Hammond did not cause Individual 21's claim to be filed for another 21 months, in Enterprise Complaint #1, until March 2020. Yet Enterprise Complaint #1 states that Individual 21 was "not aware more than one year prior to the filing of this Complaint [on March 17, 2020] and [was] not possessed of information from which [he] ought to have been aware of both the nature of the injuries and their causal connection to the defective dust masks manufactured" by 3M. On information and belief, Defendant Hammond knew this statement was false at the time of the filing and service of Enterprise Complaint #1, and Defendants Givens and Martin became aware of its falsity upon receiving the case files and joining Enterprise Complaint #1, because they knew Individual 21 hired Defendant Hammond to file a dust mask claim more than one year prior to March 17, 2020. Indeed, Individual 21 told Defendant Martin in December 2021, while preparing for his deposition in his dust mask case, that he had hired Defendant Hammond to file a dust mask claim on his behalf in 2017.[47]

- Individual 21's father, Individual 6, is also a plaintiff named in Enterprise Complaint #1. In or around 2017, Individual 21 and Individual 6 went together to Defendant Hammond's office to inquire about dust mask cases. A non-attorney employee in Defendant Hammond's office conducted an intake of Individual 21 and Individual 6 to discuss bringing claims against

---

[47] See [Individual 74] v. 3M Company, et al., No. 22-CI-812 (Pike Cir. Ct.), Apr. 10, 2023 Hr'g Tr., Def. Ex. 1 (Statement of [Individual 21] (Apr. 7, 2023)) at ¶¶ 2-4.

3M. That same day, Individual 21 and Individual 6 engaged Defendant Hammond to file a claim on their behalf. Yet in March and May 2020, Defendants caused to be filed and/or joined Enterprise Complaint #1 and amended Enterprise Complaint #1, respectively, which states that all plaintiffs, including Individual 21 and Individual 6, "were not aware more than one year prior to the filing of this Complaint [on March 17, 2020] and were not possessed of information from which they ought to have been aware of both the nature of the injuries and their causal connection to the defective dust masks manufactured" by 3M. On information and belief, Defendants knew this statement was false at the time of their filing and joining of the Complaint because Defendant Hammond had caused the intake of dust mask related claims for Individual 21 and Individual 6 in 2017, more than one year prior to March 17, 2020.

- Individual 1 is a plaintiff named in Enterprise Complaint #1. In or around 2019, Individual 1 went to Defendant Hammond's office to inquire about his case. A non-attorney employee in Defendant Hammond's office conducted an intake of Individual 1 and completed an intake form with information provided by Individual 1 during the intake. On information and belief, during the intake, the employee asked Individual 1, among other things, whether he had been diagnosed with black lung disease, and Individual 1 told the employee that he had not. Notwithstanding Individual 1's lack of injury, in March and May of 2020, Defendants filed and/or joined Enterprise Complaint #1 and amended Enterprise Complaint #1, respectively, which states that all plaintiffs, including Individual 1, "suffer from an occupational lung disease known as Coal Workers' Pneumoconiosis and/or Silicosis, commonly referred to as 'Black Lung,' COPD and other injuries." On information and belief, Defendants knew this statement was false at the time of their filing and joinder of Enterprise Complaint #1 because they knew Individual 1 did not suffer from black lung disease.

117. In numerous other instances, as discussed below, during the pendency of the scheme, Defendants Martin and Givens specifically acknowledged information that directly contradicted allegations within the Enterprise Complaints but failed to withdraw from the Complaints. As discussed further below, only after fraud was proven by 3M and confirmed by a Pike County court did Defendants Martin and Givens acknowledge that the Enterprise Complaints contained false allegations and attempt to withdraw from certain (but not all) Complaints, claim innocence, and attempt to place all the blame for their scheme on Defendant Hammond.

**C. Defendants Prosecuted Cases on Behalf of Plaintiffs They Did Not
Represent**

118.    Defendants Martin and Givens filed appearances and prosecuted
cases on behalf of plaintiffs they did not represent and who had never granted
them authority to act on their behalf, in violation of Kentucky Rule of Civil
Procedure 11 and the Kentucky Rules of Professional Conduct.

119.    Defendant Martin admitted under oath that the May 2020 referral
agreement with Defendant Hammond covered only the cases filed on behalf of the
53 plaintiffs named in Enterprise Complaint #1, and that he has never had any
agreement—written or oral—with Defendant Hammond covering the other 800+
dust mask cases. Moreover, Defendant Martin admitted under oath that he *never*
obtained any plaintiff's direct written or oral consent to represent them in their
dust mask claim. He admitted also that he often did not even notify the dust mask
plaintiffs that he was working on their case with Mr. Hammond until *after* he had
filed an appearance.[48] Upon information and belief, Defendant Givens likewise
never had a written or oral agreement with any plaintiff to represent them in their
dust mask claims, and never had an agreement with Hammond to jointly
prosecute any of those claims.

120.    Thus, Defendants Martin and Givens made false statements to the
court and to 3M in the notices of appearance they filed to join the Enterprise
Complaints that they had an attorney-client relationship with the plaintiffs
named in that complaint and that they had the plaintiffs' authority to prosecute
the claims on their behalf. For example, Defendant Hammond filed Enterprise

---

[48] *See* Martin Dep. 69:18-70:4, 71:2-4 (Feb. 24, 2025).

Complaint #18 on January 4, 2023. Defendants Martin and Givens each filed a notice of appearance on January 30, 2023, and February 1, 2023, respectively, stating that they were appearing "on behalf of Plaintiffs" named in that complaint.[49] In fact, on information and belief, no plaintiff named in that complaint would have even known by January 30 or February 1 that Defendants Martin and Givens were working with Defendant Hammond, let alone provided their consent for Defendants Martin and Givens to represent them.

121.    *At best*, an attorney-client relationship arguably could have formed between Defendants Martin and Givens and the Enterprise Complaint plaintiffs once those individuals began participating with Martin and Givens in the prosecution of their cases—if ever.[50] Until then, Defendants Martin and Givens' representations to the court and to 3M that they had an attorney-client relationship with the dust mask plaintiffs and had authority to prosecute and negotiate settlement of the dust mask cases on their behalf were false, and made to deceive the court and 3M into believing these cases were filed in good faith and on behalf of informed clients.

## IV.    Defendants Caused False Statements to be Made and Communicated to 3M in Discovery

### A.    Falsified Authorization Forms

122.    Once retained to file a dust mask claim on behalf of a client, Defendants would typically send authorization forms to health care providers and

---

[49] *See Donald Mitchell, et al. v. 3M Company, et al.*, No. 23-CI-00008 (Pike Cir. Ct.), Notice of Appearance of Co-Counsel (Martin) (Jan. 30, 2023), and Entry of Appearance (Givens) (Feb. 1, 2023).

[50] *See Pete v. Anderson*, 413 S.W.3d 291, 296 (Ky. 2013) ("The contractual relationship between an attorney and client may be either expressed or implied by the conduct of the parties.") (internal citation omitted).

other third parties in an effort to obtain records relevant to the client's claim. These authorization forms must be signed by Defendants' clients to authorize the third party to provide Defendants with the requested records. These authorization forms typically require a date, the individual plaintiff's signature, and the signature of a witness or notary to the plaintiff's signing of the form. On information and belief, Defendants had clients complete the authorizations at the same time the clients executed a retention agreement, typically during the intake process.

123.    In many dust mask cases, like those filed by Defendants in the Enterprise Complaints, the statute of limitations can pose a central issue and thus authorizations forms can be critical to the defense because they often establish the earliest date at which a plaintiff first met with his/her lawyer about bringing a potential claim.

124.    During the discovery process, Defendants would provide opposing counsel executed authorizations for purposes of obtaining medical and other records relevant to the litigation. On information and belief, Defendant Hammond, or one of his employees at his direction, would manipulate the dates of the authorization forms signed by clients during their intake meeting to attempt to avoid statute of limitations defenses, like those raised by 3M, for example, by falsifying client signatures on authorization forms by copying/pasting the client signature from other documents within the case file, or some other method. On information and belief, Defendant Hammond, or an employee at his direction, would also leave blank the "date" line on authorization forms so that Hammond, or others acting at his direction, could fill in a date after the client signed an

authorization form. In prosecuting the claims contained in the Enterprise Complaints, Defendants Hammond, Givens, and Martin provided authorization forms to 3M in which the dates appeared to be in different color ink and/or handwriting than the client signature.

125.   As discussed further below, Defendant Martin helped Defendant Hammond draft and submit an affidavit, which attached a medical authorization that, on information and belief, contained an altered signature, in an effort to defeat summary judgment in the case of Individual 74. The judge presiding over that case ruled that the affidavit and the factual positions espoused by Defendants Martin and Hammond were "materially false".

### B.    False Interrogatory Responses

126.   As part of the discovery process in prosecuting the Enterprise Complaints against 3M, Defendants worked with their clients to provide answers to Interrogatories propounded by 3M regarding such things as mask usage, identification of 3M products, and statute of limitations issues. As co-lead counsel for the dust mask claims, Defendants Martin and Givens communicated with their clients about the Interrogatories and prepared responses to the Interrogatories on their clients' behalf, which as described below included material information Defendants knew to be false. Defendants—typically Defendant Martin—then provided the Interrogatory responses to 3M, often times with a "verification."

127.   For example, of the interrogatory responses provided by Defendants to 3M as of April 2023 in connection with Enterprise Complaint claims, many responses contain identical language written by or at the direction of Defendants regarding claimants purported use of dust masks. Specifically, in most of the

instances, Defendants caused each claimant to state that "he wore respiratory protection equipment at all times necessary in his work as a miner, including when he worked underground." At the time Defendants provided these interrogatory responses to 3M, Defendants knew they contained materially false statements intended to further Defendants scheme. The following are some examples:

- Individual 74 is a plaintiff named in Enterprise Complaint #1. Defendant Hammond previously represented Individual 74 in a workers' compensation claim against his former employer. In a 1993 Occupational Disease Exam contained in Defendants' file for the workers' compensation claim, the physician noted that Individual 74 "wears respirators only occasionally." On or around July 14, 2020, Defendants caused a mail/wire communication in the form of the service of [Individual 74]'s Answers and Objections to 3M Company's First Set of Interrogatories on 3M to state that Individual 74 "wore respiratory protection equipment at all times necessary in his work as a miner, including when he worked underground," and specifically stated that while working for "Big Buck Coal, 1979-1984, [Individual 74] wore a 3M 8710 at all times necessary in his mining work." On information and belief, Defendants knew this statement was false at the time of service of the Answers and Objections because records from Individual 74's workers' compensation claim showed that he wore a mask "only occasionally." Moreover, on information and belief, Big Buck Mines never issued 3M dust masks to its employees.

- Individual 23 is a plaintiff named in Enterprise Complaint #1. In or around April 2016, Individual 23 filed a workers' compensation claim against his former employer during which, in June 2016, Individual 23 responded to interrogatories. Individual 23's responses in his workers' compensation case, which, on information and belief, Defendants possessed in their case file, stated that Individual 23 wore a dust mask only "1/3 of time." Yet, on or around August 24, 2020, Defendants Hammond and Martin caused a mail/wire communication in the form of the service of [Individual 23]'s Answers and Objections to 3M Company's First Set of Interrogatories on 3M to state that Individual 23 "wore respiratory protection equipment at all times necessary in his work as a miner, including when he worked underground." On information and belief, Defendants knew this statement was false because records from Individual 23's workers' compensation claim show that he stated in response to a similar interrogatory in 2016 that only wore a dust mask one third of the time.

- Individual 24 is a plaintiff named in Enterprise Complaint #1. In or around May 2011, Individual 24 filed a workers' compensation claim against his former employer during which, in August 2011, Individual 24 responded to Interrogatories. On information and belief, Defendants possessed

Individual 24's interrogatory responses in their case files. In Individual 24's responses, in response to a question about whether he wore a dust mask while working, Individual 24 selected "No." Nonetheless, on or around August 19, 2020, Defendants Hammond and Martin caused a mail/wire communication in the form of the service of [Individual 24]'s Answers and Objections to 3M Company's First Set of Interrogatories on 3M to state that Individual 24 "wore respiratory protection equipment at all times necessary in his work as a miner, including when he worked underground." On information and belief, Defendants knew this statement was false at the time of service of the Answers and Objections because records from Individual 24's workers' compensation claim show that he stated in response to a similar interrogatory in 2011 that he did not wear a dust mask.

- Individual 25 is a plaintiff named in Enterprise Complaint #1. In or around May 1996, Individual 25 filed a workers' compensation claim against his former employer during which on or around August 6, 1996, and September 4, 1996, he underwent medical evaluations. On information and belief, Defendants possessed the medical reports relating to these evaluations in their case files. During the evaluations, Individual 25 reported first that he "wore respirators occasionally," and then that "never wore respiratory protection." On or around August 17, 2020, Defendants Hammond and Martin caused a mail/wire communication in the form of the service of [Individual 25]'s Answers and Objections to 3M Company's First Set of Interrogatories on 3M to state that Individual 25 "wore respiratory protection equipment at all times necessary in his work as a miner, including when he worked underground." On information and belief, Defendants knew this statement was false at the time of service of the Answers and Objections because records from Individual 25's workers' compensation claim show that he reported during his medical evaluations that he did not wear a dust mask.

## C.    False Deposition Testimony

128.    As part of the discovery process in prosecuting the Enterprise Complaints against 3M, Defendants prepared their clients to provide answers to depositions taken by 3M regarding such things as mask usage, identification of 3M products, and statute of limitations issues. On information and belief, during the process of preparing their clients for depositions, Defendants Givens and Martin at times instructed or guided their clients to provide false information. For example, on information and belief, during preparation for his deposition,

Individual 6 informed Defendant Givens that he wore his mask only 85-90% while working in the mine. Defendant Givens instructed Individual 6 to testify falsely during the deposition that he wore his mask 100% of the time, but Individual 6 refused to do so.

129.  As discussed above, in the case of Individual 74, Defendant Hammond drafted, with input from Defendant Martin, an affidavit which Judge Hall determined was "materially false." In that same case, a friend of Individual 74 (Individual 26)—who was also represented by Defendant Martin—testified under oath that he worked with Individual 74 at the Big Buck mine and that Individual 74 wore a 3M mask there every day. Records establish that the witness and Individual 74 never worked at Big Buck at the same time and that Big Buck never issued 3M masks. On information and belief, Defendant Martin likely had input into the false testimony of this witness in an effort to bolster Individual 74's claims. Similarly, on information and belief, at his own deposition, Individual 74 —represented by Defendant Martin—testified to a number of demonstrably false statements likely encouraged or directed by Defendants in furtherance of their scheme. For example, Individual 74 testified that he first realized that a dust mask may have played a role in causing him to contract black lung disease after hearing a radio advertisement in August 2019, that Defendant Hammond had never mentioned anything like that to him before August 2019, and that he went to Hammond's office to sign up for a dust mask claim in 2019. 3M later established that all these statements were false because Individual 74 retained Defendant Hammond to file a dust mask claim on his behalf in May 2018. Defendant Martin prepared Individual 74 for his deposition and elicited this false testimony to avoid

dismissal of Individual 74's claim on a statute of limitations basis in furtherance of Defendants' fraudulent scheme.

130.    In a different case prosecuted by Defendants Martin and Givens, Martin and Givens managed to conceal similar false deposition testimony all the way until trial, when three witnesses who had worked with the named plaintiff for several years each testified that, contrary to the deposition testimony in the case, he never saw the named plaintiff wear a dust mask while working underground. Those same witnesses testified that the previous day, Mr. Givens had come to their workplace after learning 3M planned to call them as witnesses at trial and attempted to talk to them about the testimony they would provide.[51] On information and belief, Defendants Martin and Givens used similar tactics to perpetuate false deposition testimony about mask usage and identification of 3M products in furtherance of the Enterprise's fraudulent scheme.

## V.    Defendants Attempted to Settle Large Batches of Cases

131.    As a central component of their scheme, Defendants—typically led by Defendant Martin—attempted to convince 3M to settle large batches of cases with Defendants. Defendants also used fraudulent cases as "bargaining chips" that they would dismiss or settle at nuisance value in exchange for 3M agreeing to settle larger more valuable claims with Defendants.

132.    Defendants Martin and Givens and others at their direction used interstate electronic communications with 3M to further aspects of the scheme related to settlement. For example, Defendants voluntarily dismissed 16 claims

---

[51] *See [Individual 79], et al. v. 3M Company*, No. 20-CI-01457 (Pike Cir. Ct.), Trial Tr., Feb. 14, 2024.

(out of 53 total) from Enterprise Complaint #1 that they knew to be fraudulent when filed and misled the court, 3M, and their clients about their true reason for doing so. For example, on December 19, 2022, Defendant Martin, in furtherance of the scheme, caused an employee of his law firm, Individual 81, to send an email to 3M's counsel, copying Defendants Givens and Martin, making settlement demands for 30 other claims from Enterprise Complaint #1 totalling tens of millions of dollars, and representing to 3M that the value of these settlements had increased due to the dismissals of other claims—all while knowing the 16 dismissed claims were in fact based on false allegations and worthless.

133.    Defendant Martin attempted to conceal this aspect of the scheme through false deposition testimony in February 2025. Specifically, Defendant Martin denied ever offering to seek dismissals of dust mask cases in the context of settlement negotiations.[52] As evidenced by the communications discussed above, that testimony is objectively false.

134.    This was not the first time Defendant Martin used dismissals of fraudulent cases as bargaining chips in settlement negotiations. Martin testified in his deposition that he had agreed to "some 78 dismissals in one sitting" with 3M settlement counsel for a different inventory of dust mask cases that he prosecuted with another attorney (not Hammond).[53]

---

[52] *See* Martin Dep. 310:17-311:4 (Feb. 24, 2025).
[53] *See* Martin Dep. 19:18-21 (Feb. 24, 2025).

VI.    **Defendants' Affirmative Steps to Conceal the Scheme**

A.    **Defendants caused the dismissal of sixteen fraudulent claims in effort to prevent discovery of the scheme.**

135.    Throughout the pendency of the scheme, Defendants jockeyed with 3M's counsel in an attempt to de-prioritize discovery and depositions being taken in cases in which Defendants were concerned that their fraud would be readily uncovered. Defendants sent, caused to be sent, or were knowledgeable that other Defendants would send the electronic communications in furtherance of the scheme. In numerous instances, Defendants caused the dismissal of claims as 3M pushed for dates to take depositions of claimants. Between July 2021 and December 2022, in furtherance of the scheme and to conceal the scheme, Defendants caused the dismissals of at least sixteen claims, many of which were fraudulent. As a proximate and direct result of Defendants' filing and prosecution of these claims, 3M spent considerable sums of money defending cases which 3M never would have expended if Defendants had not engaged in their scheme. For example:

- On July 16, 2021, Defendants Martin and Hammond caused an interstate mail and/or electronic communication to be transmitted to 3M and to the Pike County Circuit Court seeking to dismiss the claim of Individual 27 against 3M from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*).  In this filing, Defendants Martin and Hammond claimed that Individual 27 "no longer wishes to pursue a cause of action against Defendants." The court granted the motion in an order entered on July 23, 2021.

- On June 23, 2021, Defendants Martin and Hammond caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claim of Individual 28 against 3M from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin and Hammond claimed that Individual 28 "no longer wishes to pursue a cause of action against Defendants." The court granted the motion in an order entered on August 2, 2021.

- On August 24, 2021, Defendants Martin and Hammond caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claim of Individual 29 against 3M from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin and Hammond claimed that Individual 29 "no longer wishes to pursue a cause of action against Defendants." The court granted the motion in an order entered on August 27, 2021.

- On September 20, 2021, Defendants Martin, Hammond, and Givens caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claim of Individual 6 from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin, Hammond, and Givens falsely claimed that Individual 6 "no longer wishes to pursue a cause of action against Defendants." In fact, on information and belief, as Defendants knew, Individual 6 wanted to pursue his claim but agreed to dismiss it only because Defendant Givens convinced him, under false pretenses, that it *must* be dismissed. The court granted the motion in an order entered on October 1, 2021.

- On November 22, 2021, Defendants Martin and Hammond caused an interstate mail and/or electronic communication to be transmitted to 3M to dismiss the claim of Individual 30 against 3M from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin and Hammond claimed that Individual 30 "no longer wishes to pursue a cause of action against Defendants." The court granted the motion in an order entered on December 3, 2021.

- On January 13, 2022, Defendants Martin, Hammond, and Givens caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claim of Individual 23 from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin, Hammond, and Givens falsely claimed that Individual 23 "no longer wishes to pursue a cause of action against Defendants." In fact, on information and belief, as Defendants knew, Individual 23 wanted to pursue his claim but agreed to dismiss it only because Defendant Givens convinced him, under false pretenses, that it *must* be dismissed. The court granted the motion in an order entered on January 21, 2022.

- On January 13, 2022, Defendants Martin, Hammond, and Givens caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claims of Individual 21 and his spouse from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin, Hammond, and Givens falsely claimed that Individual 21 and his spouse wished to dismiss their claims because Individual 21 is "not presently diagnosed" with black lung disease. In fact, on information and belief, as Defendants knew, Individual 21 had been diagnosed with black lung disease in 2018, and Individual 21 and his spouse wanted to pursue their claim but agreed to dismiss it only because

Defendant Martin convinced them, under false pretenses, that it *must* be dismissed.[54]  The court granted the motion in an order entered on January 21, 2022.

- On April 22, 2022, Defendants Martin, Hammond, and Givens caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claim of Individual 22 from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin, Hammond, and Givens claimed that Individual 22 "no longer wishes to pursue a cause of action against Defendants." The court granted the motion in an order entered on April 29, 2022.

- On May 3, 2022, Defendants Martin, Hammond, and Givens caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claim of Individual 25 from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin, Hammond, and Givens falsely claimed that Individual 25 "no longer wishes to pursue a cause of action against Defendants." In fact, on information and belief, as Defendants knew, Individual 25 wanted to pursue his claim but agreed to dismiss it only because Defendant Martin convinced him, under false pretenses, that it *must* be dismissed.  The court granted the motion in an order entered on May 8, 2022.

- On May 13, 2022, Defendants Martin, Hammond, and Givens caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claim of Individual 31 in its entirety from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin, Hammond, and Givens claimed that Individual 31 "no longer wishes to pursue a cause of action against Defendants." The court granted the motion in an order entered on May 20, 2022.

- On June 7, 2022, Defendants Martin, Hammond, and Givens caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claim of the spouse of Individual 2, Executrix of the Estate of Individual 2, Deceased, from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin, Hammond, and Givens falsely claimed that the spouse of Individual 2 "no longer wishes to pursue a cause of action against Defendants." In fact, on information and belief, as Defendants knew, spouse of Individual 2 wanted to pursue the claim on behalf of her husband's estate but agreed to dismiss it only because Defendant Martin convinced her, under false pretenses, that it *must* be dismissed.  The court granted the motion in an order entered on June 10, 2022.

- On June 8, 2022, Defendants Martin, Hammond, and Givens caused an interstate mail and/or electronic communication to be transmitted to 3M

---

[54] *[Individual 74] v. 3M Company, et al.*, No. 22-CI-812 (Pike Cir. Ct.), Apr. 10, 2023 Hr'g Tr., Def. Ex. 1 (Statement of [Individual 21] (Apr. 7, 2023)) at ¶ 5.

seeking to dismiss the claim of Individual 32 from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin, Hammond, and Givens claimed that Individual 32 "no longer wishes to pursue a cause of action against Defendants." The court granted the motion in an order entered on June 24, 2022.

- On November 22, 2022, Defendants Martin, Hammond, and Givens caused an interstate mail and/or electronic communication to be transmitted to 3M seeking to dismiss the claim of Individual 33 against 3M from Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*). In this filing, Defendants Martin, Hammond, and Givens claimed that Individual 33 "no longer wishes to pursue a cause of action against Defendants." The court granted the motion in an order entered on December 2, 2022.

136. Defendants dismissed the above cases to prevent 3M from learning that Defendants had fraudulently filed claims, including many that were outside of the statute of limitations or were otherwise invalid. In many cases, prior to seeking dismissal, Defendants requested to cancel the deposition of the plaintiff at the last minute to prevent 3M from learning the same. For example:

- The deposition of Individual 27 by 3M was scheduled to occur on Tuesday, June 29, 2021. The week before the scheduled deposition, on Friday, June 18, 2021, Monday, June 21, 2021, and Tuesday, June 22, 2021, Defendants Martin and Givens caused a series of interstate electronic communications to be transmitted to 3M defense counsel, and on Tuesday, June 22, 2021, Defendant Givens sent an interstate electronic communication to 3M defense counsel and communicated with 3M counsel via interstate wire, requesting to cancel Individual 27's deposition. Defendants Martin and Givens caused to be filed on or around June 24, 2021, an interstate mail and/or electronic communication in the form of Defendant 3M Company's Notice to Cancel Deposition of [Individual 27]. Defendants dismissed Individual 27's claim on or around July 16, 2021.

- The deposition of Individual 6 by 3M was scheduled to occur on Thursday and Friday, September 16 and 17, 2021. On information and belief, in or around the week prior to the deposition, Defendant Givens visited Individual 6 at his home to prepare him for the upcoming deposition. On information and belief, during the preparation, Defendant Givens told Individual 6 that his claim must be dismissed because Individual 6 chewed tobacco in the mine. Thereafter, on or around Monday, September 13, 2021, Defendants Martin and Givens requested to cancel Individual 6's deposition and caused to be filed on September 13, 2021, an interstate mail and/or electronic communication in the form of Defendant 3M Company's Notice to

Cancel Deposition of [Individual 6]. Defendants dismissed Individual 6's claim on or around September 20, 2021.

- The deposition of Individual 23 by 3M was scheduled to occur on Thursday and Friday, October 14 and 15, 2021. On information and belief, in or around the week prior to the deposition, Defendant Givens called Individual 23 to tell him that his claim must be dismissed and the deposition would be cancelled. On information and belief, Defendant Givens told Individual 23 that his claim must be dismissed because Individual 23 had stated in his 2015 workers' compensation claim that he wore a mask only one third of the time, even though that information was available to Defendants prior to filing Individual 23's claims and serving responses to discovery on his behalf. Thereafter, on Saturday, October 9, 2021, Defendant Givens via interstate electronic communication to 3M defense counsel requested to cancel Individual 23's deposition and caused to be filed October 11, 2021, an interstate mail and/or electronic communication in the form of Defendant 3M Company's Notice to Cancel Deposition of [Individual 23]. Defendants then dismissed Individual 23's claim on or around January 13, 2021.

- The deposition of Individual 21 was scheduled to occur on Thursday and Friday, December 2 and 3, 2021. On information and belief, in or around the week prior to the scheduled deposition, Defendant Martin participated in a video call with Individual 21, while he was at Defendant Hammond's office, to prepare for the upcoming deposition. On information and belief, during the preparation, Defendant Martin told Individual 21 that his claim must be dismissed because he did not have sufficient evidence of black lung injury. Thereafter, on November 30, 2021, Defendant Martin via interstate electronic communication to 3M defense counsel requested to cancel Individual 21's deposition and caused to be filed that same day an interstate mail and/or electronic communication in the form of Defendant 3M Company's Notice to Cancel Deposition of [Individual 21]. Defendants then dismissed Individual 21's claim on or around January 13, 2021.

- The deposition of Individual 1 by 3M was scheduled to occur on Tuesday and Wednesday, April 5 and 6, 2022. Days before the scheduled deposition, on April 1, 2022, Defendant Givens notified 3M they intended to dismiss the claim of Individual 1. Thereafter, on or around Monday, April 4, 2022, Defendants requested to cancel the deposition and caused to be filed an interstate mail and/or electronic communication in the form of Defendant 3M Company's Notice to Cancel Deposition of [Individual 1]. Defendants then dismissed Individual 1's claim on or around April 14, 2022.

- The deposition of Individual 24 by 3M was scheduled to occur on Thursday and Friday, April 15 and 16, 2022. On information and belief, in or around the week prior to the deposition, Defendant Givens or Defendant Martin participated in a video call with Individual 24, while Individual 24 was at Defendant Hammond's office, to prepare for the upcoming deposition. On information and belief, Defendant Givens or Defendant Martin told

Individual 24 that his claim must be dismissed because Individual 24 had stated in his 2011 workers' compensation claim that he never wore a dust mask, despite that information having been available to Defendants prior to filing Individual 24's claim and serving responses to discovery on his behalf. The call lasted only a few minutes. Days before the scheduled deposition, on Monday April 11, 2022, Defendant Givens notified 3M they intended to dismiss the claim of Individual 24. On or around the same date, Defendants also requested to cancel the deposition and caused to be filed an interstate mail and/or electronic communication in the form of Defendant 3M Company's Notice to Cancel Deposition of [Individual 24]. Defendants dismissed Individual 24's claim on or around April 13, 2022.

- The deposition of Individual 22 by 3M was scheduled to occur on Thursday and Friday, November 11 and 12, 2021. Days before the scheduled deposition, on or around Saturday, November 6, 2021, Defendant Martin via interstate electronic communication to 3M defense counsel requested to cancel Individual 22's deposition and caused to be filed on November 10, 2021, an interstate mail and/or electronic communication in the form of Defendant 3M Company's Notice to Cancel Deposition of [Individual 22]. Defendants dismissed Individual 22's claim on or around April 22, 2022.

- The deposition of Individual 31 by 3M was scheduled to occur on Tuesday and Wednesday, September 14 and 15, 2021. The week before the scheduled deposition, on Thursday, September 9, 2021, Defendant Givens via interstate wire communication with 3M defense counsel requested to cancel Individual 31's deposition and caused to be filed that same day an interstate mail and/or electronic communication in the form of Defendant 3M Company's Notice to Cancel Deposition of [Individual 31]. Defendants did not re-schedule the deposition of Individual 31, and subsequently dismissed Individual 31's claim on or around May 13, 2022.

- The deposition of the Estate of Individual 2 by 3M was scheduled to occur on Friday, April 22, 2022. One day before the scheduled deposition, on Thursday, April 21, 2022, Defendant Givens via interstate electronic communication to 3M defense counsel requested to cancel the deposition of the Estate of Individual 2 and caused to be filed that same day an interstate mail and/or electronic communication in the form of Defendant 3M Company's Notice to Cancel Deposition of the Estate of [Individual 2]. Defendants did not re-schedule the deposition of the Estate of Individual 2, and subsequently dismissed the claim of the Estate of Individual 2 on or around June 7, 2022.

- The deposition of Individual 32 by 3M was scheduled to occur on Tuesday and Wednesday, November 16 and 17, 2021. The week before the scheduled deposition, on Friday, November 12, 2021, Defendant Givens via interstate electronic communication to 3M defense counsel requested to cancel Individual 32's deposition and caused to be filed that same day an interstate mail and/or electronic communication in the form of Defendant 3M

Company's Notice to Cancel Deposition of [Individual 32]. Defendants did not re-schedule the deposition of Individual 32, and subsequently dismissed the claim of Individual 32 on or around June 8, 2022.

137.   In numerous instances, including the examples of Individual 21 and Individual 6 and the Estate of Individual 2, Defendants misled their clients about the reason the cases were dismissed and never informed clients that Defendants were causing the claims to be dismissed to conceal Defendants' scheme. For example, on information and belief:

- In or around the week prior to the scheduled deposition of Individual 6, Defendant Givens visited Individual 6 at his home to prepare him for the upcoming deposition. During the preparation, Individual 6 informed Defendant Givens that he wore his mask only 85-90% of the time while working in the mine. Defendant Givens instructed Individual 6 to say falsely during the deposition that he wore his mask 100% of the time, but Individual 6 refused to do so. Defendant Givens also instructed Individual 6 to say he retained Defendant Hammond to file a dust mask claim on his behalf in 2019 despite knowing that Individual 6 in fact retained Defendant Hammond in 2017. Defendant Givens then called Defendant Martin and, following that phone call, told Individual 6 they would have to dismiss his claim. Defendant Givens misled Individual 6 about the reason for the dismissal, representing to Individual 6 that the claim must be dismissed because Individual 6 chewed tobacco in the mine. In fact, Defendants dismissed the claim to prevent 3M from learning that the claim was filed outside of the statute of limitations and that it was otherwise invalid because Individual 6 did not wear a mask at all times while working in the mine. Defendants never informed Individual 6 that his claim was invalid for these reasons.

- In or around the week prior to the deposition, Defendant Martin participated in a video call with Individual 21, while he was at Defendant Hammond's office, to prepare him for the upcoming deposition. During the preparation, Individual 21 told Defendant Martin that he had hired Defendant Hammond to file a dust mask claim on his behalf in 2017. During that same call, Defendant Martin told Individual 21 that his claim must be dismissed. Defendant Martin misled Individual 21 about the reason for the dismissal, representing that the claim must be dismissed because Individual 21 did not have sufficient evidence of black lung injury. However, Defendants knew that Individual 21 had been diagnosed with black lung in 2018 in the course of the workers' compensation claim in which he was represented by Defendant Hammond. In fact, Defendants dismissed the claim of Individual 21 to prevent 3M from learning that the claim was filed

outside of the statute of limitations. Defendants never informed Individual 21 that his claim was invalid for this reason.[55]

- As discussed above, Defendant Hammond's office met with Individual 2 in the summer of 2016 to discuss Individual 2 bringing a dust mask case against 3M. Individual 2 died in December 2018, after which time the administrator of his estate took over the handling a potential claim. Defendant Hammond then filed Individual 2's claim as part of Enterprise Complaint #1 in March 2020. In approximately late 2021 or early 2022, Defendant Martin called the spouse of Individual 2, the administrator of Individual 2's estate, and attempted to convince her to drop the case against 3M. Individual 2's spouse reluctantly agreed only after Defendant Martin browbeat her into doing so. On April 21, 2022, Defendant Givens caused a letter to be sent via the U.S. Mail to Individual 2's spouse containing false statements regarding the reason the case was dismissed. Defendants never informed Individual 2's spouse that Defendants wanted her to drop the claims because 3M was soon to discover that Defendant Hammond had waited *years* to file the claim and had only filed it after the limitations period passed as part of a scheme to defraud.

**B.    Defendants perpetuated perjurious testimony by Defendant Hammond and their client in Individual 74's case to avoid discovery of Individual 74's fraudulent claim and the overall scheme.**

138.   As discussed above, Defendant Hammond filed (and Defendants Givens and Martin joined) a claim on behalf of Individual 74 before Judge Hall in Pike County (No. 22-CI-812, severed from Enterprise Complaint #1). Defendants knew at the time of filing (and joining) Individual 74's claim that it was time barred.

139.   After much costly litigation, 3M ultimately moved for summary judgment on the grounds that Individual 74's claims were barred by the statute of limitations because Individual 74 had met with Defendant Hammond more than one year prior to Defendant Hammond filing his claims.

---

[55] *[Individual 74] v. 3M Company, et al.*, No. 22-CI-812 (Pike Cir. Ct.), Apr. 10, 2023 Hr'g Tr., Def. Ex. 1 (Statement of [Individual 21] (Apr. 7, 2023)).

140. In an effort to defeat 3M's summary judgment motion, on June 14, 2021, Defendants Martin, Givens, and Hammond caused to be filed an affidavit sworn to by Defendant Hammond ("the Hammond Affidavit") which stated that 3M was "factually incorrect" in asserting that Individual 74 had met with Defendant Hammond outside of the limitations period. The Hammond Affidavit contained pages of false testimony and numerous exhibits attempting to explain away conclusive evidence demonstrating that Hammond had begun working on Individual 74's dust mask case years before filing the complaint. The Hammond Affidavit claimed, for example, that Hammond had not begun working with Individual 74 on a dust mask case until February 3, 2020. Each Defendant knew at the time of the filing of the Hammond Affidavit that it was materially false.

141. Defendant Hammond, supported by Defendants Martin and Givens, attached a purported medical authorization form as an exhibit to the Hammond Affidavit that was clearly altered. In particular, the medical authorization form contained remnants of an original signature under the purported signature of a "witness" to the signing of the form. The form also showed blue ink for the date (1/3/2019) and witness signature but displayed a black facsimile copy of Individual 74's signature.



142.   On February 9, 2022, Judge Hall ordered Defendant Hammond to sit for a deposition to answer 3M's questions about the Hammond Affidavit. In furtherance of the scheme and in an effort to protect the Enterprise, Defendant Martin represented Defendant Hammond in the deposition during which Hammond made a number of materially false statements intended to prevent the scheme from being revealed.

143.   As discussed above, on March 18, 2022, Defendant Hammond testified that he had only begun working on dust mask cases in early 2020. Defendant Hammond made this materially false statement under oath to conceal the scheme and to prevent 3M from learning that Defendant Hammond had met with Individual 74 about his dust mask case outside of the statute of limitations.

144.   Defendants also withheld records from 3M in a further attempt to conceal the scheme. During the deposition, counsel for 3M asked Defendants Hammond and Martin whether they had produced all intake forms completed by

67

Individual 74 for any claim in which Hammond had represented him. Defendant Martin told 3M that only one intake form from February 2020 existed for Individual 74.[56] That statement was false. In or around the summer of 2021, Defendant Hammond had provided Defendant Martin an intake form for Individual 74 dated May 10, 2018.[57] Defendants intentionally withheld this form from 3M to prevent 3M from learning that Hammond had met with Individual 74 about a dust mask case in 2018.

145. Defendant Hammond's false statements in his affidavit and deposition were so palpable that Judge Hall wrote an opinion issued on March 9, 2023, concluding, "3M Company has conclusively shown that Mr. Hammond's Affidavit was materially false." Judge Hall granted summary judgment in favor of 3M and dismissed Individual 74's claims with prejudice.

146. Tellingly, notwithstanding the patent falsity of Hammond's affidavit, Defendant Martin **_perpetuated_** Hammond's lies in filings and statements to the court. Specifically, even **_after_** 3M had disproven Hammond's affidavit at Hammond's deposition and made a detailed presentation outlining the falsity of the Hammond affidavit (which Judge Hall later agreed with in his ruling), Martin represented that Hammond's affidavit was a "good, sound" and "spot on" affidavit, and that it was "overwhelming clear the Hammond affidavit is correct."[58] While the record was clear enough for Judge Hall to rule that 3M had

---

[56] *See* Hammond Dep. 152:17-20 (Mar. 18, 2022).
[57] *See* Martin Dep. 89:25-90:19, 120:8-24 (Feb. 24. 2025).
[58] *See Randy Adams, et al. v. 3M Company, et al.*, No. 20-CI-382 (Pike Cir. Ct), Hr'g Tr. (Feb. 21, 2023) at 14:24–15:1, 19:17–20, 22:25–23:2.

"conclusively shown that Mr. Hammond's Affidavit was materially false," Defendant Martin *continued* to back the lies to protect the scheme.

147.   This was not the first time Defendants Martin and Givens submitted a knowingly false affidavit from their co-counsel in furtherance of a fraudulent dust mask claim. On January 12, 2021, just six months before Defendants Martin, Givens, and Hammond submitted Hammond's false affidavit in Individual 74's case, Defendants Martin and Givens submitted a similar false affidavit in an attempt to defeat a statute of limitations defense in a dust mask case filed in Wayne County Circuit Court, West Virginia. In *[Individual 78] v. Mine Safety Appliances Company,* CC-50-2019-C-135 (Wayne Cir. Ct.), Defendants Martin and Givens represented plaintiff Individual 78 with local co-counsel Individual 82, the attorney who had represented Individual 78 in a federal black lung benefits case in 2016. In support of their opposition to defendants' motion for summary judgment, Defendants Martin and Givens submitted a false affidavit from Individual 82, in which Individual 82 stated under oath that "[p]rior to September 2019, [his] firm did not possess information regarding the manufacturers of respirators" or "the defective nature of the respirators used by [Individual 78]," and that "[w]hen [Individual 78] retained [his] firm for his federal black lung claim in 2016, [his] firm did not have any discussions with [Individual 78] about his respirator use" and "did not have any knowledge about his respiratory use or the respirators [sic] defective condition." These statements were false. In fact, other dust mask plaintiffs had testified in their depositions in dust mask claims that Individual 82 had represented them in their black lung benefits case and had referred them to counsel who filed their dust mask claim. On information and

belief, the next day, on January 13, 2021, defense counsel in Individual 78's case confronted Individual 78 about the false statements in his affidavit. That same day, Defendants Martin and Givens withdrew the false affidavit and the opposition to the motion for summary judgment to avoid any detection of their fraudulent filing—unlike in Individual 74's case, in which they had co-counsel (Defendant Hammond) willing, like them, to double down on the false affidavit and to perpetuate the lies through the court's ruling on summary judgment.

148.    As a proximate and direct result of Defendants' fraudulent filing and prosecution of Individual 74's case, 3M spent considerable sums of money defending a case which 3M never would have expended if Defendants had not engaged in their scheme.

> **C.    Defendant Martin admitted in text messages inadvertently sent to 3M counsel that he knew the claims asserted in Enterprise Complaints were frivolous yet continued to prosecute them.**

149.    In the context of Defendants attempting to negotiate *en masse* settlements with 3M, on January 17, 2023, at 11:01 am, Defendant Martin caused an interstate electronic text message to be sent to one of 3M's outside lawyers. Defendant Martin intended the text message to be sent to someone else and as such quickly attempted to retrieve the message when he realized it had been sent to 3M. In his errant message, Defendant Martin lamented that Defendant Hammond was "hurting our clients with real claims because ***so many are frivolous***" (emphasis added). Despite this internal frustration from one member of the Enterprise about another Enterprise member's sloppy work, Defendants Martin and Givens did not withdrew their names from any complaint filed by Defendant Hammond nor did they seek to dismiss any complaints at that time. To

the contrary, Defendant Martin and the other Defendants continued to prosecute Enterprise Complaints with full knowledge that many of the claims filed by the Defendants were in Defendant Martin's own words "frivolous."

150.    In June 2023, a Texas Court found—based on this text message and other evidence—that there was sufficient evidence a fraud had been perpetrated on 3M by Defendants Martin, Givens, and Hammond to authorize depositions and document discovery from Defendant Martin and his firm to investigate the extent of the fraudulent scheme. During the Texas proceedings, Defendant Martin admitted that this text message demonstrates that he did "not agree with the filings by co-counsel, Glenn Hammond," and did "not believe these filings by co-counsel, Glenn Hammond, rise to the level of injury needed to be a good claim."[59] Yet, Defendant Martin signed and caused to be filed a Notice of Appearance of Co-Counsel in Enterprise Complaint #18 two weeks after sending this text message and acknowledging the claims asserted in that and other complaints were "frivolous."

151.    During the deposition authorized by the Texas Court, Martin admitted again that the text message demonstrates he believed Hammond was "over-pleading" cases, and that the claims Hammond filed were "frivolous" according to "[his] standard of what [he] want[s] to prosecute."[60]

152.    Defendant Martin knows he is prohibited from prosecuting claims he knows to be frivolous. In fact, on July 27, 2009, during the trial for the malpractice suit filed against Defendant Martin (discussed above), Defendant Martin testified

---

[59] *See In re Michael B. Martin and Martin Walton Law Firm*, No. 01-23-483-CV (Tex. App.), Petition for Writ of Mandamus (June 30, 2023).
[60] *See* Martin Dep. 290:22, 291:13-14 (Feb. 25, 2025).

that his ethical responsibilities as an attorney expressly prohibit him from pursuing frivolous lawsuits:[61]

> [The rules of ethics] dictate[] that we [attorneys] are prohibited from pursuing or advancing a frivolous lawsuit, … preclude[] us from causing undue or unnecessary expense against defendants for a frivolous lawsuit[,] … [and] precludes me from offering facts before tribunal which are false.

153.    Defendant Martin knowingly and blatantly violated his ethical duties as an attorney by pursuing lawsuits that his January 17, 2023 text message demonstrates he knew were frivolous, causing undue expense to 3M and wasting the Kentucky courts' time and resources.

### D.    On January 27, 2023, Defendants caused the dismissal of 43 claims to impede discovery of the fraudulent scheme.

154.    As Defendants continued to push 3M to settle claims *en masse*, and at the same time that 3M began to conduct an overt investigation into Defendants' scheme, Defendants began to feel scrutiny regarding the large number of fraudulent claims in their inventory and also saw an opportunity to bargain away fraudulent claims in exchange for 3M agreeing to large group settlements. In furtherance of, and to conceal the existence of, the scheme:

- On or about January 27, 2023, Defendants caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Dismiss Certain Plaintiffs," in which transmission Defendants sought the dismissal of 9 fraudulent claims (Individual 34, Individual 35, Individual 36, Individual 37, Individual 38, Individual 39, the Estate of Individual 7, and the Estate of Individual 8) from Enterprise Complaint #2 (*Brian Adams, et al. v. 3M Company, et al.*);

- On or about January 27, 2023, Defendants caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Dismiss Certain Plaintiffs," in which transmission Defendants sought the dismissal of 7 fraudulent claims (Individual 40, Individual 41, Individual

---

[61] *See Kirkland v. Martin*, No. 2006-56213 (Tex. Dist.), Trial Tr. (July 28, 2009) at 207:11–19.

42, Individual 43, Individual 44, Individual 45, and Individual 46) from Enterprise Complaint #3 (*Kenneth Hamilton, et al. v. 3M Company, et al.*); and

- On or about January 30, 2023, Defendants caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Dismiss Certain Plaintiffs," in which transmission Defendants sought the dismissal of 27 fraudulent claims (Individual 47, Individual 48, Individual 49, Individual 50, Individual 51, Individual 52, Individual 53, Individual 54, Individual 55, Individual 56, Individual 57, Individual 58, Individual 59, Individual 60, Individual 61, Individual 62, Individual 63, Individual 64, Individual 65, Individual 66, the Estate of Individual 9, the Estate of Individual 10, the Estate of Individual 11, the Estate of Individual 12, the Estate of Individual 13, the Estate of Individual 4 and the Estate of Individual 77) from Enterprise Complaint #4 (*Charles Mounts, et al. v. 3M Company, et al.*).

155.   In seeking these dismissals, Defendants admitted to the respective courts that each of the 43 claimants had "no formal diagnosis of coal workers pneumoconiosis." Defendants made this admission despite having filed Enterprise Complaints on behalf of these same 43 claimants stating that they "suffer from occupational lung disease known as Coal Workers' Pneumoconiosis and/or Silicosis, commonly referred to as 'Black Lung.'"

156.   Notably, of the 43 claims that Defendants sought to dismiss, at least eleven related to claims brought on behalf of coal workers who had died before Defendants filed/joined suits on their behalf. And each of the deceased coal workers' claims had been filed/joined by Defendants at least one year before the Defendants sought dismissals. As such, Defendants' suggestion in their dismissal papers that they had somehow just learned of an issue with the claims is false. As Defendants' own admission establishes, these 43 claims were fraudulent at the time Defendants filed and joined them.

157.    In his deposition in February 2025, Defendant Martin admitted again that these 43 cases should never have been filed and "needed to be dismissed" because there was no valid claim against 3M.[62]

158.    Suspicious of Defendants' motives for seeking *without* prejudice dismissal of these 43 claims, on February 2, 2023, 3M filed a response opposing the motions to dismiss asking the respective courts to hold a hearing and require Defendants to provide a rationale for seeking dismissals. Specifically, 3M asked the Kentucky courts to order that:

> "[Defendants] should explain on the record before the Court why they alleged that these Plaintiffs (and those whose claims they now seek to dismiss in other cases) had been diagnosed with CWP or any other condition, when they admittedly weren't; and why counsel misrepresented that information and prosecuted these cases for nearly two years under false pretenses."

159.    On February 12, 2023, Defendant Givens requested that 3M withdraw its opposition to Defendants' without-prejudice-dismissal-motions and threatened that Defendants would "throw [one of 3M's attorney's] under the bus" and "go scorched earth" on 3M if Defendants' demand was not met.

160.    True to their threat to "go scorched earth," on February 15, 2023, Defendants caused a filing to be transmitted interstate electronically and/or via U.S. mail to 3M and others styled "Notice of Withdrawal of Certain Plaintiffs' Motions to Dismiss…" in each of the three cases: Enterprise Complaint #2 (*Brian Adams v. 3M*), Enterprise Complaint #3 (*Kenneth Hamilton v. 3M*), and Enterprise Complaint #4 (*Charles Mounts v. 3M*). Rather than have to explain their rationale for seeking dismissal of the 43 claims—which they could not do without revealing

---

[62] *See* Martin Dep. 275:4-9 (Feb. 25, 2025).

the fraud scheme—Defendants sought to withdraw their dismissal motions, which they had filed just two weeks earlier on the basis that the 43 coal workers did not have a valid claim against 3M because they did not actually have black lung. Defendants reversed course in an effort to render 3M's request to have a hearing on these issues "moot." With this reversal, Defendants decided to try to re-bury the fraudulent claims in their inventory rather than having to participate in a hearing that threatened to disclose Defendants' scheme.

161.    Defendants' statements in the January 27 and 30, 2023 dismissal requests and the February 15, 2023 withdrawals can only be understood in the context of Defendants' scheme. Defendants knew that they had fraudulently filed dozens of claims against 3M and there was increasing risk that the fraud underlying those claims would be revealed as 3M ramped up scrutiny of Defendants' inventory. In the hopes of avoiding that outcome and gaining some goodwill from 3M by shedding fraudulent claims as bargaining chips, Defendants moved to dismiss the claims. But when 3M attempted to shine light on the fraudulent claims by opposing the without-prejudice-dismissal-requests, Defendants chose to pull those fraudulent claims back into the inventory and hope they would remain buried in the masses.

162.    As a proximate and direct result of Defendants' filing and prosecution of these 43 claims, 3M spent considerable sums of money defending cases which 3M never would have expended if Defendants had not engaged in their scheme.

**E.    Between March 24, 2023, and April 5, 2023, Defendants Martin and Givens caused to be filed twelve virtually identical motions to stay claims in the Enterprise Complaints—each containing false statements—in an effort to conceal their personal involvement in the scheme.**

163.    As discussed above, on March 9, 2023, Judge Hall found that Defendant Hammond, with the assistance of Defendants Martin and Givens, filed a "materially false" affidavit in Individual 74's case and dismissed Individual 74's claim with prejudice. Even though Defendant Martin had told the court weeks earlier the affidavit was "good" and "sound," Defendants did not appeal that decision. Instead, Defendants Martin and Givens tried to pin the blame for Hammond's false statements solely on Defendant Hammond.

164.    On March 24, 2022, Defendant Martin *acknowledged that fraud had occurred in Individual 74's case and had likely occurred in other cases in which he was co-counsel*. Seeking to distance themselves from the unravelling scheme, Defendants Martin and Givens filed 12 virtually identical motions in Kentucky circuit courts seeking to stay over 700 hundred dust mask cases in which they are co-counsel with Hammond, on the basis that these claims were potentially fraudulent:

- On or about March 24, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 35 potentially fraudulent claims in Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*).

- On or about March 24, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 1 potentially fraudulent claim in *[Individual 3], et ux. V. 3M Company, et al.*, No. 22-CI-811 (severed from Enterprise Complaint #1).

- On or about March 24, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 248 potentially fraudulent claims in Enterprise Complaint #2 (*Brian Adams, et al. v. 3M Company, et al.*).

- On or about March 29, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 26 potentially fraudulent claims in Enterprise Complaint #3 (*Kenneth Hamilton, et al. v. 3M Company, et al.*).

- On or about March 29, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 196 potentially fraudulent claims in Enterprise Complaint #4 (*Charles Mounts, et al. v. 3M Company, et al.*).

- On or about March 29, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 41 potentially fraudulent claims in Enterprise Complaint #8 (*Richard Stump, et al. v. 3M Company, et al.*).

- On or about March 29, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 38 potentially fraudulent claims in Enterprise Complaint #10 (*Stephen Gibson, et al. v. 3M Company, et al.*).

- On or about March 29, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 17 potentially fraudulent claims in Enterprise Complaint #17 (*Claude Mills, et al. v. 3M Company, et al.*).

- On or about March 29, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 23 potentially fraudulent claims in Enterprise Complaint #18 (*Donald Mitchell, et al. v. 3M Company, et al.*).

- On or about March 29, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 8 potentially fraudulent claims in Enterprise Complaint #19 (*Randall Caudill, et al. v. 3M Company, et al.*).

- On or about April 3, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 48 potentially fraudulent claims in Enterprise Complaint #7 (*Carter Yates, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Stay Hammond Law Offices Dust Mask Cases" in which transmission Defendants Martin and Givens sought to stay 33 potentially fraudulent claims in Enterprise Complaint #5 (*Barm Combs, et al. v. 3M Company, et al.*).

165.    In each motion to stay, Defendants Martin and Givens made false statements to the court disclaiming knowledge of the fraudulent scheme despite both having participated in the scheme for years. As he had done before, recognizing that the fraud had been discovered, Defendant Martin (now with Defendant Givens) "succumbed to the urge to torpedo" someone else—this time, not only his client, but also his co-counsel.[63]

166.    Specifically, in their motions to stay, Defendants Martin and Givens claimed that during a visit to Hammond's firm on March 16, 2023, they "discovered documents that neither Mr. Martin nor Mr. Givens had previously seen" that "confirmed that the Hammond affidavit [filed in Individual 74's case] was materially false." Defendants Martin and Givens claimed further that "[p]rior to this discovery, neither Mr. Martin nor Mr. Givens were aware of a paper file for

---

[63] *See In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d 563, 642–44 (S.D. Tex. 2005).

[Individual 74]" and upon further inquiry, discovered for the first time a room in Defendant Hammond's office containing hard copy files pertaining to other dust mask claims, which included individual client intakes and contingency contracts. They claimed that before then, they were unaware any such paper files existed. Defendants Martin and Givens claimed that this "created a concern" for them and it soon became apparent they could not review all the files because there were *so many* containing potentially damning evidence.[64]

167.    Defendants Martin and Givens stated that they expect these files might show that other Kentucky cases filed and prosecuted by Defendants Martin, Givens, and Hammond are fraudulent:

> Because of the ***disturbing facts*** discovered in [Individual 74's] case, the undersigned Plaintiffs' counsel move to stay this litigation. Mr. Martin and Mr. Givens believe in good faith that ***material information relating to the statute of limitations may have been concealed*** by Hammond in other cases.[65]

168.    At a hearing before Judge Hall on March 24, 2023, Defendants Martin and Givens confirmed that other cases had been fraudulently filed outside the statute of limitations. Specifically, Defendant Martin told the court that "limitations have likely expired on a number of cases" and that he and Defendant Givens had identified "other clients who … had statute of limitations blown on their case." Defendant Martin also represented to Judge Hall that "this ha[d] not happened to [him] in the history of [his] practice in law"—despite the fact that, as discussed above, Defendant Martin was previously found liable for misconduct

---

[64] *See, e.g.*, *Randy Adams, et al. v. 3M Company, et al.*, No. 20-CI-382 (Pike Cir. Ct.), Motion to Stay Hammond Law Offices Dust Mask Cases (March 24, 2023), ¶¶ 2–7.
[65] *Id.* ¶ 10 (emphasis added).

related to the filing of a claim he knew at the time of filing was barred by the statute of limitations.[66]

169.    Defendants Martin's and Givens' claim that they were unaware of Hammond's fraud before March 2023 is yet another false statement intended to cover up their scheme. As discussed above, Defendants' former clients contradict this statement. So too does evidence in Martin and Givens' own files which demonstrate that Defendant Martin and Givens were aware of, and participated in, the fraud years earlier.

170.    As discussed above, Defendants Martin and Givens had in their possession Defendant Hammond's "Active Dust Mask Client" spreadsheet, which listed the intake dates for all dust mask clients and showed that several clients hired Defendant Hammond to file a dust mask case on their behalf more than one year—and in some cases several years—before the complaint was filed—just as the motions to stay described.

171.    Not only were Defendants Martin and Givens aware of the fraud described in their motions to stay, but (on information and belief) they were also aware of the paper files they claimed to not know existed. Over the course of the scheme, Defendants Martin and Givens visited Defendant Hammond's office on numerous occasions, including to prepare witnesses and appear for depositions in connection the Enterprise Complaints. As the photo below shows, the room containing hard copy paper files in Defendant Hammond's office that Defendants

---

[66] *See Randy Adams, et al. v. 3M Company, et al.*, No. 20-CI-382 (Pike Cir. Ct), Hr'g Tr. (Mar. 24, 2023) at 18:11–12, 18:21–22, 19:11–12.

Martin and Givens describe in their motions to stay is adjacent to the kitchen/break room, in plain sight to anyone in the office:[67]



There is no question Defendants Martin and Givens had seen the file room and knew that Defendant Hammond maintains hard-copy client files in his office.

172.    In fact, during his deposition in February 2025, Martin admitted that he had seen the exact file room shown in the picture above when visiting Hammond's office, and that Hammond told Martin before March 2023 that his firm had hard copy files for dust mask clients Martin represented.[68] He also admitted that his lead paralegal working on the dust mask cases visited Hammond's firm in January 2023 and found hard-copy files for plaintiffs with dust mask claims that had not been referred to Martin in Hammond's office.[69] During a July 24, 2025 emergency hearing before this Court, Defendant Hammond

---

[67] Facebook post from April 20, 2022.
[68] *See* Martin Walton Dep. 100:18-101:5, 101:23-25 (Feb. 25, 2025).
[69] *See* Martin Walton Dep. 85:1-88:7 (Feb. 25, 2025).

confirmed Defendants Martin and Givens would have seen these hard-copy paper files when visiting his office.

173.    Moreover, Defendant Martin not only knew about the paper files but has accessed, looked through, and pulled physical files from the file room to send to 3M counsel in connection with the Enterprise Complaints. For example, on or around March 17, 2022, Defendant Martin travelled to Defendant Hammond's office in Pikeville, Kentucky, in advance of the deposition of Glenn Hammond and once there, in Martin's own words looked for additional paper files relating to Individual 74's claim that he knew were maintained in that office and sent portions of those files to 3M. Moreover, during Defendant Hammond's deposition on March 18, 2022—with Martin present and engaged as counsel—Hammond testified about the hard copy paper files he keeps in his office—the same paper files Martin claims in his motion to stay that he never knew about. Specifically, Defendant Hammond testified that he "discussed with Mr. Martin what records [his] office has" and "provided everything to [Martin]" prior to the deposition. Included in the files provided by Defendant Hammond to Defendant Martin were hard copy, handwritten notes from "a physical file for [Individual 74]."[70] Martin knew all about the hard copy files in Defendant Hammond's office in March 2022, despite filing an affidavit on March 24, 2023, saying that he did not. Defendant Martin's self-serving claim that he only recently discovered Hammond's paper files is yet another provably false statement to a court intended to conceal the scheme.

174.    Defendants Martin and Givens made the same false statements to their clients to conceal their involvement in the scheme. On or around March 16,

---

[70] G. Hammond Dep. 7:15–8:7, 87:1–17 (Mar. 18, 2022).

2023, Defendants Martin and Givens met with Individual 74 at his home and told him that Hammond was solely responsible for the statute of limitations being blown on his case and that they were unaware of the fraud perpetrated on 3M. Defendants Martin and Givens met with plaintiffs Individual 3 and Individual 75 on or around March 23, 2023, in Hammond's office and told them the same lies.[71]

175.    Defendants Martin's and Givens' statements to 3M, the court, and their own clients that they were unaware of the scheme and that Defendant Hammond was solely liable for the fraud perpetrated on 3M were false. Defendants Martin and Givens employed these same tactics in other dust mask cases they prosecuted without Hammond. Indeed, four months after Judge Hall granted summary judgment in Individual 74's case, Judge Hall granted summary judgment in another dust mask case filed by Defendants Martin and Givens, this time with local counsel Individual 83, on the basis that the statute of limitations had run on the plaintiff's claim. In that case, similar to Individual 74's case, defendants had obtained evidence—specifically, a letter sent from Defendant Martin's law firm to the plaintiff—demonstrating that the plaintiff had been diagnosed with black lung on March 28, 2019, and had retained Individual 83 and Defendant Martin's firm for purposes of filing a dust mask claim by at least May 6, 2020, more than one year before any claim was actually on his behalf on October 8, 2021.[72] Then, in March 2024, in a different dust mask case that Defendants Martin and Givens prosecuted all the way to trial, a jury returned a verdict for 3M, finding (among other things) that the plaintiff's claim was time barred.

---

[71] *See* Martin Dep. 303:7-305:7 (Feb. 25, 2025).
[72] *See [Individual 84], et ux. v. Mine Safety Appliances Co., LLC, et al.*, No. 21-CI-848 (Pike Cir. Ct.), Order Dismissing with Prejudice (July 18, 2023).

During the trial, miners who had worked with the plaintiff testified that the plaintiff did not wear 3M dust masks while working in the mines—contrary to false statements Defendants Martin and Givens caused to be filed throughout the litigation asserting that the plaintiff had in fact worn 3M dust masks.[73]

### F. Between April 5, 2023 and April 17, 2023, Defendants Martin and Givens caused to be filed motions to withdraw as counsel of record from the Enterprise Complaints in a last-ditch effort conceal their involvement in the scheme.

176.    On March 29, 2023, 3M filed a motion in Individual 74's case before Judge Hall seeking leave to conduct discovery, including depositions and written discovery, into potentially sanctionable conduct by the Defendants.

177.    At a hearing on April 4, 2023, 3M made a detailed presentation of the evidence demonstrating that Defendants Martin's and Givens' claims in the motions to stay were false because they knew about Defendant Hammond's paper files and had participated in the fraud scheme. At the hearing, Judge Hall acknowledged that Defendant Hammond's testimony during his March 18, 2022, deposition (in which he was represented by Martin) that Hammond had not heard of dust mask cases until 2020—a lynchpin fact that would likely cause statute of limitations issues for dozens of claims in the Enterprise Complaints—was not credible.[74]

---

[73] *See [Individual 79], et al. v. 3M Company*, No. 20-CI-01457 (Pike Cir. Ct.).

[74] *See [Individual 74] v. 3M Company, et al.*, No. 22-CI-812 (Pike Cir. Ct.), Hr'g Tr. (Apr. 4, 2023) at 42:9-23 (Judge Hall: "I was concerned also when an attorney says they just heard about dust mask cases, because I've never practiced in this area. I worked for Social Security back in the early 1980s. But I first heard of dust mask cases around, at least, ten years ago. And I don't practice in the -- that area. I heard about the dust mask cases because I had relatives one day call me up, said I – I've been contacted by an attorney about a dust mask case, and that was ten years ago or longer. So even though I didn't practice in that area, … if you were in

178. The very next day, recognizing their lies were not holding water against the mountain of evidence presented (and still being developed) against them, Defendants Martin and Givens made a last-ditch effort to save themselves. On April 5, 2023, Defendants Martin and Givens moved to withdraw entirely from the hundreds of dust mask claims they had filed/joined and prosecuted against 3M with Hammond over the previous three years. Defendants Martin and Givens did not dismiss with prejudice (or otherwise) the claims they represented to the court they had already determined were filed outside the statute of limitations. On information and belief, nor did they inform the clients whose claims they had determined were time-barred that they had been lied to and that their cases were invalid. Instead, they sought to abandon altogether hundreds of clients that had entrusted them with their claims, leaving them to be represented solely by Defendant Hammond, who Martin and Givens just days prior had told the court had engaged in expansive fraud at his clients' expense—all to evade scrutiny into their own actions.

179. In total, Defendants Martin and Givens filed 14 virtually identical motions to withdraw from over hundreds of claims they had filed/joined and prosecuted in six different counties on behalf of coal workers and their families in eastern Kentucky:

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 34 potentially fraudulent claims in Enterprise Complaint #1 (*Randy Adams, et al. v. 3M Company, et al.*).

---

the practice of law, you heard about them, heard about the cases. And that's from someone that does --never filed a federal black lung case.").

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 26 potentially fraudulent claims in Enterprise Complaint #3 (*Kenneth Hamilton, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 33 potentially fraudulent claims in Enterprise Complaint #5 (*Barm Combs, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 77 potentially fraudulent claims in Enterprise Complaint #6 (*Jamie Banks, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 48 potentially fraudulent claims in Enterprise Complaint #7 (*Carter Yates, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 41 potentially fraudulent claims in Enterprise Complaint #8 (*Richard Stump, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 41 potentially fraudulent claims in Enterprise Complaint #9 (*Darrell Holbrook, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 38 potentially fraudulent claims in Enterprise Complaint #10 (*Stephen Gibson, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 17 potentially fraudulent claims in Enterprise Complaint #17 (*Claude Mills, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 23 potentially fraudulent claims in Enterprise Complaint #18 (*Donald Mitchell, et al. v. 3M Company, et al.*).

- On or about April 5, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 8 potentially fraudulent claims in Enterprise Complaint #19 (*Randall Caudill, et al. v. 3M Company, et al.*).

- On or about April 6, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for 196 potentially fraudulent claims in Enterprise Complaint #4 (*Charles Mounts, et al. v. 3M Company, et al.*)

- On or about April 17, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for the Estate of Individual 80, a plaintiff named in Enterprise Complaint #1 (*Randy Adams, et al. (Estate of [Individual 80]) v. 3M Company, et al.*)

- On or about April 17, 2023, Defendants Martin and Givens caused a filing to be transmitted interstate electronically and/or via US mail to 3M and others styled "Motion to Withdraw as Counsel of Record" in which transmission Defendants Martin and Givens sought to withdraw as counsel of record for the Individual 3, a plaintiff whose claim was severed from the Enterprise Complaint #1 (*[Individual 3], et ux. v. 3M Company, et al.*, No. 22-CI-811)

180.  Defendants Martin and Givens filed the motions to withdraw to avoid discovery of their fraudulent conduct. In each of the motions, Defendants Martin and Givens claimed the motions to stay they had just filed would "no longer be

necessary." Then, in a transparent and self-serving about-face, Defendants Martin and Givens told the court that their withdrawal "should cause no prejudice to the clients because . . . Mr. Hammond"—who they admit engaged in fraud and who they claim is solely responsible for blowing the statute of limitations on a number of clients' claims—"will continue to represent [the clients'] interests."[75]

181.    Moreover, in each of the motions to withdraw, Defendants Martin and Givens repeat the same misstatements—or statements that, if true, reveal previous lies—aimed at allowing them to avoid discovery into their wrongdoing and avoid having to admit on the record through dismissals of additional dust mask claims that they had defrauded 3M and their clients. Specifically, these misstatements, on information and belief, include that Defendant Hammond retained Defendants Martin and Givens to assist in the prosecution of *only* the fifty-three claims filed in Enterprise Complaint #1 and then "unilaterally placed" their firm names on the complaints filed after Enterprise Complaint #1 (i.e., Enterprise Complaint #2–22) "without obtaining [their] approval."[76]

182.    Incredibly, in their motions to withdraw, Defendants Martin and Givens claimed after nearly three years of prosecuting the Enterprise Complaints that they were not properly counsel of record in any complaints filed after Enterprise Complaint #1 and did not have an attorney-client relationship with any plaintiffs named in the Enterprise Complaints (except a handful that directly retained them).

---

[75] *See, e.g.*, *Randy Adams, et al. v. 3M Company, et al.*, No. 20-CI-382 (Pike Cir. Ct), Motion to Withdraw as Counsel of Record (April 5, 2023), at 2.
[76] *Id.* at 1.

183.    Just weeks prior to disclaiming any relationship with hundreds of plaintiffs, Defendants Martin and Givens filed motions to stay and appeared in court on March 24, 2023, on behalf of all plaintiffs in the Enterprise Complaints—plaintiffs that they now claim to have never represented. Despite a lengthy and documented history of representing the claimants in Enterprise Complaints #2-22 through various stages of years of proceedings, Defendants Martin and Givens falsely claimed to have never represented these plaintiffs after it became clear that their representation of these claimants risked further exposure of the fraud scheme.

184.    It is beyond dispute that Defendants Martins and Givens repeatedly represented to the Court and to 3M that they had an attorney-client relationship with each of the Enterprise Complaint plaintiffs. For example, Martin and Givens have filed appearances in and prosecuted the Enterprise Complaints on behalf of plaintiffs named in those Complaints, for example:

- As described above, Defendants Martin and Givens filed appearances on behalf of plaintiffs in connection with Enterprise Complaints #2-22 after the complaint was filed.

- Defendant Martin responded to discovery on behalf of plaintiffs named in the Enterprise Complaints, including those filed after Enterprise Complaint #1. In fact, for each of the interrogatory responses provided by Defendants to 3M so far in connection with Enterprise Complaint claims (both Enterprise Complaint #1 and others filed later), Defendant Martin—not Defendant Hammond—signed the responses on behalf of the respective plaintiff and signed the certificate of service verifying a copy had been served on all parties of record.

- Defendants Martin and Givens appeared at depositions on behalf of plaintiffs named in the Enterprise Complaints, including those filed after Enterprise Complaint #1. Four Enterprise Complaint plaintiffs were deposed as fact witness in Individual 74's case (Individual 67, Enterprise Complaint #2; Individual 26, Enterprise Complaint #4; Individual 68, Enterprise Complaint #7; and Individual 69, Enterprise Complaint #15), and in each Defendant Martin appeared at the deposition and represented

to 3M counsel that he represented the witness. During Individual 69's deposition on September 20, 2022, Defendant Martin explained that Individual 69 was "in the Hammond umbrella and represented by the Hammond firm which makes me [Mr. Martin] his lawyer."[77] Similarly, in Individual 26's deposition on February 23, 2023, Defendant Martin acted as counsel for the witness and instructed him not to answer questions asked by 3M counsel.[78] In other words, Defendants Martin and Givens claimed to represent these plaintiffs when doing so allowed them to control the witnesses' testimony in furtherance of their scheme, but disclaim representation of these same plaintiffs and others named in the Enterprise Complaints to protect themselves and further conceal their culpability in that scheme.

185. Defendants Martin and Givens were the primary—and in some cases, the only—attorneys prosecuting the claims in the later Enterprise Complaints. In fact, in each of the Enterprise Complaints subject to a motion to withdraw, Defendants Martin and Givens have filed appearances, filed amended complaints, negotiated discovery schedules, filed motions and other pleadings, responded to 3M's pleadings, appeared in depositions, and/or moved to dismiss claims (in one case, *with prejudice*) on behalf of plaintiffs named in these Enterprise Complaints, including but not limited to the following examples:

- Enterprise Complaint #3. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #3 (*Kenneth Hamilton, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #3, for example:

  - As described above, on or around December 16, 2021, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #3.

  - On or around December 29, 2021, Defendant Givens signed and caused to be filed Plaintiffs' Reply to 3M Company's Response in Opposition to Plaintiff's Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #3.

---

[77] *See* [Individual 69] Dep. 48:9–12 (Sept. 20, 2022).
[78] *See, e.g.*, [Individual 26] Dep. 39:13–40:12 (Feb. 10, 2023).

- On or around December 27, 2022, Defendant Martin negotiated via email communications with 3M counsel a stay of discovery on behalf of all plaintiffs named in Enterprise Complaint #3.

- As described above, on or around January 27, 2023, Defendant Martin signed and caused to be filed a Motion to Dismiss Certain Plaintiffs, which sought the dismissal of claims on behalf of seven plaintiffs named in Enterprise Complaint #3.

- As described above, on or about March 29, 2023, Defendants Martin and Givens caused to be filed a Motion to Stay Hammond Law Offices Dust Mask Cases, which sought to stay claims on behalf of all plaintiffs named in Enterprise Complaint #3.

- Enterprise Complaint #4. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #4 (*Charles Mounts, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #4, for example:

  - As described above, on or around December 16, 2021, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #4.

  - On or around December 29, 2021, Defendant Givens signed and caused to be filed Plaintiffs' Reply to 3M Company's Response in Opposition to Plaintiff's Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #4.

  - On or around October 4, 2022, Defendant Martin signed caused to be filed a notice of appearance (after the filing of the complaint) to join Defendant Hammond as counsel of record in Enterprise Complaint #4.

  - On or around October 4, 2022, Defendant Martin signed and caused to be filed a Motion for Revival and Substitution on behalf of the estate of Individual 70, a plaintiff named in Enterprise Complaint #4.

  - On or around October 4, 2022, Defendant Martin signed and caused to be filed Plaintiffs' Motion for Leave to File First Amended Complaint, which sought to add a wrongful death claim on behalf of the estate of Individual 70, and which motion was granted.

  - As described, on or around October 25, 2022, Defendant Martin signed and caused to be filed the first amended Enterprise Complaint #4.

  - On or around November 2, 2022, Defendant Martin signed and caused to be filed a Motion for Revival and Substitution on behalf of

the estate of Individual 71, a plaintiff named in Enterprise Complaint #4.

- On or around November 2, 2022, Defendant Martin signed and caused to be filed Plaintiffs' Motion for Leave to File Second Amended Complaint, which sought to add a wrongful death claim on behalf of the estate of Individual 71, and which motion was granted.

- On or about November 15, 2022, Defendants Martin signed and caused to be filed Plaintiffs' Response to 3M Company's Motion for Stay Pending Sixth Circuit Appeal on behalf of all plaintiffs named in Enterprise Complaint #4.

- As described above, on or around November 22, 2022, Defendant Martin signed and caused to be filed the second amended Enterprise Complaint #4.

- On or around December 27, 2022, Defendant Martin negotiated via email communications with 3M counsel a stay of discovery on behalf of all plaintiffs named in Enterprise Complaint #4.

- As described above, on or about January 30, 2023, Defendants Martin signed and caused to be filed a Motion to Dismiss Certain Plaintiffs, which sought the dismissal of claims on behalf of 27 plaintiffs named in Enterprise Complaint #4.

- As discussed above, on February 10, 2023, Individual 26, a plaintiff named in Enterprise Complaint #4, was deposed as a fact witness in Individual 74's case, and Defendant Martin represented Individual 26 during that deposition.

- As described above, on or about February 15, 2023, and February 17, 2023, Defendants Martin signed and caused to be filed Notice of Withdrawal of Certain Plaintiffs' Motion to Dismiss and Response to 3M Company's Opposition to Dismiss Certain Plaintiffs, and Plaintiffs' Reply to 3M Company's Response to Notice of Withdrawal of Certain Plaintiffs' Motion to Dismiss, respectively, on behalf of 27 plaintiffs named in Enterprise Complaint #4.

- On or about March 14, 2023, Defendants Martin signed and caused to be filed a Motion to Dismiss with Prejudice on behalf of the estates of seven deceased plaintiffs named in Enterprise Complaint #4.

- On or about March 14, 2023, Defendants Martin signed and caused to be filed Plaintiffs' Response to 3M Company' Motion to Sever on behalf of all plaintiffs named in Enterprise Complaint #4.

- On or about March 14, 2023, Defendants Martin signed and caused to be filed Certain Plaintiffs' Response to 3M Company' Motion for

Summary Judgment on behalf of 27 plaintiffs named in Enterprise Complaint #4.

- On or about March 17, 2023, Defendants Martin signed and caused to be filed a Notice of Bankruptcy Stay on behalf of all plaintiffs named in Enterprise Complaint #4.

- As described above, on or about March 29, 2023, Defendants Martin and Givens caused to be filed a Motion to Stay Hammond Law Offices Dust Mask Cases, which sought to stay claims on behalf of all plaintiffs named in Enterprise Complaint #4.

- On or about March 28, 2023, Defendant Martin signed and caused to be filed an Appearance of Counsel and a Disclosure of Corporate Affiliations and Financial Interest in the U.S. Court of Appeals for the Sixth Circuit on behalf of all plaintiffs named in Enterprise Complaint #4—one day before seeking to withdraw from representation of those same plaintiffs in state court.

- On or about March 30, 2023 and April 4, 2023, Defendant Martin signed and caused to be filed a Notification of Plaintiffs/Appellees Parties and an Argument Acknowledgment, respectively, in the U.S. Court of Appeals for the Sixth Circuit, indicating he would be presenting argument on behalf of all plaintiffs named in Enterprise Complaint #4—after seeking to withdraw from representation of those same plaintiffs in state court.

- On or about April 5, 2023, Defendant Givens signed and caused to be filed an Appearance of Counsel in the U.S. Court of Appeals for the Sixth Circuit on behalf of all plaintiffs named in Enterprise Complaint #4—after seeking to withdraw from representation of those same plaintiffs in state court.

- Enterprise Complaint #5. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #5 (*Barm Combs, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #5, for example:

  - As described above, on or around December 16, 2021, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #5.

  - On or around December 29, 2021, Defendant Givens signed and caused to be filed Plaintiffs' Reply to 3M Company's Response in Opposition to Plaintiff's Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #5.

- On or around December 27, 2022, Defendant Martin negotiated via email communications with 3M counsel a stay of discovery on behalf of all plaintiffs named in Enterprise Complaint #5.

- As described above, on or about April 5, 2023, Defendants Martin and Givens caused to be filed a Motion to Stay Hammond Law Offices Dust Mask Cases, which sought to stay claims on behalf of all plaintiffs named in Enterprise Complaint #5.

- **Enterprise Complaint #6.** Defendants Martin and Givens moved to withdraw from Enterprise Complaint #6 (*Jamie Banks, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #6, for example:

  - As described above, on or around December 16, 2021, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #6.

  - On or around December 29, 2021, Defendant Givens signed and caused to be filed Plaintiffs' Reply to 3M Company's Response in Opposition to Plaintiff's Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #6.

  - On or around November 23, 2022, Defendant Martin signed and caused to be filed a Motion for Revival and Substitution on behalf of the estate of Individual 72, a plaintiff named in Enterprise Complaint #6.

  - On or around November 28, 2022, Defendant Martin signed and caused to be filed Plaintiffs' Motion for Leave to File First Amended Complaint, which sought to add a wrongful death claim on behalf of the estate of Individual 72, and which motion was granted.

  - On or around December 7, 2022, Defendant Martin signed and caused to be filed a Notice of Cancellation of Hearing, cancelling the hearing scheduled for the next day on Plaintiffs' Leave to File Amended Complaint and Plaintiff [Individual 72]'s Motion for Revival and Substitution.

  - As described above, on or around December 8, 2022, Defendant Martin signed and caused to be filed the first amended Enterprise Complaint #6.

  - On or around December 27, 2022, Defendant Martin negotiated via email communications with 3M counsel a stay of discovery on behalf of all plaintiffs named in Enterprise Complaint #6.

94

- Enterprise Complaint #7. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #7 (*Carter Yates, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #7, for example:

  - As described above, on or around December 16, 2021, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) to join Defendants Hammond and Martin as counsel of record in Enterprise Complaint #7.

  - On or around December 29, 2021, Defendant Givens signed and caused to be filed Plaintiffs' Reply to 3M Company's Response in Opposition to Plaintiff's Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #7.

  - As discussed above, on September 20, 2022, Individual 68, a plaintiff named in Enterprise Complaint #7, was deposed as a fact witness in Individual 74's case, and Defendant Martin represented Individual 68 during that deposition.

  - On or around December 27, 2022, Defendant Martin negotiated via email communications with 3M counsel a stay of discovery on behalf of all plaintiffs named in Enterprise Complaint #7.

  - As described above, on or about April 3, 2023, Defendants Martin and Givens caused to be filed a Motion to Stay Hammond Law Offices Dust Mask Cases, which sought to stay claims on behalf of all plaintiffs named in Enterprise Complaint #7.

- Enterprise Complaint #8. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #8 (*Richard Stump, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #8, for example:

  - As explained above, on or around March 29, 2022, Defendant Martin caused to be served on 3M Enterprise Complaint #8, after the complaint was filed with the court.

  - On or around April 18, 2022, Defendant Martin signed and caused to be filed a notice of appearance (after the filing of the complaint) on behalf of all plaintiffs named in Enterprise Complaint #8.

  - On or around April 20, 2022, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) on behalf of all plaintiffs named in Enterprise Complaint #8.

  - On or around May 23, 2022, Defendant Givens signed and caused to be filed Plaintiffs' Motion to Remand and Plaintiffs' Memorandum in

Support of Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #8.

- On or around December 12, 2022, Defendant Givens signed and caused to be filed a Motion to Perpetuate Testimony, on behalf of Individual 73, a plaintiff named in Enterprise Complaint #8.

- As described above, on or about March 29, 2023, Defendants Martin and Givens caused to be filed a Motion to Stay Hammond Law Offices Dust Mask Cases, which sought to stay claims on behalf of all plaintiffs named in Enterprise Complaint #8.

- Enterprise Complaint #9. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #9 (*Darrell Holbrook, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #9, for example:

  - On or around April 20, 2022, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) on behalf of all plaintiffs named in Enterprise Complaint #9.

  - On or around May 23, 2022, Defendant Givens signed and caused to be filed Plaintiffs' Motion to Remand and Plaintiffs' Memorandum in Support of Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #9.

  - On or around June 23, 2022, Defendant Givens signed and caused to be filed Plaintiffs' Reply to 3M Company's Response in Opposition to Plaintiffs' Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #9.

- Enterprise Complaint #10. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #10 (*Stephen Gibson, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #10, for example:

  - On or around June 20, 2022, Defendant Martin signed and caused to be filed a notice of appearance (after the filing of the complaint) on behalf of all plaintiffs named in Enterprise Complaint #10.

  - On or around July 15, 2022, Defendant Givens signed and caused to be filed Plaintiffs' Motion to Remand and Plaintiffs' Memorandum in Support of Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #10.

  - On or around August 16, 2022, Defendant Givens signed and caused to be filed Plaintiffs' Reply to 3M Company's Response in Opposition

to Plaintiffs' Motion to Remand, on behalf of all plaintiffs named in Enterprise Complaint #10.

- As described above, on or about March 29, 2023, Defendants Martin and Givens caused to be filed a Motion to Stay Hammond Law Offices Dust Mask Cases, which sought to stay claims on behalf of all plaintiffs named in Enterprise Complaint #10.

- **Enterprise Complaint #17**. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #17 (*Claude Mills, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #17, for example:

  - On or around January 30, 2023, Defendant Martin signed and caused to be filed a notice of appearance (after the filing of the complaint) on behalf of all plaintiffs named in Enterprise Complaint #17.

  - On or around February 1, 2023, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) on behalf of all plaintiffs named in Enterprise Complaint #17.

  - Between February 24, 2023 and March 15, 2023, Defendant Martin signed and caused to be served on 3M responses to interrogatories and responses to requests for production on behalf of 15 plaintiffs named in Enterprise Complaint #17.

  - As described above, on or about March 29, 2023, Defendants Martin and Givens caused to be filed a Motion to Stay Hammond Law Offices Dust Mask Cases, which sought to stay claims on behalf of all plaintiffs named in Enterprise Complaint #17.

- **Enterprise Complaint #18**. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #18 (*Donald Mitchell, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #18, for example:

  - On or around January 30, 2023, Defendant Martin signed and caused to be filed a notice of appearance (after the filing of the complaint) on behalf of all plaintiffs named in Enterprise Complaint #18.

  - On or around February 1, 2023, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) on behalf of all plaintiffs named in Enterprise Complaint #18.

  - Between February 28, 2023 and March 15, 2023, Defendant Martin signed and caused to be served on 3M responses to interrogatories and/or responses to requests for production on behalf of 12 plaintiffs named in Enterprise Complaint #18.

- As described above, on or about March 29, 2023, Defendants Martin and Givens caused to be filed a Motion to Stay Hammond Law Offices Dust Mask Cases, which sought to stay claims on behalf of all plaintiffs named in Enterprise Complaint #18.

- Enterprise Complaint #19. Defendants Martin and Givens moved to withdraw from Enterprise Complaint #19 (*Randall Caudill, et al. v. 3M Company, et al.*) on the bases described above. Notwithstanding this, Defendants Martin and Givens filed/joined and prosecuted claims on behalf of Plaintiffs named in Enterprise Complaint #19, for example:

  - On or around February 1, 2023, Defendant Givens signed and caused to be filed a notice of appearance (after the filing of the complaint) on behalf of all plaintiffs named in Enterprise Complaint #19.

  - Between March 3, 2023 and March 10, 2023, Defendant Martin signed and caused to be served on 3M responses to interrogatories and responses to requests for production on behalf of 6 plaintiffs named in Enterprise Complaint #19.

  - As described above, on or about March 29, 2023, Defendants Martin and Givens caused to be filed a Motion to Stay Hammond Law Offices Dust Mask Cases, which sought to stay claims on behalf of all plaintiffs named in Enterprise Complaint #19.

186. Finally, two months after claiming Defendant Hammond hired him and Defendant Givens only to assist with the claims asserted in the first Enterprise Complaint, Defendant Martin admitted that he "was originally hired by Mr. Hammond" in May 2020 "to assist him in representing clients in 3M dust mask cases in approximately 800 cases throughout Kentucky"—not just the 53 plaintiffs named in Enterprise Complaint #1.[79] He admitted further that he intentionally "ha[d] not withdrawn from all cases that were associated with Mr. Hammond" but rather sent certain clients election letters so they could choose whether to continue with Defendant Hammond or him as counsel.[80]

---

[79] *See [Individual 74] v. 3M Company, et al.*, No. 22-CI-812 (Pike Cir. Ct.), Martin's Response to Motion for Return and Production of Files and for an Order Requiring Michael Martin and Johnny Givens to Cease and Desist from Contacting Glenn Hammond's Clients (June 5, 2023), ¶ 1.
[80] *See id.*, ¶ 11.

187.    Defendants Martin and Givens' claims in the motions to withdraw that they did not represent over 800 plaintiffs named in the Enterprise Complaints are either blatantly false, or if true, expose dozens if not hundreds of lies Defendants told the court and 3M in the prosecution of claims on those plaintiffs' behalf. Defendants Martin and Givens claimed to represent hundreds of plaintiffs when doing so allowed them to manage written discovery, control witness testimony, and negotiate settlements and dismissals of the plaintiffs' claims in furtherance of the scheme. Their attempt to disclaim any relationship with these same plaintiffs is an unmistakable last-ditch effort to conceal their fraud and reveals the lengths Defendants will go to avoid discovery of the truth.

### G.    Defendant Hammond attempted to hide critical evidence of the scheme to prevent its discovery and use by 3M in pending dust mask cases and related, foreseeable litigation.

188.    On information and belief, after 3M learned that original dust mask case files in Defendant Hammond's office contained intake forms and other evidence of fraudulent filings against 3M, Hammond stashed those very files away in a secret location to prevent them from ever coming to light in the pending dust mask cases or future litigation relating to Defendants' scheme.

189.    Specifically, on information and belief, in or around the end of March 2023, Defendant Hammond caused dozens of banker boxes containing these original paper files to be moved to a U Save storage unit he rented in Pikeville, Kentucky. Defendant Hammond further instructed his employee(s) to keep the files' location and the fact of their existence secret.  Defendant Hammond hid these files on behalf of and to protect the Enterprise.

190.    Defendant Hammond attempted to conceal, and successfully did conceal for over two years, these original files knowing the files were central to and, therefore, would be subject to discovery in the pending dust mask cases, including Enterprise Complaints #2 and #4 pending in this federal district court. Moreover, Defendant Hammond was well aware when he secreted the files away that 3M was investigating the fraud scheme and would seek all original dust mask files in future litigation relating to that scheme. Indeed, counsel for 3M sent a preservation letter to each Defendant on March 20, 2023, notifying them that 3M was investigating Defendants' filing of fraudulent dust mask claims against it in violation of state and federal laws and demanding that Defendants preserve any files—including "hard copy records"—relating to 3M or to existing or potential dust mask clients.

**H.    Defendant Hammond caused to be filed various motions for the sole purpose of preventing further investigation into his involvement in the scheme.**

191.    In the wake of Defendants Martin's and Givens' withdrawal from hundreds of dust mask cases, Defendant Hammond made frivolous filings and false statements to the court in an attempt to conceal his personal involvement in the fraudulent scheme.

192.    On April 21, 2023, Defendant Hammond caused to be filed a Motion to Disqualify Michael Martin and Johnny Givens and for Appropriate Orders Protecting [Individual 74 and His Spouse], in which Defendant Hammond acknowledged that Defendants Martins and Givens had engaged in "disturbing" conduct by accusing their own clients of lying "to favor their own self-interests." The motion was moot when filed given that as of April 21, 2023, no appeal had

been taken of the order dismissing Individual 74's claim and, therefore, neither Defendant Martin nor Defendant Given represented Individual 74 or his spouse at that time. Nevertheless, Defendant Hammond filed the unnecessary motion solely for purposes of seeking a stay of all discovery—including the discovery relating to Rule 11 sanctions 3M sought from Defendants Hammond, Martin, and Givens—on the purported grounds that Individual 74 and his spouse (who were not subject to any motion for Rule 11 sanctions) needed time to retain new counsel. On information and belief, Defendant Hammond caused the motion to be filed solely for purposes of preventing discovery of his involvement in the scheme through the requested discovery.

193.  On May 10, 2023, Defendant Hammond caused to be filed an untimely and baseless Notice of Appeal of the Pike County Circuit Court's order granting 3M's motion for summary judgment to further delay any discovery into his wrongdoing. On January 26, 2024, Defendant Hammond caused to be filed "Appellant's Initial Brief" in support of the appeal, which stated falsely that "3M's assertion that [Individual 74], through Glenn Hammond, was investigating a respirator product liability claim in January 2019 is factually incorrect." Defendant Hammond continues to perpetuate the lie made in his "materially false" affidavit to conceal the fraudulent scheme he and Defendants Martin and Givens perpetuated against 3M.

## I.  Defendant Martin caused to be filed various motions in Texas state court for the sole purpose of preventing further investigation into his involvement in the scheme.

194.  In March 2023, 3M filed a verified petition in Texas state court pursuant to Texas Rule of Civil Procedure 202 seeking authorization to conduct

pre-suit discovery from Defendant Martin and his firm relating to the fraudulent scheme carried out by the Enterprise. The petition detailed the alleged scheme and the evidence demonstrating Defendant Martin's knowledge of and participation in that scheme. 3M explained in its briefing and in open court that it recognized the seriousness of the allegations and had proceeded with the utmost caution in filing the petition and conducting a pre-suit investigation prior to bringing any action against Defendants. On June 2, 2023, following extensive briefing and a two-hour evidentiary hearing, the court granted 3M's petition, finding the likely benefit of the requested discovery outweighed any burden or expense to Defendant Martin and his firm. The court authorized 3M to conduct depositions of Defendant Martin and a corporate representative of his firm and to issue a subpoena for the production of documents relating to the scheme and Defendant Martin's involvement in it.

195. In an effort to evade the court's order and prevent further investigation into the Enterprise's scheme and his knowledge of and involvement in that scheme, Defendant Martin then caused several filings to be transmitted interstate electronically to 3M, including a Petition for Writ of Mandamus on June 30, 2023, in the First Court of Appeals in Houston, Texas, and when that was denied, a Motion for Protection from Discovery and Entry of Protective Order and Alternatively, Motion for Reconsideration of Order on Rule 202 Petition on July 1, 2024, in the District Court of Galveston County, Texas – 10th Judicial District, which was also denied. Defendant Martin also caused to be transmitted interstate electronically to 3M a motion for sanctions asserting the allegations in 3M's petition were "false, baseless, and attempt[ed] to fabricate a false narrative"—

despite the fact that the district court had found sufficient evidence supporting the allegations and granted the petition, and the appellate court had upheld that ruling. Defendant Martin sought $500 thousand in sanctions from 3M. Once again, the district court denied Defendant Martin's motion and required him and his firm to comply with the pre-suit investigation, through which 3M obtained deposition testimony and additional documentary evidence of the scheme perpetrated by the Enterprise, as detailed herein.

### Predicate Acts: Mail and Wire Fraud

196.   Each Defendant engaged in the Enterprise knowing and expecting that the Enterprise would be used to carry out a scheme to defraud 3M out of money and would use interstate mails and wires to do so. Specifically, the Defendants, through the Enterprise, intentionally engaged in a scheme intended to deprive 3M of money through fraud, deceit, and artifice knowing that interstate mails and wires would be used to further the scheme. Each Defendant knew and understood that at times each Defendant would and did cause false statements to be made for purposes of executing the scheme. At other times, Defendant Hammond's fraudulent conduct was so obvious to those within the Enterprise that Defendants Martin and Givens must have been aware of it.

197.   For purposes of executing the scheme, Defendants caused the ubiquitous use of interstate mails and wires hundreds or thousands of times in furtherance of the scheme, including but not limited to the specific examples discussed above. These mail and wire communications—in the form of mailings, e-mails, and other electronic communications—which often travelled across state lines, were an essential part of the Defendants' broader scheme which depended

on the ability to communicate across state lines with other Defendants (in Kentucky, Mississippi, and Texas), with Defendants' clients (in Kentucky) and with 3M (in New York, Texas, Minnesota, and elsewhere). As examples, Defendants caused the interstate use of the mails and wires as part of their scheme to communicate with:

- 3M (in out-of-court statements such as emails, letters, and other communications intended to drive settlement discussions, to communicate discovery responses (often containing false statements), to send fraudulent pleadings, and otherwise further the scheme, some of which communications are highlighted above);

- Defendants' clients and former clients (including about case intake, obtaining and submitting falsified discovery responses, and communicating that Defendants had voluntarily dismissed claims, some of which communications are highlighted above);

- courts (including the filing of fraudulent complaints, falsified affidavits, dismissal requests containing false statements, stay and withdrawal requests containing false statements, and numerous other filings, some of which communications are highlighted above); and

- the other Defendants.

198.    In furtherance of their scheme, each individual Defendant personally repeatedly used or caused to be used the mails and wires. Each individual use of the mails and the wires caused by Defendants in furtherance of the scheme is a separate RICO predicate.

199.    Many of the mailings and wirings that Defendants caused to be communicated contained false statements (some examples cited above) while others were sent as part of a regular pattern of communication necessary to effectuate their scheme.

## Predicate Acts: Obstruction of Justice

200.    Each Defendant engaged in the Enterprise knowing and expecting
that the Enterprise would attempt to obstruct, influence, and/or impede judicial
proceedings as necessary to advance the conspiracy and prevent exposure of the
fraud scheme. For example, Defendant Hammond, through the Enterprise,
concealed the existence of original case files containing evidence of the fraud from
3M and the courts for years. When their existence was finally revealed, Defendant
Hammond, on behalf of the goals of the Enterprise and in furtherance of the
conspiracy, moved the files to a secret storage location to prevent exposure of the
scheme.

201.    Defendant Hammond concealed the records knowing they contained
evidence central to claims alleged in the Enterprise Complaints and that 3M and
other defendants in the dust mask cases (and potentially others) would seek the
files in discovery, to the extent they had not already. Defendant Hammond knew
that concealing the files would interfere with the due administration of justice in
those cases, including those pending in federal court.

202.    Defendant Hammond concealed the records knowing also that 3M
was investigating the Enterprise's scheme and planned to file a lawsuit against
him and his co-conspirators. Hammond hid the files in an attempt to prevent their
availability for use in the present, reasonably foreseeable fraud action.

## Pattern of Racketeering Activity

203.    Defendants' racketeering activity was continuous and related.
Defendants' racketeering acts were committed for the same purpose: To further
the unlawful objectives of the Enterprise. Defendants' racketeering acts were

aimed at defrauding the same victim (3M), were perpetuated by the same individuals (Defendants), and were effectuated through common methods, as described above. For example, Defendants caused nearly identical allegations to be contained in the fraudulent complaints, caused nearly identical language regarding mask usage to be used in interrogatory responses, and filed nearly identical motions seeking to dismiss, stay, or permit withdrawal from claims in effort to conceal the scheme.

204.    As set forth above, each Defendant individually committed two or more racketeering acts in furtherance of the Enterprise. In addition to the many individual acts set forth above, each Defendant was aware that the interstate mails and wires were regularly used to further the scheme. Each Defendant filed and served, joined in filing and serving, and/or was aware that one or more other Defendants were filing and serving, the Enterprise Complaints on behalf of the Enterprise. Each Defendant prosecuted, joined in prosecuting, and/or was aware that one or more other Defendants were prosecuting the Enterprise's lawsuits, including by conducting discovery of 3M and others and responding to discovery requests from 3M and others. And each Defendant sent, joined in sending, or was aware that one or more other Defendants were sending, communications by mail and/or email to 3M, their clients, and others regarding the Enterprise's lawsuits. Each Defendant knew that the Enterprise Complaints contained fraudulent claims. At the outset of the Enterprise, in early 2020, each Defendant also entered into an agreement with the one or more of the other Defendants to further the objectives of the Enterprise knowing and expecting that one or more Defendants

would, and did, engage in a pattern of illegal racketeering activity in furtherance of the goals of the Enterprise.

## HARM TO 3M

205.   3M was directly and proximately financially and reputationally harmed by Defendants' scheme. 3M has spent and is continuing to spend millions of dollars in legal fees and costs defending against Defendants' scheme, including defending against Defendants' Enterprise Complaints as well as the fraudulently filed and prosecuted cases contained therein. In direct reliance on the facial validity of Defendants' Enterprise Complaints and the fraudulent claims contained therein, and as a direct and proximate response thereto, 3M has spent and will continue to spend millions of dollars on, for example, lawyer fees and costs evaluating the validity of the claims within the Enterprise Complaints, briefing motions to dismiss, engaging in offensive and defensive discovery, briefing summary judgment motions, litigating innumerable procedural matters, preparing for trials, and engaging in settlement discussions.

## Count I: Civil RICO
### *Violation of 18 U.S.C. § 1962(c)*
**(Against All Defendants)**

206.   3M re-alleges the allegations above as if set forth herein.

207.   By engaging in coordinated conduct toward a common purpose, Defendants established an association-in-fact enterprise. Specifically, Defendants worked together to prepare, file, and prosecute hundreds of claims against 3M, sharing money and resources in the process. In doing so, Defendants formed substantial professional relationships with one another and developed distinct, complementary roles. The purpose of their association was to file as many claims

107

against 3M as possible, and thereby induce 3M to settle the claims *en masse* instead of litigating them on the merits. On information and belief, their association-in-fact enterprise continues to this day.

208.    The activities of Defendants' association in fact (the Enterprise) affected interstate commerce. Martin and Givens are based in Texas and Mississippi respectively, and 3M is a Delaware Company with its principal place of business in Minnesota. The Parties each diverted resources across state lines to prosecute and defend against the Enterprise's numerous lawsuits.

209.    Each Defendant conducted, or participated in the management or operation of, the Enterprise's affairs. Within the respective areas of responsibility, each Defendant directed the Enterprise's affairs, making decisions on behalf of the Enterprise or knowingly carrying out decisions made by or with one or more other Defendants.

210.    Each Defendant engaged in a pattern of racketeering activity in connection with their direction of the Enterprise's affairs. As alleged above, each Defendant engaged in at least two instances of mail and/or wire fraud or obstruction of justice—predicate acts of racketeering—within ten years of each other.

211.    Defendants devised and implemented a scheme to defraud 3M by (1) fabricating and filing dozens of fraudulent product liability claims, (2) interspersing these fraudulent claims amongst less fraudulent/non-fraudulent claims, and (3) tactically dismissing the fraudulent claims as necessary to avoid discovery of their scheme.

212.    By increasing the total number of claims against 3M, Defendants sought to induce 3M to settle claims—both fraudulent and non-fraudulent ones—*en masse*, and therefore Defendants intended to deprive 3M of money.

213.    In furtherance of this fraudulent scheme, Defendants repeatedly used or caused their agents to use the mails and/or wires, including but not limited to the specific instances identified above. Each of these mailings and wirings constitutes a violation of 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud).

214.    Defendants' repeated violations of 18 U.S.C. §§ 1341 and 1343 were related to one another because the illegal mailing and wirings all pertained to the fabrication, filing, and concealing of the phony product liability claims at the center of Defendants' scheme. These unlawful mailings and wirings have occurred repeatedly for several years from 2020 to the present day.

215.    In furtherance of the fraudulent scheme, from in or around March 2023 until July 2025, Defendant Hammond concealed critical records from 3M and the courts with the intent of influencing, obstructing, or impeding pending dust mask claims and preventing their availability for use in the present, foreseeable action filed by 3M. This corrupt and unlawful concealment of evidence constitutes obstruction of justice in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 1512(c). Defendant Hammond's violations of 18 U.S.C. § 1503 and 18 U.S.C. § 1512(c) were intended to prevent the exposure of, and were therefore related to, Defendants' violations of the mail and wire fraud statutes.

216.    As a direct result of Defendants' pattern of racketeering activity, 3M suffered an injury to its business. Indeed, as a direct result of Defendants' scheme,

3M incurred legal fees and costs evaluating, defending against, and engaging in settlement negotiations regarding dozens of fraudulent claims and other Enterprise Complaint claims filed and prosecuted by Defendants as part of the scheme.

### Count II: Civil RICO Conspiracy
*Violation of 18 U.S.C. § 1962(d)*
**(Against All Defendants)**

217.    3M re-alleges the allegations set forth above as if set forth herein.

218.    Each Defendant conspired with at least one other Defendant to violate 18 U.S.C. 1962(c). Specifically, each Defendant agreed with at least one other Defendant that, on behalf of the Enterprise, one or more Defendants would fabricate, file, and conceal fraudulent product liability claims against 3M, and, in doing so, necessarily use the interstate mails and wires to further their scheme, and would attempt to obstruct, influence, and/or impede judicial proceedings as necessary to advance the conspiracy and prevent exposure of the fraud scheme, including by concealing evidence of the scheme.

### Count III: Fraud
*Kentucky Common Law*
**(Against All Defendants)**

219.    3M re-alleges the allegations set forth above as if set forth herein.

220.    Defendants made material misrepresentations to 3M in the Enterprise Complaints. Specifically, as detailed above, Defendants represented that each of the plaintiffs (or, in cases brought by an estate, each of the decedents) suffered from black lung and had used a 3M dust mask during their time working in the coal mines. Furthermore, as detailed above, Defendants represented further that, earlier than one year before Defendants filed claims on their behalf, the

110

plaintiffs did not know—and could not have known—that they or their decedents
suffered from black lung and that their or their decedents' conditions may have
been caused by 3M's dust masks (and thus their claims were not barred by
Kentucky's one-year of statute of limitations).

221.    Many of these statements were false. As detailed above, many of the
plaintiffs (or their decedents) in fact did not suffer from black lung and/or did not
use a 3M dust mask during their time working in the coal mines. Moreover, as
detailed above, many of these plaintiffs knew they had black lung and that their
conditions may have been caused by 3M's dust masks earlier than a year before
Defendants filed their claims. Indeed, many of the plaintiffs or their decedents had
met with Defendant Hammond to discuss bringing lawsuits *years* before
Defendants filed their claims.

222.    These misrepresentations were material. Whether plaintiffs or their
decedents (1) have or had black lung, or (2) used a 3M dust mask during their time
in the mines are both essential elements of a product liability claim against 3M.
Likewise, when plaintiffs first knew that (a) they or their decedent suffered black
lung and (b) their conditions may have been caused by 3M's dust masks are both
critical facts for determining whether the statute of limitations bars their claims.
Without these statements of fact, these product liability claim would be facially
deficient and subject to immediate dismissal and thus their inclusion in the
Enterprise Complaints was material.

223.    Defendants knew of or were recklessly indifferent as to the falsity of
these statements. By signing or joining in on the Enterprise Complaints,
Defendants certified that they had made a reasonable inquiry into the factual and

legal bases for the claims asserted therein and such claims were grounded in fact and warranted by law. A reasonable inquiry, however, would have revealed that these statements were false, and thus Defendants either knew that the statements were false or were reckless as to their falsity.

224.    Defendants intended for 3M to rely on their misrepresentations. As detailed above, Defendants made these misrepresentations to further their scheme of filing hundreds of product liability claims against 3M and then inducing 3M to settle these claims—including dozens of fraudulent ones—*en masse*. Accordingly, by signing the Enterprise Complaints (and thereby certifying that there was a legal and factual basis for the claims therein), Defendants intended for 3M to assume that these claims were <u>not</u> fraudulent and litigate accordingly.

225.    3M did in fact rely on Defendants' misrepresentations and suffered injury as a result. 3M incurred legal fees and costs evaluating, defending against, and engaging in settlement negotiations regarding dozens of fraudulent claims. 3M would not have sustained these losses if Defendants had not made the misrepresentations.

### <u>Count IV: Civil Conspiracy</u>
### *Kentucky Common Law*
### (Against All Defendants)

226.    3M re-alleges the allegations set forth above as if set forth herein.

227.    Each Defendant unlawfully agreed or otherwise combined with one or more other Defendants to work in concert to defraud 3M. Specifically, Defendants agreed to collectively prepare and prosecute hundreds of product liability claims against 3M. Each Defendant knew or was recklessly indifferent to

the fact that dozens of these claims contained material misstatements of fact and were therefore fraudulent.

228.    As set forth above, Defendants did in fact file the fraudulent claims, and 3M suffered injury as a result.

## **Requested Relief**

Wherefore, 3M respectfully requests:

1) Compensatory damages jointly and severally against the Defendants in an amount sufficient to fully compensate 3M for the injuries sustained as a direct and proximate result of Defendants' unlawful conduct, including but not limited to the cost and fees spent processing, defending and/or negotiating settlement related to the Enterprise Complaints and the fraudulent claims contained therein;

2) The ill-gotten gains from Defendants' unlawful scheme. One of the Defendants boasts on his website to have collected over ten billion dollars ($10,000,000,000.00). 3M seeks the portion of those amounts determined by the Court to be attributable to Defendants' fraud;

3) Punitive damages against Defendants in an amount sufficient to deter the Defendants and others from engaging in this conduct in the future;

4) The costs and attorneys' fees incurred by 3M in the preparation and prosecution of this action pursuant to 18 U.S.C. Section 1964(c);

5) Treble damages pursuant to 18 U.S.C. Section 1964(c);

6) Whatever injunctive relief the Court deems necessary to prevent, remedy, and deter Defendants' past, present, and future fraud; and

7) Any and all other relief the Court deems proper and just.

Dated: August 6, 2025

Respectfully submitted,

FULTZ MADDOX DICKENS PLC

*/s/ Benjamin C. Fultz*
Benjamin C. Fultz (KBA #84398)
Gregory Scott Gowen (KBA #85408)
Robert E. Ranney (KBA #100226)
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202-3116
(502) 588-2000
bfultz@fmdlegal.com
sgowen@fmdlegal.com
rranney@fmdlegal.com

Steve Grimes (Admitted *Pro Hac Vice*)
Whitney I. Adams (KBA #100826)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel.: (312) 558-5600
Fax: (312) 558-5700
sgrimes@winston.com
wiadams@winston.com

*Attorneys for 3M Company*

114