## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **3M Company** | : | |
| | : | **CASE NO. 7:25-cv-00037-REW-MAS** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **MOTION BY DEFENDANT GLENN** |
| | : | **HAMMOND TO DISMISS THE** |
| **Glenn Hammond, Michael B.** | : | **AMENDED COMPLAINT FOR FAILURE** |
| **Martin, and John (a.k.a.** | : | **TO STATE A CLAIM UPON WHICH** |
| **"Johnny") Givens,** | : | **RELIEF MAY BE GRANTED** |
| | | |
| **Defendants.** | | |

---

## I.    Introduction

Attempting to collaterally attack hundreds of dust-mask Complaints filed in Kentucky state courts, Plaintiff 3M Corporation brings an improper and baseless set of claims in this Court.  Asserting federal RICO claims, fraud, and conspiracy, 3M argues that three attorneys – Glenn Hammond, Michael Martin, and John Givens – should have to justify the validity of their state court actions here.  The law does not permit this maneuver.

If 3M truly believes that it has been subjected to frivolous suits in state court, it can (and should) pursue remedies and sanctions in the individual, underlying state court cases.  However, it is not some separately actionable crime or fraud for an opposing attorney to zealously (or even over-zealously, as alleged) pursue claims against 3M.  What 3M alleges is merely a collection of alleged weaknesses in particular cases, pushing or potentially crossing the bounds of zealous advocacy at

times. Fundamentally, however, 3M is simply complaining about having to defend numerous claims filed on behalf of coal miners by the defendants. None of 3M's claims here have merit. As discussed in detail below, all should be dismissed for failure to state valid claims.

## II. Overview of Facts and Claims from the Amended Complaint

### A. Overview of Hammond and 3M's claims

The three defendants are attorneys who have spent their careers primarily representing injured persons in personal injury claims, including products liability actions like those at issue here. The plaintiff, 3M Corporation ("3M"), is suing the defendants. Why? Because 3M alleges that a collection of 850 dust mask claims brought against it and other defendants over the course of three years were so-called "fraudulent claims." 3M thus contends that the steps taken by the attorney-defendants to assert these claims constitute a fraudulent enterprise under RICO. A review of the Amended Complaint's allegations, however, demonstrates that 3M falls far short of establishing the high bar needed to assert a plausible RICO claim.

Defendant Glenn Hammond is a Pikeville, Kentucky-based attorney who has spent his nearly 30-year career mostly representing individuals in seeking redress for injuries—whether in claims for personal injury, medical malpractice, nursing home litigation, or product-liability litigation, including dust mask cases. (DN 40 at PageID#433-434.) In 2020, Hammond entered into a joint venture with two out-of-state lawyers, defendants Martin and Givens, to represent plaintiffs who alleged injury resulting from the use of 3M respirators, colloquially called "dust masks," while

working in coal mines. (*Id.* at PageID#443.) Ultimately, the three attorney-defendants filed a total of 22 group cases on behalf of over 850 injured claimants in several state courts across Kentucky. (*Id.* at PageID#440, ¶ 34.) Much of 3M's Amended Complaint is spent simply cataloguing the fact that the defendants collectively commenced these several cases. (*Id.* at PageID#456-465.)

Perhaps recognizing that the gravamen of its RICO case is implausible, 3M also dresses its Amended Complaint in the language of "fraud." It invokes the term "fraudulent claims" at least 61 times.

But, as the alleged facts show, the term "fraudulent claims" is a misnomer. What 3M appears to refer to as "fraudulent claims" are (1) a handful of claims that 3M claims are subject to the affirmative defense that they are barred by the statute of limitations (a defense 3M has the burden to plead and prove); and (2) in the case of 43 out of the 850 total claimants, claims brought by coal miners who (while having some degree of lung disease) turned out not have a formal diagnosis of coal workers pneumoconiosis ("CWP"), the disease commonly known as "black lung." These shortcomings, which 3M claims arose in an unspecified percentage of the 850 claims at issue, do not render the coal miners' claims "fraudulent." Nor do they establish the existence of a plausible RICO enterprise.

Stripped of the colorful labels, the Amended Complaint advances a series of unremarkable factual allegations against the defendants, which merely show this: 3M doesn't like that it has been getting sued for years over its dust masks; that it has been defending these claims as factually deficient and sometimes barred by the

statute of limitations; and that it has had to pay lawyers to defend these claims. (*See* DN 40, PageID#438-440.) While 3M claims this case is "not about" the sufficiency of the claims filed by these attorneys on behalf of injured coal miners, that's exactly what it is all about.

3M is also apparently dissatisfied with the remedies provided by Kentucky state and federal courts in the handful of instances where those courts found that either a plaintiff, or their counsel, had made incorrect statements in discovery or to the tribunal. 3M's apparent dissatisfaction with its proper remedies, and with having to defend other claims, does not justify the sprawling lawsuit it filed here.

3M's Amended Complaint tells a lengthy and colorful tale. What it does not do, as discussed below, is identify facts sufficient to plead a RICO enterprise.[1]

**B.    3M merely pleads a number of grievances about claims brought against it, all of which could and should be redressed in the underlying cases.**

A review of the factual allegations in the Amended Complaint shows that 3M is merely taking issue with particular claims that it believes had weak damages, were subject to the statute of limitations, or were not pursued as 3M would prefer. None of these allegations is legally actionable, let alone a predicate act for a RICO claim, "the litigation equivalent of a thermonuclear device[]."[2]. Rather, 3M sets forth complaints about a scattershot collection of events from claims brought by the

---

[1] In this regard, it is notable that Plaintiff does not include in its lawsuit the counsel currently representing some of the very coal miners whose claims 3M collaterally attacks through its lawsuit.
[2] *Gutterman v. Herzog*, No. 10-1081, 2020 WL 6728787 at *3 (E.D.N.Y. Nov. 16, 2020) (citation omitted).

defendants, each of which would be remediable through the litigation process in the underlying cases the defendants brought on behalf of coal miners:

**The letter enclosing draft discovery responses**. 3M, puzzlingly, takes issue with a letter sent to coal miner plaintiffs asking the clients to confirm the accuracy of draft discovery responses. The letter asks coal miners to "let us [the lawyers] know if there are any answers or responses that are wrong or if there are any corrections that need to be made." (*Id.* at PageID#441-42.) There is nothing unusual or improper about attorneys preparing draft discovery responses to recurrent, pattern discovery served in dust mask cases—just as 3M's counsel likely prepared pattern responses. And this letter evidences the efforts by defendants to ensure that their clients confirmed the accuracy of responses or made any needed changes. (*Id.*) 3M's use of this letter betrays the abject weakness of its RICO claims.

**The fee-sharing agreement between defendants**. 3M cites a standard fee-sharing agreement among the defendants for a group of dust mask claims, as if this were somehow evidence supporting RICO claims. (*Id.* at PageID#14.) But, again, there is nothing improper, unusual, or legally actionable about an agreement between plaintiff's lawyers to divide the fee for a batch of cases. 3M refers to this as an agreement to "share the profits" of the alleged enterprise, when it is nothing more than a straightforward fee sharing agreement between attorneys of different firms.

**3M's claim that the "core purpose" of the enterprise was to "increase the inventory of cases Defendants filed against 3M... and thereby increase the pressure on 3M to settle cases brought by Defendants."** (*Id.* at PageID#445,

¶45.) In other words, 3M is unhappy that the defendants found a group of injured coal miners who wanted to seek legal redress from 3M, and that defendants are seeking to increase the pressure on 3M to resolve the litigation. What 3M is alleging is that the defendants were effective in zealously advocating for these clients by taking an aggressive settlement strategy.

**3M's claim that an unspecified number of the 850 cases may have been subject to statute of limitations defenses**. The heart of 3M's case is that the defendants filed claims that 3M believes were barred by the statute of limitations, and in some cases that 3M believes the defendants should have known were time barred. (*Id.* at PageID#450, 465-473, ¶¶102-111.) 3M uses the term "statute of limitations" no fewer than 43 times in the Amended Complaint, accentuating this allegation as the cornerstone of its case. But 3M's own pleading betrays that this core contention is a house of cards. 3M alleges, "A foundational component of each claim brought by Defendants against 3M in their over 850 dust mask cases is that each claim was filed within one year after the plaintiff discovered—or in the exercise of reasonable diligence should have discovered—that that he suffered from black lung disease and that the black lung disease *may* have been caused by 3M's products." (*Id.* at PageID#450, ¶ 57.)

3M's argument inverts the burden.  It is on 3M to establish a claim is time barred, because the statute of limitations is an affirmative defense.[3] When filing

---

[3] "In the instant case, there is nothing in the record indicating that appellee introduced any proof of the existence of any of the situations that would compel application of the five-year statute of limitations. Pleading the statute of limitations is an affirmative defense, thus it was the burden of the appellee to show his

claims on behalf of injured coal miners, defendants had no independent obligation to establish affirmatively that their claims were timely. Moreover, 3M's allegation elides that many of the cases asserted fraud claims, which are governed by a longer 5-year statute of limitations.[4] Even taking 3M's allegations at face value, there is nothing even actionable under Rule 11, let alone criminal and illegal, about filing a potentially time-barred claim. The weakness of 3M's theory is revealed by its use of the term "statute of limitations compliance,"[5] an imaginary concept that inverts the burden, which is on the defendant, to plead and prove that a case is time barred.

Moreover, 3M's Complaint fails to allege the number of cases (out of the roughly 850 it contends are at issue) that it believes involved a meritorious statute of limitation defenses. The closest 3M comes is alleging that there were a mere 14 cases in which clients completed a new intake form closer in time to the filing of the case, suggesting that an earlier intake form might have established that the plaintiff's claim had accrued more than a year before suit was filed and was time barred. (*Id.* at PageID#455, ¶67.) In other words, 3M alleges that 1.6% of the cases brought against it by the alleged RICO enterprise had evidence of a meritorious statute of limitations defense. Thus, the lynchpin of 3M's assertion of a RICO claim against the defendants is that ***1.6% of*** the claims they filed against 3M on behalf of coal miners may have had documents that indicated a potential statute of limitations defense.

---

entitlement to it. *Wimmer v. Ft. Thomas*, 733 S.W.2d 759, 761 (Ky. App. 1987) (citing CR 8.03, which lists statute of limitations as an affirmative defense).
[4] KRS 413.120(11).
[5] PageID#465, ¶ 102.

**3M's claim that some small percentage of the miners did not have CWP**. Another cornerstone of 3M's Amended Complaint is its allegations that 43 of the 850+ miners at issue turned out not to carry a formal diagnosis of CWP and were thus voluntarily dismissed by the defendants. (*Id.* at PageID#456-463.) Although 3M sweepingly refers to "fraudulent allegations," there is nothing improper or illegal, let alone criminal, about a lawyer bringing a claim on behalf of an injured person who turns out not to carry a formal diagnosis, and then to remedy that filing by, after that evidence is made clear, dismissing their claims. There is no rule that would prohibit a coal miner who did not have a formal diagnosis of CWP from asserting a claim for other injuries. And 3M identifies nothing improper about an attorney voluntarily dismissing a claim the attorney determines over time that it has insufficient merit.

**3M's claims about various alleged litigation conduct**. Throughout the Amended Complaint, 3M spills significant ink about alleged discovery misconduct, incorrect statements in responses, alleged improper "coaching" of witnesses about mask usage, or incorrect testimony by particular plaintiffs. (*Id.* at PageID#464-465, 479-485.) Included in this is the significant time 3M spends discussing an affidavit submitted by Mr. Hammond, which a state court judge found to contain a false assertion. (*Id.* at PageID#494-499.) At this stage, of course, these are merely allegations, but even taking them as true, each amounts to merely a claim that the defendants engaged in some litigation misconduct, all of which could have been and was addressed through the judges overseeing the underlying litigation—through Civil Rule 11, Civil Rule 37, and the inherent authority of the circuit court bench.

Taken individually, these allegations in some cases do not allege anything improper at all. For instance, 3M implies it would be improper to have a client sign a medical records authorization form and to use that same form for multiple providers. Yet, 3M cites no authority indicating there is anything uncommon, let alone wrong with, this practice. (DN 40 at PageID#479-481.) Similarly, 3M charges "false claims of mask usage," based only on an allegation that Hammond showed clients a 3M mask when meeting with them and preparing for depositions. (*Id.* at PageID#464, 453-455.) Nowhere does 3M explain what would be wrong about showing a client the mask to confirm he wore that brand—a seemingly logical step to ensure an accurate identification of mask usage by a coal miner client. Similarly, 3M charges that the defendants "attempted to settle large batches of cases" and that they voluntarily dismissed certain weaker cases, as if these practices were impermissible (and criminal). (DN 40 at PageID#485-486.) It is unclear what 3M is saying was wrong with the practice of attorneys finding coal miner clients to bring aggregate litigation against 3M asserting their personal injury claims. Again, 3M does the same when it alleges that the defendants "filed various motions," as if this charge could amount to a predicate act under RICO. (*Id.* at PageID#529-532.)

All told, after cutting through 3M's hyperbolic labels, what 3M really alleges is merely that a group of lawyers filed a large number of claims against it on behalf of a large group of clients, that 3M had defenses to some of those claims, and that in some cases, plaintiffs or lawyers made statements that courts determined to be false. There is nothing particularly unique, remarkable, or actionable about this account.

**The Martin text message regarding "frivolous claims."** A key portion of 3M's case pivots on a text message inadvertently sent to 3M's counsel by defendant Martin, which referred to certain cases being filed as "frivolous." (*Id.* at PageID#499-501.) 3M begins its Amended Complaint with this text message, indicating that it views this evidence as a "smoking gun." Yet, as 3M's own factual allegations go on to make clear, "frivolous" did not mean fraudulent; instead, defendant Martin himself testified that he meant that certain plaintiffs did not have advanced enough disease to justify significant settlement value. (*Id.*) Moreover, 3M charges only that including such plaintiffs would be "sloppy work," which, even if true, would not amount to a federal crime.[6] This allegation is tantamount to saying that an attorney who brings a motor vehicle accident claim with only minor soft tissue injuries thereby commits a crime and a fraud—a proposition that is facially groundless.

**Hammond's use of off-site storage for files.** Finally, 3M "on information and belief" pleads that at some point after receiving a preservation letter, Hammond moved certain files to an off-site storage facility. (*Id.* at PageID#528-529.) 3M does not allege, nor could it, that any files were improperly destroyed. There is nothing, of course, wrong with the practice of a law firm using off-site storage for files. 3M's allegation, then, is that Hammond—after being told to preserve files—preserved those files off-site.

## III.    Argument

---

[6] In this regard, however, it is telling that out of the 850 or more cases alleged to be at issue, 3M identifies only 43 that allegedly suffered from the shortcoming of having a plaintiff who was not sick enough to make his claim valuable.

### A.    Standard for a Motion to Dismiss

A Complaint must state "'enough facts to state a claim to relief that is plausible on its face.'" *Verble v. Morgan Stanley Smith Barney, LLC*, 676 F. App'x 421, 424 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss for a failure to state a claim, plaintiffs are "required to provide direct or inferential factual allegations respecting ***all material elements of***" their claim. *See Allen v. NCL Am. LLC*, 741 F. App'x 292, 297 (6th Cir. 2018) (emphasis added). In deciding a motion to dismiss, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice to state a plausible claim for relief." *Verble*, 676 F. App'x at 424 (internal quotations omitted). Based on this standard, Plaintiff's claims must be dismissed for the reasons outlined below.

### B.    Plaintiff's Lawsuit is an Improper Collateral Attack on Complaints Filed in Other Courts Where Other Remedies Exist.

*Younger* abstention requires dismissal of 3M's complaint in its entirety, as its claims are a collateral attack on pending state court proceedings. When a party "is the target of an ongoing state action involving important state interests, the state defendant cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074-75 (6th Cir. 1998). "If the state defendant files such a case, *Younger* abstention requires the federal court to defer to the state proceeding." *Id.* When *Younger* abstention applies, "federal courts should

not exercise jurisdiction but instead should dismiss the cases in their entirety." *Watts v. Burkhart*, 854 F.2d 839, 844 (6th Cir. 1988) (citing *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973).

"*Younger* abstention applies when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Carroll*, 139 F.3d at 1074.

Applied here, state tort claims, such as products liability claims, involve an important state interest. *See Gruttadauria v. Fazio*, No. 1:07 CV 449, 2007 U.S. Dist. LEXIS 26394, at *9 (N.D. Ohio Apr. 9, 2007) ("The matters presented in the complaint are clearly the subject of a state tort and breach of contract matter which implicate important state interests."); *see also Emoral, Inc. v. Diacetyl (In re Emoral, Inc.)*, 740 F.3d 875, 886 (3d Cir. 2014) ("Their state law claims accordingly implicate important state interests, such as providing adequate compensation to individuals seriously injured by defective products.").

*Younger* abstention is premised on the long-standing doctrine that "'equity jurisprudence' prevents federal courts from interfering with ongoing state proceedings '***when the moving party has an adequate remedy at law*** and will not suffer irreparable injury if denied relief.' This helps '***avoid a duplication of legal proceedings and legal sanctions*** where a single suit would be adequate.'" *Id.* at 44. *Carroll*, 139 F.3d at 1075 (*Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (emphasis added). Therefore, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume

that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *James v. Hampton*, 513 F. App'x 471, 475 (6th Cir. 2013) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)).

And there is an adequate state-court remedy for 3M's allegations, one that does not require a separate fraud claim or RICO claim—the remedy of Rule 11 sanctions. *Saltire Industrial, Inc. v. Waller, Lansden, Dortch & Davis, LLC,* 491 F.3d 522, 530-32 (6th Cir. 2007) (rejecting fraud claim against law firm as improper, where Rule 11 sanctions could have been used).  Allowing pursuit of a separate fraud or RICO claim "violates fundamental principals of comity, federalism, and respect for state courts." *Id.*

Kentucky CR 11 itself already "forbids the filing of an action for an improper purpose," and thus, Kentucky Courts "have authorized sanctions against both attorney and represented parties where the filing of documents with a court is 'frivolous and so totally lacking in merit  so as to appear to have been taken in bad faith[.]'" *Hines v. Barnett Bank of Tampa, N.A.*, Nos. 2006-CA-000216-MR, 2006-CA-000217-MR, 2008 Ky. App. LEXIS 94, at *34-35 (Ky. App. Mar. 28, 2008) (quoting *Raley v. Raley*, 730 S.W.2d 531, 531 (Ky. App. 1987)). "Rule 11 sanctions" properly address counsel's assertion of "'frivolous' and 'worthless' claims 'without first making a proper inquiry into the relevant law and facts.'"" *Id.* at *35 n.9 (quoting *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.,* 815 F.2d 391, 405 (6th Cir. 1987) (internal quotation omitted)).

13

It merits mention that Kentucky courts place time limitations on a party's ability to move for Rule 11 sanctions—in order to prevent the very type of weaponization of allegations of frivolous lawsuits that 3M undertakes here. *Large v. Oberson*, 537 S.W.3d 336, 341 (Ky. App. 2017) (quoting *Clark Equipment*, 762 S.W.2d at 421 n.5). And a state trial court may not resolve a Rule 11 motion after a final judgment, CR 11, which highlights the important state interest against using the threat of Rule 11 sanctions to intimidate litigants or their counsel—which is precisely what this lawsuit is doing.

In short, the underlying state court proceedings at issue (1) are currently pending, (2) involve an important state interest, and (3) afford 3M an adequate opportunity to address its grievances. Therefore, *Younger* abstention applies, and the Court must defer to the state court, dismissing 3M's complaint in its entirety.

## C.   The supposedly "fraudulent" lawsuits constitute protected speech and activity and cannot give rise to liability.

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Sure-Tan, Inc.* v. *NLRB*, 467 U.S. 883, 896-897 (1984). 3M's suit violates these free speech rights.

### 1.   The *Noerr-Pennington* doctrine bars all of 3M's claims.

14

"To protect the right to petition, the Supreme Court has established what has become known as the 'Noerr-Pennington doctrine.'" *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007). While it "was initially recognized in the antitrust field, the federal courts have by analogy applied it to claims brought under both state and federal laws." *Id.* This is because "[t]he doctrine is, at bottom, founded upon a concern for the First Amendment right to petition and, therefore, has been applied to claims implicating that right." *Id.* As the doctrine is based on a right of petition, it "extends also to exercise of the right to petition courts for judicial relief." *Opdyke Inv. Co. v. Detroit*, 883 F.2d 1265, 1273 (6th Cir. 1989).

The *Noerr-Pennington* doctrine immunizes private actors who file lawsuits. *Knology, Inc. v. Insight Communs. Co., L.P.*, 393 F.3d 656, 659 (6th Cir. 2004) ("we see filing the lawsuit . . . as a single petitioning activity protected by the First Amendment and *Noerr-Pennington*."); *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 299 (6th Cir. 1992) ("The *Noerr-Pennington* doctrine applies to judicial proceedings."); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) (extending *Noerr-Pennington* to the use of "the channels and procedures of state and federal agencies and courts" because "[t]he right of access to the courts is . . . but one aspect of the right of petition").

Courts have held routinely held that *Noerr-Pennington* immunity applies to RICO claims. For example,

> the Second, Seventh, and Ninth Circuits have all previously addressed whether *Noerr-Pennington* immunity applies to RICO claims and have universally held that it does. *See, e.g., Int'l Brotherhood. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818,

826 (7th Cir. 1999) ("Although the *Noerr-Pennington* doctrine originated in antitrust law, its rationale is equally applicable to RICO suits."); *Sosa v. DirectTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006) ("[Plaintiff's] RICO suit poses a burden on [Defendant's] communication of the demand letters almost identical to that posed by the Sherman Act claims on the petitioning conduct at issue in *Noerr* and its progeny."); *Mir v. Greines, Martin, Stein & Richland*, 676 F. App'x. 699, 701 (9th Cir. 2017) (applying the *Noerr-Pennington* doctrine to RICO claim); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 229 F.3d 1135 (table) (2d Cir. 2000) (same).

*EQMD, Inc. v. Farm Bureau Gen. Ins. Co.* (E.D. Mich.), 2021 U.S. Dist. LEXIS 41521, *12 (finding that Noerr-Pennington immunity applies to RICO claims).

In this case, 3M has not pled any exception to *Noerr-Pennington*.[7]  Instead, 3M alleges that Defendants used fraudulent (improper) means to pursue claims against 3M, allegations which are insufficient to invoke the exception.  The litigation activity by Defendants is protected and immunized under *Noerr-Pennington*, requiring dismissal of all 3M's claims.

## 2. The judicial statement privilege also bars 3M's state law claims for fraud and civil conspiracy.

The Kentucky Supreme Court has explained that "[t]he right of access to the courts is fundamental to our system of justice." *Violett v. Grise*, 664 S.W.3d 481, 484

---

[7] The *Noerr-Pennington* doctrine's "sham exception" is inapplicable here. It applies only where a defendant's action are both "objectively meritless and subjectively motivated with knowledge of the lack of merit." *RaceTech, LLC v. Ky. Downs, LLC*, 169 F. Supp. 3d 709, 716 (W.D. Ky. 2016). And to demonstrate the "sham exception," a plaintiff "must show that the *entire* lawsuit was baseless, not merely one claim or action." *Ashley Furniture Indus. v. Am. Signature, Inc.*, No. 2:11-cv-427, 2015 U.S. Dist. LEXIS 194690, at *15-16 (S.D. Ohio Mar. 12, 2015) (emph. in original). It is no "sham," for *Noerr-Pennington* purposes, for attorneys to pursue black lung, product defect claims on behalf of Kentucky coal miners. Alleging that there is some limited number of time-barred or otherwise unavailing claims in the mix does not change this reality.  Accordingly, the narrow "sham exception" does not apply.

(Ky. 2022). The judicial statement privilege protects that right. The judicial statement privilege "is one that has been long adhered to in [Kentucky] jurisdiction and is rooted in public policy 'which looks to the free and unfettered administration of justice, though, as an incidental result, it may, in some instances, afford an immunity to the evil—disposed and malignant slanderer.'" *Halle v. Banner Indus. of N.E.*, 453 S.W.3d 179, 184 (Ky. App. 2014) (quoting *Schmitt v. Mann*, 291 Ky. 80, 163 S.W.2d 281, 284 (1942)). It "affords an absolute privilege to statements made 'preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding' and that have 'some relation to a proceeding that is contemplated in good faith and under serious consideration.'" *Id* (quoting *Rogers v. Luttrell*, 144 S.W.3d 841, 843-44 (Ky.App. 2004)).

"A statement made during the course of litigation is, without a doubt, made during the course of a judicial proceeding." *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank*, No. 15-161-DLB-HAI, 2017 U.S. Dist. LEXIS 113639, at *51-52 (E.D. Ky. July 21, 2017). Therefore, "the judicial statements privilege encompasses the act of filing the complaint, in addition to the statements contained therein." *Morgan v. Botts*, 348 S.W.3d 599, 604 (Ky. 2011). The privilege "should be applied liberally, and . . . applies 'whether it is alleged that [Defendants] knew the charges were false and even if brought in bad faith or with actual malice.'" *Aces High Coal Sales, Inc.*, No. 15-161-DLB-HAI, 2017 U.S. Dist. LEXIS 113639, at *51-52 (quoting *Ohnemus v. Thompson*, 594 F. App'x 864, 869 (6th Cir. 2014)); *see also Morgan v. Botts*, 348 S.W.3d 599, 602

(Ky. 2011) ("even if patently false or entered with malice, Kentucky's judicial statements privilege is absolute and would still apply.").

As the name suggests, "it is a privilege and, therefore, precludes the use of those privileged communications to sustain a cause of action." *Id*. The privilege, thus, "renders [such an action] unsustainable if based exclusively on statements privileged under the law." *Id*. The privilege applies to claims of fraud and other tort claims that stem from statements made in judicial proceedings. *Halle,* 453 S.W.3d at 188 (citing *Heavrin v. Nelson*, 384 F.3d 199 (6th Cir. 2004)).

3M's state law claims for fraud and civil conspiracy against Hammond and the other Defendants are premised entirely upon statements made in litigation on behalf of their clients. These statements are privileged and cannot underpin a viable cause of action. 3M's claims for fraud and civil conspiracy should be dismissed.

### D. Plaintiff Fails to State a RICO Claim, as Counsel's Handling of Tort Suits Does not Constitute Criminal or Racketeering Activity.

"To state a RICO claim, a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 791 (6th Cir. 2012) (quoting *S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). To establish a pattern of racketeering activity, Plaintiff must show "at a minimum, two acts of racketeering activity within ten years of each other." *Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 795 (6th Cir. 2012) (citing 18 U.S.C. § 1961(5)). Each "RICO predicate act must fall within the statutory list provided in 18 U.S.C. § 1961(1), and must be pleaded with sufficient factual particularity to satisfy Rule 12(b)(6)." *Patel v. Patel*,

No. 4:24-CV-00053-GNS, 2025 U.S. Dist. LEXIS 162553, at *9 (W.D. Ky. Aug. 20, 2025).

Mail fraud and wire fraud "are among the enumerated predicate offenses that can constitute 'racketeering activity.'" *W. Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease, Litig.)*, 727 F.3d 473, 484 (6th Cir. 2013) (citing 18 U.S.C. § 1961(1)). However, courts have consistently held that litigation activity alone—even when allegedly frivolous, fraudulent or baseless—cannot constitute a RICO predicate act of mail fraud or wire fraud. *See, e.g., Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016); *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002); *Applebaum v. Fabian*, No. 22-1049, 2022 U.S. App. LEXIS 32026, at *2 (3d Cir. Nov. 21, 2022); *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1055 (8th Cir. 2024).

As the Second Circuit has explained, "there are compelling policy arguments supporting this rule." *Kim*, 884 F.3d at 104. Allowing RICO claims based on litigation activity "'would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts' because 'any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability.'" *Id* (citations omitted). And "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system. Moreover, allowing such charges would arguably turn many state-law actions for malicious prosecution into federal RICO actions." *Pendergraft*, 297 F.3d at 1208. In other words, "[i]f a suit is groundless or filed in bad faith, the law of

torts may provide a remedy. Resort to a federal criminal statute is unnecessary." *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267-68 (8th Cir. 1984).

Accordingly, to establish the predicate act of mail fraud or wire fraud, a plaintiff "must allege ***wrongdoing beyond the underlying litigation itself***." *In re Chester Park View, LLC*, No. 23-CV-5432 (CS), 2024 U.S. Dist. LEXIS 98461, at *23-24 (S.D.N.Y. May 29, 2024) (emphasis added). Courts have required either evidence of actions outside of court, or outright bribery of witnesses, parties, or judges, for this standard to be met. *Id.* (distinguishing *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 418-20 (S.D.N.Y. 2010), because the defendants in that case "engaged in a variety of other out-of-court actions to further" the alleged fraudulent scheme); *Wang v. Yien-Koo King*, No. 18-CV-8948, 2019 U.S. Dist. LEXIS 67956, 2019 WL 1763230, at *7 (S.D.N.Y. April 22, 2019) ("Plaintiffs have not alleged enough corrupt conduct in connection with the [underlying] action, such as bribery of witnesses or parties, sufficient to hold that the filing of a fraudulent complaint in [and] of itself can constitute criminal mail or wire fraud.")

Here, 3M's allegations of "frivolous" claims and fraudulent litigation activity by the Defendants and their clients cannot constitute a predicate act under RICO. *See Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("allegations that the private defendants made false statements in their various filings and in the course of testifying in the arbitration and Article 75 proceedings cannot support a claim of a substantive RICO violation"); *Snyder v. United States Equities Corp.*, No. 12-CV-6092 CJS, 2014 U.S. Dist. LEXIS 10348, at *28 (W.D.N.Y. Jan. 27, 2014) (finding that

"Plaintiff's claim [which] arises from the fact of the bogus lawsuit against her, and from Defendants' alleged use of perjured documents to obtain a default judgment against her" was insufficient to establish racketeering activity); *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp.3d 1, 13 (D.D.C. 2014) ("Abusive or sham litigation does not constitute a RICO predicate act.") (collecting cases), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015); *Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 61 (D.D.C. 2019)("Courts do not allow allegedly fraudulent 'litigation activities,' such as filing fraudulent documents or engaging in baseless litigation to serve as predicate acts for RICO . . . where such acts constitute 'the only allegedly fraudulent conduct.'"); *Gabovitch v. Shear*, No. 95-1055, 1995 U.S. App. LEXIS 32856, at *5 (1st Cir. Nov. 21, 1995)( "proffering false affidavits and testimony to the state court" does not constitute mail fraud").

3M pleads mail fraud and wire fraud as predicate acts establishing its RICO claims. However, it alleges no plausible facts to support these conclusory labels. Instead, the allegations 3M offers in support consist only of alleged fraudulent *litigation activity* (e,g., sending discovery responses with allegedly false information and filing pleadings containing false statements) (DN 40 at PageID#533.) 3M does not allege any sort of corruption or actions outside of the litigation process itself that could constitute the required criminal activity. Plaintiff has thus failed to plead a minimum of two predicate offenses constituting the racketeering activity to establish a RICO claim. Plaintiff's RICO claims under 18 U.S.C. §§ 1962(c) and 1962(d) should thus be dismissed. *See Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 806 (6th Cir. 2015)

("Plaintiffs' RICO conspiracy claim fails because Plaintiffs failed to allege a substantive RICO violation in the first place.").

> **E.  No Valid Fraud Claim is Stated Where a Plaintiff is Fighting Against the Alleged False Allegations in Court, as opposed to Believing and Relying Upon Them in Any Damaging Respect**

It is not legally possible for 3M to claim fraud by an opposing attorney on the basis of supposedly "fraudulent claims." If such claims were possible, independent fraud claims against attorneys could spring out of virtually every hotly-contested lawsuit – needlessly multiplying the litigation in our courts.  In addition to constituting an improper collateral attack on other litigation (as discussed in Part I.B above), fraud claims must be dismissed for at least three other related reasons.  These reasons involve the failure of 3M to plausibly allege the required elements of fraud under Kentucky law:

> (1) the defendant made a material misrepresentation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted on by the plaintiff, (5) plaintiff acted in **reliance** upon it, and (6) causing injury to plaintiff.

*McIlwain v. Dodd* (W.D. Ky 2022), 2022 U.S. Dist. LEXIS 28764, *31-32 (dismissing fraud claims against attorney, citing *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468, 46 6 Ky. L. Summary 44 (Ky. 1999) and *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App.1978)).  In addition, any claimed reliance must be "reasonable." *Flegles, Inc. v. Truserve Corp.*, 289 S.W.3d 544, 549 (Ky. 2009).

First, since 3M does not allege that it ever believed the allegedly fraudulent claims, it has stated no valid fraud claim.  "The very essence of actionable fraud or deceit is the <u>belief in</u> and reliance upon the statements of the party who seeks to

perpetrate the fraud," and thus "[w]here the plaintiff does not believe the statements or where he has knowledge to the contrary recovery is denied." *Clark v. Danek Med., Inc.*, 64 F.Supp.2d 652, 656 (W.D. Ky 1999) (emphasis added, dismissing fraud claim, citing *Wilson v. Henry*, 340 S.W.2d 449, 451 (Ky. 1960)). 3M alleges that it has always disputed and contested the supposedly fraudulent claims in state court litigation. It thus cannot allege that it was ever "taken in by the [alleged] fraud" such that it believed and relied upon it. *Clark,* 64 F.Supp.2d at 655; *McIlwain*, 2022 U.S. Dist. LEXIS 28764, *31-32 (no reliance upon opposing attorney). The ongoing state court "litigation is proof enough" that 3M "clearly did not rely" on the allegations by defendants. *Jones v. Univ. Med. Ctr., Inc.* (Ky. App. 2025), 2025 Ky. App. Unpub. LEXIS 169, *14.[8]  Accordingly, due to the lack of belief in, and reliance upon the alleged false statements, 3M fails to state a valid claim.

Second, any claimed "reliance, of course, must be reasonable" in order to support a fraud claim, and 3M's claimed reliance is not reasonable or plausible here. *Flegles,* 289 S.W.3d at 549. It is a truism that "[a] plaintiff's interests are adverse to those of a defendant and his counsel." *Tocco v. Richman Greer Prof'l Ass'n*, 553 Fed. Appx. 473, 475 (6th Cir. 2013) (rejecting claim against opposing attorney under Michigan law). "Reasonable reliance by a party [3M] upon an attorney's [Hammond's] representations cannot exist where the interests of that party are adverse to those of the attorney's client." *Id.* Accordingly, the federal Sixth Circuit has held that under

---

[8] 3M is fighting the claims at issue here, not alleging that it is entitled to re-open past settlements as involving "fraudulent claims."  Even if it were trying to re-opening past settlements (which is not the case), the proper remedy involves filing a motion in state court where the settlement occurred.

Kentucky law, statements in litigation pleadings "could not be the basis for a claim
of fraud. *Heavrin v. Nelson*, 384 F.3d 199, 202 (6th Cir. 2004), cited in *Halle v. Banner
Indus. Of N.E.*, 452 S.W.3d 179, 188 (Ky.App. 2014). Likewise, in Kentucky,
"statements made preliminary to, or in the institution of, or during a judicial
proceeding cannot be the basis" for fraud. *Halle*, 452 S.W.3d at 188. Here, 3M has
been using adverse litigation counsel the entire time to fight the supposedly
fraudulent claims. That fight is "proof enough" that there was no reliance, but to the
extent any is claim to the contrary, such reliance is not plausible or reasonable, given
the involvement of adverse counsel.

Third, there are no cognizable damages. There is nothing other than the 3M's
alleged attorney fees and general cost of defending contested litigation. Such alleged
"[d]amages attributable solely to the existence of litigation are clearly insufficient to
sustain the necessary element of damages in a fraud claim." *Saltire Industrial, Inc.
v. Waller, Lansden, Dortch & Davis, LLC*, 491 F.3d 522, 530-32 (6th Cir. 2007)
(finding this point "well taken" in reviewing Tennessee law and dismissing claim of
fraud against opposing law firm). Moreover, there are "more opportune times to
complain" about fees and costs by bringing a motion for "sanctions pursuant to Rule
11" in the underlying litigation. *Id.* Asking another court to address these costs
through a separate fraud claim is not only "less efficient," but "violates fundamental
principals of comity, federalism, and respect for state courts." *Id.* No true damages
are stated.

For all of these reasons, 3M has failed to state a valid fraud claim, and its fraud
claims must be dismissed.

### F.    3M's Civil Conspiracy Claim Fails as No Underlying Tort Exists to Support it.

"A conspiracy is inherently difficult to prove. Notwithstanding that
difficulty, the burden is on the party alleging that a conspiracy exists to establish
each and every element of the claim in order to prevail." *James v. Wilson*, 95 S.W.3d
875, 896 (Ky. Ct. App. 2002). "The 'gist of the civil action for conspiracy is the act or
acts committed in pursuance of the conspiracy, not the actual conspiracy'—meaning
a plaintiff must also prove that the act or acts caused her injuries." *Wallace v.
Midwest Fin. & Mortg. Servs.*, 714 F.3d 414, 423 (6th Cir. 2013) (quoting *James*, 95
S.W.3d at 897). "In this sense, it is substantively similar to RICO § 1962(d)." *Id.*
"[T]he law in Kentucky requires the actual commission of the tortious act or a concert
of action where substantial assistance has been provided in order for liability to
attach based on a civil conspiracy theory." *Id.* at 897-98. Here, as established in the
previous section, 3M's claim for fraud fails; therefore, its claim for conspiracy must
likewise fail as no underlying tort exists to support the claim.

## IV.    Conclusion

For the reasons set forth above, 3M's bold gambit—to collaterally attack
underlying products liability claims by suing three plaintiff attorneys in federal
court—runs afoul of the U.S. and Kentucky Constitutions, principles of judicial
comity, and established RICO precedent. This Court should dismiss with prejudice.

Respectfully submitted,

/s/ Stephen J. Mattingly
R. Kenyon Meyer
Stephen J. Mattingly
Dinsmore & Shohl LLP
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
Ph: 502-540-2300
Fax: 502-540-2529
kenyon.meyer@dinsmore.com
stephen.mattingly@dinsmore.com

and

Richard D. Porotsky
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513-977-8200
richard.porotsky@dinsmore.com

*Attorneys for Defendant, Glenn Hammond*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will serve copies of the same on the following counsel of record:

Benjamin C. Fultz
Gregory Scott Gowen
Robert E. Ranney
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202-3116
bfultz@fmdlegal.com
sgowen@fmdlegal.com
rranney@fmdlegal.com

Steve Grimes
Whitney I. Adams
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
sgrimes@winston.com
wiadams@winston.com

*Attorneys for 3M Company*

Walter C. Morrison, IV
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
240 Trace Colony Park Dr., Suite 100
Ridgeland, Mississippi 39157
wmorrison@gainsben.com

Judd R. Uhl
Russell Morgan Salisbury
Lewis Brisbois Bisgaard & Smith, LLP
- Cincinnati
250 E. Fifth Street, Suite 2000
Cincinnati, Oh 45202
judd.uhl@Lewisbrisbois.com
morgan.salisbury@Lewisbrisbois.com

*Counsel for John Givens*

Matthew R. Palmer-Ball
Wyatt, Tarrant & Combs
400 West Market Street, Suite 2000
Louisville, Kentucky 40202
mpalmerball@wyattfirm.com

David L. Miller
Diane F. Burgess
Miller, Scamardi, Carrabba & Burgess, P.C.
6525 Washington Avenue
Houston, Texas 77007
e-service@msc-lawyer.com

*Counsel for Michael B. Martin*

/s/ Stephen J. Mattingly
*Attorneys for Defendant, Glenn Hammond*

27