# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### SOUTHERN DIVISION
### PIKEVILLE

*Electronically Filed*

|  |  |  |
|---|---|---|
| 3M COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 7:25-cv-37-REW-MAS |
| | ) | |
| GLENN M. HAMMOND, et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANT, MICHAEL B. MARTIN'S MOTION TO DISMISS 3M COMPANY'S FIRST AMENDED COMPLAINT

---

COMES NOW, **MICHAEL B. MARTIN** ("Martin"), Defendant herein, by his undersigned counsel of record, and hereby moves to dismiss the First Amended Complaint of Plaintiff 3M Company ("3M") in its entirety, as 3M lacks standing to bring a RICO claim without an injury that is not based on pure speculation or contingent activity. Alternatively, and, in addition, the *Noerr-Pennington* immunity doctrine for litigation activity bars 3M's federal and state law claims, as 3M's allegations stem solely from litigation activity by Martin and the alleged enterprise. Accordingly, Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal for failure to state a claim upon which relief can be granted. Upon dismissal of 3M's federal RICO claims and based on the derivative nature of the state common law claims, the court should also dismiss 3M's common law claims for fraud and conspiracy, as said claims are based on the same set of operative facts or lack thereof.

## I.    SUMMARY OF RELIEF SOUGHT BY MARTIN

3M's 114-page First Amended Complaint fails to establish the threshold requirements of standing and proximate cause to support a civil-RICO claim.  3M asks this court to award it treble damages and attorney's fees for the defense costs incurred defending dust mask claims brought by Defendants in state and federal courts, including those pending in this court.  Said litigation activity, absent specific allegations of corruption by each defendant, which are absent here, is insufficient to constitute RICO predicate acts.  In addition, the defense cost damages 3M claims as a result of said acts are contingent upon a finding that each of the underlying state and federal court claims are objectively baseless.  Such contingent or speculative damages are insufficient to support a claim for a civil RICO violation.

3M's pleading is an extraordinary attempt to repackage ongoing litigation in state and federal court proceedings into a federal RICO case.  At its core, this lawsuit is an impermissible collateral attack on the dust mask litigation in Kentucky courts – and a transparent attempt to retaliate against attorneys who represent coal miners and their families who suffer from lung injuries related to coal dust exposure.

3M contends the filing of 850 lawsuits in different venues, dismissing some of them and attempting to settle others -- some of which were allegedly time-barred[1] -- constitutes a fraudulent scheme under RICO.  These allegations fall far short of what is required in federal pleading standards based on controlling RICO precedent.  The implausibility of 3M's RICO pleading becomes clear from 3M's agreement with Martin at the first scheduled hearing in 2021, in *Randy Adams v. 3M Company et al,* No. 20-CI-382 (Pike County Circuit Court, Division II).  Due to the

---

[1] 3M fails to acknowledge that the Martin plaintiff groups include specifically pleaded allegations of fraudulent conduct by 3M Company for violation of respirator certification regulations under 30 C.F.R. § 11.140-5 (1972-98). These allegations carry a five-year statute of limitations under Kentucky law. KRS § 413.120 (11); therefore, 3M's one year statute of limitations argument fails.

one-year statute of limitations applicable to product liability claims, lawyers must often file suit to preserve claims that are later determined not to be ripe (e.g., coal miner does not have a diagnosis of coal workers pneumoconiosis. Martin stated at that hearing, to the court and counsel for 3M, that he would review and properly vet all cases in a timely fashion and dismiss cases that were not determined to be viable or ripe for prosecution against 3M, pursuant to the deadline set by court order. 3M acknowledged a similar agreement before this court at an initial hearing in July 2025. In a responsive pleading in state court, 3M characterized this dismissal procedure as commonplace, describing the dismissals as something that "happens all the time." A review of these court transcripts and pleadings illustrates the implausibility of 3M's RICO claim because 3M Company lawyers agreed to allow Plaintiffs' counsel to initiate early dismissal of plaintiffs who may not have viable claims.

3M's factual assertions against Martin concern litigation activities, which, pursuant to *Noerr-Pennington,* cannot serve as the basis for RICO claims. Because application of immunity for litigation activity under the *Noerr-Pennington* doctrine is an affirmative defense, it is appropriate to seek dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Geomatrix, LLC v. NSF Int'l,* 82 F.4th 466, 477-78 (6th Cir. 2023) (citing*, e.g., Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016)).

Even if *Noerr-Pennington* immunity does not apply, which it does, the judicial proceedings privilege negates 3M's factual assertions regarding Martin's conduct, as litigation communications and testimony may not be relied upon to sustain such assertions. *See Heavrin v. Nelson,* 384 F.3d 199, 202 (6th Cir. 2004); *Schmitt v. Mann*, 291 Ky. 80, 163 S.W.2d 281, 283 (Ky. 1942).

Likewise, the First Amended Complaint's fraud and conspiracy counts fail because they lack the particularity required by Federal Rule of Civil Procedure 9(b) and depend entirely on the

3

deficient RICO theories. Also, the allegations fail to sufficiently plead a fraud claim under Kentucky law, as 3M is unable to demonstrate its reliance on a purportedly false statement or an injury caused by the alleged acts of Martin that rises above pure speculation.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss

The court's decision to dismiss a claim, pursuant to Rule 12(b)(6), including review of dismissal pursuant to the *Noerr-Pennington* doctrine, will be reviewed under a *de novo* standard. *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012); *Sosa v. Directv, Inc.,* 437 F.3d 923, 929 (9th Cir. 2006).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court will construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Inner City Contr., LLC v. Charter Twp. of Northville,* 87 F.4th 743, 754 (6th Cir. 2023) (*citing Courtright v. City of Battlecreek,* 839 F.3d 513, 518 (6th Cir. 2016)).

The pleading must contain enough information to give defendants fair notice of both the complaint's claims and the grounds on which they rest. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 (2007). As the *Twombly* court elaborated, federal pleaders must demonstrate their allegations possess enough heft to show an entitlement to relief (and, thus, justify allowing the costly process of litigation to continue.) *Id.* at 557. Enough facts must be pled to raise the plaintiff's claims beyond the level of speculation, by nudging their claims across the line from conceivable to plausible. *Id.* at 555 and 570. Plausibility requires more than labels, conclusions, or a formulaic

recitation of elements. *Id.* at 555; *see also Iqbal,* at 678. Plausibility must appear affirmatively on the face of the pleading. *Twombly,* 550 U.S. at 570. The Eighth Circuit warned that courts need not "mine" lengthy complaints "searching for nuggets that might refute obvious pleading deficiencies." *Neubauer v. FedEx Corp.,* 849 F.3d 400, 404-05 (8th Cir. 2017).

### 1.    Judicial Notice of Ancillary Court Proceedings Permitted

Notwithstanding the confined nature of this Court's review of the pleadings, in the context of a 12(b)(6) motion, this Court may "in undertaking a 12 (b)(6) analysis, take judicial notice of "matters of public record, orders, items appearing in the record of the case." *Electronic Merchant Systems LLC v. Gaal,* 58 F.4th 877, 882 (6th Cir. 2023). Courts may consider public records for the truth of the statements contained within them only when the "contents prove facts whose accuracy cannot reasonably be questioned." *Id.* (citing *Passa v. City of Columbus,* 123 F. App'x 694, 697 (6th Cir. 2005)). In considering public records and transcripts under 12 (b) (6), the Eastern District has further declared that consideration of matters of public record will not convert the 12(b)(6) motion into a motion for summary judgment. *Eubank v. Wesseler,* No. 10-cv-210-DLB-JGW, 2011 WL 3652558 at \*4 (E.D. Ky 2011). This is especially true for prior proceedings in the same case. *Flex Homes, Inc., v Ritz-Craft Corp. of Michigan, Inc.,* 721 F. Supp.2d 663, 667 (N.D. Ohio 2010). In fact, a Defendant may choose to cite pertinent documents in a 12(b)(6) proceeding if Plaintiff fails to do so. *Weiner v. Klais & Co.,* 108 F. 3d 86, 89 (6th Cir. 1997).

To allow otherwise would allow a Plaintiff to survive a motion to dismiss simply by failing to include dispositive documents. *Id.* In this context, this Court may take judicial notice of other court hearing transcripts in a 12(b)(6) proceeding. *Berera v. MESA Medical Group, PLLC,* 2014 WL 29386, 113 A.F.T.R. 2d 2014-636 (E.D. Ky 2014). In *Berera,* the Eastern District held that a hearing transcript is a public record capable of judicial notice, for purposes of a 12 (b)(6) review.

Likewise, a defendant may attach to a motion to dismiss documents which "are considered part of the pleadings if they are referred to in the plaintiff's complaint." *Weiner* 108 F. 3d at 89.

A review of prior court proceedings in the context of 3M's First Amended Complaint demonstrates 3M's claims are not facially plausible. Facial plausibility is a context-specific task that draws on the deciding court's judicial experience and common sense. *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 630 (6th Cir. 2009) (*citing Iqbal,* at 679). To reach the "realm of plausible liability," a pleader's allegations must be found to be factual (not conclusory) and suggestive (not neutral). *Twombly,* 550 U.S. at 557, n.5. The prior court hearings defeat the presumption of truth for 3M's bald assertions of fact, and therefore, the First Amended Complaint fails to overcome the plausibility standard.

## 2.    Civil RICO Claims Require Heightened Pleading Standards

Civil RICO claims impose additional pleading burdens on plaintiffs to avoid dismissal under Rule 12(b)(6). To state a substantive claim under 18 U.S.C. § 1962(c), a plaintiff must plausibly allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, and must demonstrate proximate causation of a cognizable injury. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). A pattern requires related predicate acts with continuity, either open-ended or closed-ended. *See H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989). When the alleged predicate acts sound in fraud, as is the case here, Rule 9(b) imposes heightened requirements: a plaintiff must specify the "who, what, when, where, and how" of the alleged fraud. *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987); *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). Courts strictly enforce these standards to prevent the misuse of RICO as a blunt instrument in ordinary litigation disputes. *Continental Data Systems, Inc. v. Exxon Corp.,* 638 F.Supp. 432, 440

(E.D. Pa. 1986).  Measured against these authorities, 3M's First Amended Complaint falls short.

## B.     Rule 9(b) Pleading Standard for Fraud

When relying on allegations of fraud, the pleader must plead such allegations with particularity.  FED. R. CIV. P. 9(b).  Because of the stigmatizing effect on defendants and their reputations, and the fact said allegations are easily fabricated, the pleading standard for fraud is heightened.  *Bennett v. MIS Corp.,* 607 F.3d 1076, 1101 (6th Cir. 2010). The circumstances constituting the alleged fraud must be pleaded with particularity; thus, more is required than mere conclusory allegations of plans and schemes or bald recitations of the technical elements of fraud. *See Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb, Co.,* 28 F.4th 343, 353 (2nd Cir. 2022); *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC,* 949 F.3d 417, 421 (8th Cir. 2020). Moreover, if the plaintiff's "allegations of fraud are explicitly. . . based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." *Munro v. Lucy Activewear, Inc.,* 899 F.3d 585, (8th Cir. 2018) (citations omitted).

Accordingly, plaintiffs are required to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Bennett,* 607 F.3d at 1100 (*quoting Yuhasz v. Brush Wellman, Inc.,* 341F.3d 559, 563 (6th Cir. 2003)); *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524-25 (6th Cir. 2023).

3M fails to satisfy this pleading standard for its Civil RICO claims and common law fraud and conspiracy claims.  Therefore, 3M's Amended Complaint should be dismissed.

## III.     FACTUAL BACKGROUND

As 3M acknowledges, it is no stranger to these claims. The 3M 8710 and 8210 masks, products that are the subject of these underlying dust mask claims, have been the subject of a

massive number of lawsuits.  In 2004, 3M reported that "for more than 25 years, the Company has defended and resolved the claims of over 340,000 individual claimants alleging injuries from occupational dust exposures."[2]  While 3M settled over 340,000 individual claims, 3M now claims the 850 claims filed by Hammond from 2020-2023 are just a fraudulent scheme to increase 3M's defense costs to extort settlements from 3M.  In the Commonwealth of Kentucky, the Hammond lawsuits represent one of the smaller groups of cases 3M is defending.[3]  There are approximately 6,500 coal mine dust mask cases pending against 3M in Kentucky, as reported by 3M in related litigation to this case.

3M had to report multimillion-dollar verdicts over the 3M 8710, but 3M also boasts to its shareholders that it has settled many claims or achieved dismissals of many of these lawsuits "without any payment by the Company."[4]

In the context of massive litigation defended by 3M, Martin has been involved in only a fraction of cases.  But in these cases, Martin has orchestrated many dismissals for 3M when the evidence did not support 3M being a party to an action, for whatever reason. This court should take judicial notice of agreements and discussions entered into between Martin and 3M Company when these cases were pending in state and federal court.  3M repeatedly references the underlying state court proceedings relating to the Hammond-filed cases in its First Amended Complaint.[5]

Because 3M incorporated by reference the *Randy Adams* and *Brian Adams* cases multiple

---

[2] *See,* **Exhibit 1**, 3M Annual Reports (excerpts) 2003, 2004.
[3] In fact, *Adams v. 3M Company,* Civil Action No. 7;21-CV-82-REW-CJS and *Mounts v. 3M Company,* Civil Action No. 7:21-cv-0086-REW-CJS, are currently pending before this court, and are the same cases that are the subject of the 3M RICO Complaint. 3M's RICO complaint is derived, in part, from these two cases, and constitute 445 (when originally filed, as many have been dismissed) of the 850 plaintiffs contained in the Hammond cases.
[4] *See,* **Exhibit 1**.
[5] 3M specifically references and incorporates for discussion the *Randy Adams v. 3M Company et al,* No. 20-CI-382 (Pike Cir. Ct., Division II) and, in fact, references and incorporates an April 10, 2023 hearing.  *See* Am. Compl. at ¶ 38, n. 21. 3M's pleading references the *Randy Adams* case in its First Amended Complaint twenty-two (22) times.  *See, e.g.,* ¶38, ¶70 ¶108, ¶135, ¶136, ¶168, ¶180.  3M also specifically references *Brian Adams v. 3M Company,* 21 CI-322 (Pike Cir. Ct.) and incorporates that proceeding into its complaint.  *See* Am. Compl. at ¶ 71.

times, this Court may take judicial notice of prior pleadings and transcripts from those proceedings to determine plausibility. *Weiner v. Klais & Co.*, 108 F. 3d at 89-90. Otherwise, 3M Company would be able to escape accountability for the agreements and representations made in prior proceedings which contradict the First Amended Complaint.

For example, in state court, a hearing was held in the *Randy Adams* cases. This was the first hearing on "Group 1" of the Hammond cases, which were on file in the Circuit Court, in addition to the *Brian Adams* cases (also removed to this Court) and *Charles Mounts v. 3M Company,* C.A. No. 21-CI-807 (also removed to this Court). All three cases were originally filed in Pike Circuit Court, Division II.

3M's allegations are directly contradicted by discussions, in open court, where 3M lawyers were not only present, but in agreement with the proposed plan on how the Hammond cases were to be prosecuted. At the very *first* hearing in this litigation, 3M understood that it was Martin's plan to dismiss 3M from cases where it did not belong in order to prevent 3M from incurring unnecessary litigation costs.

The state court, Division II held an initial hearing.[6] At this hearing, Martin articulated his intent to Judge Hall, as previously agreed with the defendants, including 3M. Martin stated:

> Mr. Martin: The other thing that Bryant [3M lawyer Bryant Spann] said that I did want to kind of explain is that either – either we go to trial or – or maybe settle, or a case is dismissed, and—and I've told the Defendants this, and I – that this is the way I prosecute cases across the country. **So, this is – it's very important to me that we don't waste anybody's money.**
>
> **And so, you know, if there is a Defendant in the case where Plaintiff did not, for example, utilize any respiratory protection manufactured by that company, we try and make that determination as early as possible and practical and no – and so we'll – some dismissals will be coming across your desk, you**

---

[6] *See,* **Exhibit 2**, March 15, 2021 Hearing Transcript, *Randy Adams vs. 3M Company,* C.A. No.: 20-CI-382, Pike County Circuit Court, Division II.

**know, now.**  In fact, I think its already happened.[7]

At the hearing, Martin had already explained that he had a conference call with the Defendants where an agreement had been reached on how to prosecute these cases moving forward.[8] In the context of this proposed plan, which included early dismissals of plaintiff with non-viable cases, Martin declared "we don't waste anybody's money."  It is again, impossible, that a RICO claim could exist under these circumstances.  Ironically, 3M's lawyer, Bryant Spann is quoted at the hearing as saying: "I think I agree with – with a lot of what Mr. Martin said.  And you may want to take a – save this video clip for – for a lot of agreement between me and Mr. Martin, over the – over the course of things.  But – but he – he's about right in – in what he said."[9]

Martin's representation on March 15, 2021, was consistent with his earlier filed proposed case management order in the first case, to which 3M lawyers agreed.  In that order, Martin actually placed a deadline of August 15, 2021 for dismissal of any Plaintiff "who did not intend to pursue a claim against a defendant or did not use a respirator."  The Court modified the proposed order requiring dismissals to occur before September 15, 2021 along with scheduling the additional exchange of information.[10]  This Court should also take judicial notice of this Court order.

The case management order and Martin's representations to Judge Hall reflect Martin's intent in the handling of these cases to protect 3M Company from unnecessary litigation costs, not initiate a fraudulent scheme to swindle higher settlement values due to inflated filing of a high number of cases.  The dismissals initiated by Martin were authorized and sanctioned, with 3M's approval, pursuant to a Court order.

Furthermore, this court may also take judicial notice of the transcript of the hearing

---

[7] *See,* **Exhibit 2**, at p. 13:15-14:5 (emphasis added).
[8] *See,* **Exhibit 2**, at p. 5:19-23.
[9] *Id.* at p. 9:14-19.
[10] *See,* **Exhibit 3**, Court Signed Case Management Order in *Randy Adams, et al. v. 3M Company, et al.,* Cause No. 20-

conducted on July 21, 2025,[11] and the discussions which ensued before this court in a similar fashion regarding how these cases are being handled.  As Martin explained to this court, on July 21, 2025:

> Mr. Atkinson: Your Honor, if I may.  We're not going to have a lengthy debate through summary judgment motions about issues of lack of product use. If it comes out in discovery or deposition that we can't, as plaintiffs, or at least for the Whiteford plaintiffs, establish product use, those cases are going to be voluntarily dismissed.
>
> Mr. Martin: Yes, Your Honor.  I've been doing this for 45 years.  I don't think I have ever defended a motion on product use or injury because it has been our practice to get those out of the system as soon as possible.  So hopefully you won't have to deal with that issue.
>
> I think it would be more important to set a deadline for dismissal of those cases that fall into that category, maybe a master deadline for dismissal on product use or injury.  And then you could key a decision off of that. That's what we did in state court before it came up, we had a dismissal deadline.

At the hearing, 3M lawyers did not dispute the Martin/Atkinson representations.  Martin advocated an early dismissal plan, and this Court agreed with the Martin proposal to impose an early dismissal deadline for cases that might be subject to summary judgment motions based on insufficient product identification or medical injury.[12]

With this agreement about dismissals in place in both state and federal proceedings, 3M's pleading is not plausible and is contradicted by these agreements.  A pleading cannot be upheld if it contradicts contrary agreements made in prior proceedings of the same case.  *Flex Homes, Inc.*, 721 F.Supp.2d at 670-71 (comparing complaint to other items appearing in the record of the case); *see also, NRW, Inc. v. Bindra,* 2015 U.S. Dist. LEXIS 77913 at *7 (S.D.N.Y. June 16, 2015) (upholding dismissal of a complaint which contradicted an attached agreement between the parties).

---

CI-00382, Pike County Circuit Court, Division II.
[11] *See* **Exhibit 4**, at p. 17:11 – 18:2, Transcript of Hearing on July 21, 2025, in *Brian Adams, et al. v. 3M,* Civil Action No. 7:21-CV-82-REW-CJS and *Mounts v. 3M Company,* Civil Action No. 7:21-cv-0086-REW-CJS.
[12] *See,* **Exhibit 5**, Ct. Doc. # 255 ¶ 2 (schedule for voluntary dismissals) in *Brian Adams, et al., v. 3M, et al.*, Civil Action No. 7:21-CV-82-REW-CJS.

Not only do the hearing transcripts and orders entered in these proceedings negate 3M's allegations, but 3M's own pleadings acknowledge its agreement to proceed as Martin articulated at the outset of these cases.  Specifically, in 3M's Company's Opposition to Plaintiffs' Motion for [Individual] Trial Setting,[13] 3M judicially admits its agreement to the voluntary dismissal program articulated at the outset of the litigation:

> Good trial candidates are, at a minimum, cases with some reasonable probability of proceeding. Obviously, **cases due to be dismissed or transferred from this Court do not qualify.** Nor do cases whose facts are so undeveloped that it is impossible to predict whether the case will proceed (and if so, against which Defendants). An un-deposed Plaintiff may not even identify a 3M product in his testimony, **leading to a quick voluntary dismissal of 3M. It happens all the time.**

Thus, 3M's allegation that the "core purpose" of the Enterprise "was to increase the inventory of cases Defendants filed against 3M to increase the amount of money 3M would have to spend defending these cases" is completely undermined as false by court transcripts relating to this litigation.  *See* Am. Compl. at ¶ 45.

3M's pleading ignores both the 2021 and the 2025 hearings, as if they never happened, in an effort to fabricate a false narrative.  Pursuant to Martin's dismissal agreement with 3M, in the *Randy Adams* case, Martin filed forty partial dismissals in favor of the defendants.[14]  In the *Brian Adams* case, before the case was removed, Martin filed eleven dismissals in favor of the defendants.[15]

In dismissals orchestrated by Martin in these cases, 3M Company did not assert fraud as a defense or basis to object to the dismissal of a case without prejudice in the state court proceeding. 3M agreed to these dismissals because they were filed in concert with an agreement between the

---

[13] *See* **Exhibit 6**, 3M Company's Opposition to Plaintiff's Motion for Trial Setting, filed in *Randy Adams, et al. v. 3M Company, et al.*:  Cause No. 20-CI-00382, Pike Circuit Court, Division II (May 5, 2021), at pages 5-6 (emphasis added).

[14] *See,* **Exhibit 7**, *Randy Adams* Dismissals.
[15] *See,* **Exhibit 8**, *Brian Adams* Dismissals.

parties that nonviable cases would be dismissed early. In the context of this agreement, there can be no scheme to perpetrate fraud, through filing of a large number of unmeritorious cases, when 3M agreed that Martin that these cases would be subject to an early dismissal and these dismissals were carried out.

## IV. 3M'S FACTUAL ALLEGATIONS ASSERTED AGAINST MARTIN ARE FALSE, INSUFFICIENT, CONCLUSORY OR SPECULATIVE AND DO NOT SUPPORT PLAUSIBLE CLAIMS OF LIABILITY AGAINST MARTIN

3M fails to specify actual conduct or actions of Martin, versus Hammond. Instead, 3M attempts to attribute the actions of Hammond to Martin. Furthermore, none of the allegations, factual or otherwise, occurred outside of the legal representation of dust mask clients described by 3M as the "Enterprise Complaints."

### A. Martin handles respirator litigation . . . on a case by case basis, only" and "has never grouped his clients in a single case."

3M maintains Martin falsely represents his experience and legal strategy on his website based on the mass filing of lawsuits with multiple plaintiffs versus single plaintiff cases. *See* Am. Comp. at ¶16.

As 3M is also aware and concedes, the first lawsuit styled *Randy Adams, et al. v. 3M, et al.,* which included 53 plaintiffs, had already been filed ***before*** Martin was even engaged by Hammond to assist in the litigation. *See* Am. Compl. at ¶¶ 34, 38, 70. Martin's preference to file single party lawsuits, versus Hammond's practice, does not constitute a misrepresentation or criminal activity.

### B. Martin's Alleged Misconduct in Prior Case Against 3M – Clark Kirkland

The next allegation claims Martin previously engaged in misconduct in cases he filed against 3M and – once caught – leaving an unwitting client [Clark Kirkland] to pick up the pieces. *See* Am. Compl. at ¶ 17. Lifted from a comment made by Judge Jack in her 2005 silica MDL opinion, 3M

omits the fact Judge Jack never found Martin committed fraud, as 3M improperly implies.[16]

**C.    Filing of Lawsuits and Engaging in the Litigation Process is Protected Litigation Activity Not Factual Allegations of Fraud or Criminal Activity.**

3M relies extensively, if not exclusively, on litigation of the dust mask claims as Martin's role in the alleged enterprise to perpetrate the alleged scheme to defraud 3M. *See* Am. Compl. at ¶¶ 37 ("Martin's duties"), 52 ("in 850 claims across at least 22 Enterprise complaints . . . it included fraudulent statements made to 3M and [unknown] others and it involved substantial in-court and out-of-court conduct"). Without reference to the speculative or conclusory nature of the allegations, all of the alleged false statements pertain to, or are in reference to, pleadings, discovery, or communications with clients, 3M, or the court, none of which are specifically identified by 3M, but all of which are protected litigation activity. *See* Am. Compl. at ¶¶ 49 ("misinformed coal workers about the validity of their claim"), 53 – 60, 69 – 91, 92 – 95 (alleged "False statements of injury [i]n Enterprise Complaints"), 96 – 98 (alleged "False Claim of Mask Usage [i]n each Enterprise Complaint"), 99 – 101 (alleged "False Identification of 3M Dust Mask [i]n Enterprise Complaints filed"), 102 – 111 (alleged "False Claims of Statute of Limitations Compliance [i]n Enterprise Complaints filed"), 122 – 130 (alleged False Statements to be Made and Communicated to 3M in Discovery, including False Authorization Forms, False Interrogatory Responses, and False Deposition Testimony).

Similarly, recruitment and intake of coal miners, was not performed by Martin, but in any event is also protected litigation activity, as it is incidental to the petitioning process. *See* Am. Compl. at ¶¶ 61 – 68. Likewise, efforts to negotiate settlement of cases in litigation remains protected litigation activity. *See* Am. Compl. at ¶¶ 131 – 134.

---

[16] *See In re Silica Prod. Liab. Litig.,* 398 F.Supp.2d 563, 643-45 (S.D. Tex. 2005) (Martin filed a Motion to Dismiss 3M with prejudice because Kirkland represented to the Veteran's Administration he had not worn a mask, and Martin was permitted to withdraw as counsel of record following Mr. Kirkland's deposition).

The factual allegations asserted against Martin to prove intent to defraud are limited to his alleged recklessness toward false and misleading information. *See* Am. Compl. at ¶¶ 108, 112 - 117. These statements attributed to Martin, from a deposition in another proceeding, are not only taken out of context, but reliance on said testimony is prohibited by the judicial proceedings privilege. However, each of the statements used to allegedly support an intent to defraud pertain to Martin's alleged conduct in litigation of the Enterprise Complaints—again, protected litigation activity that is neither fraudulent nor criminal.

Allegations attributed to Martin's alleged efforts to conceal the scheme are all based on protected litigation activity. *See* Am. Compl. at ¶¶ 135 – 137 (dismissal of 16 claims from Enterprise Complaint #1), 138 – 148 (filing of pleadings and dismissal or withdrawal of same based on Hammond affidavit), 149 – 153 (Martin's expression of frustration does not constitute criminal activity and said statements, albeit out of context, even if true, were made in the context of prosecution or settlement of the pending dust mask claims), 154 – 162 (filing dismissal of claims from Enterprise Complaints 2, 3 and 4, and withdrawing said motions in response to 3M's motion, is again protected litigation activity and consistent with Martin's dismissal program), 163 – 170 (filing of Motions to Stay in the Enterprise Complaints by Martin and Givens, appearing in court on behalf of their clients regarding said motions, and possession of Hammond's "Active Dust Mask Client" spreadsheet, is protected litigation activity), 171 – 175 (observation of Hammond's file room during the course of the dust mask litigation, conduct of Martin in preparation for deposition and during trial of dusk mask claims is protected litigation activity), 176 – 187 (filing of Motions to Withdraw by Martin and Givens is protected litigation activity), 194 – 195 (Martin's filing of pleadings in response to 3M's Rule 202 petition is protected litigation activity).

## V.     ARGUMENT AND AUTHORITIES

### A.     Lack of Standing Precludes 3M's Civil RICO Suit

3M lacks standing to bring this action under the RICO standing requirement of 18 U.S.C. §1964(c).  3M cannot claim any damages to its business or property because the costs of defending a lawsuit brought by attorneys for coal miners sick with lung disease do not satisfy the injury requirement of section 1964(c).  The Supreme Court has "held that a plaintiff's right to sue . . . required a showing that the defendant's violation not only was a 'but for' cause of his injury but was the proximate cause as well."  *Holmes*, 503 U.S. at 268.

3M claims injury both in harm to its reputation and for the cost of defending the cases related to its 8710 and 8210 dust masks.  The reputational harm 3M claims cannot be attributed to the 850 cases upon which 3M bases the present action.  As 3M points out, it has defended thousands of dust mask suits against it in Kentucky alone.  These 850 cases are only a portion of a universe of such cases in Kentucky, and they follow thousands of other cases, where, if 3M's reputation has been damaged at all, it was damaged long ago by those other cases.  No credible injury to 3M's reputation can be attributed solely to these cases.

The other injury, the cost of defending the cases, most of which are ongoing and none of which have reached trial, is at best a speculative injury.  "A RICO injury must be concrete, not intangible or speculative."  *See Saro v. Brown,* 11 F. App'x 387, 389 (6th Cir. 2001).  *See also Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989) (explaining that RICO plaintiffs must identify a "reasonable and principled basis of recovery" which is "not based upon mere speculation and surmise").  An injury that "necessarily is contingent upon the impact of events in the future which have not yet occurred" will not suffice. *Maio v. Aetna, Inc*. 221 F. 3d 472, 495 (3d Cir. 2000).  Accordingly, a broad request for unlimited defense costs in cases with unknown outcomes is not

recoverable under RICO.

The issue of standing and proximate cause overlap in civil-RICO claims. *Holmes,* 503 U.S. at 267-68 (1992). In other words, RICO's directness requirement is matter of statutory standing. *Desiano v. Warner-Lambert Co.,* 326 F.3d 339, 346 (2nd Cir. 2003). Assuming a direct relationship exists between 3M and Martin, or the enterprise, 3M is unable to show the causal link between the alleged RICO violations, 3M's allegations of mail and wire fraud based on the filing of fraudulent claims or other protected litigation activity, and the injury, the defense costs incurred.

As many circuits have concluded, "allegations of frivolous, fraudulent or baseless litigation activities, without more, cannot constitute a RICO predicate act. *Kim v. Kimm,* 884 F.3d 98, 104 (2nd Cir. 2018); *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1087-88 (11th Cir. 2004) (deciding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" were not predicate acts of extortion or mail fraud under RICO). In the absence of viable predicate acts, causation cannot be established through insubstantial, unforeseeable, speculative, illogical, or intervening causes – as is clearly the case here. *Trollinger v. Tyson Foods, Inc.,* 370 F.3d 602, 614-15 (6th Cir. 2004) (citing *Perry v. Am. Tobacco Co., Inc.,* 324 F.3d 845, 850 (6th Cir. 2003); *Fleischhauer v. Feltner,* 879 F.2d 1290, 1299 (6th Cir. 1989)).

**B.      The *Noerr-Pennington* Doctrine Immunizes Martin's Conduct and Mandates Dismissal of 3M's Civil RICO and State Law Claims**

The *Noerr-Pennington* doctrine immunizes *conduct*, protected by the First Amendment. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 505 (1988) ("[I]n *Noerr* we immunized conduct that could be characterized as a conspiracy . . . ."). The Sixth Circuit has applied *Noerr-Pennington* in its traditional antitrust context. *Geomatrix, LLC v. NSF Int'l,* 82 F.4th 466 (6th Cir. 2023).

Martin is entitled to First Amendment protection to petition the government via litigation

under the *Noerr-Pennington* doctrine, including for his alleged conduct in violation of the Civil RICO statutes and common law fraud and conspiracy claims, because it protects activity directed toward influencing government action, so long as it is not a sham. *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 51 (1993).

Although the Sixth Circuit has not yet applied *Noerr-Pennington* immunity to civil RICO suits, as other circuits have done, in *BE&K Constr. Co. v. NLRB*, the Supreme Court *reversed* the Sixth Circuit's attempt to limit the doctrine's application to petitioning that is not motivated by anticompetitive intent. 536 U.S. 516 (2002) (extending the application of immunity to labor disputes).

In *Bill Johnson's Restaurants, Inc. v. NLRB,* followed by *BE&K Construction Co. v. NLRB,* the Court resolved the same underlying issue of when litigation may be found to violate federal law, but did so with respect to violations of the NLRA, not the traditional antitrust provisions of the Sherman Act. 461 U.S. 731 (1983). Relying on federalist principles and the First Amendment, the Supreme Court recognized the right to petition as one of "the most precious of the liberties safeguarded by the Bill of Rights." *BE&K,* at 524-25 (citations omitted). In *BE&K*, Justice O'Connor recited the basis for the Court's decisions in *Noerr* and *Pennington*, to illustrate the basis for expanding the immunity from liability provided for antitrust claims to other federal laws:

> These antitrust immunity principles were then extended to situations where groups "use . . . *courts* to advocate their causes and points of view respecting resolution of their business and economic interests *vis-a-vis* their competitors." We thus made explicit that "the right to petition extends to all departments of the Government," and that "the **right of access to the courts is . . . but one aspect of the right of petition.**"

*Id.* at 525 (emphasis added) (internal citations omitted). This line of cases established that genuine petitioning is immune from liability. *Id.* at 526.

In deciding whether the Board's standard for declaring completed suits unlawful under the

NLRA raised First Amendment concerns, if unsuccessful but not objectively baseless, the Supreme Court opined that successful and unsuccessful suits alike allow the "public airing of disputed facts . . . and raise matters of public concern." *Id.* at 532 (quoting *Bill Johnson's*, 461 U.S. at 743). . These unsuccessful suits also promote the evolution of the law by supporting the development of legal theories that may not gain acceptance the first time around. *Id.*

Under this lens, the Supreme Court attempts to resolve the difficult constitutional question of whether a class of petitioning may be declared unlawful ***when a substantial portion*** of it is subjectively and objectively genuine. *Id.* at 535 (emphasis added). In making this determination the Court conducted a three-step analysis:

1) what is the burden that the threat of an adverse federal statutory adjudication imposes on a litigant's petitioning rights;

2) what is the precise petitioning activity at issue, to determine whether the burden on that activity implicated the protection of the Petition Clause; and

3) can the federal statute be construed to preclude such a burden on the protected petitioning activity.

In *BE&K*, the Court held the Board's standard permitting it to impose liability on an employer who filed a losing retaliatory lawsuit against an employee was invalid, as long as the employer's losing suit was not objectively baseless. In other words, the employer was immune from liability because the federal law – section 158(a)(1) of the NLRA – interfered with the employer's constitutional right to petition the courts. *Id.* at 536.

Following the Supreme Court's expansion of First Amendment protections to other federal laws outside the antitrust context, other circuits have expanded the scope of immunity under the *Noerr-Pennington* doctrine to defendants sued for filing lawsuits in alleged violation of the civil RICO statutes, as 3M asserts against Martin. *See, e.g.*, *Int'l Broth. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) ("Although the *Noerr-*

*Pennington* doctrine originated in antitrust law, its rationale is equally applicable to RICO suits.").[17]

The Ninth Circuit concluded "the *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa,* 437 F.3d at 931. This generic rule is consistent with the Supreme Court's expressed concern for the fundamental protections of the Bill of Rights, prohibiting Congressional interference with the exercise of specific liberties, when it quoted the First Amendment protections: "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." *BE&K,* 536 U.S. at 524. In essence, those who petition any department of the government, including the judiciary, are generally immune from statutory liability for their petitioning conduct.

In conducting the three-part inquiry, the Ninth Circuit confirmed that a successful RICO claim would quite plainly burden DIRECTV's ability to settle legal claims short of filing a lawsuit. *Sosa,* 437 F.3d at 933. Because RICO provides for private enforcement and treble damages, its burden on petitioning is akin to that posed by the Sherman Act. *Id.* As for the second prong of the *BE&K* analysis, the court considered whether demand letters constitute either protected petitioning activity or activity which must be protected to afford breathing space to the right of petition guaranteed by the First Amendment. *Id.* Where the underlying litigation falls within the protection of the Petition Clause, such incidental conduct – sending a demand letter or accepting or rejecting an offer of settlement – is conduct incidental to the prosecution of the suit and should also be protected. *Id.* at 934-35. Similarly, in *Freeman v. Lasky, Haas & Cohler,* 410 F.3d 1180, 1184 (9th Cir. 2005),

---

[17] *See also EQMD, Inc. v. Farm Bureau Gen. Ins. Co. of Mich.,* 2021 U.S. Dist. LEXIS 41521, at *11-12, n.1 (E.D. Mich. March 5, 2021) ("It is true that some courts have questioned the direct application of *Noerr-Pennington* outside of antitrust . . . The court finds no reason, nor has EQMD provided one, to find that Defendants are not immune from suit regardless of whether the court calls it Petition Clause immunity or *Noerr-Pennington;* here, Defendants were directly petitioning the courts."). The Kentucky Supreme Court has also recently expanded application of the doctrine to zoning disputes. *Seiller Waterman, LLC v. Bardstown Cap. Corp.,* 643 S.W.3d 68, 76 (Ky. 2022) (citing *Grand Communities, Ltd. v. Stepner,* 170 S.W.3d 411, 413-14 (Ky. App. 2004)).

the court held discovery communications, while not themselves petitions, also constitute conduct incidental to a petition.

The *Sosa* court rejected the notion that the pre-suit nature of a demand made any difference to the analysis. As the sham exception to the *Noerr-Pennington* doctrine provides adequate protection against baseless claims asserted in prelitigation settlement letters. *Sosa,* 437 F.3d at 936 (citing *Prof. Real Estate Investors, Inc.,* 508 U.S. at 60-61). Prohibiting application of First Amendment protection to prelitigation conduct, when the same demands asserted in a petition to the court are protected, would render the entire litigation process more onerous, imposing a substantial burden on a party's ability to seek redress from the courts. *Id.*

A majority of the federal circuits agree with the Ninth Circuit that litigation or petitioning activity cannot serve as the basis for the predicate acts to support RICO liability. The Eighth Circuit has held that even "groundless," "bad faith" "threat[s] to sue" cannot serve as RICO predicates. *See UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1055 (8th Cir. 2024); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984).

The Tenth Circuit has held that litigation activity should be protected from being the predicate grounds for RICO liability. *See Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) ("[I]t would be fair, at least in other contexts, to characterize as 'wrongful' the filing of a groundless lawsuit, particularly when the plaintiff resorts to fraudulent evidence. But we join a multitude of other courts in holding that meritless litigation is not extortion under § 1951."). That case concerned extortion, but as seen in previous cases, the doctrine of protecting litigation activity, although in varying degrees, has been applied to all types of RICO predicate acts.

The Eleventh Circuit has ruled that litigation activity, even such that is "in bad faith and supported by false affidavits" is protected from forming the basis of RICO predicates. *See U.S. v.*

21

*Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002). *Pendergraft* further held, absent an intent to deceive the victim, the "mailing of litigation documents, even perjurious ones, did not violate the mail-fraud statute" because there cannot be a "scheme to defraud" absent an intent to deceive. *Id.* at 1209. The Eleventh Circuit has extended *Pendergraft* to cover litigation that has already commenced, as here. *Raney v. Allstate Ins. Co.*, 37-0 F.3d 1086, 1088 (11th Cir. 2004).

3M's First Amended Complaint cited *United States v. Eisen*, a 1992 Second Circuit case, to assert that mail fraud could be found based on litigation activity alone, but this ruling has long been clarified by subsequent case law. *See Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 175 (E.D.N.Y. 2010), *aff'd sub nom*, *Curtis v. Law Offices of David M. Bushman*, Esq., 443 Fed. Appx. 582 (2d Cir. 2011) ("[T]he holding in *Eisen* did not reach the issue here regarding whether litigation activities alone can suffice as RICO predicate acts of mail and wire fraud. . . *Eisen* amounted to far more than mere 'litigation activities,' and instead involved an extensive and broader scheme to defraud.").

The Fifth Circuit has established that bad faith litigation, absent actual criminal activity, cannot be the basis for civil-RICO liability. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524 (5th Cir. 2016) ("[C]ivil-RICO liability should not exist unless the pleadings allege actual criminal activity."). "[P]rosecuting litigation activities as federal crimes could undermine the policies of access and finality that animate our legal system . . . allowing such charges would arguably turn many state-law actions for malicious prosecution into federal RICO actions." *Id.* at 525.

The *Noerr-Pennington* immunity for petitioning has also been expanded to include protection from common law tort claims. *See e.g., Video Int'l Prod., Inc. v. Warner-Amex Cable Commuc'ns, Inc.,* 858 F.2d 1075, 1084 (5th Cir. 1988) ("There is simply no reason that a common-law tort

doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust).

Martin's purported role is decidedly limited to litigation activities and he lacked awareness of, and never participated in, any criminal act that could be considered to contribute to a broader scheme to defraud.

### 1.    Martin's conduct is protected by the Noerr-Pennington doctrine

3M's First Amended Complaint fails to attribute any conduct to Martin that he performed outside the litigation context.  Instead, all the relevant factual allegations to 3M's claims of Martin's participation in an alleged criminal enterprise in violation of the civil RICO statute consists of his conduct performed as a lawyer with other lawyers representing the same clients in dust mask cases against 3M.  *See supra*, Sec. IV., C.  All of Martin's alleged misconduct occurred in the prosecution of the litigation of "the Enterprise complaints," through filing of pleadings, discovery and communications with 3M, clients, and the court, as well as the dismissal and attempted settlement of said dusk mask claims.  *Id.*

These acts all concern necessary actions taken by Martin to accomplish litigation activity and do not show any knowledge or participation in any criminal activity, even if assumed true.  No allegation of Martin's knowledge of or participation in the criminal acts of forgery attributed to Hammond or his staff in forging dates and signatures on legal documents has been sufficiently pled. Furthermore, any representation made to the courts or 3M that a specific plaintiff used 3M masks, had Black Lung Disease, or brought a timely case, whether those assertions were true or not, fall firmly into "litigation activity" and will be protected as long as the litigation is not found to be objectively baseless.

## 2. Martin's conduct in litigating dust mask claims was not objectively baseless.

Prior to its expansion of the First Amendment protections to petition the government outside the antitrust context, the Supreme Court had already carved out an exception to the immunity provided by the *Noerr-Pennington* doctrine for sham litigation. In *Professional Real Estate Investors,* the Supreme Court adopted a two-part definition of sham anti-trust litigation: first, it "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; second, the litigant's subjective motivation must "conceal an attempt to interfere *directly with the business relationships of a competitor . . . through the use [of] the governmental process* -- as opposed to the *outcome* of that process -- as an anticompetitive weapon." *BE&K*, 536 U.S. at 526 (quoting *Prof'l Real Estate Inv'rs,* 508 U.S. at 60-61) (internal quotation marks omitted; emphasis in original)). Both parts must be present for a suit to violate the antitrust laws, as it must be a sham *both* objectively and subjectively. *Id.*

As a threshold matter, only if the challenged litigation is objectively baseless, may a court examine the litigant's subjective motivation. *Seiller Waterman, LLC v. Bardstown Cap. Corp.,* 643 S.W.3d 68, 82 (Ky. 2022) (*citing Prof'l Real Estate Inv'rs,* 508 U.S. at 66). The objectively reasonable prong is not based on hindsight. *Id.* According to the Third Circuit, "the essential question is not whether the suit succeeds, but whether the suit was a sham at the time it was filed." *In re Wellbutrin XL Antitrust Litig.,* 868 F.3d 132, 149 (3rd Cir. 2017) (*citing Prof'l Real Estate Inv'rs,* 508 U.S. at 60 n. 5).

Here, 3M has not pleaded sufficient facts to invoke the sham exception as to Martin. Instead, the filing of lawsuits on behalf of coal miners against 3M and other respirator defendants squarely invokes the Petition Clause. Similarly, serving discovery or exchanging correspondence pertaining to the lawsuits is also conduct protected by *Noerr-Pennington* as it is also related to the lawsuits or

incidental to the right to petition. Moreover, each of the underlying cases includes a fraud claim against 3M, which is another reason the complaints in those cases were not objectively baseless, as there is no allegation that the fraud claims were filed beyond the statute of limitations. As the Supreme Court noted, even if a suit is eventually determined to be without merit, the suit is not objectively baseless if the plaintiff does not prevail. *BE&K*, 536 U.S. at 526.

3M does not have sufficient facts to defeat immunity from the RICO and common law claims to support the sham litigation exception, as the lawsuits were not objectively baseless at the time they were filed. It is noteworthy that the majority of the claims filed remain pending.

### a.    Scheme to Defraud

Alternatively, even if the *Noerr-Pennington* doctrine did not immunize Martin's litigation activity, publicly available information shows that Martin did not have the requisite intent to deceive 3M sufficient to establish a scheme to defraud under 18 U.S.C. § 1341. Specifically, the statute requires a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341; *Heinrich v. Waiting Angels Adoption Servs.,* 668 F.3d 393, 404 (6th 2012).

Often, prospective plaintiffs come to a lawyer who must file before he has time to acquire the medical records to determine the nature of illness. In Kentucky, which has a one-year statute of limitations for product liability claims, it is safer to file a protective lawsuit for a plaintiff, who may not be diagnosed, but thinks he may be diagnosed, and dismiss it without prejudice if medical records later reflect there is no disease. There is nothing fraudulent about filing a case if a plaintiff believes he has pneumoconiosis and later determines he may have been mistaken. 3M has willingly accepted dismissals in these types of cases for decades, never claiming fraud.

As referenced at length above, Martin had already begun dismissing cases, as authorized by a

Court order.  *See* Am. Compl. at ¶¶ 135 – 136.  Such dismissals do not reflect fraudulent conduct.

Also, to suggest that filing a case that *may* be barred by the statute of limitations is commensurate with fraud would shift to plaintiffs the defendant's burden of proving the affirmative defense of statute of limitations – a defense the defendant must establish by the preponderance of the evidence, and can certainly not be determined at the time the case is filed.  Said lawsuits are not fraudulent or objectively baseless.

### C.    The Amended Complaint Fails to Plead a Plausible Claim Under RICO, 18 U.S.C. 1962 (c) and (d), or Any Other Recognized Theory of Civil Liability

#### 1.    Civil RICO (18 U.S.C. § 1962(c))

To state a substantive Civil RICO claim, a plaintiff must establish the following elements: "(1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity.  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S.479, 496 (1985).

##### a.    Defendants do not constitute an enterprise by association-in-fact

To plead an enterprise under a RICO claim by association-in-fact, a plaintiff must allege sufficient facts to establish: 1) the existence of an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; 2) the members of the enterprise functioned as a continuing unit with established duties; and 3) the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.  *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793 (6th Cir. 2012); *see also Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993).

A "properly pled RICO claim must cogently allege activity that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact." *Frank v. D'Ambrosi*, 4 F.3d at 1386.  An "association in fact" enterprise requires "an ongoing organization, formal or informal," with the various associates functioning as a "continuing unit." *Shields v.*

*UNUM Provident Corp.*, 415 U.S. 686, 692 (6th Cir. 2011).

> **i.    Defendants did not create an ongoing organization that functioned as a continuing unit with established duties.**

The hallmark of a RICO enterprise is its ability to exist apart from the pattern of wrongdoing. *See VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000) reversed on other grounds. Conspiring to commit fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes. *See id.* As evident from 3M's pleading, the only wrongdoing asserted against Defendants pertains to the litigation of the "Enterprise complaints," and conduct incidental to it, without any reference for the intent of Defendants to continue the association for any other purpose.

3M alleges Defendants functioned as an ongoing association for the shared and common purpose of achieving the illegal objectives of the Enterprise. *See* First Am. Compl., at ¶ 33. 3M fails to describe any structure that would allow the organization to exist or operate beyond the alleged racketeering activity. 3M admits Defendants operated their own separate firms and were never officers or employees of the other firms. *See id*.

3M alleges Defendants entered into a referral agreement regarding the claims at issue and further alleges this agreement provided for fees to be split between Defendant's respective firms. *See id.*, at ¶¶ 38-39, and n.23, referring to the May 5, 2020 Martin-Hammond Retention Agreement. However, this agreement clearly only applied to the claims against 3M and other respirator defendants and nothing more. It certainly does not lend itself to the creation of a continuing operation of an organization capable of anything beyond the prosecution of those claims, as required to constitute an enterprise.

3M attempts to create the illusion that Defendants fulfilled separate roles with established duties by describing the same activities with different language. For example, 3M states Martin

litigated claims and pressured 3M to settle while Defendant Givens interacted with 3M counsel. *See id*., at ¶ 37. However, pressuring a party to settle obviously requires interaction with opposing counsel; and this is simply a part of litigation. Similarly, Plaintiff stated Martin litigated claims through discovery, while Givens obtained information from clients to respond to discovery requests and prepared clients for depositions. *See id*. However, these allegations are all references to the same discovery process, which, again, is all an essential part of litigation.

Additionally, 3M alleges all defendants filed cases against 3M. *See id*., at ¶¶ 36-37. 3M also admits Martin and Givens both served as co-lead counsel. *See id*., at ¶ 38. This, by definition, is the same role consisting of the same duties. Essentially, 3M claims all Defendants engaged in litigation against 3M, with no meaningful difference in each Defendant's established duties.

Fatal to 3M's allegations is the non-existence of a continuing unit with established duties beyond the prosecution of its claims against 3M.

### ii.    Plaintiff does not allege the existence of an enterprise distinct from the racketeering activity.

The law requires that the enterprise "existed for a purpose separate and distinct from the pattern of racketeering." *Pompy v. First Merchs. Bank*, 2025 U.S. App LEXIS 12703, at *20 (6th Cir. 2025). In *Pompy*, the court found Plaintiff's complaint failed to state a claim when it did not allege such an existence. The same is true here.

Nowhere in the 114 pages that make up 3M's First Amended Complaint does 3M ever allege the enterprise was separate and distinct from the pattern of racketeering activity in which it allegedly engaged. Moreover, 3M admits as much in its First Amended Complaint. 3M's pleading alleges Defendants banded together for the purpose of cheating 3M by filing as many claims against 3M as possible, and thereby inducing 3M to settle the claims *en masse* instead of litigating them on the merits. *See* First Amend. Compl. at ¶ 207. Thus, Plaintiff alleges the enterprise's entire purpose was

the alleged racketeering activity. In doing so, the complaint impermissibly conflates the alleged enterprise with the alleged activity.

3M demonstrates no activity separate and apart from the racketeering activity when it alleges that a core purpose of the Enterprise was to increase the inventory of cases Defendants filed against 3M, thereby increasing 3M's litigation costs, risk exposure, and pressure to settle. *See id.* at ¶ 45. 3M also admits Defendants had no business relationship prior to the pursuit of the litigation against 3M. *See id.* at ¶ 33. 3M admits the enterprise began with the collective filing of claims against 3M. *See id.* at ¶ 34.

By alleging Defendants committed hundreds of separate acts of mail and wire fraud, 3M attempts to characterize these acts as separate acts of racketeering activity. *See id.* at ¶ 42. However, 3M admits those would be predicate acts in furtherance of the alleged scheme at issue, not separate racketeering acts to constitute the existence of a criminal enterprise. *See id.*, at ¶¶ 196-197. 3M fails to allege any racketeering acts separate and apart from the litigation of dust mask claims to support the existence of an enterprise.

### iii. The judicial proceedings privilege prohibits 3M's reliance on Martin's statements to the court to support conduct of the enterprise.

3M's reliance on Martin's statements to the court, communications to the court at hearings or in pleadings, or communications or lack thereof with the clients in the dust mask claims against 3M are protected by the judicial proceedings privilege, which precludes the use of said privileged statements to support a cause of action. *See supra,* at IV.C.; *Halle v. Banner Indus. of N.E., Inc.,* 453 S.W.3d 179, 184 (Ky. App. 2014). Accordingly, 3M's reliance on Martin's communications in judicial proceedings may not be considered as facts in support of Martin's alleged conduct in the alleged enterprise.

Likewise, 3M's reliance on Martin's deposition testimony from the Texas Rule 202 proceeding is similarly misplaced. *See supra,* at IV.C. In *Heavrin v. Nelson,* the plaintiff relied exclusively on the testimony of a defendant, who was a witness in plaintiff's criminal trial, and the proofs of claim filed by defendants in a prior bankruptcy proceeding, to support civil claims for damages against defendants for fraud, perjury and the tort of outrage. *See* 384 F.3d 199, 202 (6th Cir. 2004). In affirming the dismissal of plaintiff's claims for failure to state a claim, the Sixth Circuit held there was no basis for concluding that any of the claims arise from conduct that is not protected by the judicial-proceedings privilege. *Id.* at 203. As long as the statements are material, pertinent and relevant to the subject under inquiry, statements in pleadings filed or the testimony of a witness given in a judicial proceeding are absolutely privileged. *Schmitt v. Mann*, 291 Ky. 80, 163 S.W.2d 281, 283 (Ky. 1942); *McClarty v. Bickel*, 155 Ky. 254, 159 S.W. 783, 784 (Ky. 1913); *cf. Bryant v. Kentucky*, 490 F.2d 1273, 1274 (6th Cir. 1974).

In summary, to the extent 3M relies on the factual allegations in pleadings, communications and deposition testimony of Martin in judicial proceedings to support his alleged conduct in the RICO enterprise, its RICO claims must fail.

### c.    Pattern of Racketeering Activity

A pattern of racketeering activity consists of two or more predicate acts that are related and amount to or pose a threat of continued criminal activity. *H.J. Inc.*, 492 U.S. at 239. It is this factor of continuity plus relationship that combine to produce a pattern. *Id.*

### i.    Predicate Criminal Acts

3M's First Amended Complaint alleges that Martin has engaged in at least two instances of mail and/or wire fraud. To commit mail fraud, a person must (1) intentionally participate in a scheme to defraud and (2) use the mails in furtherance of the scheme. *See* 18 U.S.C. § 1341;

*Heinrich,* 668 F.3d at 404 (6th 2012). Therefore, the complaint additionally alleges that Martin, Hammond, and Givens, devised and implemented a "scheme to defraud" 3M by (1) fabricating and filing of dozens of fraudulent product liability claims, (2) interspersing these fraudulent claims amongst less fraudulent/non-fraudulent claims, and (3) tactically dismissing the fraudulent claims as necessary to avoid discovery of their scheme. *See* Am. Compl. at ¶ 211. These allegations, among others referenced above, firmly fall into the category of "litigation activities" protected by the *Noerr-Pennington* doctrine, discussed at length above, or the judicial proceedings privilege.

Specifically, 3M relies on the following instances of the Defendants' use of the mails and wires as part of the alleged fraudulent scheme to communicate with:

- 3M (in out-of-court statements such as emails, letters, and other communications intended to drive settlement discussions, to communicate discovery responses (often containing false statements), to send fraudulent pleadings, and otherwise further the scheme;

- Defendants' clients and former clients (including about case intake, obtaining and submitting falsified discovery responses, and communicating that Defendants had voluntarily dismissed claims;

- courts (including the filing of fraudulent complaints, falsified affidavits, dismissal requests containing false statements, stay and withdrawal requests containing false statements, and numerous other filings; and

- the other Defendants.

*See* First Am. Compl. at ¶¶ 197-198.

Any communications between Defendants, or by each Defendant individually, and 3M constitute communications between counsel regarding settlement or service of pleadings constitute communications protected either by the *Noerr-Pennington* doctrine or the judicial proceedings privilege and will not support the predicate acts for racketeering activity.

To satisfy the elements of a RICO Claim, 3M must establish at least two predicate acts for each defendant. 3M's First Amended Complaint adds the predicate act of obstruction of justice to

the allegations but fails to attribute any non-conclusory factual allegations to Martin.  *See* Am. Compl. ¶¶ 5, 41-42, 200 – 202.

The only reference to Martin's alleged participation in the obstruction of justice is found in paragraph 41, where 3M claims Martin counseled Hammond in litigation proceedings in an effort to conceal the scheme.  *See* Am. Compl. at ¶¶ 41, 142 (referring to Martin's alleged representation of Hammond during the deposition conducted in response to 3M's Motion for Summary Judgment on the statute of limitations for Johnny Wilson, a plaintiff in the *Randy Adams* case).  Based on 3M's repeated reference to the deposition of Hammond, including at footnote 56, and the fact the deposition testimony confirms the opposite of 3M's position regarding Martin's representation of Hammond, the court must disregard these allegations.

3M claims that Martin was representing Hammond when Hammond filed his materially false statements in Kentucky state court.  This statement is false.  Martin represented a client named Johnny Wilson, who was a post double lung transplant victim.  In the context of that litigation, Hammond was deposed as a fact witness in the case on the issue of statute of limitations, as permitted in Kentucky. As was stated in the deposition of Mr. Hammond,[18] upon questioning by Bryant Spann, with 3M Company:

```
            MR. SPANN:  Mr. Martin, let me
make sure I'm -- I'm square on one thing as we
get started.
            You're here on behalf of the
Wilsons.  You're not representing
Mr. Hammond?
            MR. MARTIN:  I am here on behalf
of the Wilsons.
```

Martin further explained that his role in the deposition would be only to protect the attorney-client privilege, which belonged to the Wilsons, if any issues should arise.  Thus, 3M's statement to this

Court that Martin ever represented Hammond is incorrect. At the deposition, Martin represented the Wilsons. Accordingly, 3M has no factual allegations to support Martin's alleged obstruction of justice as a predicate act.

3M is also required to plead predicate acts of mail or wire fraud with particularity, pursuant to the heightened pleading requirements of Rule 9(b). Specifically, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.,* 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.,* 10 F.Supp.2d 879, 883 (N.D. Ohio 1998)). 3M has made no such factual showing of the requisite specificity as it relates to Martin.

### ii.    Predicate criminal acts must be related.

It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them ordered or arranged. *H.J., Inc.,* 492 U.S. at 238. A relationship between the predicate acts can be shown by "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or in other words are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. However, because all of the acts attributed to Martin are not criminal acts but litigation activities protected from RICO liability, the court need not conduct the analysis of whether the alleged acts are related.

### iii.    Amount to or Pose a Threat of Continued Criminal Activity.

In addition to establishing the relationship between the predicate acts, 3M must also plead said predicate acts have continuity. *Moon,* 465 F.3d at 724. "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its

---

[18] *See* **Exhibit 9**, Hammond Deposition in *Randy Adams, et al. v. 3M, et al.*, at p. 5:4-11 (relating to Johnny Wilson).

nature projects into the future with a threat of repetition." *Id.* (quoting *H.J., Inc.,* 492 U.S. at 241).

Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. *Id.* at 242 (stating that Congress was concerned in RICO with long-term criminal conduct). A finding of "open-ended continuity" depends on whether the threat of continuity is demonstrated. *Id.* Closed-continuity can be found through a closed period of repeated conduct or through past conduct that projects into the future with a threat of repetition. *Id.* at 241.

The Sixth Circuit Court has at times chosen to analyze the existence of either type of continuity under a multi-factor test. *See Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1110 (6th Cir. 1995). The factors examined are: (1) the length of time the racketeering activity existed; (2) the number of different schemes (the more the better); (3) the number of predicate acts within each scheme (the more the better); (4) the variety of species of predicate acts (the more the better); (5) the distinct types of injury (the more the better); (6) the number of victims (the more the better); and (7) the number of perpetrators (the less the better). *Id.*

In the context of an open-ended period of racketeering activity, the threat of continuity must be viewed at the time the racketeering activity occurred. *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991).

Lawsuits like the personal injury ones filed against 3M, do not constitute a threat of continuing racketeering activity. The filing of personal injury suits is replicable; however, lawsuits contain natural deadlines and dismissals that address (and avoid) the possibility of long-term conduct that Congress was concerned about when creating RICO liability. *H.J., Inc.* 492 U.S at 239.

In this case, if the court considers the litigation of the dust mask claims the racketeering activity, as alleged, the first factor confirms the activity lasted for less than three years (May 2020 –

April 2023, when Martin withdrew).  As to the number of schemes, 3M has only pled one fraudulent scheme – the filing of lawsuits with a large inventory of claims to leverage the settlement of both legitimate and non-legitimate claims.  Only one scheme does not support continuity.  The above referenced analysis of predicate acts precludes the application of the third factor, as each alleged act of mail or wire fraud consisted of protected litigation activity.  The possible species of predicate acts are only two, mail and wire fraud.  As to the fifth factor, the only alleged injury claimed by 3M is the defense costs incurred to defend and allegedly settle the claims and the related reputational damage.  Critically, the number of victims is one, 3M.  Finally, the alleged number of perpetrators is three.

Based on the totality of the factors applied to the facts alleged, 3M does not satisfy the *Tatum* multi-factor test to establish a pattern of racketeering activity. *See Columbia Nat. Res., Inc.,* 58 F.3d at 1110.

### d.      3M is unable to establish causation

In order to allege a valid RICO claim, 3M must show not only that the predicate act was a "but for" cause of its injuries, but also that it was a proximate cause.  *Heinrich,* 668 F.3d at 405 (citing *Holmes*, 503 U.S. at 268).  Absent existence of alleged mail or wire fraud, outside the litigation context, which does not exist here, 3M is unable to establish causation.

### e.      Harm/Injury

The only financial harm alleged by 3M as a result of the alleged fraudulent scheme is litigation related costs and reputational damage.  *See* Am. Compl. at ¶¶ 6, 205, and 255.  In order to recover for a RICO violation under 18 U.S.C. § 1962(c), 3M must demonstrate injury to its business or property proximately caused by the predicate acts of Defendants.  *Heinrich,* 668 F.3d at 405 (holding any injuries they may have suffered were not the direct result of the alleged fraudulent conduct) (citing *Holmes*, 503 U.S. at 268).  Defense costs incurred defending suits brought by coal

workers and the alleged accompanied reputational damages do not constitute damages recoverable from Martin under the civil RICO statutes, as said damages are not a result of the predicate acts of Martin. Instead, Martin's engagement in protected litigation activity, on behalf of the respective dust mask claimants, did not cause harm to 3M under RICO claims.

### 2.    Civil RICO Conspiracy (18 U.S.C. § 1962(d))

Additionally, to sustain a conspiracy claim under 18 U.S.C. § 1962(d), a plaintiff must allege facts showing an agreement to commit a substantive RICO violation. *Heinrich,* 668 F.3d at 411-12 (citing *United States v. Sinito,* 723 F.2d 1250, 1260 (6th Cir. 1983)). 3M has only alleged Defendants agreed to prosecute the dust mask claims together and nothing more. 3M has failed to prove its civil-RICO claim under section 1962(d).

Because the First Amended Complaint fails to plead the essential elements of a substantive RICO claim with the required specificity, both the substantive and conspiracy RICO counts must be dismissed. *Id.; see also, J-M Mfg. Co. v. Simmons Hanly Conroy, LLP,* No. 24 C 3853, 2025 U.S. Dist. LEXIS 49029 at * 26-27 (N.D. Ill. Mar. 18, 2025) (dismissing claims for civil RICO and RICO conspiracy asserted against a law firm prosecuting thousands of claims for clients suffering from asbestos related diseases against a pipe manufacturer).

### D.    The Fraud Claim fails to satisfy Rule 9(b).

In order to properly assert a fraud claim, the allegations and factual basis for same must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). While 3M alleges Defendants filed "fraudulent" complaints, it fails to identify the specific complaints or which statements therein were false. *See Frank v. Dana Corp.,* 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.,* 10 F.Supp.2d 879, 883 (N.D. Ohio 1998)); *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301 (11th Cir. 2002). Furthermore, 3M fails to

attribute any fraudulent statements to Martin. Instead, 3M relies on an affidavit of Hammond, which the court ruled contained a materially false statement in the *Johnny Wilson* case. The statement in the affidavit is not attributed to Martin, and Martin did not make a fraudulent statement. Furthermore, the Order deeming the affidavit fraudulent was only entered against Defendant Hammond, not Martin or Givens. One allegedly false statement by one co-defendant in one lawsuit does not provide specificity to support 3M's theory of a scheme.

### E.    No viable common law fraud.

3M is required to satisfy both Rule 9(b)'s pleading standard and the applicable state law elements of fraud to avoid dismissal. *Aces High Coal Sales, Inc. v. Cmty. Trust & Bank,* No. 15-161-DLB-HAI, 2017 U.S. Dist. LEXIS 113639, at *54 (E.D. Ky. July 21, 2017). "[T]o satisfy Rule 9(b), a plaintiff must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud." *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014). Similarly, in Kentucky, a fraud claim requires:

(1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.

*Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009).

### 1.    No justifiable reliance

3M is a sophisticated corporate litigant. 3M cannot claim justifiable reliance on alleged misstatements made in pleadings filed in adversarial litigation. *See Kentucky Laborers Dist. Council v. Hill & Knowlton*, 24 F. Supp. 2d 755 (W.D. Ky. 1998). 3M had the duty to affirmatively plead statute of limitations as a defense and therefore was not disadvantaged by Plaintiff's claims that were allegedly filed after the statute of limitations allegedly expired. Furthermore, 3M has not alleged

that it took any action in reliance on an allegedly false statement by Martin or the other defendants. 3M did not settle any cases or pay any money to Martin's clients because of an allegedly false statement. It did not decide to engage in mediation or arbitration of those cases. Conversely, 3M's only action that was arguably based on the alleged false statements was its voluntary choice to file this lawsuit, which is premised on 3M's purported belief that the statements were false—meaning there could be no reliance. 3M has not incurred a loss by relying on any statement by Martin.

### 2.    3M has not alleged an injury

For the same reasons 3M's civil RICO claim fails, so does its common law claim. 3M claims that it has incurred damages in the way of litigation defense costs and reputational damage, both because of the underlying state and federal court complaints. However, 3M ignores that each of those complaints contained a fraud claim. Even taking 3M's allegations as true that a minority of the complaints litigated by Martin and the other Defendants were knowingly baseless because of an expired statute of limitations for the product liability claims, 3M does not claim that the fraud claims were knowingly baseless. 3M still had to defend the cases because of the fraud claims, and it thus would have suffered the same litigation defense costs and any so-called reputational damage as it did including the product liability claims. Furthermore, to that point, 3M has not alleged how any specific damages were caused by the allegedly-knowingly baseless claim alone. And as explained above, with no settlements, mediations, or other concerted efforts to settle the cases, 3M's allegation that the baseless complaints were meant to drive up settlement amounts and pressure to settle is not linked to any money out of 3M's pockets. 3M has not sufficiently alleged an injury caused by the alleged fraudulent conduct of Martin.

### 3.    Litigation Activity is protected conduct under the Noerr-Pennington doctrine or the judicial proceeding privilege

As was the case with its civil-RICO claim, 3M's allegations of fraudulent conduct, including

without limitation filing lawsuits, revising discovery responses, and negotiating settlements, is

protected under the *Noerr-Pennington* doctrine and does not give rise to liability.  *See BE&K*, 536

U.S. 516.  Alternatively, and to the extent 3M relies on factual statements in affidavits, pleadings or

deposition testimony of Martin, said activity is similarly protected by the judicial proceedings

privilege and will not support a claim for fraud.  *Aces High Coal Sales,* at \*50-51 (citing *Halle,* 453

S.W.3d at 184).

### F.   3M's Common Law Conspiracy Claim Also Fails

To prevail on a civil conspiracy claim, a plaintiff must prove "an unlawful/corrupt

combination or agreement between the alleged conspirators to do by some concerted action an

unlawful act."  *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002) (citing *Montgomery v.

Milam*, 910 S.W.2d 237, 239 (Ky. 1995)).  This requires the plaintiff to show "that the defendants

acted tortiously pursuant to a common design, or that they rendered substantial assistance to others

to accomplish the tortious act."  *Peoples Bank of N. Ky. v. Crowe Chizek & Co. LLC*, 277 S.W.3d

255, 261 (Ky. Ct. App. 2008).  A civil conspiracy claim is one "for damages caused by acts

committed pursuant to a formed conspiracy."  *Id.*

However, civil conspiracy is not a free-standing claim in Kentucky: "[I]t merely provides a

theory under which a plaintiff may recover from multiple defendants for an underlying tort."

*Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 458-59

(6th Cir. 2013) (quoting S*tonestreet Farm, LLC v. Buckram Oak Holdings*, N.V., Nos. 2008-CA-

002389-MR, 2009-CA-000026-MR, 2010 Ky. App. Unpub. LEXIS 555, 2010 WL 2696278, \*13

(Ky. Ct. App. July 9, 2010)). Therefore, a civil conspiracy claim not based on a tort cannot survive

as a matter of law. *Flint v. Coach House, Inc.*, No. 2012-CA-000580, 2013 Ky. App. Unpub. LEXIS

211, 2013 WL 869649, \*4 (Ky. Ct. App. March 8, 2013) (holding that because the plaintiff had not

stated a tort claim, "a cause of action for civil conspiracy cannot lie as a matter of law"); *Stonestreet Farm*, 2010 Ky. App. Unpub. LEXIS 555, 2010 WL 2696278, at *14 ("Stonestreet's claim of civil conspiracy thus has no tort to be based upon and cannot survive as a matter of law.").

3M's common law conspiracy claim is derived from its claims for Civil RICO violations and common law fraud.  Because 3M cannot maintain the RICO or fraud claims against Martin, the conspiracy claim also fails.  *Aces High Coal Sales, Inc.,* 2017 U.S. Dist. LEXIS 113639, at *58.

## VI.    CONCLUSION

Plaintiff's attempt to convert black lung litigation into a federal racketeering claim is a textbook example of improper use of civil RICO and common law claims of fraud and civil conspiracy.

Therefore, Martin respectfully requests that 3M's First Amended Complaint be dismissed with prejudice.

Respectfully submitted,

*/s/ Matthew R. Palmer-Ball*
Matthew R. Palmer-Ball
WYATT, TARRANT & COMBS, LLP
400 W. Market Street, Suite 2000
Louisville, KY 40202
Phone: (502) 562-7141
Fax: (502) 589-0309
mpalmerball@wyattfirm.com

*/s/ David L. Miller*
David L. Miller
Admitted *Pro Hac Vice*
Diane F. Burgess
Admitted *Pro Hac Vice*
MILLER, SCAMARDI, CARRABBA & BURGESS, P.C.
6525 Washington Avenue
Houston, Texas 77007
TEL: (713) 861-3595
FAX: (713) 861-3596
E-SERVICE: e-service@msc-lawyer.com

*Counsel for Michael B. Martin*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ David L. Miller*
David L. Miller

*Counsel for Michael B. Martin*