IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION

3M COMPANY,

      Plaintiff

VS.                                            Civil Action No: 7:25-cv-00037-REW-EBA

GLENN M. HAMMOND,
MICHAEL B. MARTIN, and
JOHN (a.k.a. "JOHNNY") GIVENS

      Defendants

---

**DEFENDANT'S, JOHN ("JOHNNY") GIVENS, MOTION TO STAY DISCOVERY**

---

NOW INTO COURT, comes Defendant, John ("Johnny") Givens (hereafter, "Givens") who moves to stay discovery pending resolution of the Motion to Dismiss Pursuant to Rule 12(b)(6) he filed on October 3, 2025 (R. Doc. 63). Considering the factual allegations in this case, the issues of immunity and privilege raised in Givens' Motion to Dismiss, and the highly sensitive nature of the discovery sought by Plaintiff, 3M, that invades the attorney-client privilege, a stay of discovery is appropriate in this case.

    **I.**    **Background**

Plaintiff, 3M, is a manufacturer of respirators or "dust masks" used by coal workers to reduce the risk of pneumoconiosis, colloquially referred to as "black lung disease." (R. Doc. 40 at pp. 9–10, ¶¶ 26, 28.) Defendant, John "Johnny" Givens is a Mississippi resident and an attorney who is barred in Mississippi and Kentucky. (*Id.* at p. 7, ¶18.) Givens and co-defendants, Michael Martin and Glenn Hammond (collectively, "Defendants"), jointly represented nearly 850 plaintiffs in 22 separate claims across Kentucky all arising out of coal miners' use of 3M's

1

respirators. (*Id.* at p. 12, ¶34.) The full factual and procedural background has been laid out in Given's Motion to Dismiss pursuant to Rule 12(b)(6) (R. Doc. 63 at pp. 1–7) and Givens incorporates those allegations herein by reference pursuant to Federal Rule of Civil Procedure 10(c).

3M served Givens with Requests for the Production of Documents and Things on September 23, 2025. (*See* 3M's Requests for Production, attached hereto as Exhibit "A.") Each of the eleven requests seeks Defendants' internal documents relating to the dusk mask cases and communications between Defendants and their dust mask clients. Each request unquestionably invades the attorney-client privilege and/or the attorney work product doctrine. (*See* Ex. A.)

On October 3, Givens filed a Motion to Dismiss in which he raised various grounds for dismissal of 3M's claims against him, including, *inter alia*, immunity under the *Noerr-Pennington* doctrine and the judicial statements privilege. (*See* R. Doc. 63.)

On September 24, 2025, 3M filed a notice of service of subpoena for the deposition of Chuck B. McKinney to be held on October 9, 2025 in Pikeville, Kentucky. Through counsel, 3M has indicated that it intends to take close to 100 depositions in this case, each of which would require the attendance of defense counsel from Texas, Mississippi and Kentucky, as well as the Defendants, lawyers in active practice in Texas, Mississippi and Kentucky. (*See* attached Notice of Subpoena, attached hereto as Exhibit "B.")

Considering the sensitive issues implicated by 3M's discovery, and the immunity and privileges issues raised in Givens' 12(b)(6) motion, the Court should stay all proceedings pending resolution of Givens' Motion to Dismiss.

**II.     Standard**

Rule 1 of the Federal Rules of Civil Procedure provides that the Rules "should be construed, administered, and employed by the court at the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Under Rule 26, "a court may for good cause issue an order to protect a party from undue burden or expense by staying or limiting discovery." *Blackjewel Liquidation Trust By and Through Beckman v. Javelin Global Commodities (US), LP*, 23-97, 2024 WL 134852 at *1 (E.D. Ky. Jan. 24, 2024) (citing Fed. R. Civ. P. 26(c)(1)(D)).

"Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)). When considering a motion to stay, "the court must weigh the burden of proceeding with discovery against the hardship worked by a denial of discovery." *Osborn v. Griffin*, No. 11-89, 2011 WL 13156649 at *1 (E.D. Ky. Dec. 9, 2011) (citation omitted). "However, the burden upon the party requesting the stay is less than if he were requesting a total freedom from discovery." *Blackjewel*, 2024 WL 1342852 at *1 (citation and internal quotation marks omitted).

This Court's Standing Case Management and Referral Order (R. Doc. 3) permits a defendant to move for a stay of discovery pending the resolution of a Rule 12 motion. (*See* R. Doc. 3 at p. 3.) Nonetheless, while that Standing Order allows a party "to seek a stay while a motion to dismiss is pending, it does not eliminate the default rule that discovery should proceed absent good cause, which requires a particularized showing that discovery would burden the defense to an unusual degree and the stay would not prejudice the plaintiff." *Blackjewel*, 2024 WL 1342852 at

3

*2 (quoting *Land Res. & Royalties LLC v. B&W Res., Inc.*, 22-220, 2023 WL 5822750 at *2 (E.D. Ky. Mar. 28, 2023)).

### III.    Law and Argument

#### a. A stay of discovery is appropriate where issues of immunity and privilege are raised in a Rule 12(b)(6) motion, especially if the Court can rule without discovery.

The United States Supreme Court has repeatedly stated that if issues of immunity and privilege can be decided as a matter of law, the court should resolve such issues before requiring the parties to bear the expense and time of discovery. *See*, *e.g.*, *Siegert v. Gilley*, 500 U.S. 226, 331, 111 S. Ct. 1789 (1991); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727; *Anderson v. Creighton*, 483 U.S. 635, 646 n.6, 107 S. Ct. 3034 (1987). Courts in this Circuit have likewise adhered to this principle. *See*, *e.g.*, *Gettings*, 349 F.3d at 304 (quoting *Muzquiz v. W.A. Foote Mem'l Hosp., Inc.*, 70 F.3d 422, 430 (6th Cir. 1995) ("Limitations on pretrial discovery are appropriate where claims may be dismissed 'based on legal determinations that could not have been altered by any further discovery.'"); *Osborn*, 2011 WL 13156649 at *1 (citing *Hahn*, 190 F.3d at 719–20) ("While the mere fact that a party has filed a motion to dismiss is insufficient on its own to support a stay of discovery, limitations are particularly appropriate when the claims at issue may be dismissed based on legal or procedural determinations for which discovery is not necessary."); *Duncan v. Nighbert*, 06-34, 2007 WL 490916 at *1 (E.D. Ky. Feb. 12, 2007) (citations omitted). Moreover, a stay of discovery is appropriate "where discovery would be futile if the motion is granted." *Lani v. Schiller Kessler & Gomez, PLLC*, 16-819, 2017 WL 3092098 at *2 (W.D. Ky. Ap. 4, 2017) (citation and internal quotation marks omitted).

In this case, Givens' Motion to Dismiss is not merely a "garden-variety Rule 12(b)(6) motion" because it raises threshold issues involving immunity and privilege. *See Williamson v.*

*Recovery Ltd. P'ship*, 06-292, 2010 WL 546349 at *2 (E.D. Ohio Feb. 10, 2010) ("Thus, unless a motion raises an issue such as immunity from suit, which would be substantially vitiated absent a stay… a stay should not ordinarily be granted to a party who has filed a garden-variety Rule 12(b)(6) motion."); *see also Lani*, 2017 WL 3092098 at *2 (same). His motion raises several issues that the United States Supreme Court, the Sixth Circuit, and this Court have uniformly found justify a stay of discovery, specifically, immunity from liability under the *Noerr-Pennington* doctrine and the judicial statements privilege, which, under Kentucky state law, considers communications made to the court, the client, and opposing counsel during the course of litigation to be privileged and precludes such statements from serving as the basis for liability in a civil suit.

Moreover, although perhaps not directly a "privilege," Givens raises a parallel argument that litigation acts cannot serve as predicate acts of mail fraud or wire fraud for purposes of establishing a civil RICO claim. The litigation acts argument, which applies to federal civil RICO claims, follows the rationale of the judicial statements privilege that pertains to Kentucky common law fraud claims. Under this line of jurisprudence, written statements and communications made in the course of litigation, whether in pleadings or other filings in the court record, communications or statements made between the attorney and client, or between attorneys, cannot constitute mail fraud or wire fraud under RICO. *See*, *e.g.*, *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 515 (5th Cir. 2016). (*See* R. Doc. 63 at pp. 21–25.) Thus, while not explicitly an immunity or privilege defense, it is analogous in substance and for the purpose of evaluating a motion to stay discovery in light of a motion to dismiss, which asserts immunity and privilege defenses, Givens' litigation acts argument should be considered by this Court as it weighs the burden placed on him in

5

engaging in discovery at this juncture versus the prejudice 3M would face (or lack thereof) in waiting for disposition of Givens' Motion to Dismiss. (*See* generally, R. Doc. 63.)

Every ground that Givens asserts in his motion to dismiss either directly implicates or relates to issues of immunity and privilege, and this Court may dispose of this entire matter based upon its ruling on Givens' arguments. Futhermore, discovery is not required for the Court to decide the issues raised in Givens' motion, because it centers on legal determinations for which discovery is unnecessary. Under *Blackjewel*, which notes the exception to the general rule that stays of discovery are disfavored where "the moving party argues it is immune from liability[,]" Givens' Motion to Dismiss raises the precise issues that justify a stay of discovery in this case. *See Blackjewel*, 2024 WL 1342852 at *2 (citing *Ohio Bell Tel. Co. v. Global NAPs Ohio, Inc.*, 06-549, 2008 WL 641252 at *1 (S.D. Ohio Mar. 4, 2008)). This approach is consistent with Supreme Court jurisprudence and should be applied here. See, e.g., *See*, *e.g.*, *Siegert v. Gilley*, 500 U.S. at 331; *Harlow*, 457 U.S. at 818; *Anderson*, 483 U.S. 635, 646 n.6. Accordingly, given the subject matter of Givens' motion, and that discovery is unnecessary to rule upon the issues of immunity and privilege raised therein, the Court should exercise its discretion to stay discovery in this case pending resolution of Givens' Motion to Dismiss.

    **b. The discovery sought by 3M invades the attorney client privilege and/or the attorney work product doctrine and would burden Givens to an unusual degree, while a stay pending resolution of the Motion to Dismiss would not burden 3M.**

The attorney-client privilege shields from disclosure confidential communications between lawyer and client in matters relating to "the legal interests of society and the client." *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (quoting *In re Grand Jury Subpoena (United States v. Doe)*, 886 F.2d 135, 137 (6th Cir. 1989). The application of the attorney-client privilege to a particular communication is a mixed question of law and fact. *Id.*

> The privilege is based on two related principles. The first is that loyalty forms an intrinsic part of the relationship between a lawyer and client in our adversary system. This loyalty is offended if the lawyer is subject to routine examination regarding the client's confidential disclosures. Kenneth S. Broun, et al., *McCormick on Evidence* § 87, at 205–06 (3rd ed.1984). The second principle is that the privilege encourages clients to make full disclosure to their lawyers. A fully informed lawyer can more effectively serve his client and promote the administration of justice. Id. § 87, at 205; id. § 89, at 212.

*Reed v. Baxter*, 134 F.3d 351 (6th Cir. 1998). These policy considerations are paramount to the privilege and to the full and free flow of information between attorney and client, notwithstanding that "[t]he privilege excludes relevant evidence and stands 'in derogation of the search for truth.'" *Id.* (quoting *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090 (1974)).

The attorney work product doctrine "is distinct from and broader than the attorney-client privilege." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986)). It is intended "to allow an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect [his] clients' interests.'" *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947)). Absent waiver, an opposing party may not obtain the work product of its adversary which reflects the attorney's mental impressions, opinions, conclusions, judgments or legal theories. *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d at 163–64).

The discovery at issue in this case consists of eleven (11) Requests for Production of Documents and Things propounded by 3M. Each Request invades the attorney-client privilege and/or the attorney work product doctrine relative to the underlying dust mask cases. (*See* Ex. A at pp. 2–3.) For example, 3M seeks "[a]ll documents and communications relating to any Dust Mask Client's initial contact with any Defendant or Representative of a Defendant Firm[,]" "[a]ll

7

documents and communications, including but not limited to Communications between and among Defendants and/or Representatives of the Defendant Firms, relating to the assessment of Dust Mask Client claims" and "[a]ll communications relating to Dust Mask Client claims prior to the filing of an Enterprise Complaint." (*See* Ex. A at p. 2.) On their face, each Request unquestionably invades the attorney-client privilege and/or the attorney work product doctrine. If forced to respond to discovery prior to resolution of Givens' Motion to Dismiss, he will move for a protective order pursuant to Federal Rule of Civil Procedure 26(c) and move for a protective order based upon the clear invasion of privilege. This will cost the parties significant time and expense, and, importantly, will require extensive review by the Court. Given the real possibility that this Court grants Givens' motion to dismiss, he should not be required to participate in discovery or seek a protective order in response to same. To mandate such action would be an unnecessary and inefficient drain on judicial resources and the parties' time and expense.

Courts often approach a motion to stay discovery by employing a five-factor balancing test weighing the following:

> (1) the interest of the plaintiff in proceeding expeditiously with the civil action as balanced against the prejudice to plaintiffs if a delay; (2) the burden on defendants; (3) the convenience of the court; (4) the interests of the persons not parties to the civil litigation; and (5) the public interest.

Kevin J. Lynch, *When Staying Discovery Stays Justice: Analyzing Motions to Stay Discovery When a Motion to Dismiss is Pending*, 47 WAKE FOREST L. REV. 71, 85 (Spring 2012) (collecting cases). While courts may occasionally "put some gloss on those factors," there is a dearth of jurisprudence providing "guidance on how these factors should be weighed against each other." *Id.*

Considering the first factor, there is little prejudice to 3M if this Court stays discovery. Some courts have considered, for example, the risk of spoliation of evidence to be a factor that could prejudice the plaintiff if a delay in discovery were imposed. *See id.* at 85–86 (citation

8

omitted). Here, however, the Court has already implemented certain safeguards to ensure that relevant evidence will be preserved, including the appointment of a custodian to take custody of documents and records maintained by Defendant Hammond. (*See* R. Doc. 32.) Givens, in fact, urged the Court to adopt the safeguards requested by 3M in order to preserve the records. There is no reason to suggest that he will spoliate evidence, whether electronic or hard copies, pending the outcome of his Motion to Dismiss. Indeed, there are far greater protections in effect in this case to preserve evidence than there are in other cases, yet the interest of the plaintiff in proceeding with discovery is no greater than it would be in any other ordinary proceeding.

Moreover, as 3M is well aware, it has already conducted extensive discovery in a parallel case in Texas state court under Texas Rule of Civil Procedure 202, which permits pre-suit discovery to investigate a claim. (*See* Various Pleadings and Discovery Documents in Cause No. 23-488, *3M Co. v. Michael B. Martin and Martin Walton Law Firm*, (Dist. Ct. of Galveston Cty., Texas, attached hereto as Exhibit "C.") That discovery included a subpoena duces tecum seeking documents and defendant Martin has already been deposed twice, first in his individual capacity and then as the corporate representative of the Martin Walton Law Firm. (*See id.*) Counsel for Defendant Martin produced 1359 pages of documents and approximately 1800 pages of privileged documents to the Texas court for in camera review (*see id.*), which the Court did not disclose to 3M. Plaintiff already has obtained significant information and documentation relative to the claims it raises in this case, so it cannot reasonably be said that it would be prejudiced by a stay of discovery here.

The second and third factors weigh heavily in favor of a stay. The burden placed on Givens would be tremendous, as it would require his counsel to cull through tens of thousands (if not more) of documents relative to the dust mask cases and scrutinize each document, line by line, for

9

privilege and create a robust privilege log that carefully documents how each document is protected by the attorney-client privilege and/or attorney work product doctrine. This would come at a tremendous expense to Givens, and would be completely unnecessary if the Court grants his 12(b)(6) motion. This burden on Givens dovetails with the "convenience of the court," the third factor, because undersigned counsel would necessarily have to move for a protective order for each potentially responsive document because of the invasion of privileges implicated by every request propounded by 3M. Rather than deal with the merits of a protective order on each of 3M's requests, which may be obviated if the Court finds that Givens is immune from liability under *Noerr-Pennington* or that a privilege applies to the communications that serve as a the basis for this lawsuit, the interests of judicial economy would be served by a stay of discovery.

Similarly, the fourth and fifth factors, which consider the interests of persons not parties to the litigation and the public interest, respectively, weigh strongly in favor of a stay of discovery. The discovery sought by 3M seeks communications between attorney and client, between co-counsel, and for attorney work product relating to *all* current, former, and potential dust mask clients of Defendants Givens, Hammond, and/or Martin, not just those whom 3M alleges may have meritless claims. (*See* Ex. A at 1, defining "Dust Mask Client" as "any individual that (a) has sought representation from a Defendant or Defendant Firm for the purpose of filing a dust mask (or respirator) claim against 3M in Kentucky and/or (b) has been named as a plaintiff in an Enterprise Complaint.") Despite the complaint in the instant lawsuit identifying only a small portion of the entire inventory of respirator cases currently or formerly handled by Defendants as allegedly meritless, 3M's discovery seeks privileged information relative to every individual who ever contacted any of Defendants' law firms, including those who did not opt to retain Defendants, and those who retained them in good faith.

Kentucky law views the attorney client privilege as "almost sacrosanct"[1] and offers only five narrow exceptions to its application, none of which apply here.[2] *Patti's Holding Co., LLC v. Zurich Am. Ins. Co.*, 20-84, 2025 WL 976294 at *4 (W.D. Ky. Mar. 31, 2025) (citation omitted); *see also*, Kent. R. Evid. 503(d). In addition to current, former, and potential clients of Defendants, all of whom would be affected by the discovery sought by 3M, there are several witnesses who are not party to this litigation who have been, or will be, subpoenaed by 3M. (*See*, *e.g.*, Ex. B.) Defendants intend to attend those depositions, again compounding the issue of wasted time and expense on discovery that may prove unnecessary.

To require production of these documents would not only violate the attorney-client privilege, but it would undermine the policy considerations which form the foundational underpinnings of the privilege. To allow 3M to instigate a lawsuit and force production of privileged communications between private litigants and their attorneys when those litigants are not parties to this case when those litigants sought Defendants' counsel in good faith would not only undermine the confidence of those individuals in the civil justice system, but would have far-

---

[1] Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." In this case, 3M has alleged both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332 and has raised Kentucky common law claims against Givens. Accordingly, this Court should look to Kentucky Rules of Evidence for guidance as to the applicability of the attorney-client privilege.

[2] Under Kentucky Rule of Evidence 503(d), the five exceptions to the attorney-client privilege are:
> (1) Furtherance of crime or fraud. If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud;
> (2) Claimants through same deceased client. As to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by transaction inter vivos;
> (3) Breach of duty by a lawyer or client. As to a communication relevant to an issue of breach of duty by a lawyer to the client or by a client to the lawyer;
> (4) Document attested by a lawyer. As to a communication relevant to an issue concerning an attested document to which the lawyer is an attesting witness; and
> (5) Joint clients. As to a communication relevant to a matter of common interest between or among two (2) or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients.

reaching and crippling effects on judicial policy and the public interest as a whole. To be sure, if this Court rules that a major corporate plaintiff could access private communications between non-parties and their attorneys by civilly prosecuting their attorneys, such precedent would have a chilling effect on private litigants seeking redress for legitimate wrongs that would undoubtedly benefit corporate tortfeasors and harm individuals. The Court should be wary of setting such precedent. *See Ohio Bell*, 2008 WL 641252 at *1 ("the Court is required to take into account any societal interests which are implicated by either proceeding or postponing discovery.").

### IV.     Conclusion

Defendant Givens has raised various issues of immunity and privilege in his Motion to Dismiss that the Court can resolve without the benefit of discovery. The issues raised in his motion, without more, justify a stay of discovery under binding caselaw. Additionally, the discovery sought by 3M seeks to invade the most sacred of judicial privileges, the attorney-client privilege, as well as the far-reaching attorney work-product doctrine. Before Givens can produce any of this documentation, this discovery will be the subject of a motion for protective order and will force the parties and the court to expend time and resources that may be rendered moot if the Court grants his motion. Before the Court requires Givens to engage in a process that will invade the attorney-client privilege of hundreds of private individuals who are not party to this litigation and require non-parties to appear for depositions, it should first rule on the motion to dismiss, which may obviate the need for any such invasive discovery.

Accordingly, for the foregoing reasons, Defendant, John "Johnny" Givens, respectfully requests that this Court grant his Motion to Stay Discovery and stay all discovery pending the resolution of his Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted this the 10th day of October, 2025.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

BY: /s/ Judd R. Uhl
    **Judd R. Uhl (KY Bar No. 89578)**
    3499 Blazer Parkway, Suite 330
    Lexington, KY 40509
    Telephone: (513) 808-9913
    Facsimile: (513) 808-9912
    Email: judd.uhl@lewisbrisbois.com

And

/s/ Walter C. Morrison, IV
    Walter C. Morrison, IV (*Pro Hac Vice*)
    Brittany R. Wolf-Freedman (*Pro Hac Vice*)
    240 Trace Colony Park Drive, Suite 100
    Ridgeland, Mississippi 39157
    Telephone: (601) 933-2054
    Facsimile: (504) 528-9973
    E-mail: wmorrison@gainsben.com

    Facsimile: (504) 528-9973
    E-mail: bwolf@gainsben.com

*Attorneys for Defendant, John Givens*

## CERTIFICATE OF SERVICE

I, Brittany R. Wolf-Freedman, hereby certify that on October 10, 2025, I electronically filed the foregoing with the Clerk of Court by using the Court's electronic filing system which will send a notice of electronic filing to all counsel of record.

/s/ Brittany R. Wolf-Freedman