IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION

| | |
|---|---|
| 3M COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:25-cv-00037-REW-MAS |
| GLENN HAMMOND, MICHAEL B. MARTIN, and JOHN (a.k.a. "JOHNNY") GIVENS, | ) |
| Defendants. | ) |

### 3M COMPANY'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO STAY DISCOVERY

What has been learned about Defendants' conduct to date is nothing short of shocking. Formal discovery is sure to unearth more, which is why Defendants are trying to forestall it. But they do not come close to meeting the good cause standard to stay discovery pending disposition of their motions to dismiss. This Court should exercise its discretion to deny Defendants' motions to stay so that discovery can begin in this case without any further delay. In any event, Defendants' motions to stay will be moot if and when the Court denies their motions to dismiss, as we respectfully submit the Court should do for the reasons stated in 3M's opposition to those motions.

### BACKGROUND

3M did not bring this action lightly. 3M investigated Defendants' handling of their dust mask inventory for years, including by seeking pre-suit discovery from Defendant Martin in Texas state court. *See* First Amended Complaint (D.E. 40, "Compl.") ¶ 194. 3M filed the Texas discovery petition in March 2023, shortly after a Pike County court found Defendants submitted a "materially

false" affidavit to avoid summary judgment on a fraudulent claim.[1] Based on the evidence 3M had at that time, some of which is laid out in the Complaint, the Texas court found sufficient evidence of fraud to authorize depositions and document discovery from Martin and his firm.[2]

But in response to the discovery 3M served in Texas, Martin asserted privilege objections to nearly all of 3M's document requests.[3] While Martin produced approximately 1,300 pages of documents (*see* Givens Mot. at 9, Martin Mot. at 5), nearly 1,000 of those were redacted copies of virtually identical form letters sent to dust mask clients.[4] Martin withheld all other responsive documents and sought a protective order on privilege grounds. Meanwhile, 3M took Martin's deposition, in which he admitted, among other things, that he knew before agreeing to work with Defendant Hammond that dust mask complaints included claims that never should have been filed against 3M.[5] The Texas court ultimately denied Martin's motion for a protective order and ordered him to produce the withheld documents and/or a detailed privilege log.[6] But 3M filed this action before any additional documents or a privilege log were produced, thus mooting the Texas matter in which 3M sought only pre-suit discovery.

Since then, 3M has obtained new evidence of Defendants' wrongdoing. Soon after filing the Complaint, Hammond's former employee notified 3M that Hammond had secretly stashed case files in a storage locker to prevent 3M and others from finding them. *See* D.E. 11-1 (Affidavit of

---

[1] *See* Ex. 1, Order Dismissing with Prejudice, *Johnny Wilson, et ux. v. 3M Co., et al.*, No. 22-CI-00812 (Pike Cir. Ct.) (Mar. 9, 2023).
[2] *See* Ex. 2, Order Granting Verified Petition to Take Depositions Before Suit to Investigate Potential Claims and to Issue Subpoena Duces Tecum, *3M Co. v. Michael B. Martin, et al.*, Cause No. 23-cv-0488 (Galveston County, Tex.—10th Judicial Dist.) (June 2, 2023).
[3] *See* Ex. 3, Respondent's Objections and Responses to Petitioner's Request for Documents to Michael B. Martin (July 1, 2024).
[4] *See, e.g.*, Ex. 4, Examples of the 954 redacted letters produced by Martin (MM_0001201–129).
[5] *See* Ex. 5, Martin Dep. 102:11–23, 104:4–11, 104:23–105:3 (Feb. 24, 2025) (Excerpt).
[6] *See* Ex. 6, Order, *3M Co. v. Michael B. Martin, et al.*, Cause No. 23-cv-0488 (Galveston County, Tex.—10th Judicial Dist.) (April 16, 2025).

Bobby M. Moore), ¶¶ 3–5, 16. That employee described in a sworn affidavit the misconduct he had observed in Hammond's office, including manipulating dates and forging signatures on documents, falsifying discovery responses, lying to clients about cases that had been dismissed or were never filed, and intimidating employees to do the same. *Id.* ¶¶ 6–15. Based on this and other evidence, this Court found a "significant risk of evidence destruction—real danger," and ordered a third party to seize and take custody of the hidden evidence. D.E. 32 at 3.

More recently, 3M learned that Chuck McKinney—the employee who hid evidence for Hammond and instructed other employees to falsify documents, *see* D.E. 11-1, ¶¶ 13, 16—has been directly involved in the solicitation and filing of dust mask claims against 3M. 3M learned further that Hammond's firm continued recently to tell coal workers that their cases were moving forward when, in fact, they were in the process of being dismissed.

Meanwhile, Defendants have avoided any formal discovery since this case was filed five months ago. The Rule 26(f) conference was postponed for over a month to accommodate Defendants' asserted inability to find counsel.[7] The Rule 26(f) conference finally occurred on September 23, during which Defendants first requested a stay of discovery. *See* D.E. 67 at 1. 3M responded that it would serve discovery consistent with the Rules, particularly given the existing delay and real risk of key evidence going stale or missing. 3M offered to consider any authority supporting a stay before reaching a final decision, but when the parties met and conferred the following week (*see id.*), Defendants failed to identify a single case granting a stay of discovery pending resolution of a motion to dismiss.

---

[7] *See* Ex. 7, Email chain re: 3M v. Hammond, et al. (Aug. 6, 2025–Sept. 11, 2025).

3

Meanwhile, 3M served requests for production seeking communications and documents at the heart of the alleged fraud, similar to the requests it had served in the Texas proceeding.[8] 3M also noticed one third-party deposition of Chuck McKinney.[9] In response, Defendants filed the present motions to stay discovery pending resolution of their 12(b)(6) motions to dismiss.[10] So as not to burden the Court with expedited motion practice, 3M agreed to hold its discovery requests pending resolution of the instant motions. Both the present motions and Defendants' motions to dismiss will be fully briefed and ripe for review by December 5, 2025. *See* D.E. 57; D.E. 73.

**LEGAL STANDARD**

District courts have broad discretion to limit or stay discovery. *United States v. Lexington Foot & Ankle Ctr., PSC*, No. 5:18-CV-628-REW, 2019 WL 13216437, at *1 (E.D. Ky. Mar. 6, 2019). In exercising that discretion, courts "weigh the burden of proceeding with discovery against any hardship resulting from a delay in case progress." *Id.* Defendants bear the burden of demonstrating "good cause" for a stay, which requires "a particularized showing that discovery would burden the defense to an unusual degree and the stay would not prejudice the plaintiff." *Land Res. & Royalties LLC v. B&W Res., Inc.*, No. 6:22-CV-220-REW-HAI, 2023 WL 5822750, at *2 (E.D. Ky. Mar. 28, 2023).

The default is for discovery to proceed. *See Purvis v. Praxair, Inc.*, No. 5:19-CV-08-KKC-MAS, 2021 WL 2627384, at *2 (E.D. Ky. May 11, 2021). This Court and others have held "time and again" that the mere fact that a party has filed a motion to dismiss "is generally insufficient ...

---

[8] *See* Ex. 8, 3M Company's Requests for Production of Documents to Defendants (Sept. 23, 2025).
[9] *See* Ex. 9, Notice of Service of Subpoena to Testify at Deposition on Chuck B. McKinney (Sept. 24, 2025).
[10] Defendants Martin and Hammond have joined in full and incorporated in their respective motions the arguments made in Defendant Givens' Motion to Stay Discovery (D.E. 68, "Givens Mot."). *See* Defendant Martin's Motion to Stay Discovery (D.E. 69, "Martin Mot.") at 1, 4; Defendant Hammond's Joinder in Defendant Givens' Motion to Stay Discovery (D.E. 70, "Hammond Mot.") at 1.

4

to warrant a stay of discovery." *Sparks v. Fifth Third Mortg. Co.*, No. 5:17-CV-450-CHB-REW, 2018 WL 2250920, at *2, n.1 (E.D. Ky. May 3, 2018) (recognizing "plenteous" cases holding the same).[11] "Had the Federal Rules contemplated that a motion to dismiss under [Rule] 12(b)(6) would stay discovery, the Rule would contain a provision to that effect." *Id.* at *1 (quotation omitted). "In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." *Id.* (quotation omitted). So, "unless the motion raises an issue such as immunity from suit, which would be substantially vitiated absent a stay, or unless it is patent that the case lacks merit and will almost certainly be dismissed, a stay should not ordinarily be granted to a party who has filed a garden-variety Rule 12(b)(6) motion." *Id.* (quoting *Ohio Bell*, 2008 WL 641252, at *1).

## ARGUMENT

The default rule is that discovery proceeds while a motion to dismiss is pending. Defendants raise no persuasive arguments that justify departing from that rule. Nor have they demonstrated that the burden of discovery outweighs the benefit of proceeding without further delay. Defendants describe anticipated privilege disputes, but these are common in litigation and can be handled in due course. On the other hand, delaying discovery inevitably risks the loss of critical evidence due to the fading memories of aging coal-worker witnesses and potential tampering with documents or witnesses in Defendants' control—a threat about which the Court has already commented.

---

[11] *See also, e.g.*, *Blackjewel Liquidation Tr. by & through Beckman v. Javelin Glob. Commodities (US), LP*, No. 7:23-CV-00097-REW-EBA, 2024 WL 1342852, at *1 (E.D. Ky. Jan. 24, 2024); *Land Res. & Royalties LLC*, 2023 WL 5822750, at *2–3; *Purvis*, 2021 WL 2627384, at *1; *Lexington Foot & Ankle Ctr.*, 2019 WL 13216437, at *1; *United States ex rel. Stipe v. Powell Cnty. Fiscal Ct.*, No. 5:16-CV-446-KKC-REW, 2018 WL 11463508, at *1–2 (E.D. Ky. Jan. 2, 2018); *Osborn v. Griffin*, No. 11-CV-89-WOB-CJS, 2011 WL 13156649, at *1 (E.D. Ky. Dec. 9, 2011); *Manns v. PHH Mortg. Servs.*, 2023 WL 5198748, at *3 (S.D. Ohio Aug. 14, 2023); *City of Lancaster v. Flagstar Bank, FSB*, 2011 WL 1326280, at *5 (S.D. Ohio Apr. 5, 2011); *Ohio Bell Tel. Co. v. Global NAPs Ohio, Inc.*, 2008 WL 641252, at *1 (S.D. Ohio Mar. 4, 2008).

I.  **Defendants have not demonstrated good cause warranting a stay.**

Courts recognize two exceptions to the default rule that discovery proceeds pending resolution of a motion to dismiss: (1) where the pending motion raises issues of immunity from suit; or (2) the complaint is plainly frivolous or clearly without merit. *Lexington Foot & Ankle Ctr.*, 2019 WL 13216437, at *1. Neither exception applies here. Taken at face value, Defendants' invocation of the *Noerr-Pennington* doctrine and the Kentucky judicial statement privilege do not provide immunity from suit. And the meaty Complaint can hardly be dubbed frivolous.

**The *Noerr-Pennington* doctrine.** Defendants contend their invocation of the *Noerr-Pennington* doctrine necessitates a stay. *See* Givens Mot. at 5; Martin Mot. at 3–4; Hammond Mot. at 2–3. *Noerr-Pennington*, even if it were applicable (it is not), does not provide immunity from *suit*; it immunizes *conduct*. Defendants improperly conflate the two, but the Sixth Circuit has explained the critical difference: *Noerr-Pennington* is not a jurisdictional issue. *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 477–78 (6th Cir. 2023). "[W]hile sovereign immunity (and other jurisdictional defects) protects a party from *suit*" and should be addressed under Rule 12(b)(1), "*Noerr-Pennington* immunizes *conduct*, protected by the First Amendment, from antitrust liability" and, like other general affirmative defenses, "is better suited for Rule 12(b)(6)." *Id.* Defendants' motions to dismiss confirm this point, as none purport to arise under 12(b)(1) and none suggest *Noerr-Pennington* is jurisdictional. The distinction is important because while immunity from suit entirely "would be substantially vitiated absent a stay," immunity for certain conduct would not. *Sparks*, 2018 WL 2250920, at *1; *see also, e.g.*, *Purvis*, 2021 WL 2627384, at *4 (finding that where "defense asserts only immunity from liability, not from suit entirely," "[t]here is no inherent prejudice in proceeding with litigation, as there would be in the case of a threshold qualified or absolute immunity question."). That is particularly true where, as here, determining whether the *Noerr-Pennington* immunity applies may require a factual inquiry that

cannot be resolved at the pleading stage. *See* 3M's Consolidated Opposition to Motions to Dismiss (D.E. 74, "3M Opp'n") at 25–26 (discussing how "sham" exception inquiry may require assessment of factual issues); *see also, e.g.*, *Sparks*, 2018 WL 2250920, at *3 (finding that arguments raised in motion to dismiss that "may require assessment" of factual issues "further convince[d] the Court that a stay would be imprudent"); *Purvis*, 2021 WL 2627384, at *3–4 (denying stay where immunity issue was "not necessarily clear-cut" and required "some factual discovery").

**The Kentucky judicial statement privilege.** Defendants also argue that the Kentucky judicial statement privilege to 3M's claims requires a stay. *See* Givens Mot. at 5; Martin Mot. at 3–4. However, the judicial statement privilege is an evidentiary privilege; it does not confer immunity. *See, e.g.*, *Jones v. Progressive Cas. Ins. Co.*, No. 6:18-CV-21-REW-HAI, 2018 WL 3345290, at *2 (E.D. Ky. July 9, 2018) (finding judicial statement privilege is "a form of affirmative defense … that truly affects available evidence rather than claim assertion"). And resolving whether the judicial statement privilege applies here would not dispose of the case or even meaningfully limit the claims. After all, the state privilege does not apply to the federal RICO and RICO conspiracy claims and, therefore, has no bearing on the evidence (or discovery) permitted to establish those claims. Fed. R. Evid. 501. So, the Court's ruling on this issue will not limit the scope of discovery in this case.

**Failure to plead RICO predicate acts and/or cognizable RICO injury.** Defendants argue in their motions to dismiss that 3M has failed to allege certain elements of the RICO claim, and claim that two of these arguments warrant a stay: (1) that 3M fails to allege RICO predicate acts because litigation acts cannot serve as RICO predicates (*see* Givens Mot. at 5), and (2) that 3M fails to allege a cognizable RICO injury required for statutory standing (*see* Martin Mot. at 3–

7

4). 3M addresses the substance of those arguments in its opposition to the motions to dismiss and will not spill additional ink here. *See* 3M Opp'n at 8–11, 12–14.

Defendants' efforts to dress up their garden-variety 12(b)(6) arguments in the garb of immunity fall short. *See* Givens Mot. at 5. There is no categorical bar to litigation activity serving as a basis for RICO. *See* 3M Opp'n at 8–11. And RICO statutory standing is not a "jurisdictional" issue, as Martin suggests. *See* Martin Mot. at 4. The Sixth Circuit has expressly held that "RICO standing is not jurisdictional." *Stooksbury v. Ross*, 528 F. App'x 547, 554 (6th Cir. 2013).[12]

## II.   Defendants cannot show undue burden from proceeding with discovery.

Defendants' burden arguments fare no better. To justify a departure from the normal course of discovery, Defendants must "'detail the specific burdens' [they] would face from discovery or 'explain how the prejudice [they] would face [is] different from any other party that files a potentially case-dispositive motion.'" *Land Res. & Royalties LLC*, 2023 WL 5822750, at *1 (quoting *Purvis*, 2021 WL 2627384, at *3).

Defendants' privilege arguments fall far short of this burden. Their argument essentially goes as follows: 3M's requests for production "[o]n their face ... unquestionably invade[] the attorney-client privilege and/or the work product doctrine," so "if forced to respond, ... [Defendants] will move for a protective order … based upon the clear invasion of privilege," thus requiring defense counsel "to cull through tens of thousands (if not more) of documents" and "create a robust privilege log," and therefore burdening Defendants and the Court. Givens Mot. at

---

[12] While Hammond (but not Martin or Givens) seeks dismissal of the Complaint under the *Younger* abstention doctrine, he does not rely on this argument in support of a stay.

8–10; *see also* Martin Mot. at 7; Hammond Mot. at 4–5. While true, the same could be said of any federal civil lawsuit in which privilege issues are raised.[13]

It is particularly difficult for Defendants to claim any undue burden when they have been on notice of the allegations in the Complaint and the categories of documents 3M would seek in discovery since March 2023, when 3M filed its petition for pre-suit discovery in Texas state court. *See, e.g.*, *Lexington Foot & Ankle Ctr.*, 2019 WL 13216437, at *2 (denying stay and noting that "because Defendants have been on notice of the factual allegations at issue in this case since the predecessor qui tam action, they are likely relatively prepared for the initial discovery exchanges and disclosures"). 3M served Givens and Hammond with a copy of the Texas discovery requests, which are very similar to those here, at the same time it served Martin. Martin made the same general privilege objections in Texas that Defendants preview here, and was overruled. *See supra* at 2. But contrary to Defendants' claim, 3M has not "already conducted extensive discovery" (Givens Mot. at 9) because the pre-suit proceeding ended when this case was filed and before any purportedly privileged documents were properly logged or produced. Moreover, the fact that some pre-suit discovery has already occurred cuts against Defendants' prejudice argument—simply continuing with discovery in the context of this litigation cannot be reasonably argued to cause undue burden.

The parties are all prepared to pick up where the pre-suit Texas proceeding left off. Each Defendant states that he will seek a protective order on privilege grounds. *See* Givens Mot. at 10; Martin Mot. at 7; Hammond Mot. at 5. At the earliest appropriate time, however, 3M will

---

[13] Hammond argues also that the very nature of RICO discovery is unduly burdensome, but relies on out-of-circuit authority addressing different circumstances and applying different standards than are at issue here. *See* Hammond Mot. at 3–4. Hammond does not specify why discovery in *this* RICO case requires a departure from the Rules, which themselves make no exception for RICO discovery.

demonstrate that the crime-fraud exception defeats privilege here. *See, e.g.*, *Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*, 2020 WL 1917837, at *6 (E.D. Va. Apr. 20, 2020) (applying crime-fraud exception in civil RICO case where "the attorney alone purportedly committed a crime or fraud of which the client was a victim"). 3M is prepared to demonstrate that there is ample evidence that a fraud occurred.

For example, a Kentucky state court found Defendants submitted a "materially false" affidavit to conceal a fraudulent dust mask case.[14] And Martin himself admitted as much when he told that same court that some of the dust mask cases had been "fraudulently filed" against 3M.[15] He later admitted that he knew that the first Enterprise Complaint included false claims "when [he] saw the lawsuit," before agreeing to work with Hammond,[16] and that "so many" cases filed thereafter were also "frivolous."[17] 3M also plans to rely on evidence that Hammond sent Martin and Givens a spreadsheet showing that certain claims were unquestionably time-barred because the client had retained Hammond as early as 2016.[18] And 3M will provide evidence that clients have filed claims against Hammond explaining how he knowingly filed time-barred complaints[19] and "fabricated" records to conceal this from his clients and 3M.[20] In other words, 3M will put forward evidence to overcome any claimed privilege based on the crime-fraud doctrine.

---

[14] *See* Ex. 1, Order Dismissing with Prejudice, *Johnny Wilson, et ux. v. 3M Co., et al.*, No. 22-CI-00812 (Pike Cir. Ct.) (Mar. 9, 2023).
[15] *See* Ex. 15, *Randy Adams, et al. v. 3M Co., et al.*, No. 20-CI-382 (Pike Cir. Ct.), Hr'g Tr. (Mar. 24, 2023) (Excerpt) at 19:14–22.
[16] *See* Ex. 5, Martin Dep. 102:11–23, 104:4–11, 104:23–105:3 (Feb. 24, 2025).
[17] *See* Ex. 10, Text Conversation (Jan. 17, 2023).
[18] *See, e.g.*, Ex. 11, Email re: Dust Mask Active List (Mar. 17, 2022) (MM_001278); Ex. 12, Copy of Dust Mask Active List (Mar. 17, 2022) (MM_001175–1250).
[19] *See, e.g.*, Ex. 13, Opinion and Order, *In re Glenn Hammond*, 2024-SC-0331-KB (Ky.) (Oct. 24, 2024), at 5–6.
[20] *See, e.g.*, Ex. 14, Verified Complaint and Jury Demand, *Coleman, et al. v. Hammond, et al.*, No. 24-CI-00873 (Pike Cir. Ct) (Aug. 30, 2024), ¶¶ 63–70.

The Court should not delay resolution of these central privilege issues, which 3M intends to bring to the Court as soon as they are ripe for resolution.

### III. Staying discovery risks the loss of critical evidence and would prejudice 3M.

3M would be prejudiced by any further delay of discovery. This Court has already found a "significant risk of evidence destruction—real danger" in this case. D.E. 32 at 3. That risk is not limited to the case files seized from Hammond, or even to Hammond. All Defendants have demonstrated a disregard for court rules and the lengths they will go to conceal their wrongdoing. *See supra* at 10. Defendants control most of the evidence in this case, including case files and internal communications, not to mention employees who are under their influence. Delay only provides more opportunity to alter or get rid of documents or improperly influence key witnesses.

As time passes, moreover, critical evidence from first-hand witnesses and victims of the fraud scheme may be lost. Most coal workers named in the dust mask complaints retained Defendants years ago. Many of these workers and their family members are aging and in poor health. Their testimony and the documents in their possession are central to 3M's case and should be obtained now, before memories fade or these individuals are no longer available. *See, e.g., Purvis*, 2021 WL 2627384, at *4 (denying stay and recognizing the "passage of time inevitably risks loss of documentary evidence and fading of witness memories"). The harm to 3M from additional delay of even a few months far outweighs any burden to Defendants from addressing their privilege assertions sooner rather than later.

### CONCLUSION

Because "neither Defendants' argued dismissal bases nor the particular circumstances here justify straying from the typical course of litigation per the Rules, which anticipate prompt commencement of discovery to explore and resolve claims," *Lexington Foot & Ankle Ctr.*, 2019 WL 13216437, at *2, the Court should deny the motions to stay discovery.

11

Dated: November 14, 2025                                         Respectfully submitted,

                                                                             WINSTON & STRAWN LLP

                                                                             */s/ Steven Grimes*

                                                                             Steven Grimes (admitted *pro hac vice*)
                                                                             Whitney I. Adams (KBA #100826)
                                                                             300 North La Salle Drive, Suite 4400
                                                                             Chicago, Illinois 60654
                                                                             Tel.: (312) 558-5600
                                                                             Fax: (312) 558-5700
                                                                             sgrimes@winston.com
                                                                             wiadams@winston.com

                                                          Benjamin C. Fultz (KBA #84398)
                                                         Gregory Scott Gowen (KBA #85408)
                                                         Robert E. Ranney (KBA #100226)
                                                         FULTZ MADDOX DICKENS PLC
                                                         101 South Fifth Street, 27th Floor
                                                         Louisville, Kentucky 40202-3116
                                                         Tel.: (502) 588-2000
                                                         Fax: (502) 588-2020
                                                         bfultz@fmdlegal.com
                                                         sgowen@fmdlegal.com
                                                         rranney@fmdlegal.com

                                                         *Attorneys for 3M Company*