# Exhibit 5

```
                                                              Page 1

 1
                         CAUSE NO. 23-CV-0488
 2
     3M COMPANY,                    |  IN THE DISTRICT COURT OF
 3                                  |
              Petitioner,            |
 4                                  |
     V.                             |  GALVESTON COUNTY, TEXAS
 5                                  |
     MICHAEL B. MARTIN and          |
 6   MARTIN WALTON LAW              |
     FIRM,                          |
 7                                  |
              Respondents.          |  10TH JUDICIAL DISTRICT
 8
 9   **********************************************************
10              ORAL AND VIDEOTAPED DEPOSITION OF
11                      MICHAEL B. MARTIN
12                      FEBRUARY 24, 2025
13                          VOLUME 1
14   **********************************************************
15
           ORAL AND VIDEOTAPED DEPOSITION of MICHAEL B.
16   MARTIN, produced as a witness at the instance of the
     Petitioner, and duly sworn, was taken in the
17   above-styled and numbered cause on February 24, 2025,
     from 9:48 a.m. to 4:39 p.m., before Mendy A.
18   Schneider, CSR, RPR, in and for the State of Texas,
     recorded by machine shorthand, at the offices of
19   MILLER, SCAMARDI, CARRABBA & BURGESS, P.C.,
     6525 Washington Avenue, Houston, Texas, pursuant to
20   the Texas Rules of Civil Procedure and the provisions
     stated on the record or attached hereto; that the
21   deposition shall be read and signed.
22
23   MW 7168308
24
25
```

```
                                                         Page 2
 1               A P P E A R A N C E S
 2
     FOR THE PETITIONER:
 3
         STEVE GRIMES
 4       WHITNEY ADAMS
         WINSTON & STRAWN LLP
 5       35 W. Wacker Drive
         Chicago, Illinois 60601
 6       312.558.5600
         SGrimes@winston.com
 7       WIAdams@winston.com
 8
     FOR THE RESPONDENTS:
 9
         DAVID MILLER
10       DIANE BURGESS
         MILLER, SCAMARDI, CARRABBA & BURGESS, P.C.
11       6525 Washington Avenue
         Houston, Texas, 77007
12       713.861.3595
         Dmiller@msc-lawyer.com
13
14   ALSO PRESENT:
15       DANIEL ALPIZAR, The Videographer
16
17
18
19
20
21
22
23
24
25
```

```
                                                         Page 102
 1       A.   In part.
 2       Q.   What's the other part?
 3       A.   Gather all kinds of information about the
 4   client that may or may not relate to the viability of
 5   the claim.                                              11:54AM
 6            When a client files a lawsuit, their
 7   lives are an open book.  You want to know what that
 8   book looks like before you take the case.
 9       Q.   Before you invest your money in it?
10       A.   Right, exactly.                                11:54AM
11       Q.   Did you have conversations around this time
12   with Mr. Hammond about what he had done to vet the,
13   let's call it, approximately 60 cases that had already
14   been filed?
15       A.   No, I just said, Look, I'm going to -- this    11:54AM
16   is not the way I do it.  It's not the way I've ever
17   done it and so we're going to parse this down.
18   There's no way that all 66 of these folks all used the
19   same respirator at the same time at the same
20   employment so we're going to hash that out and we're    11:55AM
21   going to start dismissing people -- dismissing
22   defendants who shouldn't be in this case for a
23   particular plaintiff for whatever reason.
24       Q.   So you -- you believe right at the outset of
25   your relationship with Mr. Hammond that some of the     11:55AM
```

Page 103

|   |   |   |
|---|---|---|
| 1 | cases in his complaint were not viable? | |
| 2 | A.  Well, they may have been viable, but you have | |
| 3 | a -- a plaintiff who has sued a multiple spectrum of | |
| 4 | defendants and maybe they used those products.  But | |
| 5 | the question then becomes how much did they use those | 11:55AM |
| 6 | products? | |
| 7 | If they used the 3M 8710 for two weeks | |
| 8 | in 1984, and that's all, you know, you probably want | |
| 9 | to dismiss 3M out of that case.  So it's a causation | |
| 10 | and evaluation.  You have to do a causation analysis. | 11:56AM |
| 11 | It's a hard call sometimes.  I mean, when -- when do | |
| 12 | you get to a point where a respirator can be involved | |
| 13 | in direct causation?  And so you have to make that on | |
| 14 | a case-by-case basis. | |
| 15 | Q.  When did you first determine that some of the | 11:56AM |
| 16 | claims that Hammond had filed should be dismissed? | |
| 17 | A.  Well, we had a meeting with all of the | |
| 18 | defendants by Zoom in February of -- or early March of | |
| 19 | 2021.  We had a couple of meetings.  And I expressed | |
| 20 | this issue as we're discussing it with defense | 11:56AM |
| 21 | counsel. | |
| 22 | And I said, I don't want to -- I don't | |
| 23 | want defendants working on cases that they shouldn't | |
| 24 | be involved in.  So I want to clean the case up and | |
| 25 | get certain plaintiffs out of certain defendants' | 11:56AM |

Page 104

1  scope, you know, before we do anything else.  And
2  everybody agreed to that, including 3M, and applauded
3  that agreement.
4      Q.   My question is a little different.  I didn't
5  ask when you first told 3M that.  I asked when you                11:57AM
6  first concluded that some of the claims that had been
7  filed by Hammond should be dismissed, that they
8  weren't available or shouldn't go forward.
9      A.   Probably when I saw the lawsuit because
10 that's impossible for everybody to have done the same             11:57AM
11 thing using the same equipment across the board.  And
12 that's true with every mass tort case that's filed in
13 this country.  And that's why I lecture in CLE about
14 handling cases individually and properly allocating
15 efforts with the right defendants.                                11:57AM
16           MR. MILLER:  Steve, I think you have a
17 copy of the dismissals that were filed.  I think we
18 provided those to you.
19           So if you want to look at that as a
20 reference, you can actually go back and determine a               11:57AM
21 lot of that.
22     Q.   (BY MR. GRIMES)  I just want to be clear.
23           You saw the initial Hammond complaint
24 that he filed before you entered into your referral
25 agreement, correct?                                               11:58AM

```
                                                       Page 105
 1      A.   Of course, yeah.
 2      Q.   And you analyzed that, right?
 3      A.   Right.
 4      Q.   Okay.  Let's...
 5           (Discussion off the record.)              11:58AM
 6      Q.   (BY MR. GRIMES)  So we'll mark this as
 7   Martin 6.
 8           (Marked Martin Exhibit No. 6.)
 9      Q.   (BY MR. GRIMES)  This would be an April 6,
10   2020, e-mail.                                    11:58AM
11           You are familiar with Martin 6, correct?
12      A.   Yes.  Let me just refresh my memory for a
13   second.  You gave me two.  Are they the same thing?
14      Q.   Probably.  Thanks.
15      A.   These e-mail strings you always have to kind 11:59AM
16   of start from the back.  Yep, okay.
17      Q.   Okay.  So as of April 6, 2020, the latest,
18   you had seen a copy of Hammond's initial complaint
19   that he had filed in Kentucky, correct?
20      A.   Yes.                                     11:59AM
21      Q.   And as you just testified, on a plain reading
22   of that complaint as you, as someone with your
23   expertise, you believe that all of those claims
24   couldn't be true, couldn't be viable, right?
25           MR. MILLER:  Objection; form.            11:59AM
```

Page 106

1   A.   No.  It's common practice for plaintiffs'
2   lawyers to do this because they are unsure because
3   discovery hasn't taken place.  And because discovery
4   hasn't taken place, the claims may be viable against
5   all of these defendants until you get into the                12:00PM
6   specific facts of each case and learn that, okay,
7   yeah, a plaintiff used a mask but maybe not very long,
8   or a plaintiff had a beard, or a plaintiff doesn't
9   have a diagnosis, or any number of facts that would
10  justify dismissal of a defendant.                             12:00PM
11           You don't know that at the time you're
12  looking at the complaint.  You know that you have to
13  do some investigation to ferret out specific facts as
14  it relates to each client.
15  Q.   (BY MR. GRIMES)  Do you now believe there's a            12:00PM
16  duty to do that investigation before the complaint is
17  filed?
18  A.   I don't think it's realistic often for a
19  plaintiff's lawyer to do that investigation.  I don't
20  think there's enough time.  I mean, if a guy is               12:01PM
21  diagnosed 10 months earlier and he walks into a
22  lawyer's office and that gives the lawyer two months
23  to do an investigation before he files a lawsuit, it's
24  not the time.  You have to file a lawsuit while you're
25  doing an investigation or else you let the statute of        12:01PM