**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**

3M COMPANY,

        **Plaintiff**

VS.

                                  **Civil Action No: 7:25-cv-00037-REW-EBA**

GLENN M. HAMMOND,
MICHAEL B. MARTIN, and
JOHN (a.k.a. "JOHNNY") GIVENS

        **Defendants**

---

**DEFENDANT'S, JOHN ("JOHNNY") GIVENS, REPLY IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

      NOW INTO COURT, comes Defendant, John ("Johnny") Givens (hereafter, "Givens") who files this Reply in Support of his Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below and those set out in his original Motion to Dismiss, Plaintiff, 3M Company ("3M") has failed to state a claim upon which relief can be granted, and Givens is entitled to dismissal of the complaint as a matter of law.

**I.    Litigation activity cannot serve as the predicate acts to support a civil RICO claim.**

      In his Motion to Dismiss, Givens argues, *inter alia*, that a robust body of jurisprudence holds that litigation activity cannot serve as the predicate acts of wire fraud or mail fraud under 18 U.S.C. § 1962(a). In response, 3M erroneously claims that because there is no carve out language in the federal civil RICO statute which exempts litigation activities from the class of conduct which constitutes mail fraud and wire fraud, Givens' argument fails as a matter of law. (R. Doc. 74 at pp. 17–20.) In support of this argument, 3M relies on dicta from *United States v. Hansmeier*, an unpublished decision concerning a criminal prosecution to suggest that mail and wire fraud

1

prosecutions can be wholly based on conduct which occurs in civil litigation. (R. Doc. 74 at pp. 17–18 (quoting *United States v. Hansmeier*, 2017 WL 8947193, at *4 (D. Minn. July 24, 2017) (citing cases), report and recommendation adopted, 2017 WL 3971874 (D. Minn. Sept. 8, 2017), aff'd, 988 F.3d 428 (8th Cir. 2021)). However, this out-of-circuit district court criminal case is legally and factually inapposite, and it does not inform the analysis required by Givens' motion.

At its most basic level, *Hansmeier* is a criminal case and its analysis centers on the federal criminal RICO statute. *See generally*, 2017 WL 8947193. That statute is not at issue here. Moreover, a review of the facts and legal analysis involved in *Hansmeier* buttresses the conclusion that the case is inapplicable here. In *Hansmeier*, the defendant was charged with knowingly conspiring to devise and participate in a scheme to defraud and obtain money by means of false representations, and that he used mail and wire communications to do so. *Id.* at *1. The scheme "involved uploading pornographic movies to file-sharing websites, obtaining the IP addresses of individuals who downloaded those movies, improperly using civil litigation proceedings to discover the identities of the individuals" through the use of subpoenas from internet service providers, "and then seeking settlement payments in exchange for not naming them as defendants in a copyright infringement lawsuit." *Id.* In other words, the defendants, both attorneys, directed an individual to upload pornography to bait unsuspecting viewers into copyright violations, then filed a copyright infringement suit naming John Does and utilizing ex parte discovery to obtain the IP addresses and discover the identities of those who downloaded the videos. Then, the defendants contacted those individuals and threatened to name them in the lawsuit, where they faced up to $150,000.00 in damages per each infringement, i.e., per each downloaded video, and the public stigma and shame of being named for illegally downloading pornography, and demanding a settlement payment to avoid being named. *Id.* Moreover, the defendants failed to

2

disclose to the court their role in uploading those videos to the website or their personal financial interest in the litigation to the courts from which they sought discovery or to the individuals from whom they sought settlement payments. *Id.* The conduct at issue in *Hansmeier*, though litigation-related, focused on the mail and wire communications *outside* the litigation process: the uploading of pornography and using the judicial process to identify those who downloaded it to blackmail them into settlements, all while actively concealing from the court and those from whom they sought settlements their personal financial benefit from these ginned up cases. *See id.*

Here, 3M alleges that "cookie-cutter complaints [were] filed en masse" (R. Doc. 74 at p. 11) and included claims that were time-barred by applicable statutes of limitations; that Defendants knowingly prosecuted stale claims; and that they used the mail and wires to communicate with their clients, opposing counsel, and the court through which they made false representations in filings and discovery. (R. Doc. 74 at p. 12.) All of the wrongdoing that 3M has alleged involves alleged misrepresentations within the confines of routine litigation practice.

Specifically, 3M alleges that Givens knowingly prosecuted bogus claims against 3M, that he "managed day-to-day activity in the litigation" and that once the frivolity of some of the dust mask claims came to light, he moved to withdraw from representation. (R. Doc. 74 at pp. 13–14.) Regarding last allegation, it bears noting that Givens withdrawing upon the realization that certain claims were without merit comports with his professional responsibility, which would require him to withdraw or voluntarily dismiss a claim that counsel learns is baseless; it does not give rise to the presumption that he was engaged in conspiratorial conduct that would justify a RICO action.

Moreover, litigating even a frivolous claim does not equate to mail or wire fraud. The assertion that Givens knowingly participated in the pursuit of frivolous claims, even if true, cannot, without more, serve as predicate acts for RICO.

> A civil RICO action in a neighboring federal district is not the appropriate mechanism to seek redress for false statements made in court filings by a litigation adversary. More appropriate measures may include a motion for Rule 11 sanctions… and, if necessary, a motion for relief under Federal Rule of Civil Procedure 60(b)(3) for fraud on the court.

*Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 72 (E.D.N.Y. 2020); *see also Acres Bonusing, Inc. v. Ramsey*, 19-5418 2022 WL 17170856 at *11 (N.D. Cal. Nov. 22, 2022) (collecting cases and finding that "[i]n the wake of *Kim*, district courts from around the country have found that litigation activities will not serve as predicate acts unless there are allegations of wrongdoing outside of the litigation, such as out-of-court activity or corruption."); *Langan v. Smith*, 312 F.Supp.3d 201, 206 (D. Mass. 2018) (surveying cases from various federal district courts, all of which have rejected the theory that litigation activity, without more, can serve as the basis for RICO claims and concluding that "courts typically are skeptical of attempts to fashion fraud-based RICO claims out of litigation activities.")

The public policy considerations for proscribing claims like 3M's are clear. As one district court explained,

> the RICO claim still fails… many of the alleged 'fraudulent' statements and alleged acts of obstruction occurred in the context of Defendants denying Plaintiffs' allegations and making alleged misrepresentations in various court filings. The Second Circuit has ruled that these categories of litigation activities cannot be RICO predicates… Permitting RICO claims for such activities would lead to excessive derivative litigation, would chill open access to the courts, would expand the narrow ground for sanctions for misrepresentations made to courts, and would deprive litigants of finality and repose.

*Azima v. Dechert LLP*, 22-8727, 2024 WL 4665106 at *2 (S.D.N.Y. Sept. 26, 2024).

The allegations in 3M's complaint are exactly the type of litigation activities or litigation-related activities that courts throughout the country have routinely rejected as predicate acts of wire fraud and mail fraud under civil RICO. The cases that 3M cites in its opposition in an attempt to circumvent this inescapable conclusion are all readily distinguishable on their face. For example,

in *Rajaratnam v. Motley Rice, LLC*, the district court found that plaintiff failed to state cognizable RICO predicate acts of mail and wire fraud arising out of allegedly false statements about the plaintiff, accusing him of terrorist activity, which the defendant law firm both filed into the record and published in a national magazine. *See Rajaratnam*, 449 F.Supp.3d at 71. The court carefully distinguished the case from *Sykes v. Mel Harris and Assocs., LLC*, 757 F.Supp.2d 419 (S.D.N.Y. 2010), a case in which the plaintiff successfully pleaded mail and wire fraud arising out of litigation activity because in *Sykes*, "the gravamen of Mel Harris's racketeering activity was not so much litigation activities, as it was the use of courts to obtain default judgments *en masse* against defendants *who had not been served*.[1] The 'litigations' in *Sykes* were mere perfunctory steps to cash in on a portfolio of debt." *Rajaratnam*, 449 F.Supp.3d at 71 (emphasis added); *see also Relevant Grp., LLC v. Nourmand*, 19-5019, 2022 WL 2916860 at *1, *11 (C.D. Cal. July 25, 2022) (finding that sham litigation instituted for the purpose of extortion may form a pattern of racketeering activity supporting a RICO claim where the underlying litigation involved "an enterprise that reflexively initiated a series of legal challenges to Relevant's construction projects under the California Environmental Quality Act ("CEQA") in order to delay construction and pressure Relevant to pay money and make non-environmental alterations and concessions). None of these are persuasive here, where the alleged wrongdoing by Givens centers around the prosecution of potentially time-barred claims amid the pursuit of hundreds of meritorious claims, participating in discovery and correspondence with his clients, the court and opposing counsel,

---

[1] In its opposition, 3M conveniently left out the fact that the use of the judicial system to obtain mass judgments were solely against defendants who had not been served. (R. Doc. 74 at p. 19.) It was the orchestrating of the default judgments against defendants *who had not been served* that constituted the racketeering activity, and it was that key fact that distinguished *Sykes* from *Rajaratnam*, where the litigation activities could not serve as the basis of a RICO action. *Rajaratnam*, 449 F.Supp.3d at 71.

and the eventual moving to withdraw from same when, after discovery, it became clear that some of the clients he represented had stale claims.

> **A.    Count One does not allege a pattern of racketeering activity and Count Two does not allege a RICO conspiracy because 3M does not state a cognizable predicate act.**

3M urges this Court to discredit the ample jurisprudence Givens and his co-defendants cite in support of their argument that litigation activities cannot constitute wire or mail fraud because they cite non-binding cases from other jurisdictions. However, a review of the jurisprudence from Kentucky federal district courts and the United States Court of Appeal for the Sixth Circuit reveals that this is an issue of first impression in the Sixth Circuit and Kentucky district courts. A survey of caselaw from other district courts within the Sixth Circuit strongly suggests that litigation activities cannot constitute mail or wire fraud. *See*, *e.g.*, *Melton v. Blankenship*, 07-1091, 2008 WL 11432163 (W.D. Tenn. Feb. 20, 2008) (granting the defendant's motion to dismiss in a case alleging conspiracy to make false allegations and file fraudulent court documents in two prior court cases, but leaving open the possibility that more egregious conduct, such as forging facts and clients' signatures on affidavits without client knowledge or approval could result in liability); *Pompy v. Moore*, 19-10334, 2023 WL 845859 (E.D. Mich. Feb. 28, 2024) (holding that civil RICO liability cannot be based upon alleged misrepresentations made in a search warrant affidavit and noting that "after a survey of the decisions on point, 'the overwhelming weight of authority bars a civil RICO claim based on the use of the mail or wire to conduct allegedly fraudulent litigation activities as predicate racketeering acts.'") (quoting *Carroll v. U.S. Equities Corp.*, 18-667, 2019 WL 4643786 at *12 (N.D.N.Y. Sept. 24, 2019); *Neal v. Second Sole of Youngstown, Inc.*, 17-1625, 2018 WL 340142 (N.D. Ohio Jan. 9, 2018) (granting a motion to dismiss RICO claims arising out of the mass use of boilerplate complaints to sue a variety of defendants under the Americans with

Disabilities Act and using the mails and wires to send settlement letters and summonses in each case to falsely accuse businesses and individuals of ADA violations and take advantage of the expense of the litigation to force settlements, finding that "[i]f Counter-Plaintiffs attempts to classify Neal's litigation activities as extortion or mail fraud appear forced, it is because they are trying to avoid calling their claims what they really are. The proper cause of action to bring against Neal, if indeed his claims… are frivolous, would be a claim for malicious prosecution or abuse of process or both. Or,… [they] could seek sanctions under Rule 11. But neither state tort claims nor violations of Rule 11 qualify as predicate offenses under RICO.").

As discussed at length in Given's motion to dismiss, 3M cannot succeed on its RICO conspiracy claim without an underlying RICO claim. *See*, *e.g.*, *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 806 (6th Cir. 2015) ("Plaintiffs' RICO conspiracy claim fails because Plaintiffs failed to allege a substantive RICO violation in the first place.");  For the reasons set forth above and more fully in Givens' Motion to Dismiss, 3M has not alleged a cognizable RICO claim or a RICO conspiracy claim because it has failed to identify an actionable predicate act under RICO.

## II.    3M cannot succeed on its Kentucky state law fraud or conspiracy claims.

First, even if the Court accepts 3M's fallacious argument that the judicial statement privilege does not apply to bar 3M's claims of fraud and civil conspiracy under Kentucky state law because it is bound to apply federal law to these claims, the *Noerr-Pennington* doctrine nevertheless immunizes Givens from liability for these claims. *See Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007). In any event, the judicial statement privilege applies here as a separate and independent basis that entitles Givens to dismissal of 3M's Kentucky state law claim.

3M misrepresents the caselaw it cites in support of the proposition that the judicial statement privilege, a privilege recognized by the Kentucky common law, does not apply in this case because it has asserted both federal question and diversity jurisdiction. (*See* R. Doc. 74 at p. 27.) It contends that where, as here, both federal and state law claims are raised, the court must apply federal privilege law to avoid conflicting application in the case. In support, it cites various cases that apply federal evidentiary law to the exclusion of the privilege under the state common law. Unlike here, in all those cases except two, the state law claims at issue were pendent state law claims without an independent basis for diversity jurisdiction under 28 U.S.C. § 1332. (*See* R. Doc. 74 at p. 27 (citing *Lawrence for Est. of Hoffman v. Madison Cty.*, 13-383, 2015 WL 13636281, at *2 (E.D. Ky. Feb. 24, 2015) (citing *Hancock v. Dodson*, 958 F. 2d 1367, 1373 (6th Cir. 1992)).

In the two cases where the plaintiff invoked both diversity and federal question jurisdiction in the complaint, the court did apply federal privilege law to the exclusion of state law privilege, but specifically and only because the applicable "state and federal law provide competing answers regarding discovery of medically peer reviewed materials." *Garguilo v. Baystate Health, Inc.*, 826 F. Supp. 2d 323, 325 (D. Mass. 2011); *see also Smith v. Alice Peck Day Mem'l Hosp.*, 148 F.R.D. 51 (D.N.H. 1993) (same). The court found that where application of privilege under state and federal law would result in disparate outcomes, only then must federal law control. *See id.* It did not impose any such rule that federal law must be applied and state law rejected where, as here, application of state and federal evidentiary law would yield the same result.

As discussed at length above and in Givens' motion to dismiss, application of federal law (i.e. *Noerr-Pennington* immunity and the bar on litigation acts serving as predicate offenses for purposes of RICO liability) comports with the judicial statement privilege under Kentucky state law. Both compel the conclusion that 3M cannot maintain any of the state or federal claims levied

8

against Givens. Accordingly, because federal and state law can be applied here without conflicting results, the judicial statements privilege applies to this case and bars Counts Three and Four of fraud and civil conspiracy under Kentucky state law.

### III. The "sham exception" to *Noerr-Pennington* immunity does not apply here.

3M erroneously argues that Defendants are not entitled to *Noerr-Pennington* immunity because the sham exception applies to this case. (See R. Doc. 74 at pp. 29–38.) This is incorrect. In certain "extraordinarily narrow" circumstances where the *Noerr-Pennington* doctrine applies, a defendant may nevertheless lose its immunity defense under the doctrine's "sham exception." *U.S. Futures Exch., L.L.C. v. Bd. Of Trade of the City of Chi., Inc.*, 953 F.3d 955, 963 (7th Cir. 2020) (citation omitted). As explained by the Sixth Circuit:

> The sham exception to *Noerr–Pennington* prevents the application of immunity where a defendant's act of "petitioning" was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Omni Outdoor Advert.,* 499 U.S. at 380, 111 S.Ct. 1344 (citing *Noerr,* 365 U.S. at 144, 81 S.Ct. 523). This exception "encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.*; *N. Ky. Right to Life Comm., Inc. v. Ky. Registry of Election Fin.,* No. 95–6334, 1998 WL 13405, at *5–6, 1998 U.S.App. LEXIS 495, at *17–18 (6th Cir. Jan. 7, 1998); *Eaton v. Newport Bd. of Educ.,* 975 F.2d 292, 298 (6th Cir. 1992). "A 'sham' situation involves a defendant whose activities are 'not genuinely aimed at procuring favorable government action' at all, not one 'who genuinely seeks to achieve his governmental result, but does so through improper means.' " *Omni Outdoor Advert.,* 499 U.S. at 380, 111 S.Ct. 1344 (quoting *Allied Tube,* 486 U.S. at 500 n. 4, 507 n. 10, 108 S.Ct. 1931) (internal citations and emphasis omitted); *Knology, Inc. v. Insight Commc'ns Co., LP,* 393 F.3d 656, 658–59 (6th Cir.2004). One "classic" example of sham petitioning is where a defendant files "frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *Omni Outdoor Advert.,* 499 U.S. at 380, 111 S.Ct. 1344.

*VIBO Corp., Inc. v. Conway*, 669 F.3d 675, 685–86 (6th Cir. 2012). The party opposing *Noerr-Pennington* immunity bears the burden of proof that its opponent's conduct was a sham. *Navient*

*Solutions, LLC v. Lohman*, 136 F.4th 518, 523 (4th Cir. 2025) (citing *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th Cir. 2003)).

For a lawsuit to qualify as a sham, it must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and the litigant's subjective motivation must "conceal[] an attempt to interfere *directly* with the business relationships of a competitor… through the use [of] the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures*, 508 U.S. 49, 60–61, 113 S.Ct. 1920 (1993) (emphasis original). To fall within the sham exception, a lawsuit "must be a sham *both* objectively and subjectively." *BE & K Constr. Co v. N.L.R.B.*, 536 U.S. 516, 526, 122 S.Ct. 2390 (2002) (emphasis original). An objectively reasonable effort to litigate cannot be sham regardless of subjective intent. *Prof'l Real Estate*, 508 U.S. at 57.

> Determining whether a party who filed suit was indifferent to obtaining a favorable judgment may often be a difficult question of fact. *Accord Grip-Pak,* 694 F.2d at 472. We hold that when a lawsuit raises a legal issue of genuine substance, it raises a rebuttable presumption that it is a serious attempt to obtain a judgment on the merits instead of a mere sham or harassment. The first amendment interests concerned and the case law discussed earlier support placing the evidentiary burden on the antitrust plaintiff to prove that the action of the defendant comes within the sham exception to *Noerr-Pennington* in this kind of case.

*Westmac, Inc. v. Smith*, 797 F.2d 313, 318 (6th Cir. 1986). "If an object litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and [a RICO] claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Prof'l Real Estate*, 508 U.S. at 60, 113 S.Ct. at 1928.

> This two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability. Of course, even a plaintiff who defeats the defendant's claim to *Noerr* immunity by demonstrating both the objective and the subjective components of a sham must still prove a substantive antitrust violation. Proof of a

sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim.

Some of the apparent confusion over the meaning of "sham" may stem from our use of the word "genuine" to denote the opposite of "sham." See *Omni, supra,* at 382, 111 S.Ct., at 1355; *Allied Tube,* 486 U.S., at 500, n. 4, 108 S.Ct., at 1937, n. 4; *Noerr, supra,* 365 U.S., at 144, 81 S.Ct., at 533; *Vendo Co. v. Lektro–Vend Corp., supra,* 433 U.S., at 645, 97 S.Ct., at 2894 (BLACKMUN, J., concurring in result). The word "genuine" has both objective and subjective connotations. On one hand, "genuine" means "actually having the reputed or apparent qualities or character." Webster's Third New International Dictionary 948 (1986). "Genuine" in this sense governs Federal Rule of Civil Procedure 56, under which a "genuine issue" is one "that properly can be resolved only by a finder of fact because [it] may *reasonably* be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (emphasis added). On the other hand, "genuine" also means "sincerely and honestly felt or experienced." Webster's Dictionary, *supra,* at 948. To be sham, therefore, litigation must fail to be "genuine" in both senses of the word.

*Id.* at 61, 113 S.Ct. at 1928–29.

It cannot be said that the underlying lawsuits here, i.e., the dust mask cases against 3M, were objectively baseless or that Defendant Givens had no realistic expectation of success on the merits. The underlying lawsuits indisputably stated cognizable claims against 3M. Whether some of those claims may have been defeated by the successful assertion of a statute of limitations defense on a motion to dismiss or for summary judgment does not render them objectively baseless. A statute of limitations defense is not absolute; it is susceptible of waiver and tolling and requires a fact-specific inquiry to determine its applicability to a given case. *See*, *e.g.*, *Robertson v. Simpson*, 624 F.3d 781, 783, 785 (6th Cir. 2010) ("The doctrine of equitable tolling allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control… Whether equitable tolling is warranted is a fact-intensive inquiry best left to the district courts.") (citations and internal quotation marks omitted); *Osborn v. Griffin*, 11-89, 2013 WL 12176849 at *2 (E.D. Ky. May 8,

2013) (finding that the defendants' statute of limitations defense required a full development of the record to determine whether the statute had been tolled).

If the Court were to hold that claims, even those brought with the subjective intent to subvert a time bar, were objectively baseless, it would open the floodgates to a host of RICO claims, not to mention a litany of state law tort claims alleging that any time-barred claim was an abuse of process, malicious prosecution, or otherwise sanctionable. As a matter of public policy and common sense, the Court should not fashion such a ruling that would invite this outcome.

Moreover, even assuming that Givens subjectively knew these claims were time-barred before filing suit (which is denied), as the Supreme Court has held, subjective intent is immaterial where, as here, there is an objectively reasonable effort to litigate. *See Prof'l Real Estate*, 508 U.S. at 57, 113 S.Ct. at 1926. Under *Professional Real Estate*, 3M is first required to disprove the underlying lawsuits' legal viability before it can put forth evidence of their economic viability. Here, the Court need not reach the second step in the analysis because the underlying lawsuits were legally viable notwithstanding their chances of economic success on the merits.

> **A.    The Sixth Circuit has not recognized a fraud exception to *Noerr-Pennington* immunity, and even if this Court extended the law to recognize a fraud exception, it would not apply here.**

In a footnote, the Supreme Court in *Professional Real Estate* declined to answer "whether, and if so, to what extent *Noerr* permits the imposition of antitrust liability for a litigant's fraud or other misrepresentations." 508 U.S. at 61, 113 S.Ct. at 1929, n.6. The Sixth Circuit has not acknowledged a fraud exception to *Noerr-Pennington* immunity. *See EQMD, Inc. v. Farm Bureau Gen. Ins. Co. of Mich.*, No. 19-13698, 2021 WL 843145 at *6 (E.D. Mich. Mar. 5, 2021). Other circuit courts which have considered the fraud exception to *Noerr-Pennington* immunity have concluded that "[i]f a fraud exception to *Noerr-Pennington* does exist, it extends only to the type

of fraud that deprives litigation of its legitimacy." *See id.* (quoting *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 401 (4th Cir. 2001) (citing *Cheminor Drugs v. Ethyl Corp.*, 168 F.3d 119, 123–24 (3d Cir. 1999) ("While we do not condone misrepresentations in a judicial setting, neither will we deprive litigants of immunity derived from the First Amendment's right to petition the government if the alleged misrepresentations do not affect the core" of the lawsuit)); *see also Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 158–59 (9th Cir. 1993) (*Professional Real Estate* "does not obviate the application of the Court's two-part test for determining sham litigation in the absence of proof that a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.")).

Here, accepting all the well-plead allegations in the Complaint as true, it cannot be said that any of Defendant Givens' allegedly fraudulent conduct in the course of the dusk mask cases deprived the underlying claims of their legitimacy, primarily because the so-called fraudulent claims were either (a) voluntarily dismissed by Defendants or (b) Defendant Givens and Martin moved to "stay over 700 dust mask cases in which they are co-counsel with Hammond, on the basis that these claims were potentially fraudulent." (R. Doc. 40 at p. 76, ¶ 164.) In such instances where Defendant Givens either voluntarily moved to dismiss a case upon realizing it may be meritless or moved to stay it due to its potentially fraudulent nature, it cannot be said that the fraud has affected the core of the proceedings. Givens' own actions in connection with these cases have ensured that the court cannot rule adversely to 3M until issues of potential fraud have been resolved. In any event, to the extent that 3M contends that there remain dust mask claims that have been fraudulently filed after a statute of limitations has run, or should not properly be styled against 3M because the plaintiff did not wear a 3M respirator, it must first prove the fraud in the underlying

lawsuit affected the core of the suit (and that Defendant Givens knew or should have known of the fraud) before it can seek to skirt *Noerr-Pennington* immunity on the basis of fraud.

Nor can 3M rely on the fact that Defendants voluntarily dismissed a number of claims as proof of fraudulent activity sufficient to evade *Noerr-Pennington* immunity; it is axiomatic that as facts develop through the litigation process, it will often change the litigation posture of the parties. *See*, *e.g.*, *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chicago, Inc.*, 953 F.3d 955, 966 (7th Cir. 2020) ("Although a successful, winning petition proves its own reasonableness, it does not follow that a petition lacks merit simply because it did not prevail."); *Dean v. Riser*, 240 F.3d 505, 510 (5th Cir. 2001) (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)) ("Many circumstances may influence a plaintiff to voluntarily dismiss his claim with prejudice… A plaintiff whose claim appeared meritorious at the onset may encounter various changes in his litigation posture during the unpredictable course of litigation. 'Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation.' Should such events create insurmountable problems of proof for the plaintiff, voluntarily withdrawing the complaint with prejudice would be the prudent thing to do.").

Even if this Court were to rely "on the dicta of cases outside of this circuit" to extend the narrow exception to *Noerr-Pennington* immunity and recognize, for the first time in this Circuit, RICO liability arising out of allegedly fraudulent conduct in an underlying lawsuit, such an exception would not apply in this case for the reasons stated above. *EQMD, Inc.*, 2021 WL 843145 at *7. Accordingly, this Court should find that *Noerr-Pennington* bars this lawsuit in its entirety and dismiss all claims against Defendant Givens with prejudice.

## IV.    Conclusion

3M cannot maintain its action against Givens. The arguments it sets forth in its Opposition to Defendants' motions to dismiss are misleading and legally and factually distinguishable from the instant matter. Under both federal and/or state law, Givens is entitled to dismissal of the claims against him. Wherefore, for the reasons set forth above and those set forth more fully in his Motion to Dismiss, Defendant, John "Johnny" Givens, respectfully requests that this Court grant his Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss all counts against him in the First Amended Complaint with prejudice.

Respectfully submitted this, the 5th day of December, 2025.

Respectfully submitted,

**GAINSBURGH, BENJAMIN, DAVID,**
**MEUNIER & WARSHAUER, L.L.C.**

BY: _/s/ Brittany R. Wolf-Freedman_
Brittany R. Wolf-Freedman (*Pro Hac Vice*)
601 Poydras Street, Suite 2355
New Orleans, Louisiana 70130
Telephone: (504) 522-2304
Facsimile: (504) 528-9973
E-mail: bwolf@gainsben.com

Walter C. Morrison, IV (*Pro Hac Vice*)
240 Trace Colony Park Drive, Suite 100
Ridgeland, Mississippi 39157
Telephone: (601) 933-2054
Facsimile: (504) 528-9973
E-mail:  wmorrison@gainsben.com

Judd R. Uhl (KY Bar No. 89578)
Lewis Brisbois Bisgaard & Smith LLP
3499 Blazer Parkway, Suite 330
Lexington, KY 40509
Telephone: (513) 808-9913
Facsimile: (513) 808-9912
Email: judd.uhl@lewisbrisbois.com

*Attorneys for Defendant, John Givens*

<u>**CERTIFICATE OF SERVICE**</u>

I, Brittany R. Wolf-Freedman, hereby certify that on December 5, 2025, I electronically filed the foregoing with the Clerk of Court by using the Court's electronic filing system which will send a notice of electronic filing to all counsel of record.

*/s/ Brittany R. Wolf-Freedman*
**BRITTANY R. WOLF-FREEDMAN**

16