# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **3M Company** | : | |
| | : | **CASE NO. 7:25-cv-00037-REW-MAS** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **REPLY IN SUPPORT OF MOTION BY** |
| | : | **DEFENDANT GLENN HAMMOND TO** |
| **Glenn Hammond, Michael B.** | : | **DISMISS THE AMENDED COMPLAINT** |
| **Martin, and John (a.k.a.** | : | **FOR FAILURE TO STATE A CLAIM** |
| **"Johnny") Givens,** | : | **UPON WHICH RELIEF MAY BE** |
| | : | **GRANTED** |
| **Defendants.** | | |

---

3M Company's ("3M's) response brief concedes that this federal litigation seeks to address alleged attorney misconduct arising from state court proceedings. It concedes that it could have raised its issues in state court Rule 11 proceedings. Its amended complaint likewise admits that it has raised these issues of Defendant Glenn Hammond's alleged misconduct in Kentucky Bar Association proceedings as well. Apparently dissatisfied with the state level proceedings and available remedies, it seeks redress here in federal court. However, as discussed below, 3M's novel claims find no basis in the law. Its opposition brief fails to refute Defendant Hammond's motion to dismiss its claims as a matter of law.

## I. 3M Fails to Explain How RICO Claims Can Arise out of Attorney Conduct Related to Disputed Underlying Litigation

### A. 3M cannot prove the necessary predicate acts to sustain a RICO claims

In his motion to dismiss, Hammond established that litigation activity cannot serve as a predicate act for a RICO claim, regardless of whether 3M contends that

such activity constituted mail or wire fraud. (Doc#64, PageID#658-662.) 3M raises two arguments in response, neither of which overcomes Hammond's motion.

First, 3M argues that there is "no statutory basis for excepting litigation activity from RICO." (Doc#74, PageID#1607-08.) To support this argument, however, 3M merely asserts that the plain language of the RICO statute and mail and wire fraud statutes do not contain an express exception for "litigation activity." (*Id.*) 3M extrapolates that this must mean there is no statutory basis to find that litigation activity cannot constitute a RICO predicate act.

Yet the overwhelming weight of courts to confront this issue have found otherwise. (*See* Hammond's Motion, Doc#64, PageID#659-661, collecting cases.); *see also, e.g., Carroll v. U.S. Equities Corp.*, No. 18-CV-667, 2019 U.S. Dist. LEXIS 162631, 2019 WL 4643786, at *12 (N.D.N.Y. Sept. 24, 2019) (collecting cases showing that "the overwhelming weight of authority bars a civil RICO claim based on the use of the mail or wire to conduct allegedly fraudulent litigation activities"). 3M's insistence that this principal is limited to RICO claims based on the Hobbs Act is unavailing, as this principle applies with equal force when mail or wire fraud are the alleged predicate acts. *Id.*

Courts have found a statutory basis for refusing to extend mail and wire fraud to include litigation activity. In *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004), the Eleventh Circuit found that "neither the threat to litigate nor the fabrication of evidence behind the lawsuit made the action 'wrongful' within the meaning of 18 U.S.C. § 1951 and therefore could not be a predicate act under RICO."

The Court further noted that "courts possess adequate procedures to distinguish valid claims from invalid claims and held that Congress did not intend to punish citizens merely for accessing the legal system." *Id.* Similarly, the Eighth Circuit found that litigation, regardless of merit, could not constitute a racketeering act: "We assume for purposes of argument (though the state court has found otherwise) that the threat to sue was groundless and made in bad faith. Such conduct may be tortious under state law, but we decline to expand the federal extortion statute to make it a crime." *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984).

3M simply cannot avoid that essentially every court to consider the issue has determined that RICO was not intended to criminalize litigation activity:

> RICO was passed in 1970 to pursue the Mafia as a whole, tying the big bosses to the crimes of their underlings by claiming they were all part of a 'criminal enterprise . . . Turning every failed lawsuit into a potential criminal case or RICO predicate would certainly have a chilling effect on citizens' ability to petition courts to resolve their disputes. Indeed, "chilling" is, if anything, too mild a word . . . Litigation *is* expensive and "*can* induce fear in a defendant." It might even be fair, "at least in other contexts, to characterize as 'wrongful' the filing of a groundless lawsuit." But to argue that Congress sought to punish arguably frivolous litigation with criminal sanctions (and, in the case of a civil RICO suit like this one, treble damages), in the absence of any clear statutory statement to that effect, proves too much.

*Neal v. Second Sole of Youngstown, Inc.*, No. 1:17-cv-1625, 2018 U.S. Dist. LEXIS 4031, at *3-4 (N.D. Ohio Jan. 9, 2018).

This leads to 3M's second argument, which is similarly unavailing. 3M contends that its Complaint alleges "fraudulent activity beyond the traditional litigation context," and specifically "out-of-court conduct" such as "mass solicitation of coal workers, lying to clients and their families about claims and reasons for

3

dismissals, intimidating employees to cooperate in the scheme, encouraging and coaching clients to perpetuate the lie, manipulating and forging documents, concealing evidence, and more to advance and conceal the scheme." (Doc#74, PageID#1609.) This argument misses on multiple levels. 3M appears to take the position that if a litigation activity does not literally take place in a courtroom, then it is not "litigation activity" for purposes of the precedent precluding litigation activity from being subject to RICO. Needless to say, there is no support for this position.

Every specific allegation made by 3M is directly tied to the prosecution by Defendants of litigation against 3M, i.e., litigation activity. The cases overwhelmingly are at odds with 3M's strained construction. Litigation activity includes any conduct that occurs during the process of litigating claims and is not limited to in-court events. *In re Chester Park View, LLC*, No. 23-CV-5432 (CS), 2024 U.S. Dist. LEXIS 98461, at *22 (S.D.N.Y. May 29, 2024) ("Because predicates arising from abusive litigation tactics must allege something beyond ***conduct intrinsic to the litigation process***, they are rarely successfully pleaded") (emphasis added); *US Dominion, Inc. v. MyPillow, Inc.*, No. 21-cv-0445, 2022 U.S. Dist. LEXIS 90530, 2022 WL 1597420, at *6 (D.D.C. May 19, 2022) (dismissing RICO claim based on over 150 cease and desist letters because "those cease-and-desist letters, no matter how threatening, constitute ***litigation-related activity***") (emphasis added); *Langan v. Smith*, 312 F. Supp. 3d 201, 207 (D. Mass. 2018) (surveying cases and observing that such cases "teach that RICO claims typically do not survive when rooted solely in ***litigation-related*** mail or wire fraud predicates").

To the extent that 3M claims it is relying on conduct by Defendants that did not affect 3M, e.g., statements made to certain clients or their families, 3M would lack standing to predicate a claim on such allegations. *See Lindsey v. Whitmer*, 124 F.4th 408, 411 (6th Cir. 2024) (standing to bring a claim "demand[s] that an injury be real and affect the plaintiff in some 'personal and individual way.'")

3M cites only to a series of inapposite District Court opinions from other circuits to argue that courts have permitted RICO claims to go forward "where defendants' conduct was broader than 'traditional' or 'pure' litigation activity. (Doc#74, PageID#1609-1610.) In each case 3M relies on to support this position, the plaintiff alleged a scheme that involved non-lawyer defendants committing acts entirely outside of litigation.[1] Here, 3M asserts only claims against the defendant-

---

[1] For example, *Navient Sols., LLC v. Law Offices of Jeffrey Lohman* involved a scheme in which approximately *twenty* affiliate market companies and "debt counselors" worked in concert to convince student loan borrowers to make a loan payment to an affiliate; the affiliate would then pocket the money and cause the borrower to go into default, at which point attorneys involved in the scheme would file a debt collection suit against the borrower. No. 1:19-cv-461(LMB/TCB), 2020 U.S. Dist. LEXIS 65648, at *5 (E.D. Va. Apr. 14, 2020). *Carroll v. United States Equities Corp.* "involved a debt-buying company (U.S. Equities), a law firm (Strumpf's firm), a process-serving company (SYR), and others (Strumpf, Siegel, Warshall and Lam) who conspired with one another to buy uncollectable consumer debt, initiate actions against the debtors, improperly serve them, and then file fraudulent affidavits of service and merit so as to obtain unwarranted default judgments against thousands of individuals." No. 1:18-CV-667, 2020 U.S. Dist. LEXIS 258605, at *29-30 (N.D.N.Y. Nov. 30, 2020). Similarly, in *CSX Transp., Inc. v. Gilkison*, the plaintiff alleged that the lawyer defendants worked in concert with a doctor defendant to procure fraudulent diagnoses and then manufacturer false asbestos claims against the plaintiff based on the diagnoses. Civil Action No. 5:05CV202, 2012 U.S. Dist. LEXIS 61719, at *36 (N.D.W. Va. May 3, 2012). *Relevant Grp., LLC v. Nourmand* did not involve lawyer defendants at all—plaintiffs in that case brought suit against owners of a business who routinely filed writs and other petitions with the city to delay the developer plaintiffs from erecting hotels near their business and demanded money to stop doing so. No. 2:19-cv-05019-ODW (KSx), 2022 U.S. Dist. LEXIS 131960, at *3-34 (C.D. Cal. July 25, 2022).

attorneys for their litigation activity, which cannot constitute a predicate act under RICO.

Finally, 3M incorrectly asserts that Hammond "does not challenge" the obstruction of justice allegations made against him. Hammond's motion to dismiss pointed out that this claim is facially deficient. (Doc#64, PageID#650.) As Hammond noted, it was facially absurd to assert an obstruction of justice claim based solely on an allegation that a law firm used an off-site storage facility to store files. (*Id.*) This fleeting implausible allegation cannot serve as a predicate act under RICO.

### B. 3M's RICO conspiracy claims fails as well

3M argues that it has plausibly alleged a RICO conspiracy, noting that it has alleged that the Defendants each agreed to play a role in the alleged RICO enterprise. (Doc#74, PageID#1613-1614.) But 3M concedes that if the "alleged scheme does not amount to a substantive RICO claim," then it "cannot support a RICO conspiracy claim." (*Id.*) This concession is fatal to the RICO conspiracy claim. Because 3M has failed to plead a plausible RICO enterprise, its RICO conspiracy claim also fails as a matter of law.

## II. 3M Fails to Explain how Its Claims Survive Application of the Judicial Statements Privilege, the Noerr-Pennington Doctrine, and Younger Abstention

### A. Judicial Statements Privilege Precludes 3M's state law claims

#### i. The judicial statements privilege is applicable here

Kentucky's judicial statements privilege applies to 3M's state law claims for fraud and civil conspiracy. 3M is simply wrong to contend that the privilege is

inapplicable merely because 3M also alleges federal claims. The Sixth Circuit has made clear that this privilege applies to a plaintiff's state law claims when the plaintiff also asserts federal claims. *Adams v. Lexington-Fayette Urb. Cty. Gov't*, 154 F.4th 501, 512-13 (6th Cir. 2025). Indeed, this Court has relied on the judicial statements privilege to dismiss state law claims asserted by a plaintiff that also asserted RICO claims—the same situation presented here. *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank*, No. 15-161-DLB-HAI, 2017 U.S. Dist. LEXIS 113639, at *48-54 (E.D. Ky. July 21, 2017); *see also Trupp v. Bank of Am., N.A.*, No. 3:19-CV-00479-GNS, 2020 U.S. Dist. LEXIS 62651, at *11 (W.D. Ky. Apr. 9, 2020) (dismissing plaintiff's state law claims based on judicial statements privilege where plaintiff also asserted federal claims).

Significantly, 3M does not cite any authority involving the judicial statements privilege to support its unfounded argument. The law is clear that the privilege is applicable in matters involving both state and federal claims.

### ii. The judicial statements privilege renders 3M's claims unsustainable

The judicial statements privilege "precludes the use of such statements [made during the course of a judicial proceeding] to sustain a cause of action. While the privilege does not outright bar an action, it renders it unsustainable if based exclusively on statements privileged under the law." *Deal v. First & Farmers Nat'l Bank, Inc.*, 518 S.W.3d 159, 173 (Ky. App. 2017) (internal citations omitted). The filing of the complaint and the statements therein are protected by the judicial statements privilege. *Gencanna Glob. USA, Inc. v. Jenco Indus. Sales & Servs., LLC,*

Civil Action No. 5: 19-387-DCR, 2020 U.S. Dist. LEXIS 2848, at *7 (E.D. Ky. Jan. 8, 2020) ("The judicial statements privilege is based upon the public interest in providing all people 'the utmost freedom of access to the courts of justice for settlement of their private disputes [and] to protect parties to any action before a judicial tribunal.' . . . it simply does not stand to reason that a complaint and its contents are covered by the privilege, while the fact of the complaint's filing is not."); *Morgan v. Botts*, 348 S.W.3d 599, 604 (Ky. 2011) ("the judicial statements privilege encompasses the act of filing the complaint, in addition to the statements contained therein") (overruled on other grounds).

3M's state law claims for fraud and civil conspiracy only allege injury suffered as a result of statements Defendants made during a judicial proceedings.[2] Specifically, in support of its fraud claim, 3M alleges,

> Defendants made material misrepresentations to 3M in the Enterprise Complaints . . . 3M did in fact rely on Defendants' misrepresentations and suffered injury as a result. 3M incurred legal fees and costs evaluating, defending against, and engaging in settlement negotiations

---

[2] 3M likewise only alleges injury from Defendants' lawsuits for its RICO claims. The Sixth Circuit has long acknowledged the basis for the judicial statements privilege:

> The rule of absolute privilege for relevant statements made by one attorney to another during the course of and in relation to judicial proceedings in which they are participating as counsel rests on solid basis. An attorney is an officer of the court and is subject to disciplinary action by the court and by his bar association. The rights of clients should not be imperiled by subjecting their attorneys to the fear of suits for libel or slander.

*Theiss v. Scherer*, 396 F.2d 646, 649-50 (6th Cir. 1968). This Court should, therefore, apply this logic to dismiss 3M's RICO claims in addition to its state law claims, All of the claims that 3M asserts against Defendants rest entirely on statements that Defendants made representing their clients in a lawsuit. These statements are privileged for good reason. This lawsuit (and the claims 3M asserts therein) is not a permissible mechanism to pursue what is, in reality, a disciplinary action against Defendants.

regarding dozens of fraudulent claims. 3M would not have sustained these losses if Defendants had not made the misrepresentations.

(Doc#40, PageID#539-541).

And in support of its conspiracy claim, 3M alleges that

Defendants agreed to collectively prepare and prosecute hundreds of product liability claims against 3M. Each Defendant knew or was recklessly indifferent to the fact that dozens of these claims contained material misstatements of fact and were therefore fraudulent . . . Defendants did in fact file the fraudulent claims, and 3M suffered injury as a result.

(Doc#40, PageID#541-542).

These statements are squarely protected by the judicial statements privilege, as they are statements made during a judicial proceeding. Therefore, 3M's claims for damages—which rest solely on these privileged statements—are not sustainable and must be dismissed. 3M attempts to argue that certain allegations it made in its complaint "fall outside of the privilege," (Doc#74, PageID#1618), but 3M does not allege that it suffered damages as a result of these allegations (nor could it)—it only alleges it suffered damages as a result of the statements in the complaints and other representations made by the Defendants on behalf of their clients throughout the judicial proceedings.[3] These statements made during the judicial proceeding are thus

_____

[3] "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief" to establish standing for a claim. *Cabinet for Health & Family Servs. v. Sexton*, 566 S.W.3d 185, 196 (Ky. 2018). 3M did not allege and cannot show a redressable injury for the allegations it claims fall outside of the judicial statements privilege, "(such as mass solicitation of coal workers, lies to clients during the intake process, intimidation of employees, forgery, concealing evidence)." (Doc#74, PageID#1618). Its claim for damages, therefore, cannot stand without relying on the privileged statements made in a judicial proceeding.

the only statements at issue, as 3M cannot sustain its state law claims without relying on these privileged communications. Thus, the claims must be dismissed.

### B. The *Noerr-Pennington* Doctrine Bar 3M's claims

#### i. The doctrine's narrow "sham exception" does not apply to 3M's allegations

The *Noerr-Pennington* doctrine's "sham exception" does not apply to 3M's claims. "This narrow exception requires that the substance of the petitioning activity or communications must be 'objectively baseless' or 'patently frivolous' and must be intended to conceal and interfere with a business relationship to obviate immunity." *RaceTech, LLC v. Ky. Downs, LLC*, 169 F. Supp. 3d 709, 716 (W.D. Ky. 2016). In other words, "[a]ctions advocated under this analysis must be both objectively meritless and subjectively motivated with knowledge of the lack of merit." *Id.* But "only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993). Put differently, "objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Id.* at 1926. "Thus, even litigation that is deceitful, underhanded, or morally wrong will not defeat immunity unless it satisfies the objective baselessness requirement." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th Cir. 2003)

"Courts in the Sixth Circuit have routinely dismissed claims under the *Noerr-Pennington* doctrine for failure to adequately plead the sham litigation exception." *Ashley Furniture Indus. v. Am. Signature, Inc.*, No. 2:11-cv-427, 2015 U.S. Dist. LEXIS 194690, at *12-13 (S.D. Ohio Mar. 12, 2015) (collecting cases). "The existence

of probable cause to institute legal proceedings precludes a finding that [a] defendant has engaged in sham litigation." *Prof'l Real Estate Inv'rs, Inc.,* 508 U.S. at 62. "Probable cause to institute civil proceedings requires no more than a 'reasonable belief that there is a chance that claim may be held valid upon adjudication.'" *Id.* at 26-63 (quoting *Hubbard* v. *Beatty & Hyde, Inc.*, 343 Mass. 258, 262, 178 N.E.2d 485, 488 (1961)). And "[t]he mere existence of a possible defense to the [defendant's] claim does not render the lawsuit a sham." *IGEN Int'l, Inc.*, 335 F.3d 303, at 312. Furthermore, the "sham exception" only applies in situations that "involve[] a defendant whose activities are 'not genuinely aimed at procuring favorable government action' at all, *not one 'who genuinely seeks to achieve his governmental result, but does so through improper means*.'" *VIBO Corp. v. Conway*, 669 F.3d 675, 685-86 (6th Cir. 2012) (quoting *City of Columbia v. Omni Outdoor Advert.*, 499 U.S. 365, 380 (1991)) (emphasis added); *see also Raines v. Switch Mfg.*, No. C-96-2648 DLJ, 1997 U.S. Dist. LEXIS 13621, at *17 (N.D. Cal. July 28, 1997) ("if a bare allegation of bad faith litigation were sufficient to defeat the *Noerr-Pennington* bar, every claimant would be able to avoid the intent of the Supreme Court merely by alleging bad faith").

Importantly, "for purposes of demonstrating the sham exception to *Noerr-Pennington* immunity, [plaintiff] must show that the *entire* lawsuit was baseless, not merely one claim or action." *Ashley Furniture Indus.*, No. 2:11-cv-427, 2015 U.S. Dist. LEXIS 194690, at *15-16 (emphasis in original) (holding that the sham exception could not apply where plaintiff did not "plead that [defendant's] lawsuits were

objectively baseless in their entirety."); *see also Meridian Project Sys. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) (plaintiff's "allegation that a single claim is objectively baseless does not bring [defendant's] filing of the entire complaint within the sham exception."); *VAE Nortrak N. Am., Inc. v. Progress Rail Servs. Corp.*, 459 F. Supp. 2d 1142, 1166 (N.D. Ala. 2006) ("This court's understanding of *Noerr-Pennington* is that the entire lawsuit - not just certain alleged claims - must be objectively baseless and brought with the requisite level of subjective mal-motive in order for the doctrine not to apply.")

3M has not adequately pled the narrow sham litigation exception. 3M does not allege that the product liability claims concerning the dust masks that 3M manufactures are objectively meritless—it merely alleges that *some* out of the hundreds of plaintiffs' claims filed cannot succeed based on issues such as statute of limitations or lack of a formal diagnosis. In other words, 3M does not raise an issue as to the actual substance or merit of the claims (i.e., whether 3M's masks are defective). 3M does not dispute that probable cause exists as to the defectiveness of its masks. In fact, 3M makes clear that it is not challenging, on a wholesale basis, the legitimacy of litigation against it over dust masks. This is fatal to the application of the "sham exception," which requires 3M to show the claims are objectively meritless.

Additionally, 3M's allegation that some of the claims Defendants asserted on behalf of their clients were time-barred does not support a finding that those claims were subjectively baseless, as statute of limitations is an affirmative defense, rather than a fundamental absence of any basis for a claim. *See Wimmer v. Ft. Thomas*, 733

S.W.2d 759, 761 (Ky. App. 1987) ("Pleading the statute of limitations is an affirmative defense, thus it was the burden of the appellee to show his entitlement to it."). And the "[t]he mere existence of a possible defense to the [defendant's] claim does not render the lawsuit a sham." *IGEN Int'l, Inc.*, 335 F.3d 303, at 312.

Moreover, 3M does not allege that any of the lawsuits it references in its complaint are baseless in their entirety. It does not allege that all (or even the majority) of the dust mask claims asserted against it in the lawsuits Defendants brought on behalf of their clients are objectively baseless. Indeed, hundreds of dust mask claims are still pending against 3M. For this reason alone, 3M allegations are not sufficient to meet the narrow sham exception. The conduct on which 3M's claims are premised is protected by the *Noerr-Pennington* doctrine.

### ii. The *Noerr-Pennington* doctrine immunizes Defendants' litigation activity

3M points to certain allegations in its complaint to argue that its claims involve conduct beyond Defendants filing lawsuits against it that the *Noerr-Pennington* doctrine does not protect. But the conduct 3M points to is conduct incidental to litigation that the doctrine *does* protect. And regardless, 3M does not seek damages for such conduct.

As the Fourth Circuit has articulated,

courts have generally shown a willingness to immunize "conduct incidental to the prosecution of the suit." *Sosa*, 437 F.3d at 931-37 (quoting *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), *aff'd*, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)) ("we must give adequate 'breathing space' to the right of petition," and, therefore, like the "majority of other circuits," we "extend[] *Noerr—Pennington* immunity to litigation-

13

related activities preliminary to the formal filing of the litigation" (quoting *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 531, 122 S. Ct. 2390, 153 L. Ed. 2d 499, (2002))); *see also Balt. Scrap*, F.3d at 401 ("non-parties often provide aid to litigants, whether through financial backing, legal assistance, amicus briefs, or moral support" and therefore limiting protection to litigants would "severely curtail the rights of all citizens to petition the government and to associate with others who do so").

*Navient Sols., LLC v. Lohman*, 136 F.4th 518, 525 (4th Cir. 2025); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006) (quoting *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991)) ("*PRE I*"), *aff'd* 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) ("in the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the *Noerr-Pennington* doctrine"). For example, "[i]n *Freeman*, the plaintiff brought suit alleging that discovery misconduct in related litigation constituted a violation of the antitrust laws. The court held that discovery communications, while not themselves petitions, constitute 'conduct incidental to a petition.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006) (citing *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183-84 (9th Cir. 2005)) (internal citations omitted).

The alleged conduct 3M raises in its attempt to argue "the *Noerr-Pennington* doctrine does not shield Defendants from liability because 3M's claims involve conduct the doctrine does not protect" (i.e., recruiting clients, communicating with clients, forging records, and discovery misconduct) is conduct incidental to litigation, and therefore, is immunized under the doctrine. (Doc#74, PageID#1628). Communicating with potential and existing clients and conducting discovery are core

litigation activities. And 3M's allegations that Defendants conducted these activities in bad faith does not divest the activities of their immunity. *See Navient Sols., LLC,* 136 F.4th at 526 ("we emphasize that '[w]hether to condemn [defendants'] activities [] is a different question than whether to abrogate *Noerr— Pennington* immunity[.]' *Balt. Scrap*, 237 F.3d at 402 ('In achieving an overall public benefit like the right to petition, any immunity will shield individual instances of conduct that might otherwise be actionable.'").

In any event, this Court "need not actually determine whether such conduct is immunized because [3M] does not request damages for it." *Id.* at 525. 3M only alleges it suffered litigation costs as a result of Defendant's alleged RICO scheme. Specifically, 3M claims, "3M incurred legal fees and costs evaluating, defending against, and engaging in settlement negotiations regarding dozens of fraudulent claims and other Enterprise Complaint claims filed and prosecuted by Defendants as part of the scheme." (Doc#40, PageID#539). "As a result, even if *Noerr— Pennington* did not cover defendants' incidental conduct, the Court is only presented with damages for immunized litigation costs." *Navient Sols., LLC,* 136 F.4th at 525. *Noerr-Pennington* immunizes the litigation activity 3M alleges damages for, and, therefore, 3M's claims must be dismissed.

## C. Younger Abstention Applies to Bar 3M's claims

As explained in Hammond's motion, Plaintiff has had a proper opportunity to seek relief for any alleged professional misconduct through state proceedings. Rule 11 sanctions are the proper avenue for litigants to address alleged attorney

misconduct during litigation. *Saltire Industrial, Inc. v. Waller, Lansden, Dortch & Davis, LLC,* 491 F.3d 522, 530- 32 (6th Cir. 2007) (rejecting fraud claim against law firm as improper, where Rule 11 sanctions could have been used).

Brushing off the concept of abstention, 3M effectively asks this federal court to find that Attorney Hammond is guilty of professional misconduct, awarding damages that are tantamount to Rule 11 sanctions. Yet, 3M admits that state proceedings are addressing, or have addressed, Hammond's alleged mishandling of these dust mask cases. Indeed, 3M admits that it "has sought sanctions" in cases involving Hammond (Doc#74, PageID#1630) and that Hammond was also "under investigation by the Kentucky Bar Association for his mishandling of these dust mask claims as early as December 2019." (Doc#40, PageID#40). It further admits that *Younger* abstention, though developed to address state criminal proceedings, now also applies to certain "state civil proceedings" which implicate significant state interests. (Doc#74, PageID#1629).

Apparently, 3M is dissatisfied with the handling of the alleged attorney misconduct by the state courts and Bar Association. However, its dissatisfaction with state authorities provides no basis for this federal lawsuit. *Younger* abstention applies here because "[t]here can be no serious question that the regulation and discipline of attorneys is an important state function." *Danner v. Bd. of Prof'l Responsibility of the Tenn. Supreme Court*, 277 Fed. Appx. 575, 579 (6th Cir. 2008) (applying *Younger* abstention). "[T]he regulation of lawyers is of 'especially great' interest to the state, as lawyers are 'essential to the primary governmental function

of administering justice, and have historically been "officers of the courts.""" *Id.* Further, proceedings regulating lawyers need not be "formal disciplinary proceedings." *Choosing Justice Initiative v. Flippin*, 2020 U.S. Dist. LEXIS 208189, *11-12 (M.D. Tenn. 2020) (applying Younger abstention, "disagree[ing] with Plaintiffs contention that only formal disciplinary proceedings qualify as an 'ongoing judicial proceeding' from which the Court must abstain").

Plaintiff cites *Habich v. City of Dearborn*, 331 F.3d 524, 532 (6th Cir. 2003), as supportive of its position, but that case is inapposite. Neither *Habich* nor any of 3M's cited abstention cases address the situation of a Plaintiff pursuing a claim in federal court for attorney misconduct which allegedly occurred in state court.

Given the related state proceedings and clear state interests, Plaintiff cannot pursue the claims of professional misconduct—or related monetary awards which are tantamount to sanctions—here in federal Court. Younger abstention applies.

## III.  3M Fails to Explain How Fraud Claims Can Arise out of Disputed Litigation or Opposing Counsel's Litigation-Related Activity

3M's "claims based on fraud pose 'a high risk of abusive litigation.'" *Republic Bank & Tr. Co. v. Bear Stearns & Co.,* 683 F.3d 239, 247 (6th Cir. 2012), quoting *Twombly,* 550 U.S. at 569 n.14. Indeed, Hammond's principal brief cites numerous cases which properly reject fraud claims by a party *against the opposing attorney* in disputed litigation. Likewise, the Southern District of Ohio recently ruled to reject litigation-related fraud claims by one litigant against another. *Adams, et al. v. The Medical Protective Company, Inc., et al.* (Nov. 19, 2025), S.D. Ohio No. 20-cv-170,

PageID 12116 (attached as Ex. A, dismissing fraud claims, citing *Republic Bank & Tr. Co.,* 683 F.3d at 247).

Strikingly, in the fraud section of its opposition brief, 3M *fails to cite a single case* allowing fraud claims to proceed against opposing litigation counsel.[4] This court should not permit such potentially abusive claims. Such precedent would only serve to needlessly multiply litigation among adverse litigants and their attorneys. The judicial statement privilege prevents use of litigation-related activity as a basis for claims between adverse litigants. *See* Section II.A. above; *see also Adams*, PageID 12113 − 14, 12116 & 12125 (invoking such privilege to prevent litigation-related fraud claims and also citing a failure to properly support justifiable reliance or damages).[5]

In attempting to support its fraud claims, 3M's brief concedes, or fails to persuasively refute, key reasons for dismissal of such claims. First, 3M does not dispute that it has a proper avenue for pursuing the supposed fraud by seeking "sanctions pursuant to Civil Rule 11" against Hammond in the underlying cases.

---

[4] Plaintiff 3M cites *Ky. Laborers Dist. Council Health & Welfare Tr. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 771 (W.D. Ky. 1998), a case which expressed "reservations" about the fraud claim, even as it initially permitted a fraud claim presented by a workers' health fund against tobacco companies. The *Hill & Knowlton* case is inapposite here. It has it has nothing to do with claims against an opposing attorney. Nor does it involve an opponent's litigation activity or whether reliance is reasonable in such circumstances

[5] Although 3M argues that federal law, rather than state law, applies to the issue of judicial statement privilege, it does not refute the existence of such privilege for purposes of this case. Nor does it try to explain any material difference between state and federal law on this point. Its arguments about federal law have no effect here. In fact, the judicial statement privilege, or "litigation privilege" as it is known in some jurisdictions, has been recognized by the Sixth Circuit for over a half century. *Theiss v. Scherer,* 396 F.2d 646, 650 (6th Cir. 1968) (dismissing claim by a party against opposing counsel based upon the litigation privilege).

*Saltire Industrial, Inc. v. Waller, Lansden, Dortch & Davis, LLC,* 491 F.3d 522, 530-32 (6th Cir. 2007) (dismissing fraud claim against opposing law firm). This Court should follow the Sixth Circuit's reasoning from *Saltire Industrial*: "Having forgone these more opportune times to complain, we find no merit in [the Plaintiff's] current attempt to recover its legal fees in the earlier action." *Id.*

Second, 3M does not plausibly allege any cognizable damages. The fees of defense counsel that were incurred in *defending* underlying litigation are "clearly insufficient" to sustain a fraud claim. *Id.*

Third, 3M fails to explain how its alleged detrimental reliance—on statements or activities of opposing litigation counsel—could ever be legally plausible or reasonable under the circumstances. The Amended Complaint merely alleges that 3M relied on alleged fraud because it "incurred legal fees and costs evaluating, defending against, and engaging in settlement negotiations regarding dozens of fraudulent claims." See Am. Compl. ¶ 225. Citing to fees of <u>*defense*</u> counsel as some form of detrimental reliance is absurd. Evaluating and defending against claims in litigation is the antithesis of reliance, with such underlying "litigation [being] proof enough" that 3M "clearly did not rely" on opposing counsel to its detriment. *Jones v. Univ. Med. Ctr., Inc.* (Ky. App. 2025), 2025 Ky. App. Unpub. 169, *14; *Tocco v. Richman Greer Prof'l Ass'n*, 553 Fed. Appx. 473, 475 (6th Cir. 2013) ("Reasonable reliance" on "an attorney's representations cannot exist where the interests of that party are adverse to those of the attorney's client"). Thus, 3M fails to plausibly and sufficiently allege, as required by law, that it "believed in" or was "taken in by" false

statements of Defendant Hammond. *Clark v. Danek Med., Inc.,* 64 F.Supp.2d 652, 656 (W.D. Ky 1999) (emphasis added, dismissing fraud claim), citing *Wilson v. Henry,* 340 S.W.2d 449, 451 (Ky. 1960) (dismissing fraud claim where appellant investigated and "did not rely wholly on the representation").

In sum, 3M's fraud claim must be dismissed. There is no plausible allegation of reasonable or detrimental reliance, and no cognizable damages to support the claim.

## IV.    Since no Underlying Claim Exists, the Conspiracy Claim Fails

Under Kentucky law, "civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, LLC v. Buckram Oak Holdings, NV*, Nos. 2008-CA-002389-MR, 2009-CA-000026-MR, 2010 Ky. App. Unpub. LEXIS 555, at *38 (App. July 9, 2010) (citing *Davenport's Adm'x v. Crummies Creek Coal Co.*, 299 Ky. 79, 184 S.W.2d 887, 888 (1945) (dismissing plaintiff's civil conspiracy claims because it could not show fraud, and, therefore, its "claim of civil conspiracy thus has no tort to be based upon and cannot survive as a matter of law"); *see also McKinney v. Ky. Neighborhood Bank*, No. 2019-CA-1525-MR, 2020 Ky. App. Unpub. LEXIS 773, at *30 (App. Dec. 4, 2020); *Shm v. Bentley*, No. 2022-CA-0441-MR, 2023 Ky. App. Unpub. LEXIS 212, at *10 (App. Mar. 31, 2023).

As demonstrated in the previous section, 3M cannot prove fraud as a matter of law. Therefore, there is no underlying tort for its civil conspiracy claim to be based upon. 3M's civil conspiracy claims must also be dismissed.

Respectfully submitted,

/s/ Stephen J. Mattingly
R. Kenyon Meyer
Stephen J. Mattingly
Juels M. White
Dinsmore & Shohl LLP
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
Ph: 502-540-2300
Fax: 502-540-2529
kenyon.meyer@dinsmore.com
stephen.mattingly@dinsmore.com
juels.white@dinsmore.com

and

Richard D. Porotsky
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513-977-8200
richard.porotsky@dinsmore.com

*Attorneys for Defendant, Glenn Hammond*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will serve copies of the same on the following counsel of record:

Benjamin C. Fultz
Gregory Scott Gowen
Robert E. Ranney
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202-3116
bfultz@fmdlegal.com
sgowen@fmdlegal.com
rranney@fmdlegal.com

Steve Grimes
Whitney I. Adams
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
sgrimes@winston.com
wiadams@winston.com

*Attorneys for 3M Company*

Walter C. Morrison, IV
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
240 Trace Colony Park Dr., Suite 100
Ridgeland, Mississippi 39157
wmorrison@gainsben.com

Judd R. Uhl
Russell Morgan Salisbury
Lewis Brisbois Bisgaard & Smith, LLP
- Cincinnati
250 E. Fifth Street, Suite 2000
Cincinnati, Oh 45202
judd.uhl@Lewisbrisbois.com
morgan.salisbury@Lewisbrisbois.com

*Counsel for John Givens*

Matthew R. Palmer-Ball
Wyatt, Tarrant & Combs
400 West Market Street, Suite 2000
Louisville, Kentucky 40202
mpalmerball@wyattfirm.com

David L. Miller
Diane F. Burgess
Miller, Scamardi, Carrabba & Burgess, P.C.
6525 Washington Avenue
Houston, Texas 77007
e-service@msc-lawyer.com

*Counsel for Michael B. Martin*

/s/ Stephen J. Mattingly
*Attorneys for Defendant, Glenn Hammond*